# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | |
| | ) | Crim. No. 08-231 (EGS) |
| THEODORE F. STEVENS, | ) | |
| | ) | |
| Defendant. | ) | |

## MOTION TO TRANSFER THIS PROCEEDING TO THE DISTRICT OF ALASKA (SENATOR STEVENS'S PRE-TRIAL MOTION NO. 1)

For the reasons set forth in the accompanying Memorandum, defendant Theodore F. Stevens, through undersigned counsel, moves this Court pursuant to Federal Rule of Criminal Procedure 21(b) to transfer this proceeding to the District of Alaska for the convenience of the parties and witnesses and in the interest of justice. A proposed order is attached.

Dated: August 4, 2008

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By:    /s/  Robert M. Cary
Brendan V. Sullivan, Jr. (Bar No. 12757)
Robert M. Cary (Bar No. 431815)

725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000
(202) 434-5029 (facsimile)

*Attorneys for Defendant Theodore F. Stevens*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

| | |
|---|---|
| _____ ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | |
| ) | Crim. No. 08-231 (EGS) |
| THEODORE F. STEVENS, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

## <u>ORDER</u>

Upon consideration of the Defendant's Motion to Transfer Venue pursuant to Fed

R. Crim. P. 21(b), and the Court having heard the arguments of counsel, and good cause having

been shown, it is

ORDERED that the motion is GRANTED; and it is

FURTHER ORDERED that this case is hereby transferred to the U.S. District

Court for the District of Alaska.


_____
Emmet G. Sullivan
United States District Judge


Dated:_____

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                 )

UNITED STATES OF AMERICA,     )

                                 )

           v.                )

                                 )     Crim. No. 08-231 (EGS)

THEODORE F. STEVENS,      )

                                 )

      Defendant.          )
_____)

## MEMORANDUM IN SUPPORT OF MOTION TO TRANSFER
## THIS PROCEEDING TO THE DISTRICT OF ALASKA
## (SENATOR STEVENS'S PRE-TRIAL MOTION NO. 1)

Brendan V. Sullivan, Jr. (Bar No. 12757)
Robert M. Cary (Bar No. 431815)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005
(202) 434-5000
(202) 434-5029 (facsimile)

*Attorneys for Defendant Theodore F. Stevens*

August 4, 2008

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

ARGUMENT ...................................................................................................................... 2

I.     THE STANDARD FOR A MOTION TO TRANSFER UNDER RULE 21(B). ............... 2

II.    THE RELEVANT FACTORS WEIGH HEAVILY IN FAVOR OF A

     TRANSFER TO THE DISTRICT OF ALASKA. ................................................................ 3

     A.    Location of Senator Stevens. .................................................................... 3

     B.    Location of Possible Witnesses. ............................................................... 5

          1.    Government Witnesses. ................................................................. 5

          2.    Other Potential Witnesses. ........................................................... 7

     C.    Location of Events Likely To Be in Issue. ............................................... 8

     D.    Location of Documents and Records Likely To Be Involved. ............................ 10

     E.    Disruption of Senator Stevens's Business Unless the Case Is

          Transferred. ............................................................................................. 12

     F.    Expenses to the Parties. .......................................................................... 13

     G.    Location of Counsel. ............................................................................... 13

     H.    Relative Accessibility of the Place of Trial. .......................................... 14

     I.    Docket Conditions of Each District or Division Involved. .................................. 15

     J.    Any Other Special Considerations That Might Affect the Transfer. ..................... 15

CONCLUSION .................................................................................................................. 15

## **INTRODUCTION**

The Court should transfer this case to the District of Alaska pursuant to Federal Rule of Criminal Procedure 21(b) because the "center of gravity" of this action lies squarely in Alaska. *See United States v. Clark*, 360 F. Supp. 936, 941 (S.D.N.Y. 1973) (transferring venue from New York because, *inter alia*, "[a]s to the events which will be in question, the center of gravity is clearly in Oklahoma"). Very little of the alleged underlying conduct charged in the indictment took place in the District of Columbia.

