```
                    UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF COLUMBIA


     UNITED STATES OF AMERICA        :
                                     :
                  Plaintiff,         :   Criminal Action
                                     :   No. 08-231
     v.                              :
                                     :
     THEODORE STEVENS,               :   August 7, 2008
                                     :   11:00 a.m.
                                     :
                                     :
                  Defendant.         :   Washington, D.C.
                                     :
     ........................... :


          TRANSCRIPT OF STATUS CONFERENCE PROCEEDINGS
         BEFORE THE HONORABLE EMMET G. SULLIVAN,
               UNITED STATES DISTRICT JUDGE

   APPEARANCES:

     For the United States:     BRENDA K. MORRIS, ATTORNEY
                                UNITED STATES DEPARTMENT OF
                                JUSTICE
                                10th & Constitution Avenue, NW
                                Washington, D.C. 20038
                                (202)514-1439
                                brenda.morris@usdoj.gov

                                NICHOLAS MARSH, ATTORNEY
                                UNITED STATES DEPARTMENT OF
                                JUSTICE
                                10th & Constitution Avenue, NW
                                Washington, D.C. 20038
                                (202)307-1049
                                nicholas.marsh@usdoj.gov

                                EDWARD P. SULLIVAN, ATTORNEY
                                UNITED STATES DEPARTMENT OF
                                JUSTICE
                                1400 New York Avenue, NW
                                12th Floor
                                Washington, D.C. 20005
                                (202)514-1412
                                edward.sullivan@usdoj.gov
```

APPEARANCES:  Cont.

For the United States:          JOSEPH W. BOTTINI, ATTORNEY
(Appearing by telephone)        U.S. ATTORNEY'S OFFICE
                                District of Alaska
                                222 West Seventh Avenue
                                Federal Building and U.S.
                                Courthouse
                                Anchorage, AK  99513
                                joe.bottini@usdoj.gov

                                JAMES A. GOEKE, ATTORNEY
                                U.S. ATTORNEY'S OFFICE
                                District of Alaska
                                222 West Seventh Avenue
                                Federal Building and U.S.
                                Courthouse
                                Anchorage, AK  99513
                                james.goeke@usdoj.gov


For the Defendant:              ROBERT M. CARY, ESQ.
                                WILLIAMS & CONNOLLY, LLP
                                725 12th Street, NW
                                Washington, D.C. 20005
                                (202)434-5175
                                rcary@wc.com


(Appearing by telephone)        BRENDAN V. SULLIVAN, JR., ESQ.
                                WILLIAMS & CONNOLLY, LLP
                                725 12th Street, NW
                                Washington, D.C. 20005
                                (202)434-5029
                                bsullivan@wc.com



Court Reporter:                 Scott L. Wallace, RDR, CRR
                                Official Court Reporter
                                Room 6509, U.S. Courthouse
                                Washington, D.C. 20001
                                202.326.0566
                                scottlyn01@aol.com


Proceedings reported by machine shorthand, transcript produced
by computer-aided transcription.

<u>**MORNING SESSION, AUGUST 7, 2008**</u>

1

2    (11:06 a.m.)

3        THE COURTROOM CLERK:  Criminal Case 08-231, the *United*

4    *States versus Theodore Stevens*.  Would counsel please identify

5    yourselves for the record.

6        MS. MORRIS:  Good morning, Judge.  For the government,

7    Brenda Morris, Brenda Morris and Edward Sullivan.

8        THE COURT:  All right.  Good morning, counsel.

9        MS. MORRIS:  Also by phone, we have two AUSAs from Alaska,

10   and that would be Joe Bottini and Jim Goeke.

11       THE COURT:  All right.  Good morning to everyone.

12       MR. BOTTINI:  Good morning, Your Honor.

13       MR. CARY:  Good morning, Your Honor.  Rob Cary for Senator

14   Stevens and Brendan Sullivan is on the telephone.

15       THE COURT:  All right.  Good morning, counsel.

16   Mr. Sullivan, are you there?

17       MR. BRENDAN SULLIVAN:  Brendan Sullivan, Your Honor, yes,

18   Your Honor, thank you.

19       THE COURT:  The senator is not present.  I assume he

20   wishes to waive his appearance or not?

21       MR. CARY:  He does, Your Honor.

22       THE COURT:  That's fine.  I have no problems with that.

23   Let me just say that I really appreciate that everyone made

24   themselves available on such short notice.  This hearing will be

25   brief, but there are some time sensitive matters that need to be

1    resolved before the next scheduled court date, and I thought it

2    would be easier just to bring you in, as opposed to telephone

3    conferences.  This is not a case where I can just pick the phone

4    up and get the attorneys on the line, as much as I would like to

5    do that.  I don't think that's available in this type of case.

6    It's high profile, the public is scrutinizing proceedings, and so

7    I had to bring you in.  I'm sorry for the short notice.

8         Recognizing that the defense has filed a motion to

9    transfer venue and that the motion is not fully briefed yet, on

10   that note I need to mention that one change the Court has already

11   made is to move that motion hearing date to August 20th instead

12   of the 19th.  The Court, nevertheless, needs to look ahead to

13   some logistical issues in order to be prepared in the event the

14   trial proceeds here.

15        Before I get to those issues, however, I need to hear from

16   the parties regarding timing.  From the government, approximately

17   how many witnesses do you expect to call at trial?

18        MS. MORRIS:  Anywhere between, approximately, 30 to 40,

19   Judge.  We haven't narrowed it down specifically, but to say 40

20   would be safe.

21        THE COURT:  All right.  And how long -- what's your best

22   good faith prediction for how long it will take the government to

23   present its case-in-chief, putting aside cross-examination, just

24   your case-in-chief?

25        MS. MORRIS:  Our case-in-chief, we would still say three

1   weeks, Your Honor.

2          THE COURT:  Three weeks?

3          MS. MORRIS:  Yes, sir.

4          THE COURT:  For the defense, do you have a prediction at

5   this point about how long it may take for you to present your

6   case-in-chief?  I'm not going to hold you precisely to what you

7   say.  I recognize this is early on, but I need to get a feel for

8   just how long this trial is going to take because we have a lot

9   of other matters.

10         MR. CARY:  Your Honor, previously we've estimated a week,

11  I believe to Your Honor, and that would still be our prediction.

12         THE COURT:  All right.  Okay.  With respect to discovery,

13  does either side anticipate any significant discovery disputes?

14         MR. CARY:  It's hard to say, Your Honor.  We've had a

15  number of very professional discussions with the government, and

16  the discovery is being sent to us.  We're supposed to pick it up

17  this afternoon.  So, I can't say for sure, but I can say that so

18  far the discussions have been professional and I don't anticipate

19  problems at the moment, but we won't know for sure until we see

20  the discovery.

21         THE COURT:  All right.  I need to know just as soon as

22  possible if anyone anticipates any discovery disputes because I

23  need to resolve those disputes.

24         MR. CARY:  Understood, Your Honor.

25         THE COURT:  All right.  That's fine.  With respect to

1    discovery, I would encourage the parties, to the extent that it's

2    practical, to attempt to reach stipulations, to the extent you

3    can, with respect to authenticity and any other issues that the

4    parties can in good faith stipulate to.  So I strongly encourage

5    you to do that.  In other words, if there's not a need for a

6    custodian, then let's not deal with a custodian of records, if

7    there's not a need.

8         MR. CARY:  And, Your Honor, I can report that the

9    government and I have had discussions about that and I think

10   we're on a good course there.

11        MS. MORRIS:  And we've offered several stipulations that I

12   think we can agree to soon.

13        THE COURT:  All right.  That's fine.

14        Let me focus on the first issue, summoning the jury.  The

15   Court is inclined to summon 150 jurors; 75 jurors would report

16   the first day and, if necessary, the remaining 75 will report on

17   day 2.  The summons that we'll issue today will indicate that

18   this trial could take approximately four weeks.

19        As with all cases, potential jurors will be told to

20   contact the Jury Office if jury service at that time or for that

21   period of time will result in an undue hardship.  The Jury Office

22   then screens responses and either reschedules the juror's

23   services or indicates they still need to report for jury duty.