The indictment charges Senator Stevens with a failure to disclose gifts that allegedly took the form of an automobile transfer, household renovations, and household goods. All these gifts were allegedly provided in Alaska. Not surprisingly, the government's principal witnesses who supposedly facilitated these gifts – Bill Allen, Person A, and Person B – also reside in Alaska. Furthermore, the only two corporate entities (and their respective employees) cited in the indictment – VECO Corporation and Construction Company A – are located in Alaska. In contrast, the indictment cites to no gift or person located in the District of Columbia, where the government sought the indictment.

Under Rule 21(b), the Court has the authority to transfer this case to the District of Alaska "for the convenience of the parties and witnesses and in the interest of justice." Fed. R. Crim. P. 21(b). Here, the relevant factors that the Court must consider in assessing a Rule 21(b) motion – including the location of Senator Stevens, the location of possible witnesses, the location of events likely to be in issue, and the disruption to Senator Stevens's business (e.g., the disruption to the upcoming election) – weigh heavily in favor of a transfer to Alaska. Accordingly, the Court should transfer this case to the U.S. District Court for the District of Alaska. Because this Court has preliminary familiarity with this case and scheduled a prompt trial, Senator Stevens respectfully requests, if at all possible and if agreeable with the Chief

Judge of the U.S. District Court for the District of Alaska, that this Court preside over the trial in Alaska.

## ARGUMENT

### I.    THE STANDARD FOR A MOTION TO TRANSFER UNDER RULE 21(B).

The Federal Rules of Criminal Procedure provide that:

> Upon the defendant's motion, the court may transfer the proceeding, or one or more counts, against that defendant to another district for the convenience of the parties and witnesses and in the interest of justice.

Fed. R. Crim. P. 21(b).

The factors the Court should consider in deciding a motion to transfer under Rule 21(b) are as follows: (1) the location of the defendant; (2) the location of possible witnesses; (3) the location of events likely to be an issue; (4) the location of documents and records likely to be involved; (5) disruption of the defendant's business unless the case is transferred; (6) expense to the parties; (7) location of counsel; (8) relative accessibility of the place of trial; (9) docket conditions of each district or division involved; and (10) any other special elements that might affect the transfer. *See Platt v. Minn. Mining & Mfg. Co.*, 376 U.S. 240, 243-44 (1964); *United States v. Benjamin*, 623 F. Supp. 1204, 1211-12 (D.D.C. 1985).

"While the burden is on the defendant to show that transfer would serve the purpose specified in the Rule, '[n]othing in Rule 21(b) or in the cases interpreting it place on the defendant seeking a change of venue the burden of establishing truly compelling circumstances for such a change. It is enough if, all relevant things considered, the case would be better off transferred to another district.'" *United States v. Coffee*, 113 F. Supp. 2d 751, 753 (E.D. Pa. 2000) (*quoting In re Balsimo*, 68 F.3d 185, 187 (7th Cir. 1995)). Moreover, as Professors Wright and Miller have observed, there should not be a presumption that the case should remain

in the district where it was initiated.  *See Coffee*, 113 F. Supp. 2d at 753 (*citing* 2 Charles Alan

Wright, *Federal Practice and Procedure* § 344, at 266 (2d ed. 1982 & Supp. 2000)).

## II.     THE RELEVANT FACTORS WEIGH HEAVILY IN FAVOR OF A TRANSFER TO THE DISTRICT OF ALASKA.

In this case, the relevant factors weigh conclusively in favor of a transfer to the

District of Alaska.

### A.     Location of Senator Stevens.

Although Senator Stevens's public representation requires him to spend time in

both Alaska and the District of Columbia, he has been a legal resident of Alaska for more than

fifty years.  Presently, Senator Stevens is in the middle of a reelection campaign, and he is

required to spend much of his time in his home state of Alaska.  The Senate is currently in recess

until September and intends to adjourn again in late September for the general election.  *See*

Alexander Bolton, *Senate Agrees to Sept. 26 Adjournment Date*, The Hill (Jul. 7, 1999),

http://thehill.com/leading-the-news/senate-agrees-to-sept.-26-adjournment-date-2008-07-

09.html.  This factor weighs heavily in favor of transfer.