24        For the latter group, the Court and counsel will handle

25   the request to be excused during voir dire.  The summons will be

7

1    for September 23rd.  That is yet and still another change.  When

2    we talked last, I indicated that voir dire would commence on

3    September the 24th.  I'm going to move that back a day to the

4    23rd.  Don't panic.  Even if we are able to select a jury panel

5    on the 23rd, it's not anticipated that the trial will formally

6    start on the 23rd.  That's just a change for purposes of jury

7    selection, anticipating the jury selection may take two days.  I

8    doubt if it will take more than two days, but I would like to

9    take advantage of the 23rd.

10          I'll entertain any objections to any of these issues I'm

11   addressing when I finish addressing them.  This case -- I want to

12   focus now on courthouse procedures.  This case has garnered a

13   fair amount of media attention, and the indications are it will

14   be widely covered by the press.  Fortunately, this District Court

15   has some familiarity with high profile cases, and a number of

16   institutional procedures have been put in place to accommodate

17   the jurors, the parties, the public, and the media in such cases.

18   It is my intent to run a fair and orderly trial while being as

19   accommodating as possible.  And, where appropriate, I intend to

20   follow the institutional procedures adopted in the Court's other

21   recent high profile cases.  I do not believe this is the time to

22   go through specific procedures in detail, but I do want to raise

23   some of the issues now so that we all can be looking ahead.

24   We're fortunate to have an extraordinarily talented staff running

25   the day-to-day operations for the courthouse, and they will serve

```
 1   as points of contact on issues regarding technology, court

 2   access, media access, et cetera.  For courtroom technology

 3   requirements, you need to contact John Cramer -- that's

 4   C-R-A-M-E-R -- well in advance of any court appearances.

 5         This is one of the state-of-the-art courtrooms.  It's

 6   designated one of the courtrooms of the future.  It has a lot of

 7   high tech capacity, but you need to contact him well in advance

 8   because he's in demand by my colleagues, as well.

 9         So, any questions with respect to technology or computer

10   usage or whatever questions you have with regards to technology,

11   you need to contact him.  His phone number is 354-3019.

12         For other logistical issues, you can contact Mr. Shelly

13   Snook who's in the court, or his very professional assistant

14   Jenna Gatski, G-A-T-S-K-I, at 354-3320, and she's likewise in the

15   court.  But it's good that people know who you are and they know

16   they can contact you, and I'm encouraging, especially the media,

17   to reach out if you have questions, to contact either Ms. Gatski

18   or Mr. Snook, in the first instance, or Carol Votteler, my

19   courtroom deputy.

20         With respect to the media, I anticipate instituting a

21   number of procedures that have been followed in recent cases to

22   ensure that the trial is open to the public and the press while

23   protecting the parties' rights to have the case decided solely on

24   the evidence presented to the jury during the trial.

25         Finally, in the event the Court denies the defendant's
```

1    motion to transfer, the pre-trial and trial schedule will be as

2    follows:  A motions hearing scheduled for September the 10th, and

3    we already have a briefing schedule in place.  The Court will

4    hold a pre-trial conference also on September the 10th following

5    the motions hearing.

6         In view of the pre-trial date, the parties' submissions

7    are now due on noon on September 8th.  That means for all

8    submissions in the August 1st order that were to be filed on

9    September the 15th, they're now to be filed on September the 8th.

10   What we don't have is a lot of time between now and the

11   commencement of this trial, so I have to make some adjustments in

12   the briefing schedule.

13        Again, jury selection will commence on September 23rd.

14   That's also a change in the Court's August 1st order.  If

15   necessary, jury selection will continue on the 24th.  Otherwise,

16   trial will commence on the 24th of September.

17        Now, I'll entertain any objections to anything the Court

18   just said.  I'll be happy to answer any questions anyone has, and

19   I welcome any suggestions that anyone has.  But first, any

20   objections to anything that the Court said?

21        MR. CARY:  Your Honor, not an objection, just a

22   clarification.  I'm not sure I heard.  The jurors who are asked

23   to be excused for hardship, will the parties have access to their

24   submissions?

25        THE COURT:  Let me say this.  Normally, what happens is

1      the summons will go out informing the jurors that the trial has

2      been scheduled -- that they're being summoned for a trial

3      scheduled over a block of time.  In this case, it will be

4      approximately four weeks.  We found that our Jury Office is very

5      professional, and we've been extremely satisfied in the past with

6      respect to that office making decisions with respect to hardship

7      questions and exercising discretion to excuse or defer a juror's

8      service if, indeed, a true hardship exists without the

9      involvement of the Court or the attorneys.  That's the procedure

10     I plan to follow, unless there are objections to that.

11          Now, if, on the other hand, the Jury Office is confronted

12     with a question as to whether or not a hardship indeed exists,

13     then that office will refer that juror's request to be excused or

14     deferred to the Court and then I will enlist the aid of the

15     attorneys in scrutinizing those requests.

16          MR. CARY:  That's acceptable.

17          THE COURT:  That's acceptable to the government?

18          MS. MORRIS:  Yes, Judge.  But on that note, with regard to

19     jurors, the defense and the government have spoken about using

20     juror questionnaires, and I think that the two of us would be in

21     favor of using juror questionnaires, and I didn't know how

22     that -- whether the Court would be in favor of such.

23          MR. CARY:  We've had a number of discussions and that's

24     the one thing we've been able to agree on so far.

25          MS. MORRIS:  We've agreed on a little more than that.

1      THE COURT:  If you notice, I hadn't mentioned

2  questionnaires, but let me invite you both to the podium here.

3  Let's talk about questionnaires.  You both would like to use

4  questionnaires?

5      MS. MORRIS:  Yes, sir.

6      MR. CARY:  Yes, Your Honor.

7      THE COURT:  All right.  Questionnaires that focus on

8  pre-trial publicity or other issues?

9      MS. MORRIS:  Facts about the case, the types of charge,

10  yes, other issues.

11      THE COURT:  Have you agreed on a proposed form for this

12  questionnaire?  The reason I'm asking all these questions is

13  because that adds more time to the jury selection.  I don't know

14  what the scope of your discussions have been.  I assume that

15  you've anticipated the jurors receiving questionnaires when they

16  appear in court, the 75 jurors who appear on the first day and

17  the second day.  How many questions have you talked about?

18      MR. CARY:  Your Honor, I think it's fair to say that we've

19  only agreed to try to agree, and I can tell you, certainly from

20  the defense's perspective, we're mindful of the fast pace here

21  and, frankly, too much information.

22      THE COURT:  It's going to be fair as well.  I want to

23  emphasize that.  It's going to be fast, but it's going to be

24  fair, but I need to factor in that additional time, though,

25  because routinely -- we don't use questionnaires often.  I've

1   used questionnaires in the past.  That does add an additional

2   time factor.  It's doable, but I'm just trying to get a feel for

3   what the attorneys have in mind.

4        MS. MORRIS:  I would suggest that the questionnaires go

5   out with the summons and that they complete them prior to coming

6   in.

7        MR. CARY:  That would be agreeable to the defense.

8        THE COURT:  All right.  But you haven't worked out the --

9   you haven't agreed on the questions themselves?

10       MS. MORRIS:  We can leave here and do that immediately.

11       THE COURT:  And the reason we're talking today is because

12   I couldn't wait until after deciding the venue issue.  If I

13   decided the venue issue on the 20th or 21st, it would probably be

14   too late to issue -- it wouldn't be too late, but it would be a

15   hardship for the Jury Office to then try to issue the number of

16   summons we need to get 150 qualified jurors.  So that's the

17   reason why we're talking now.  I haven't prejudged the transfer

18   issue at all, I'm just looking forward in the event that the case

19   remains here.  And I've been told I really have to issue the

20   summons this week.

21       Now, there's probably some flexibility there, but not a

22   great deal of flexibility.  So, I probably need your best

23   thoughts about questions for such a questionnaire.  I probably

24   needed them yesterday.  So, having said that, I probably need

25   them just as soon as I can get them.

1          MR. CARY:  We can sit in a private place as soon as --

2    immediately after this hearing.

3          THE COURT:  Do you want to do that?  Yeah, all right.

4    That's fine.  And that's a joint request, then, for the use of

5    questionnaires?