Many courts have recognized that "it is preferable to try a defendant in the district

where he resides."  *United States v. Kennedy*, No. 86-159, 1986 WL 6227, at *1 (E.D. Pa. May

28, 1986) (transferring case to district of defendant's residence); *see also, e.g.*, *United States v.

Martino*, No. 00-389, 2000 WL 184233, at *6 (S.D.N.Y. Dec. 14, 2000) (same; "Most relevant

here is the location of the defendant.  Courts in this district have accorded greater weight to the

defendant's interest in being tried in the district of his residence than to any other factor."

(internal quotations omitted)) (collecting cases); *United States v. Russell*, 582 F. Supp. 660, 662

(S.D.N.Y. 1984) (same; "As a matter of policy, . . . wherever possible, defendants should be tried

where they reside.") (collecting cases); *United States v. Atwood*, 538 F. Supp. 1206, 1207 (E.D.

Pa. 1982) (same; "In accord with recent decisions in this District, defendant's home district is entitled to real weight." (internal quotations omitted)) (collecting cases).

        In fact, recognizing "the constitutional significance of an individual citizen's interest in being tried in the place of his residence," the courts "have given greater weight to the defendant's interest in being tried in the district of his residence than to any other factor." *United States v. Ohran*, No. 99-142, 2000 WL 620217, at *3 (S.D.N.Y. May 12, 2000) (collecting cases).

        Indeed, numerous courts have transferred proceedings to the district of the defendant's residence, particularly where, as here, the vast majority of the events at issue took place in that district and most of the relevant witnesses were located there. *See* p. 3, *supra* (citing cases), *see also, e.g.*, *United States v. Diaz*, No. 98-194, 1999 WL 1201900, at *2 (E.D. La. Dec. 10, 1999) (transferring cases to Texas, where defendant resided and where most events at issue took place); *United States v. Lima*, No. 94-800, 1995 WL 348105, at *1-4 (N.D. Ill. June 1, 1995) (transferring case to New Jersey where defendant resided, many acts in furtherance of alleged conspiracy took place, and many witnesses were located); *United States v. Bein*, 539 F. Supp. 72, 73-74 (N.D. Ill. 1982) (transferring case to New York where defendants lived, most witnesses were located, and most events likely to be in issue took place); *United States v. McDonald*, 740 F. Supp. 757, 762-65 (D. Alaska 1990) (transferring cases to Washington, where defendants resided, majority of witnesses were located, and many acts charged in indictment took place).

        Moreover, Senator Stevens's residence in Alaska is the focus of the indictment. The value of renovations to his Girdwood residence is central to both the government's case and the Senator's defense. To assist the jury in understanding these renovations, Senator Stevens

intends to request that the Court permit a jury visit to his Girdwood residence – an option that obviously would not be convenient for a Washington, D.C. jury.  Moreover, it makes little sense to hold this trial over 3,000 miles from the renovations (the value of which is clearly in dispute) that lie at the heart of this case.

Accordingly, the location of Senator Stevens and the Girdwood residence weighs strongly in favor of transferring this action to the District of Alaska.

**B.      Location of Possible Witnesses.**

The location of possible witnesses is one of the most significant factors for the Court to consider in assessing a Rule 21(b) motion.  *See United States v. Daewoo Indus. Co.*, 591 F. Supp. 157, 160 (D. Or. 1984) ("Location of witnesses appears to be one of the more significant factors in the cases." (*citing* 8 James Wm. Moore et al., *Moore's Federal Practice* ¶ 21.04(2)(b)(i) (2d ed. 1983)); *Atwood*, 538 F. Supp. at 1207 ("The location of possible witnesses is an important consideration because it directly affects defendant's ability to defend himself at trial.").  Here, the location of witnesses weighs heavily in favor of transferring this action to Alaska.