6          MS. MORRIS:  Yes, Your Honor.

7          THE COURT:  One thing I need to give some thought to is

8    whether I want to send those questions out with the summons as

9    opposed to providing those questions to the jurors when they

10   arrive.  You've obviously given some thought to the use of

11   questionnaires in this case.  What are your best thoughts in that

12   regard?

13         MS. MORRIS:  I've used juror questionnaires in the past

14   and I find it to be more beneficial when the jurors receive them

15   and are able to answer them in a more leisurely fashion.  I think

16   you get a more substantial and honest response, more candor,

17   rather than having them, like, all in a room clustered together

18   and them just jotting down a quick answer.

19         MR. CARY:  Your Honor, in candor, normally we would prefer

20   to have them filled out in the courtroom, but given the schedule

21   in this case, we, frankly, thought it would be more expeditious

22   to have them sent out in advance.

23         THE COURT:  All right.  Then I need to think about that

24   for a second and I will.  I need to -- that's going to require

25   more time on our part as well because when the questionnaires

1   come in, it's going to mean that we need to discuss them.  I

2   can't just delegate that responsibility to the Juror Office.  In

3   other words, a question of hardship, someone not being available,

4   someone has plans for elective surgery or has prepaid vacation

5   plans or a business trip prepaid and it's a legitimate excuse,

6   then the Juror Office can certainly exercise discretion, but with

7   respect to scrutinizing answers to questions, that's going to

8   require a lot of time, and that's fine, but it's going to require

9   a significant amount of time.

10          MS. MORRIS:  But that would be -- that would be for our

11  scrutiny, though, our scrutiny, the Court's scrutiny and within

12  the voir dire context, correct?

13          THE COURT:  Right, and the attorneys, right, absolutely.

14  But we can't wait until the 23rd to do that, so -- all right.  I

15  have to think about that.  This is a joint request.  I haven't

16  really factored in that time.  A couple of thoughts occurred to

17  me, and I'll take a recess and speak with someone in the Juror

18  Office as well, but a couple thoughts occur to me and those

19  thoughts are we probably need to designate dates for the Court

20  and counsel to go over the questionnaires.  Maybe one day per

21  week for every week between now and jury selection, because we're

22  going to send out a significant number of summonses just to be

23  able to get 150 qualified jurors.

24          But I'll take a short recess and I'll try to get some

25  responses from the Juror Office, too, as to how accommodating

1  that office can be.  We're talking about a significant amount of

2  time, you recognize that?

3      MS. MORRIS:  I've used them before with over 200 jurors,

4  and it didn't take that much time.  Actually, it helped to

5  expedite.  Once you had their answers to certain questions, it

6  helped to expedite matters, but you're right, Your Honor, it is

7  lengthy and it is a little time-consuming in the process of

8  getting it done.

9      THE COURT:  Are you both suggesting that the jurors bring

10  in their answers to the questionnaires on the 23rd?

11      MS. MORRIS:  No, sir.  We would like them ahead of time,

12  yes, sir.

13      THE COURT:  That's what I thought.  That's fine.  Let me

14  think about that and we'll talk about that a little bit more this

15  morning.  I need to contact the Juror Office also to find out

16  from that office's perspective just what the logistics are and

17  how we can accommodate that request for the use of

18  questionnaires.

19      Any other objections first to anything the Court said?

20      MS. MORRIS:  No, objection, but I would like

21  clarification.  You said the phone numbers of everybody way too

22  fast.  If I could get the phone numbers again.

23      THE COURT:  Oh, yeah, sure.  Carol has them.  I'll give

24  them to you.  It's easier for me just to give them to you now.

25      MS. MORRIS:  Snook.

1        THE COURT:  Mr. Snook, yeah.  Or Jenna Gatski, 354-3320;

2   John Cramer, 354-3019, and both Mr. Snook and Ms. Gatski are in

3   the courtroom.

4        With respect to accommodating counsel, I recognize that

5   the government made a request for the use of a room yesterday in

6   a conversation with my courtroom deputy, and to the extent we can

7   accommodate the government, as well as defense counsel, and I

8   think we can do that, we've done that before, we'll do that.

9   Mr. Snook is the person to contact, though, to speak with about

10  that.

11       MR. CARY:  Thank you, Your Honor.

12       THE COURT:  Anyone on the phone have any objections or

13  suggestions or questions, for that matter?

14       MR. CARY:  No, Your Honor, thank you.  No.

15       MR. BRENDAN SULLIVAN:  No objection from Brendan Sullivan.

16       THE COURT:  Let me do this, let me make a phone call to

17  the Juror Office about a couple of questions, logistics, and the

18  use of questionnaires.

19       You're serious about this request?  Both sides would like

20  to use questionnaires?

21       MS. MORRIS:  Yes, sir.

22       THE COURT:  All right.  Okay.  I'm going to take a

23  15-minute recess and we'll talk again.  No need to stand.

24       (Thereupon, a break was had from 11:26 a.m. until

25  11:46 a.m.)

1      THE COURT:  All right.  Let me see if I can accommodate

2  your joint request for the use of questionnaires.  We still have

3  the attorneys on the phone, correct?

4      MR. BOTTINI:  Correct, Your Honor this is Joe Bottini in

5  Alaska.

6      MR. CARY:  And Your Honor, Mr. Sullivan, Brendan Sullivan,

7  is not on the phone, but I have his proxy.

8      THE COURT:  All right.  That's fine.  Here's what we're

9  going to do.  We don't have a lot of time between now and the

10  commencement of this trial.  I'm sympathetic to your joint

11  request for the use of questionnaires, but I really doubt if we

12  have the time to scrutinize the receipt of hundreds of

13  questionnaires from the jury pool between now and the

14  commencement of the jury date, the trial.  So I think it's

15  probably more feasible if the Court were to allow the use of

16  questionnaires, but only when the jurors arrive at court.

17      So, this is what I intend to do, and I'll entertain any

18  objections that anyone has to this:  We're going to move the jury

19  selection date to another date, the 22nd of September, and I plan

20  to, on that date, bring in the entire jury pool that's available,

21  150 jurors, to seat them in the ceremonial courtroom.  That's the

22  only courtroom that we have in this building that's large enough

23  to accommodate 150 jurors.  At that time, the Court will provide

24  the jurors the questionnaire that the attorneys and the Court

25  have approved and afford them the opportunity, the jurors, two or

1   three hours, whatever it takes, for them to complete the

2   questionnaire and give it back to the Court.  There will be some

3   details, obviously, to this procedure to work out, but this is

4   the broad picture.  150 jurors, September the 22nd.  They'll

5   receive the questionnaires, they'll be given two hours or three

6   hours, or whatever it takes to give answers, and then we will

7   have certainty about who is providing answers to the questions.

8   There's always that mystique about mailing questionnaires to

9   jurors, who's actually filling out the answers?  Is it the

10  summoned juror or is it the summoned juror's sibling or spouse or

11  is it a group project or are people Googling to give answers, to

12  provide answers to questions.  We're going to remove that

13  mystique.  We're going to provide them with the appropriate

14  questions to be asked.  We'll know the jurors summoned to court

15  are, indeed, the people who are providing the answers.

16      Now, once we get the answers back from the jurors on the

17  22nd, we'll make the appropriate copies for counsel.  Counsel

18  will not have a lot of time, but you'll have as much time as the

19  Court will have to scrutinize the answers, and then the next day,

20  we're going to bring jurors back in, probably in groups of 35 in

21  the morning and 35 in the afternoon, that's 70 jurors, and we

22  will proceed with the individual voir dire process until we have

23  the requisite number of qualified jurors.  That will be 12 plus 4

24  alternates for a trial that's scheduled to last approximately

25  four weeks.

1        Now, there are some details to work out for that process,

2    but I think that it's a fair process fashioned by the demands of

3    time, lack of time, and, indeed, concerns that people always have

4    about mailing questionnaires to individuals and receiving the

5    responses and the concerns as to who's been providing answers to

6    those questions.  So I've removed that concern because they will

7    be given the questionnaires and the jurors will provide the

8    answers in open court.  So nothing's really going to take place

9    with respect to interaction or jury selection on the 22nd.  The

10   only thing that's going to take place is that the jurors will be

11   given the questionnaires and given a chance to respond to those

12   questionnaires.  And I'll entertain any objections to that?