**1.      Government Witnesses.**

The government intends to call more witnesses from Alaska than any other jurisdiction.  *See* Ex. 1 (Letter from Nicholas Marsh to Robert Cary (Aug. 1, 2008)).  An exact percentage is not available because, despite Senator Stevens's request, the government has declined to date to quantify precisely the breakdown of its witness list by jurisdiction. *See* Ex. 2 (Letter from Robert Cary to Nicholas Marsh (Aug. 1, 2008)); Ex. 1.

Nonetheless, certain conclusions about the location of potential witnesses can be drawn.  First, the government concedes that more of its witnesses reside in Alaska than any other state. *See* Ex. 1.  Second, the defense understands that the government intends to present over

fifty witnesses supporting its case, a number that the government did not dispute at the arraignment. (It is expected that the testimony of most of the witnesses will be quite short.) Defense counsel believe that 90 percent of the government's witnesses will be Alaska residents.

   The indictment itself also makes plain that the government's <u>critical</u> witnesses reside in Alaska. For example, the indictment centers on the VECO Corporation, which was a privately-held Alaska-based corporation that allegedly provided labor and materials for the renovation of the Senator's Girdwood residence. Indictment ¶¶ 3, 15. Thus, the government presumably intends to call numerous VECO employees who reside in Alaska. *See, e.g.*, *id.* ¶ 23 (alleging that "multiple VECO employees and contractors participated in renovating the Girdwood Residence"). Moreover, because VECO allegedly kept cost records relating to renovations of the Girdwood residence, virtually all of the government witnesses with personal knowledge of these cost records – a central element of the government's case – are located in Alaska.

   If that were not enough, every key person or entity listed in the indictment (including Senator Stevens and VECO) is a resident of, or is located in, Alaska:

   i.  Bill Allen, "the Chief Executive Officer and part-owner of VECO," *id.* ¶ 4;

   ii.  Person A, "the owner of a retail business <u>located in the State of Alaska</u>," *id.* ¶ 5 (emphasis added);

   iii.  Person B, "the owner of a real estate business <u>located in the State of Alaska</u>," *id.* ¶ 6 (emphasis added); and

   iv.  Construction Firm A, "a private residential construction firm <u>located in the State of Alaska</u>," *id.* ¶ 7 (emphasis added).

Notably, none of the key witnesses or entities specified in the indictment are located in the District of Columbia.

### 2.    Other Potential Witnesses.

Moreover, although it is premature for Senator Stevens to identify specific defense witnesses (especially given the government's refusal to identify its witnesses), it is likely that 90 percent of potential defense witnesses will reside in Alaska, where almost the entirety of the disputed events took place. *See United States v. Jessup*, 38 F.R.D. 42, 46 (M.D. Tenn. 1965) ("[Defendants] should not be forced to anticipate – certainly at this early stage – the course of the litigation which will undoubtedly be protracted, and to identify specifically the individuals they intend to call as witnesses. The statement by defendant Jessup in this regard is sufficient to establish that numerous residents of the Gulfport-Biloxi area will be called to testify, and that these persons will make up the great bulk of the witnesses for the defense."). Although some courts have required more than just a statement of numbers and general locations of witnesses when addressing witness convenience, *see Daewoo*, 591 F. Supp. at 160, Senator Stevens expects that the location of his witnesses will not differ substantially from the government's witnesses, *cf. Lima*, 1995 WL 348105, at *2 (noting that defendant carried burden because "[g]iven the history of this investigation and the course of the previous trials, there is every reason to believe that the witnesses will be the same [as in similar trials]"). In other words, the overwhelming majority of all witnesses in this case are likely to be located in Alaska.

Accordingly, the location of potential witnesses weighs very heavily in favor of transfer to the District of Alaska. *See, e.g.*, *Coffee*, 113 F. Supp. 2d at 755 (noting that "a head count of all the witnesses' inconvenience tips very much in favor of Dayton, Ohio, and thus this factor weighs heavily in favor of transfer"); *McDonald*, 740 F. Supp. at 762 (noting that "inconvenience to such a great proportion of witnesses weighs heavily in favor of transfer to the

Western District of Washington"); *United States v. Alter*, 81 F.R.D. 524, 527 (S.D.N.Y. 1979)

("[I]t appears that the majority of witnesses for both government and defendants reside in the

Southern District of Florida or outside of this district and that the factor of convenience of

witnesses strongly tilts in favor of a transfer.").