13       MS. MORRIS:  Your Honor, we would just still maintain --

14   we would still maintain that -- I understand, I totally

15   understand what you mean as far as the time-consuming.

16       THE COURT:  I wish we had five months.

17       MS. MORRIS:  I know.  Of getting the actual questionnaires

18   out and then there's always the question of whether or not the

19   actual juror or a spouse or a sibling or a child or someone else

20   may be filling out the questionnaire.  It just has been my

21   experience that when you get the questionnaire back when they

22   have had an opportunity to fill them out at home, they are more

23   detailed.  It seems to weed out a little more candor.  They have

24   the time and they're not there around others to try to hurry to

25   write a response, and then it actually provides to really make

1    the process of selection to be quicker, once we have it.  But I

2    understand the Court's concern, so I just wanted to make sure we

3    expressed how we see it being a benefit if it really did go out

4    ahead of time.

5         MR. CARY:  Your Honor, what you've outlined is acceptable

6    to the defense.

7         THE COURT:  All right.  That's fine.  I think it's a fair

8    accommodation.  I wish we had five months.  But having said that,

9    I'm not so sure I would still send them out even if we had five

10   months.  But I don't have to deal with that.  We don't have the

11   luxury of having five months between now and the commencement of

12   the trial, but I think it's a fair compromise.  It's still going

13   to require a lot of work on our part, but that's fine.  We don't

14   have the luxury of time and that's fine.

15        I don't have anything else on my list to talk about today.

16   I'll entertain any suggestions that anyone may have.  I don't

17   plan to schedule any other status hearings, unless you think it's

18   absolutely necessary.  I don't plan to bring you in before the

19   20th.  Any suggestions from anyone?  Any requests?

20        MR. CARY:  Your Honor, one issue.  August 20th, Senator

21   Stevens is supposed to be in Alaska, he would ask to be excused

22   and we would waive his appearance.

23        THE COURT:  I don't have any problem.  Does the government

24   object?

25        MS. MORRIS:  No objection.

1        THE COURT:  All right.  I don't have any problem with

2   that.  He can certainly waive his appearance at that hearing.

3   That's fine.

4        MR. CARY:  Thank you.

5        MS. MORRIS:  Judge, if I may, there are one or two points

6   of clarification, if I could ask.

7        THE COURT:  Sure.

8        MS. MORRIS:  You mentioned earlier, before the recess,

9   that you were going to move motions from the 15th to the 8th, and

10  I just wanted to get -- I thought that's what you said.  I wanted

11  to get some clarification for that because, according to the

12  scheduled I had, I didn't have anything marked, any schedule for

13  motions to be received on the 15th.

14       THE COURT:  No.  I think I directed your pre-trial

15  submissions by the 15th, I believe.

16       MS. MORRIS:  The pre-trial submissions?  You mean motions?

17       THE COURT:  September the 15th, right.  In the scheduling

18  order I issued, I directed counsel provide -- I don't have a copy

19  in front of me, but I directed you to provide any additional voir

20  dire questions or any -- and that's -- I'm going to have to

21  change that now, obviously, because now we're focussing on

22  questionnaires.  So I'm going to direct that your proposed

23  questionnaires to the jury pool be filed with the Court by the

24  18th.  That's two days before the hearing, August the 18th.

25       MS. MORRIS:  August the 18th.

1          THE COURT:  Right.  Now I'm not guaranteeing I'll be in a

2    position on the 20th to be able to scrutinize your proposals, but

3    I'll try to.  It may well be that you've agreed to proposed

4    questions, and that will make everyone's job a little bit easier.

5    To the extent you haven't agreed on a joint submission or a joint

6    questionnaire, then I need to get your respective individual

7    submissions by the 18th, and I encourage you to try to agree on

8    the questions.  I think you probably can.  So that's a change

9    already.

10         In the pre-trial order I issued on August the 1st, I

11   directed that your proposed instructions, Red Book instructions,

12   additional proposed final jury instructions, voir dire questions,

13   et cetera, et cetera, be filed by the 15th of September, and I'm

14   just advancing that to September 8th now.  So that's the change

15   there.  And I'll issue another order today that memorializes all

16   the changes that I'm orally making this morning.  But the main

17   changes are with respect to a pre-trial hearing that follows --

18   and this is all in the event that the Court denies -- I haven't

19   prejudged that motion, I haven't read it, it's not fully briefed.

20   It's the motion to transfer -- but in the event that the Court

21   denies it, then we'll have a pre-trial hearing on the 10th as

22   well that will follow the hearing on whatever pending motions are

23   pending before the Court.

24         So, the new wrinkle again is the 18th.  I need your

25   proposed juror questionnaire by the 18th.  Hopefully, it will be

1    joint.  If not, give me your respective individual submissions.

2    And the other change, again, is the 22nd.  Voir dire has just

3    been moved earlier to the 22nd, but that's not going to require a

4    lot of activity on our part on that date, merely the receipt of

5    the questionnaires, the completed questionnaires by the jurors.

6    And, again, I'll spell all this out in an order.

7         To members of the media, I encourage you to reach out to

8    Mr. Snook and Ms. Gatski.  They're true professionals.  To the

9    extent they can accommodate you, they will.  There's a media room

10   in the courthouse.  The Court's actually going to visit it in

11   just a few minutes.  I haven't seen it.  There will be an

12   overflow room, and, to the extent we can accommodate the media,

13   we'll do so without jeopardizing the parties' right to a fair

14   trial.  All right.  Any additional requests?

15        MS. MORRIS:  Just one brief one, Judge.  As we stated, the

16   bulk of the government's discovery will be provided to the

17   defense today, and we would just like to ask when we should

18   expect any reciprocal discovery.

19        MR. CARY:  Well, we've provided a lot of documents

20   already.  I'm not aware, as I stand here today, of anything else,

21   but as soon as it comes to light, we'll provide it.

22        THE COURT:  All right.  All right.  Anything else from

23   anyone on the phone or in court?

24        MS. MORRIS:  No, sir.

25        THE COURT:  All right.  Again, I apologize for getting you

1    down here on such short notice, but, again, I had to do it.

2            THE COURTROOM DEPUTY:  What time is the motion hearing on

3    August 20th?

4            THE COURT:  The motion hearing on August 20th.  That will

5    be at 11:00.  The motion hearing is August 20th at 11 a.m.

6            MS. MORRIS:  Yes, sir.

7            THE COURT:  All right.  Thank you.  Have a nice day.

8            MS. MORRIS:  Thank you.

9            THE COURT:  No need to stand.

10           THE COURTROOM CLERK:  The Court now stands in recess.

11           (Proceedings adjourned at 11:57 a.m.)

12                          **C E R T I F I C A T E**

13

14                   I, Scott L. Wallace, RDR-CRR, certify that
             the foregoing is a correct transcript from the record of
15           proceedings in the above-entitled matter.

16

17           _____
             **Scott L. Wallace, RDR, CRR**
18                **Official Court Reporter**

19

20

21

22

23

24

25

| **1** |
|---|

**10th** [3] - 9:2, 4; 22:21
**11** [1] - 24:5
**11:00** [1] - 24:5
**11:26** [1] - 16:24
**11:46** [1] - 16:25
**11:57** [1] - 24:11
**12** [1] - 18:23
**15-minute** [1] - 16:23
**150** [6] - 6:15; 12:16; 14:23; 17:21, 23; 18:4
**15th** [6] - 9:9; 21:9, 13, 15, 17; 22:13
**18th** [6] - 21:24; 22:7, 24
**19th** [1] - 4:12
**1st** [3] - 9:8, 14; 22:10

| **2** |
|---|

**2** [1] - 6:17
**200** [1] - 15:3
**20th** [8] - 4:11; 12:13; 20:19; 22:2; 24:3
**21st** [1] - 12:13
**22nd** [6] - 17:19; 18:4, 17; 19:9; 23:2
**23rd** [8] - 7:1, 4-6, 9; 9:13; 14:14; 15:10
**24th** [3] - 7:3; 9:15

| **3** |
|---|

**30** [1] - 4:18
**35** [2] - 18:20
**354-3019** [2] - 8:11; 16:2
**354-3320** [2] - 8:14; 16:1

| **4** |
|---|

**4** [1] - 18:23
**40** [2] - 4:18

| **7** |
|---|

**70** [1] - 18:21
**75** [3] - 6:15; 11:16

| **8** |
|---|

**8th** [4] - 9:7, 9; 21:9; 22:14

| **A** |
|---|

**a.m** [4] - 16:24; 24:5, 11
**able** [5] - 7:4; 10:24; 13:15; 14:23; 22:2
**above-entitled** [1] - 24:15
**absolutely** [2] - 14:13; 20:18
**acceptable** [3] - 10:16; 20:5
**access** [3] - 8:2; 9:23