       **C.**       **Location of Events Likely To Be in Issue.**

       The location of events likely to be in issue at trial is also a significant factor that

weighs heavily in favor of a transfer to the District of Alaska.  As courts have recognized, the

location of the events in issue "generally carries considerable weight."  *Martino*, 2000 WL

1843233, at \*7; *see also Alter*, 81 F.R.D. at 525 ("A significant factor is the location of the

events likely to be at issue.").

       In this case, all of the alleged underlying conduct that the government charges

should have been reported on Financial Disclosure Forms took place in Alaska.  The government

alleges that the Senator failed to report "home improvements," "automobile exchanges,"[1] and

"other household goods."  Indictment ¶ 15.  Despite the government's unfounded attempt to

describe a "scheme" "in the District of Columbia and elsewhere," *id.*, the alleged gifts all share a

common attribute – they allegedly occurred in Alaska (or rather "elsewhere" as the government

conveniently characterizes them, *see United States v. Ringer*, 651 F. Supp. 636, 638 (N.D. Ill.

1986) (criticizing government for describing that actions took place "in the Chicago area and

elsewhere" when "almost every fact alleged either took place in New York or was directed from

there by defendants")).  In fact, the indictment does not point to a single item that the Senator

received in the District of Columbia.

---

[1] It is not clear whether the indictment is alleging one automobile exchange constituting a gift or
multiple automobile exchanges constituting gifts.  Defense counsel are seeking clarification from

By contrast, the indictment is replete with allegations about conduct that allegedly took place in Alaska (although the word "Alaska" is rarely mentioned). *See, e.g.*, Indictment ¶ 18 (alleged car transfer that took place in Alaska), *id.* ¶ 19 (summarizing renovations to house located in Girdwood, Alaska from 2000-2006); *id.* ¶ 20 (discussing role of VECO architect located in Alaska); *id.* ¶ 21 (describing the work of  Construction Firm A – an Alaskan firm – on the Girdwood, Alaska residence); *id.* ¶¶ 22-24 (describing the work of VECO – an Alaskan corporation – on the Girdwood, Alaska residence in 2000 and 2001); *id.* ¶ 26 (describing the work of VECO – an Alaskan corporation – on the Girdwood, Alaska residence in 2002); *id.* ¶¶ 28-29 (describing the work of VECO – an Alaskan corporation – on the Girdwood, Alaska residence in 2004 and 2005); *id.* ¶¶ 32-34 (describing the role of VECO – an Alaskan corporation, Bill Allen – an Alaskan resident, and an outside contractor – located in Alaska – in fixing the heating system in the Girdwood, Alaska residence in 2006).

In cases such as this, where the vast majority of the alleged conduct took place in another district, courts have not hesitated to transfer the case to the district that was the center of the alleged crimes.  For example, in *Ringer* the court transferred a case involving securities fraud, mail fraud, and conspiracy charges to the Southern District of New York because, *inter alia*, most of the alleged criminal conduct took place there.  651 F. Supp. at 638.  As the court observed, "[e]ven a cursory glance at the indictment demonstrates that this factor calls for transfer.  Despite an apparent effort on the Government's part to insert the word 'Chicago' wherever it could into the indictment, almost every fact alleged either took place in New York or was directed from there by defendants."  *Id.*

---

the government.  If the government refuses to clarify this point and others, Senator Stevens may move for a bill of particulars pursuant to Fed. R. Crim. P. 7(f).

Like *Ringer*, a "cursory glance" at this indictment makes clear that venue is appropriate in Alaska notwithstanding the government's attempt to shift focus to the "District of Columbia" at every opportunity. Because the conduct charged in the indictment was centered in Alaska, this factor weighs very heavily in favor of transfer. *See also* p. 3, *supra*, (collecting cases where action transferred because, *inter alia*, most of the events at issue took place in another district).