**accommodate** [7] - 7:16; 15:17; 16:7; 17:1, 23; 23:9, 12
**accommodating** [3] - 7:19; 14:25; 16:4
**accommodation** [1] - 20:8
**according** [1] - 21:11
**activity** [1] - 23:4
**actual** [2] - 19:17, 19
**add** [1] - 12:1
**additional** [5] - 11:24; 12:1; 21:19; 22:12; 23:14
**addressing** [2] - 7:11
**adds** [1] - 11:13
**adjourned** [1] - 24:11
**adjustments** [1] - 9:11
**adopted** [1] - 7:20
**advance** [3] - 8:4, 7; 13:22
**advancing** [1] - 22:14
**advantage** [1] - 7:9
**afford** [1] - 17:25
**afternoon** [2] - 5:17; 18:21
**agree** [4] - 6:12; 10:24; 11:19; 22:7
**agreeable** [1] - 12:7
**agreed** [6] - 10:25; 11:11, 19; 12:9; 22:3, 5
**ahead** [4] - 4:12; 7:23; 15:11; 20:4
**aid** [1] - 10:14
**Alaska** [2] - 17:5; 20:21
**allow** [1] - 17:15
**alternates** [1] - 18:24
**amount** [3] - 7:13; 14:9; 15:1
**answer** [3] - 9:18; 13:15, 18
**answers** [13] - 14:7; 15:5, 10; 18:6, 9, 11-12, 15-16, 19; 19:5, 8
**anticipate** [3] - 5:13, 18; 8:20
**anticipated** [2] - 7:5; 11:15
**anticipates** [1] - 5:22
**anticipating** [1] - 7:7
**apologize** [1] - 23:25
**appear** [2] - 11:16
**appearance** [2] - 20:22; 21:2
**appearances** [1] - 8:4
**appropriate** [3] - 7:19; 18:13, 17
**approved** [1] - 17:25
**arrive** [2] - 13:10; 17:16
**art** [1] - 8:5
**aside** [1] - 4:23
**assistant** [1] - 8:13
**assume** [1] - 11:14
**attempt** [1] - 6:2
**attention** [1] - 7:13
**attorneys** [7] - 4:4; 10:9, 15; 12:3; 14:13; 17:3, 24
**August** [10] - 4:11; 9:8, 14; 20:20; 21:24; 22:10; 24:3
**authenticity** [1] - 6:3
**available** [3] - 4:5; 14:3; 17:20
**aware** [1] - 23:20

| **B** |
|---|

**beneficial** [1] - 13:14
**benefit** [1] - 20:3
**best** [3] - 4:21; 12:22; 13:11

**between** [6] - 4:18; 9:10; 14:21; 17:9, 13; 20:11
**bit** [2] - 15:14; 22:4
**block** [1] - 10:3
**Book** [1] - 22:11
**BOTTINI** [1] - 17:4
**Bottini** [1] - 17:4
**break** [1] - 16:24
**BRENDAN** [1] - 16:15
**Brendan** [2] - 16:15; 17:6
**brief** [1] - 23:15
**briefed** [2] - 4:9; 22:19
**briefing** [2] - 9:3, 12
**bring** [6] - 4:2, 7; 15:9; 17:20; 18:20; 20:18
**broad** [1] - 18:4
**building** [1] - 17:22
**bulk** [1] - 23:16
**business** [1] - 14:5

## C

**candor** [3] - 13:16, 19; 19:23
**capacity** [1] - 8:7
**Carol** [2] - 8:18; 15:23
**CARY** [19] - 5:10, 14, 24; 6:8; 9:21; 10:16, 23; 11:6, 18; 12:7; 13:1, 19; 16:11, 14; 17:6; 20:5, 20; 21:4; 23:19
**case** [14] - 4:3, 5, 23-25; 5:6; 7:11; 8:23; 10:3; 11:9; 12:18; 13:11, 21
**case-in-chief** [4] - 4:23-25; 5:6
**cases** [5] - 6:19; 7:15, 17, 21; 8:21
**ceremonial** [1] - 17:21
**certain** [1] - 15:5
**certainly** [3] - 11:19; 14:6; 21:2
**certainty** [1] - 18:7
**certify** [1] - 24:14
**cetera** [3] - 8:2; 22:13
**chance** [1] - 19:11
**change** [8] - 4:10; 7:1, 6; 9:14; 21:21; 22:8, 14; 23:2
**changes** [2] - 22:16
**charge** [1] - 11:9
**chief** [4] - 4:23-25; 5:6
**child** [1] - 19:19
**clarification** [4] - 9:22; 15:21; 21:6, 11
**CLERK** [1] - 24:10
**clustered** [1] - 13:17
**colleagues** [1] - 8:8
**coming** [1] - 12:5
**commence** [3] - 7:2; 9:13, 16
**commencement** [4] - 9:11; 17:10, 14; 20:11
**complete** [2] - 12:5; 18:1
**completed** [1] - 23:5
**compromise** [1] - 20:12
**computer** [1] - 8:9
**concern** [2] - 19:6; 20:2
**concerns** [2] - 19:3, 5
**conference** [1] - 9:4
**conferences** [1] - 4:3
**confronted** [1] - 10:11
**consuming** [2] - 15:7; 19:15

**contact** [10] - 6:20; 8:1, 3, 7, 11-12, 16-17; 15:15; 16:9
**context** [1] - 14:12
**continue** [1] - 9:15
**conversation** [1] - 16:6
**copies** [1] - 18:17
**copy** [1] - 21:18
**correct** [3] - 14:12; 17:3; 24:14
**Correct** [1] - 17:4
**counsel** [6] - 6:24; 14:20; 16:4, 7; 18:17; 21:18
**Counsel** [1] - 18:17
**couple** [3] - 14:16, 18; 16:17
**course** [1] - 6:10
**court** [10] - 4:1; 8:1, 4, 13, 15; 11:16; 17:16; 18:14; 19:8; 23:23
**Court** [25] - 4:10, 12; 6:15, 24; 7:14; 8:25; 9:3, 17, 20; 10:9, 14, 22; 14:19; 15:19; 17:15, 23-24; 18:2, 19; 21:23; 22:18, 20, 23; 24:10, 17
**Court's** [5] - 7:20; 9:14; 14:11; 20:2; 23:10
**courthouse** [3] - 7:12, 25; 23:10
**COURTROOM** [2] - 24:2, 10
**courtroom** [7] - 8:2, 19; 13:20; 16:3, 6; 17:21
**courtrooms** [2] - 8:5
**covered** [1] - 7:14
**Cramer** [2] - 8:3; 16:2
**CRAMER** [1] - 8:4
**cross** [1] - 4:23
**cross-examination** [1] - 4:23
**CRR** [2] - 24:14, 17
**custodian** [2] - 6:6

## D

**date** [8] - 4:1, 11; 9:6; 17:14, 19-20; 23:4
**dates** [1] - 14:19
**day-to-day** [1] - 7:25
**days** [3] - 7:7; 21:24
**deal** [3] - 6:6; 12:22; 20:10
**decided** [2] - 8:23; 12:13
**deciding** [1] - 12:12
**decisions** [1] - 10:6
**defendant's** [1] - 8:25
**defense** [7] - 4:8; 5:4; 10:19; 12:7; 16:7; 20:6; 23:17
**defense's** [1] - 11:20
**defer** [1] - 10:7
**deferred** [1] - 10:14
**delegate** [1] - 14:2
**demand** [1] - 8:8
**demands** [1] - 19:2
**denies** [3] - 8:25; 22:18, 21
**DEPUTY** [1] - 24:2
**deputy** [2] - 8:19; 16:6
**designate** [1] - 14:19
**designated** [1] - 8:6
**detail** [1] - 7:22
**detailed** [1] - 19:23
**details** [2] - 18:3; 19:1
**dire** [7] - 6:25; 7:2; 14:12; 18:22; 21:20; 22:12; 23:2
**direct** [1] - 21:22