      **D.**      **Location of Documents and Records Likely To Be Involved.**

The location of documents and records is at best a neutral factor in this case for two reasons.

First, upon information and belief, much of the government's "500 gigabytes" of discovery is believed to have originated in Alaska. According to the government, this discovery includes audio and video surveillance of events that transpired in Alaska. Upon information and belief, it also includes financial records subpoenaed or otherwise acquired from VECO, Construction Firm A, Person A, Person B, and the KPMG accounting firm in Alaska. It might also include evidence collected from the Girdwood, Alaska residence.

Second, to the extent the government may have moved documents to the District of Columbia,[2] the government cannot rely on any relocation of documents from Alaska as a factor weighing against transfer. In *Coffee*, 113 F. Supp. 2d at 756, for example, the court determined that the location of documents was a neutral factor. The court rejected the government's contention that this factor weighed heavily against transfer because the government had relocated a "roomful of documents, constituting in fact the entirety of all [the

---

[2] Defense counsel are not aware of the current location of the documents produced to the government in connection with this case nor where the originals of those documents are maintained. It is possible that the originals remain in Alaska.

10

corporation's] records," and spent "weeks" packing up and shipping the documents. *Id.* As the

court explained,

> It is hard to take seriously the Government's estimate of an "enormous"
> expense in simply shipping the documents to the United States Attorney's
> Office in Dayton, Ohio. Businesses on a daily basis move far more
> documents to destinations of greater distances than the 545 miles here. On
> the other hand, there is much merit to the Coffees' contention that the
> <u>Government's moving of the documents from their home in Ohio to
> Philadelphia</u> should not permit the Government to bootstrap its desire for
> venue here. This factor is thus neutral.

*Id.* (emphasis added).

Similarly, in *United States v. Bein*, 539 F. Supp. 72 (N.D. Ill. 1982), the court

concluded that the location of documents was a neutral factor, even though most of the relevant

documents were located in Chicago:

> Most of the EKCC documents and records are now in Chicago, but this is
> a result of the government <u>having seized them in New York</u> and bringing
> them here. Two things are clear:
>
> (a) It would be grossly unfair to permit the government to "create" venue,
> or to alter the balance of relevant considerations, simply by shipping
> documents.
>
> (b) Documents moved here can just as easily be moved back to New
> York, or photocopies may be shipped there.
>
> This factor must therefore be viewed as essentially neutral. It thus drops
> out of the equation.

*Id.* at 74 (emphasis added); *accord Ringer*, 651 F. Supp. at 638 (following *Bein* and concluding

that this factor was inconclusive).

Accordingly, the location of documents is a neutral factor that "drops out of the

equation." *Bein*, 539 F. Supp. at 74.

**E.    Disruption of Senator Stevens's Business Unless the Case Is Transferred.**

The disruption of Senator Stevens's business unless this case is transferred is a significant factor that weighs heavily in favor of transfer.

According to press reports, the government began its investigation into VECO as early as 2004.  The VECO investigation went public with the raid of six Alaska state legislators' offices on August 31, 2006, and the government searched Senator Stevens's Girdwood residence on July 30, 2007.  Despite the length of this investigation, however, the government surprisingly chose to seek an indictment of Senator Stevens a mere 28 days before the Alaskan primary election and only 98 days before the general election.

This Court agreed to an expedited trial schedule that gives the Senator the chance to clear his name before voters go to the polls in the general election on November 4, 2008.  Unfortunately, no matter the outcome of this trial, this schedule alone may not be enough to ensure that Senator Stevens has the ability to compete meaningfully in the upcoming election.