**directed** [4] - 21:14, 18-19; 22:11
**discovery** [8] - 5:12, 16, 20, 22; 6:1; 23:16, 18
**discretion** [2] - 10:7; 14:6
**discuss** [1] - 14:1
**discussions** [5] - 5:15, 18; 6:9; 10:23; 11:14
**disputes** [3] - 5:13, 22
**District** [1] - 7:14
**doable** [1] - 12:2
**documents** [1] - 23:19
**done** [2] - 15:8; 16:8
**doubt** [3] - 7:8; 17:11
**down** [3] - 4:19; 13:18; 24:1
**due** [1] - 9:7
**during** [2] - 6:25; 8:24
**duty** [1] - 6:23

### E

**early** [1] - 5:7
**easier** [3] - 4:2; 15:24; 22:4
**either** [3] - 5:13; 6:22; 8:17
**elective** [1] - 14:4
**emphasize** [1] - 11:23
**encourage** [4] - 6:1, 4; 22:7; 23:7
**encouraging** [1] - 8:16
**enlist** [1] - 10:14
**ensure** [1] - 8:22
**entertain** [5] - 7:10; 9:17; 17:17; 19:12; 20:16
**entire** [1] - 17:20
**entitled** [1] - 24:15
**especially** [1] - 8:16
**estimated** [1] - 5:10
**et** [3] - 8:2; 22:13
**event** [5] - 4:13; 8:25; 12:18; 22:18, 20
**evidence** [1] - 8:24
**examination** [1] - 4:23
**excuse** [2] - 10:7; 14:5
**excused** [4] - 6:25; 9:23; 10:13; 20:21
**exercise** [1] - 14:6
**exercising** [1] - 10:7
**exists** [2] - 10:8, 12
**expect** [2] - 4:17; 23:18
**expedite** [2] - 15:5
**expeditious** [1] - 13:21
**experience** [1] - 19:21
**expressed** [1] - 20:3
**extent** [6] - 6:1; 16:6; 22:5; 23:9, 12
**extraordinarily** [1] - 7:24
**extremely** [1] - 10:5

### F

**factor** [2] - 11:24; 12:2
**factored** [1] - 14:16
**Facts** [1] - 11:9
**fair** [9] - 7:13, 18; 11:18, 22, 24; 19:2; 20:7, 12; 23:13
**faith** [2] - 4:22; 6:4
**familiarity** [1] - 7:15

**far** [3] - 5:18; 10:24; 19:15
**fashion** [1] - 13:15
**fashioned** [1] - 19:2
**fast** [3] - 11:20, 23; 15:22
**favor** [1] - 10:21
**feasible** [1] - 17:15
**few** [1] - 23:11
**filed** [5] - 4:8; 9:8; 21:23; 22:13
**fill** [1] - 19:22
**filled** [1] - 13:20
**filling** [2] - 18:9; 19:20
**final** [1] - 22:12
**Finally** [1] - 8:25
**fine** [10] - 5:25; 6:13; 13:4; 14:8; 15:13; 17:8; 20:7, 13-14; 21:3
**finish** [1] - 7:11
**first** [6] - 6:14, 16; 8:18; 9:19; 11:16; 15:19
**five** [4] - 19:16; 20:8, 11
**flexibility** [2] - 12:21
**focus** [3] - 6:14; 7:12; 11:7
**focussing** [1] - 21:21
**follow** [3] - 7:20; 10:10; 22:22
**followed** [1] - 8:21
**following** [1] - 9:4
**follows** [2] - 9:2; 22:17
**foregoing** [1] - 24:14
**form** [1] - 11:11
**formally** [1] - 7:5
**fortunate** [1] - 7:24
**Fortunately** [1] - 7:14
**forward** [1] - 12:18
**four** [3] - 6:18; 10:4; 18:25
**frankly** [2] - 11:21; 13:21
**front** [1] - 21:19
**fully** [2] - 4:9; 22:19
**future** [1] - 8:6

### G

**garnered** [1] - 7:12
**Gatski** [5] - 8:14, 17; 16:1; 23:8
**GATSKI** [1] - 8:14
**given** [6] - 13:10, 20; 18:5; 19:7, 11
**Googling** [1] - 18:11
**government** [9] - 4:16, 22; 5:15; 6:9; 10:17, 19; 16:5, 7; 20:23
**government's** [1] - 23:16
**great** [1] - 12:22
**group** [2] - 6:24; 18:11
**groups** [1] - 18:20
**guaranteeing** [1] - 22:1

### H

**hand** [1] - 10:11
**handle** [1] - 6:24
**happy** [1] - 9:18
**hard** [1] - 5:14

hardship [7] - 6:21; 9:23; 10:6, 8, 12; 12:15; 14:3
hear [1] - 4:15
heard [1] - 9:22
hearing [12] - 4:11; 9:2, 5; 13:2; 21:2, 24; 22:17, 21-22; 24:2, 4
hearings [1] - 20:17
helped [2] - 15:4, 6
high [4] - 4:6; 7:15, 21; 8:7
hold [2] - 5:6; 9:4
home [1] - 19:22
honest [1] - 13:16
Honor [19] - 5:1, 10-11, 14, 24; 6:8; 9:21; 11:6, 18; 13:6, 19; 15:6; 16:11, 14; 17:4, 6; 19:13; 20:5, 20
Hopefully [1] - 22:25
hours [3] - 18:1, 5
hundreds [1] - 17:12
hurry [1] - 19:24

**I**

immediately [2] - 12:10; 13:2
inclined [1] - 6:15
indeed [4] - 10:8, 12; 18:15; 19:3
indicate [1] - 6:17
indicated [1] - 7:2
indicates [1] - 6:23
indications [1] - 7:13
individual [3] - 18:22; 22:6; 23:1
individuals [1] - 19:4
information [1] - 11:21
informing [1] - 10:1
instance [1] - 8:18
instead [1] - 4:11
instituting [1] - 8:20
institutional [2] - 7:16, 20
instructions [3] - 22:11
intend [2] - 7:19; 17:17
intent [1] - 7:18
interaction [1] - 19:9
invite [1] - 11:2
involvement [1] - 10:9
issue [10] - 6:14, 17; 12:12-15, 18-19; 20:20; 22:15
issued [2] - 21:18; 22:10
issues [9] - 4:13, 15; 6:3; 7:10, 23; 8:1, 12; 11:8, 10

**J**

Jenna [2] - 8:14; 16:1
jeopardizing [1] - 23:13
job [1] - 22:4
Joe [1] - 17:4
John [2] - 8:3; 16:2
joint [7] - 13:4; 14:15; 17:2, 10; 22:5; 23:1
jotting [1] - 13:18
Judge [4] - 4:19; 10:18; 21:5; 23:15
Juror [6] - 14:2, 6, 17, 25; 15:15; 16:17
juror [1] - 10:20; 13:13; 18:10; 19:19; 22:25
juror's [4] - 6:22; 10:7, 13; 18:10

jurors [30] - 6:15, 19; 7:17; 9:22; 10:1, 19; 11:15; 12:16; 13:9, 14; 14:23; 15:3, 9; 17:16, 21, 23-25; 18:4, 9, 14, 16, 20-21, 23; 19:7, 10; 23:5
jury [18] - 6:14, 20, 23; 7:4, 6-7; 8:24; 9:13, 15; 11:13; 14:21; 17:13, 18, 20; 19:9; 21:23; 22:12
Jury [5] - 6:20; 10:4, 11; 12:15

**L**

lack [1] - 19:3
large [1] - 17:22
last [2] - 7:2; 18:24
late [2] - 12:14
latter [1] - 6:24
leave [1] - 12:10
legitimate [1] - 14:5
leisurely [1] - 13:15
lengthy [1] - 15:7
light [2] - 23:21
likewise [1] - 8:14
line [1] - 4:4
list [1] - 20:15
logistical [2] - 4:13; 8:12
logistics [2] - 15:16; 16:17
look [1] - 4:12
looking [2] - 7:23; 12:18
luxury [2] - 20:11, 14