The Court has scheduled this trial to begin on September 24, 2008, with the government representing that it estimates that it will need three weeks to make its case.  The defense estimates that it will need one week.  The jury could be expected to get this case on or about October 22, a mere two weeks before the general election.  Senator Stevens must be able to campaign, albeit limitedly, during the trial.[3]  Were venue transferred to Alaska, Senator Stevens would have the opportunity to campaign in the evenings and on weekends during the trial.  *See United States v. Aronoff*, 463 F. Supp. 454, 459 (S.D.N.Y. 1978) (disputing

---

[3] This trial, no matter its location, should not interfere with Senator Stevens's legislative responsibilities, as Senate Majority Leader Harry Reid has announced that the Senate will adjourn by September 26, 2008.  *See* Alexander Bolton, *Senate Agrees to Sept. 26 Adjournment Date*, The Hill (Jul. 7, 1999), http://thehill.com/leading-the-news/senate-agrees-to-sept.-26-adjournment-date-2008-07-09.html.

government assertion that "a trial anywhere" will disrupt business because "even a few hours each weekday plus weekends [at work] could make a substantial difference").  If this trial takes place in the District of Columbia, however, the travel time to Alaska alone would make any personal campaigning during the trial impossible.

Thus, transferring venue to Alaska is the only way for the Court to diminish the disruption to the political process and provide Senator Stevens a minimal opportunity to personally participate in the electoral process that will decide his professional future.  The disruption to Senator Stevens's campaign is therefore a significant factor that weighs heavily in favor of transfer to Alaska.

### F.    Expenses to the Parties.

This factor is neutral at best.  Senator Stevens will incur additional costs if this case is tried in the District of Columbia as he attempts  to coordinate an election and a trial. Moreover, it should be undisputed that the vast majority of the witnesses are located in Alaska, making it more expensive to bring witnesses to trial in the District of Columbia.  The government presumably could incur additional costs if the case is tried in Alaska, but it most likely already has the necessary resources in Alaska to try this case given that it has recently tried Alaska Representative Pete Kott, Representative Vic Kohring, and Representative Tom Anderson in Anchorage while extracting pleas from Bill Allen, Rick Smith, Bill Bobrick, and Jim Clark in Alaska.

### G.    Location of Counsel.

The location of counsel is most likely a neutral factor, and if anything, leans towards transfer.

Although Senator Stevens's counsel is located in the District of Columbia, he expects soon to engage counsel in Alaska to assist in his defense as the focus of the indictment involves events in Alaska. Thus, the location of defense counsel is a neutral factor. As for the government, two of the its attorneys are in fact Assistant United States Attorneys for the District of Alaska, which means they must travel to the District of Columbia for this trial. Interestingly enough, none of the government attorneys are Assistant United States Attorneys for the District of Columbia. Moreover, according to the District of Alaska's electronic filing system, two of the three Washington, D.C.-based Department of Justice attorneys assigned to this case (Messrs. Marsh and Sullivan) have prosecuted eight cases in the state of Alaska during the last two years.

To the extent that one remaining Department of Justice attorney has little connection to Alaska (other than supervising this investigation for a number of years), it is important to note that the government's convenience is "a factor given little weight when other considerations of convenience suggest transfer of a trial under Rule 21(b)." *United States v. Gruberg*, 493 F. Supp. 234, 243 (S.D.N.Y. 1979). As previously emphasized here in this District, "The United States is ubiquitous. The IRS and the Department of Justice are, or should be, 'at home,' not only in Washington, D.C., but also in Fresno or any other place in California or elsewhere in which a federal court sits." *Benjamin*, 623 F. Supp. at 1212.

**H.    Relative Accessibility of the Place of Trial.**

This factor is neutral. Anchorage is well-served by air transport, but very few cities can match the three airports located near the District of Columbia. Nonetheless, the fact that most of the potential witnesses are located in Alaska makes this factor neutral.