**M**

mailing [2] - 18:8; 19:4
main [1] - 22:16
maintain [2] - 19:13
marked [1] - 21:12
matter [2] - 16:13; 24:15
matters [2] - 5:9; 15:6
mean [3] - 14:1; 19:15; 21:16
means [1] - 9:7
media [8] - 7:13, 17; 8:2, 16, 20; 23:7, 9, 12
members [1] - 23:7
memorializes [1] - 22:15
mention [1] - 4:10
mentioned [2] - 11:1; 21:8
merely [1] - 23:4
mind [1] - 12:3
mindful [1] - 11:20
minutes [1] - 23:11
moment [1] - 5:19
months [4] - 19:16; 20:8, 10
morning [3] - 15:15; 18:21; 22:16
MORRIS [29] - 4:18, 25; 5:3; 6:11; 10:18, 25; 11:5, 9; 12:4, 10; 13:6, 13; 14:10; 15:3, 11, 20, 25; 16:21; 19:13, 17; 20:25; 21:5, 8, 16, 25; 23:15, 24; 24:6, 8
motion [9] - 4:8, 11; 9:1; 22:19; 24:2, 4
motions [6] - 9:2, 5; 21:9, 13, 16; 22:22
move [4] - 4:11; 7:3; 17:18; 21:9
moved [1] - 23:3
MR [21] - 5:10, 14, 24; 6:8; 9:21; 10:16, 23; 11:6, 18; 12:7;

13:1, 19; 16:11, 14-15; 17:4, 6; 20:5, 20; 21:4; 23:19
**MS** [29] - 4:18, 25; 5:3; 6:11; 10:18, 25; 11:5, 9; 12:4, 10; 13:6, 13; 14:10; 15:3, 11, 20, 25; 16:21; 19:13, 17; 20:25; 21:5, 8, 16, 25; 23:15, 24; 24:6, 8
**mystique** [2] - 18:8, 13

## N

**narrowed** [1] - 4:19
**necessary** [3] - 6:16; 9:15; 20:18
**need** [25] - 4:10, 15; 5:7, 21, 23; 6:5, 7, 23; 8:3, 7, 11; 11:24; 12:16, 22, 24; 13:7, 23-24; 14:1, 19; 15:15; 16:23; 22:6, 24; 24:9
**needed** [1] - 12:24
**needs** [1] - 4:12
**nevertheless** [1] - 4:12
**new** [1] - 22:24
**next** [2] - 4:1; 18:19
**nice** [1] - 24:7
**noon** [1] - 9:7
**Normally** [1] - 9:25
**normally** [1] - 13:19
**note** [2] - 4:10; 10:18
**nothing's** [1] - 19:8
**notice** [3] - 4:7; 11:1; 24:1
**number** [8] - 5:15; 7:15; 8:11, 21; 10:23; 12:15; 14:22; 18:23
**numbers** [2] - 15:21

## O

**object** [1] - 20:24
**objection** [4] - 9:21; 15:20; 16:15; 20:25
**objections** [8] - 7:10; 9:17, 20; 10:10; 15:19; 16:12; 17:18; 19:12
**obviously** [3] - 13:10; 18:3; 21:21
**occur** [1] - 14:18
**occurred** [1] - 14:16
**offered** [1] - 6:11
**office** [3] - 10:6, 13; 15:1
**Office** [11] - 6:20; 10:4, 11; 12:15; 14:2, 6, 18, 25; 15:15; 16:17
**office's** [1] - 15:16
**Official** [1] - 24:17
**often** [1] - 11:25
**once** [2] - 18:16; 20:1
**Once** [1] - 15:5
**one** [9] - 4:10; 8:5; 10:24; 14:20; 20:20; 21:5; 23:15
**One** [1] - 13:7
**open** [2] - 8:22; 19:8
**operations** [1] - 7:25
**opportunity** [2] - 17:25; 19:22
**opposed** [2] - 4:2; 13:9
**orally** [1] - 22:16
**order** [7] - 4:13; 9:8, 14; 21:18; 22:10, 15; 23:6
**orderly** [1] - 7:18
**Otherwise** [1] - 9:15
**outlined** [1] - 20:5
**overflow** [1] - 23:12

## P

**pace** [1] - 11:20
**panel** [1] - 7:4
**panic** [1] - 7:4
**part** [3] - 13:25; 20:13; 23:4
**parties** [5] - 4:16; 6:1, 4; 7:17; 9:23
**parties'** [3] - 8:23; 9:6; 23:13
**past** [3] - 10:5; 12:1; 13:13
**pending** [2] - 22:22
**people** [4] - 8:15; 18:11, 15; 19:3
**per** [1] - 14:20
**period** [1] - 6:21
**person** [1] - 16:9
**perspective** [2] - 11:20; 15:16
**phone** [9] - 4:3; 8:11; 15:21; 16:12, 16; 17:3, 7; 23:23
**pick** [2] - 4:3; 5:16
**picture** [1] - 18:4
**place** [5] - 7:16; 9:3; 13:1; 19:8, 10
**plan** [4] - 4:10; 17:19; 20:17
**plans** [2] - 14:4
**plus** [1] - 18:23
**podium** [1] - 11:2
**point** [1] - 5:5
**points** [2] - 8:1; 21:5
**pool** [3] - 17:13, 20; 21:23
**position** [1] - 22:2
**possible** [2] - 5:22; 7:19
**potential** [1] - 6:19
**practical** [1] - 6:2
**pre** [9] - 9:1, 4, 6; 11:8; 21:14, 16; 22:10, 17, 21
**pre-trial** [9] - 9:1, 4, 6; 11:8; 21:14, 16; 22:10, 17, 21
**precisely** [1] - 5:6
**prediction** [3] - 4:22; 5:4, 11
**prefer** [1] - 13:19
**prejudged** [2] - 12:17; 22:19
**prepaid** [2] - 14:4
**prepared** [1] - 4:13
**present** [2] - 4:23; 5:5
**presented** [1] - 8:24
**press** [2] - 7:14; 8:22
**previously** [1] - 5:10
**private** [1] - 13:1
**problem** [2] - 20:23; 21:1
**problems** [1] - 5:19
**procedure** [2] - 10:9; 18:3
**procedures** [5] - 7:12, 16, 20, 22; 8:21
**proceed** [1] - 18:22
**proceedings** [2] - 4:6; 24:15
**Proceedings** [1] - 24:11
**proceeds** [1] - 4:14
**process** [5] - 15:7; 18:22; 19:1; 20:1
**professional** [4] - 5:15, 18; 8:13; 10:5
**professionals** [1] - 23:8
**profile** [3] - 4:6; 7:15, 21
**project** [1] - 18:11
**proposals** [1] - 22:2
**proposed** [6] - 11:11; 21:22; 22:3, 11-12, 25

**protecting** [1] - 8:23
**provide** [7] - 17:23; 18:12; 19:7; 21:18; 23:21
**provided** [2] - 23:16, 19
**provides** [1] - 19:25
**providing** [4] - 13:9; 18:7, 15; 19:5
**proxy** [1] - 17:7
**public** [3] - 4:6; 7:17; 8:22
**publicity** [1] - 11:8
**purposes** [1] - 7:6
**put** [1] - 7:16
**putting** [1] - 4:23

## Q

**qualified** [3] - 12:16; 14:23; 18:23
**questionnaire** [8] - 11:12; 12:23; 17:24; 18:2; 19:20; 22:6, 25
**questionnaires** [33] - 10:20; 11:2-4, 15, 25; 12:1, 4; 13:5, 11, 13, 25; 14:20; 15:10, 18; 16:18, 20; 17:2, 11, 13, 16; 18:5, 8; 19:4, 7, 11-12, 17; 21:22; 23:5
**Questionnaires** [1] - 11:7
**questions** [23] - 8:9, 17; 9:18; 10:7; 11:12, 17; 12:9, 23; 13:8; 14:7; 15:5; 16:13, 17; 18:7, 12, 14; 19:6; 21:20; 22:4, 8, 12
**quick** [1] - 13:18
**quicker** [1] - 20:1