**I.      Docket Conditions of Each District or Division Involved.**

          Although the docket in the District of Alaska is less burdened than its District of

Columbia counterpart,[4] this factor is neutral because this Court has agreed to a September 24,

2008 trial date.  Perhaps the best way to serve the "interest of justice" under Rule 21(b) is to have

this Court conduct the trial in Alaska.  *See, e.g.*, *United States v. Friedman*, 854 F.2d 535, 542

(2d Cir. 1988) (S.D.N.Y. Judge conducted trial of transferred case in Connecticut; "At the

request of the defendants, Judge Knapp conducted the trial in New Haven, Connecticut with

jurors from the Hartford area.  *See* Fed. R. Crim. P. 21.").  In order to minimize the disruption to

this Court, all pretrial motions could be filed and heard here in the District of Columbia, with

only the trial itself in Alaska.

**J.      Any Other Special Considerations That Might Affect the Transfer.**

          Defense counsel are not aware of any additional considerations that weigh for or

against transfer.

<u>**CONCLUSION**</u>

          The three most important factors the Court must consider in assessing a transfer

motion under Rule 21(b)—the location of Senator Stevens, the location of potential witnesses,

and the location of the events at issue—weigh overwhelmingly in favor of transfer.  Moreover,

transferring venue is the only way the Court can minimize the disruption to the political process

and provide Senator Stevens the opportunity to participate personally in the upcoming election.

The remaining factors are either neutral or support a transfer.  Accordingly, Senator Stevens

---

[4] According to statistics compiled by the Administrative Office of the U.S. Courts, in 2007 there
were on average 191 filings per D.C. Judge as compared to 168 per Alaskan Judge.  The median
time from filing to disposition for criminal felony trials was 15.3 months for D.C. as compared to
7.8 months for Alaska.  *See* Federal Court Management Statistics,
http://www.uscourts.gov/fcmstat/index.html.

respectfully requests the Court  transfer this proceeding to the District of Alaska pursuant to

Federal Rule of Criminal Procedure 21(b).


Dated:  August 4, 2008

                              Respectfully submitted,

                              WILLIAMS & CONNOLLY LLP


                    By:      /s/ Robert M. Cary
                             Brendan V. Sullivan, Jr. (Bar No. 12757)
                             Robert M. Cary (Bar No. 431815)

                             725 Twelfth Street, N.W.
                             Washington, D.C. 20005
                             (202) 434-5000
                             (202) 434-5029 (facsimile)

                             *Attorneys for Defendant Theodore F. Stevens*

# EXHIBIT 1



**U.S. Department of Justice**

Criminal Division

*Public Integrity Section*

_____
Washington, D.C. 20530

BY ELECTRONIC MAIL

August 1, 2008

Robert Cary, Esq.
Williams & Connolly LLP
725 Twelfth St. N.W.
Washington, D.C. 20005

      Re:    *United States v. Stevens*

Dear Rob:

      I write in response to your August 1 letter requesting the identity and location of each witness that the United States intends to call during its case-in-chief. Although we do not believe we are required to provide you with a final, comprehensive witness list at this time, we can represent to you that we believe the government's trial evidence will include testimony from multiple witnesses who reside in Alaska, multiple witnesses who reside in the D.C. area, and multiple witnesses who reside in other jurisdictions. Those categories have been listed in order of anticipated numerical size.

      Very truly yours,

      WILLIAM M. WELCH II, Chief

      *Nicholas A. Marsh*

      Brenda K. Morris
      Principal Deputy Chief

      Nicholas A. Marsh
      Edward P. Sullivan
      Trial Attorneys

      Joseph W. Bottini
      James A. Goeke
      Assistant United States Attorneys

# EXHIBIT 2

LAW OFFICES

# WILLIAMS & CONNOLLY LLP

725 TWELFTH STREET, N.W.

WASHINGTON, D. C. 20005-5901

(202) 434-5000

FAX (202) 434-5029

ROBERT M. CARY
(202) 434-5175
rcary@wc.com

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

August 1, 2008

**VIA E-MAIL**

Nicholas A. Marsh
United States Department of Justice
Criminal Division
1400 New York Avenue, N.W.
Washington, DC 20005

Dear Nick:

Please advise me by the close of business today your best estimate of how many witnesses the government intends to call in its case-in-chief and the number of those witnesses who reside in each state.

Sincerely yours,

Robert M. Cary

RMC/lm