## R

**raise** [1] - 7:22
**rather** [1] - 13:17
**RDR** [2] - 24:14, 17
**RDR-CRR** [1] - 24:14
**reach** [3] - 6:2; 8:17; 23:7
**read** [1] - 22:19
**really** [6] - 12:19; 14:16; 17:11; 19:8, 25; 20:3
**reason** [3] - 11:12; 12:11, 17
**receipt** [2] - 17:12; 23:4
**receive** [2] - 13:14; 18:5
**received** [1] - 21:13
**receiving** [2] - 11:15; 19:4
**recent** [2] - 7:21; 8:21
**recess** [5] - 14:17, 24; 16:23; 21:8; 24:10
**reciprocal** [1] - 23:18
**recognize** [3] - 5:7; 15:2; 16:4
**Recognizing** [1] - 4:8
**record** [1] - 24:14
**records** [1] - 6:6
**Red** [1] - 22:11
**refer** [1] - 10:13
**regard** [2] - 10:18; 13:12
**regarding** [2] - 4:16; 8:1
**regards** [1] - 8:10
**remaining** [1] - 6:16
**remains** [1] - 12:19
**remove** [1] - 18:12
**removed** [1] - 19:6
**report** [4] - 6:8, 15-16, 23
**Reporter** [1] - 24:17
**request** [9] - 6:25; 10:13; 13:4; 14:15; 15:17; 16:5, 19; 17:2,

11

**requests** [3] - 10:15; 20:19; 23:14
**require** [5] - 13:24; 14:8; 20:13; 23:3
**requirements** [1] - 8:3
**requisite** [1] - 18:23
**reschedules** [1] - 6:22
**resolve** [1] - 5:23
**resolved** [1] - 4:1
**respect** [11] - 5:12, 25; 6:3; 8:9, 20; 10:6; 14:7; 16:4; 19:9; 22:17
**respective** [2] - 22:6; 23:1
**respond** [1] - 19:11
**response** [2] - 13:16; 19:25
**responses** [3] - 6:22; 14:25; 19:5
**responsibility** [1] - 14:2
**result** [1] - 6:21
**rights** [1] - 8:23
**room** [4] - 13:17; 16:5; 23:9, 12
**routinely** [1] - 11:25
**run** [1] - 7:18
**running** [1] - 7:24

## S

**safe** [1] - 4:20
**satisfied** [1] - 10:5
**schedule** [6] - 9:1, 3, 12; 13:20; 20:17; 21:12
**scheduled** [6] - 4:1; 9:2; 10:2; 18:24; 21:12
**scheduling** [1] - 21:17
**scope** [1] - 11:14
**Scott** [2] - 24:14, 17
**screens** [1] - 6:22
**scrutinize** [3] - 17:12; 18:19; 22:2
**scrutinizing** [3] - 4:6; 10:15; 14:7
**scrutiny** [3] - 14:11
**seat** [1] - 17:21
**second** [2] - 11:17; 13:24
**see** [3] - 5:19; 17:1; 20:3
**select** [1] - 7:4
**selection** [9] - 7:7; 9:13, 15; 11:13; 14:21; 17:19; 19:9; 20:1
**Senator** [1] - 20:20
**send** [3] - 13:8; 14:22; 20:9
**sent** [2] - 5:16; 13:22
**September** [14] - 7:1, 3; 9:2, 4, 7, 9, 13, 16; 17:19; 18:4; 21:17; 22:13
**serious** [1] - 16:19
**serve** [1] - 7:25
**service** [2] - 6:20; 10:8
**services** [1] - 6:23
**several** [1] - 6:11
**Shelly** [1] - 8:12
**short** [3] - 4:7; 14:24; 24:1
**sibling** [2] - 18:10; 19:19
**side** [1] - 5:13
**sides** [1] - 16:19
**significant** [4] - 5:13; 14:9, 22; 15:1
**sit** [1] - 13:1
**Snook** [7] - 8:13, 18; 15:25; 16:1, 9; 23:8

**solely** [1] - 8:23
**someone** [4] - 14:3, 17; 19:19
**soon** [5] - 5:21; 6:12; 12:25; 13:1; 23:21
**sorry** [1] - 4:7
**specific** [1] - 7:22
**specifically** [1] - 4:19
**spell** [1] - 23:6
**spoken** [1] - 10:19
**spouse** [2] - 18:10; 19:19
**staff** [1] - 7:24
**stand** [3] - 16:23; 23:20; 24:9
**stands** [1] - 24:10
**start** [1] - 7:6
**state** [1] - 8:5
**state-of-the-art** [1] - 8:5
**status** [1] - 20:17
**Stevens** [1] - 20:21
**still** [9] - 4:25; 5:11; 6:23; 7:1; 17:2; 19:13; 20:9, 12
**stipulate** [1] - 6:4
**stipulations** [2] - 6:2, 11
**strongly** [1] - 6:4
**submission** [1] - 22:5
**submissions** [7] - 9:6, 8, 24; 21:15; 22:7; 23:1
**substantial** [1] - 13:16
**suggest** [1] - 12:4
**suggesting** [1] - 15:9
**suggestions** [4] - 9:19; 16:13; 20:16, 19
**SULLIVAN** [1] - 16:15
**Sullivan** [3] - 16:15; 17:6
**summon** [1] - 6:15
**summoned** [4] - 10:2; 18:10, 14
**summoning** [1] - 6:14
**summons** [7] - 6:17, 25; 10:1; 12:5, 16, 20; 13:8
**summonses** [1] - 14:22
**supposed** [2] - 5:16; 20:21
**surgery** [1] - 14:4
**sympathetic** [1] - 17:10

## T

**talented** [1] - 7:24
**tech** [1] - 8:7
**technology** [4] - 8:1, 9
**telephone** [1] - 4:2
**themselves** [1] - 12:9
**Thereupon** [1] - 16:24
**thoughts** [5] - 12:23; 13:11; 14:16, 18
**three** [3] - 4:25; 18:1, 5
**Three** [1] - 5:2
**time-consuming** [2] - 15:7; 19:15
**timing** [1] - 4:16
**today** [6] - 6:17; 12:11; 20:15; 22:15; 23:17, 20
**together** [1] - 13:17
**totally** [1] - 19:14
**transcript** [1] - 24:14
**transfer** [4] - 4:9; 9:1; 12:17; 22:20
**trial** [27] - 4:14, 17; 5:8; 6:18; 7:5, 18; 8:22, 24; 9:1, 4, 6, 11, 16; 10:1; 11:8; 17:10, 14; 18:24; 20:12; 21:14, 16; 22:10, 17,

21; 23:14
**trip** [1] - 14:5
**true** [2] - 10:8; 23:8
**try** [6] - 11:19; 12:15; 14:24; 19:24; 22:3, 7
**trying** [1] - 12:2
**two** [7] - 7:7; 10:20; 17:25; 18:5; 21:5, 24
**type** [1] - 4:5
**types** [1] - 11:9

## U

**Understood** [1] - 5:24
**undue** [1] - 6:21
**unless** [2] - 10:10; 20:17
**up** [2] - 4:4; 5:16
**usage** [1] - 8:10

## V

**vacation** [1] - 14:4
**venue** [3] - 4:9; 12:12
**view** [1] - 9:6
**visit** [1] - 23:10
**Voir** [1] - 23:2
**voir** [6] - 6:25; 7:2; 14:12; 18:22; 21:19; 22:12
**Votteler** [1] - 8:18

## W

**wait** [2] - 12:12; 14:14
**waive** [2] - 20:22; 21:2
**Wallace** [2] - 24:14, 17
**weed** [1] - 19:23
**week** [4] - 5:10; 12:20; 14:21
**weeks** [5] - 5:1; 6:18; 10:4; 18:25
**welcome** [1] - 9:19
**widely** [1] - 7:14
**wish** [2] - 19:16; 20:8
**witnesses** [1] - 4:17
**words** [2] - 6:5; 14:3
**wrinkle** [1] - 22:24
**write** [1] - 19:25

## Y

**yesterday** [2] - 12:24; 16:5