IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal No. 08-CR-231 (EGS) |
| | ) | |
| THEODORE F. STEVENS, | ) | COUNTS ONE:        18 U.S.C. § 1001 |
| | ) | THROUGH SEVEN:  (False Statements) |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

UNITED STATES' OPPOSITION
TO DEFENDANT'S MOTION FOR TRANSFER OF VENUE

Introduction

Defendant Theodore F. Stevens seeks to have this proceeding transferred to the District of Alaska pursuant to Federal Rule of Criminal Procedure 21(b). In support of his motion, Stevens filed a 16-page memorandum. Curiously absent from Stevens' memorandum, however, is any reference whatsoever to this Court's recent published decision in *United States v. Quinn*, 401 F. Supp.2d 80 (D.D.C. 2005). In *Quinn,* this Court recognized that the "modern" approach includes "a general presumption that a criminal prosecution should be retained in the original district," and that Rule 21(b) should be "interpreted . . . as favoring the government's choice of forum." *Id.* at 85. Applying those factors to a case in which the defendants and most of the witnesses resided in a different jurisdiction, *Quinn* denied the Rule 21(b) venue transfer request as unwarranted. Stevens provides no compelling reason for this Court to deviate from that presumption.

If this case is transferred to the District of Alaska, the following must travel to Alaska for trial: the Judge and his staff, the defendant, defense counsel, much of the evidence, the witnesses from Washington, D.C., and the witnesses from other jurisdictions. If the case remains in the District of Columbia, where the crimes took place and the indictment was properly returned, the government's witnesses from Alaska and other states must travel, at no expense to themselves. Accordingly, Stevens' motion should be denied.

Background

On July 29, 2008, defendant Stevens was indicted by a grand jury in the District of Columbia. The indictment charges Stevens with knowingly and willfully engaging in a seven-year scheme to conceal his personal receipt of things of value, and with causing the submission of false financial disclosure forms covering calendar years 2001 through 2006. The false financial disclosure forms were created, reviewed, signed and filed in the District of Columbia, and a substantial portion of Stevens' scheme to conceal occurred in or around the District of Columbia.

Argument

Unlike the mandatory requirements of Rule 21(a), Rule 21(b) endows this Court with the discretionary authority to transfer a criminal trial "to another district for the convenience of the parties and witnesses and in the interest of justice." Fed. R. Crim. P. 21(b); *see also United States v. Heaps*, 39 F.3d 479, 482 (4th Cir. 1994). The Supreme Court has directed lower courts to consider the following ten factors in determining whether a transfer should be granted:

(1) the location of the defendant;
(2) the location of possible witnesses;
(3) the location of the events at issue;
(4) the location of documents and records;
(5) the disruption of defendant's business;
(6) the expense to the parties;
(7) the location of counsel;
(8) the relative accessibility of place of trial;
(9) the docket condition of each district; and
(10) any other special elements which might affect the transfer.

*See Platt v. Minnesota Mining & Manufacturing Co.*, 376 U.S. 240, 243-44 (1964). When applied here, the *Platt* factors weigh in favor of keeping this trial in the District of Columbia.

      a.      This Court's 2005 *Quinn* Decision

*Quinn* involved an indictment of two Kentucky residents[1] who worked for a Kentucky-based business that exported truck parts internationally. 401 F. Supp.2d at 83. The defendants were charged with multiple crimes relating to a scheme to keep from obtaining required export licenses from a federal agency in the District of Columbia. *Id*. Although venue for the charged crimes was proper in the District of Columbia, the specific conduct that gave rise to the criminal charges related exclusively to shipments from Kentucky to various international locations. *Id*. at 85. There appears to have been no allegation that any of the shipments were sent from, delivered to, or transferred through the District of Columbia. 401 F. Supp.2d at 87.

After indictment, the defendants requested that this Court transfer venue to the Eastern District of Kentucky, predominantly because the defendants resided in Kentucky and because "no 'acts' related to these charges occurred in Washington, D.C." *Id*. In denying the defendants' request, this Court examined the *Platt* factors as well as the broad body of recent Rule 21(b) jurisprudence, and concluded that there should be "a general presumption that a criminal prosecution should be retained in the original district." *Id*. at 85. Specifically, under the Court's view, "[s]uch a view of Rule 21(b) is consistent with the trend in recent years away from granting transfers to mitigate the financial, emotional, or practical burdens of trial in a distant locale." *Id*. *Quinn*'s analysis of cases concluded that "transfer under Rule 21(b), although not unheard of, has been rare in recent years" – a phenomenon which *Quinn* partly attributed to "the massive expansion of technology and the relative decline in [travel] costs . . . ." *Id*. at 86.

Viewed in the light of *Quinn*, the *Platt* factors, and other recent judicial opinions, the facts in this case unquestionably weigh in favor of keeping the case in the District of Columbia.

      b.      Defendant is located here

Since 1968, defendant Stevens has represented the State of Alaska in the United States

---

[1] A third defendant – a citizen of Iran – was also indicted, but apparently *in absentia*. 401 F. Supp.2d at 84.

Senate. Although Stevens maintains a residence in Alaska, there can be no legitimate dispute that for all practical purposes, defendant Stevens lives and works in the District of Columbia. His spouse is an attorney at a law firm in the District of Columbia, and the family owns a personal residence in the District of Columbia. If a trial takes place in the District of Columbia, he will be able to maintain close contact with his Senate office, and continue to live in his own home. The location of defendant's home and work favor trial in this district.

Although defendant Stevens claims that many courts have accorded significant weight to the location and residence of the defendant, *see* Stevens Mem. No. 1 at 3-4, both this Court and the United States Court of Appeals for the District of Columbia have concluded that it is one of the more "minor" *Platt* factors. *See Quinn*, 401 F. Supp.2d at 86 (location of defendant in Kentucky is only "minor consideration"); *Jones v. Gasch*, 404 F.2d 1231, 1240 (D.C. Cir. 1967) (in affirming district court's denial of Rule 21(b) transfer motion, court noted that residency is only "a factor to be considered," and is "not the controlling factor" in the analysis).

  c.  Defense Counsel is Here

Stevens has selected defense counsel from a law firm whose only office is in Washington, D.C. If Stevens' venue motion were to be granted, Stevens' Washington, D.C. counsel will be required to travel to Alaska for all pre-trial hearings and for the duration of trial. If the case remains in the District of Columbia, his attorneys can continue to work out of their own offices.

  d.  The Location of Witnesses is Not Dispositive

In *Quinn*, this Court denied the defendants' request to transfer the case to the Eastern District of Kentucky, despite the Court's conclusion that "more potential witnesses reside in Kentucky than reside near Washington, D.C." 401 F. Supp.2d at 87. Of particular relevance in *Quinn* was the fact that "there also are numerous witnesses who live in neither location . . . and they will be required to travel to either Kentucky or Washington for trial." A similar conclusion is required here. The government agrees with Stevens that the majority of the government's witnesses reside in Alaska. However, there are multiple prospective government witnesses who live in the District of Columbia

area, as well as multiple prospective government witnesses who live in other parts of the United States.

Moreover, under the applicable case law, the mere location of witnesses is not dispositive. Before a defendant is entitled to a discretionary transfer, he must demonstrate a substantial balance of inconvenience arising from the distant location of his witnesses, that is, he must show either that they might not appear at all, *see, e.g., United States v. Haley,* 504 F. Supp. 1124, 1127 (E.D. Pa. 1981), or that they would be "so greatly inconvenienced by a trial here that this matter should be transferred" in the interests of fairness. *United States v. Baltimore & Ohio Railroad,* 538 F.Supp. 200, 205 (D.D.C. 1982) (defendants' argument that the great majority of their witnesses resided in N.D. Ohio or closer to Cleveland than to Washington, D.C. insufficient to warrant transfer).

With respect to Stevens' prospective witnesses, the government agrees with Stevens' acknowledgment that, because a Rule 21(b) motion places the burden on the defendant, "some courts have required more than just a statement of numbers and general locations of witnesses when addressing witness convenience" regarding the defendant's proposed witnesses. *See* Stevens Mem. No. 1. at 7. Although Stevens does not cite to it, one such decision is *United States v. The Spy Factory, Inc.*, 951 F. Supp. 450 (S.D.N.Y. 1997), which this Court cited approvingly in *Quinn*. *See Quinn*, 401 F. Supp.2d at 85-86 ("[t]he 1997 *Spy Factory* ruling . . . is reflective of the modern approach to Rule 21(b) motions"). In *Spy Factory*, then-District Judge Sonia Sotomayor concluded that the "defendants here have not met their burden of proving" this *Platt* factor. 951 F. Supp. at 456. *Spy Factory* held that "a naked allegation that witnesses will be inconvenienced by trial in a distant forum will not suffice for transfer," and noted that a defendant seeking transfer on this basis "must offer specific examples of witnesses' testimony and their inability to testify because of the location of the trial." 951 F. Supp.2d at 456-57 (quoting *Haley*, 504 F. Supp. 1124, 1125 (E.D.Pa. 1981)).

Stevens fails to make even a threshold showing of either of the criteria recognized in *Spy Factory*. First, although Stevens makes the unsupported claim that he will call multiple witnesses

from the District of Alaska, Stevens fails to proffer even a single name of any individual who meets that criteria. *See* Stevens Mem. No. 1 at 6-8. Second, Stevens' memorandum fails to allege that any prospective defense witness will be *unable* to testify if the case is held in the District of Columbia instead of the District of Alaska. The requirements imposed by *Spy Factory* make sense, and Stevens' complete failure to satisfy them, in and of itself, precludes Stevens from carrying his burden on this *Platt* factor.

      e.      The Possible Disruption of Defendant Stevens' Business.

Concerning this factor, Stevens asserts that his business will be disrupted if he is forced to stand trial on September 24, 2008, in the District of Columbia. Here, Stevens first demanded to have a trial prior to the November election (and thus during his campaign period), and then after that demand was met, now uses the fact that the trial will be prior to the November election (and thus during his campaign period) as a primary basis in support of his request for a discretionary venue transfer under Rule 21(b). *See* Stevens Mem. No. 1 at 12-13. The transcript from the August 7, 2008 arraignment hearing demonstrates that the Court went to great lengths to restructure the Court's calendar to accommodate Stevens' request that his trial be completed prior to the November 2008 election. Any further accommodation to defendant Stevens in this regard is not warranted.[2]

Finally, as described *infra*, Stevens' ongoing reelection campaign is, taken as a whole, a substantial factor weighing *against* transfer to the District of Alaska.

      f.      A Substantial Number of Events Occurred Here.

Simply put, this is a case about a scheme to conceal, largely through the submission of false financial disclosure forms to the United States Senate. Defendant Stevens' yearly financial disclosure forms were created, reviewed, signed, submitted, and filed in the District of Columbia. The District of Columbia was the site of the harm inflicted by defendant's crimes, and this jurisdiction has a strong interest in adjudicating the charges that were appropriately brought here.

---

[2] Although Stevens' counsel claims that the indictment date was "surprisingly" selected, *see* Stevens Mem. No. 1 at 12, Stevens' counsel was in fact well aware of the progress and factors that played a role in the timing of the Indictment.

Stevens asserts that a discretionary Rule 21(b) venue transfer is nonetheless required because the "vast majority" of the conduct at issue took place exclusively within the District of Alaska. *See* Stevens Mem. No. 1 at 9. On this point, Stevens is both legally and factually incorrect.

In *Quinn*, the defendants "ma[de] much of the fact that no 'acts' related to these charges occurred in Washington, D.C." *Id*. This Court rejected that claim as a persuasive *Platt* factor, noting that certain acts *had* in fact occurred in Washington, D.C.: notably, the failure to obtain the export license that served as the basis for the crime charged in the indictment. *Id*. *Quinn* further recognized that this *Platt* factor does not require the Court to engage in a column-by-column tally of where every relevant act occurred; rather, the factor is more narrowly focused "to contemplate a case where jurors might benefit from a visit to a crime scene or might require some understanding of local geography." *Id.* [3]

From a factual standpoint, the most critical acts taken in this case – the yearly financial disclosure forms filed by defendant Stevens, which the Indictment alleges to have been part and parcel of a scheme to conceal Stevens' receipt of more than $250,000 worth of things of value – were taken in the District of Columbia. Because these are, in fact, the crimes charged, they should be entitled great weight under Rule 21(b). Furthermore, defendant Stevens is flatly incorrect in asserting that "all of the alleged underlying conduct . . . took place in Alaska." Stevens Mem. No. 1 at 9. In fact, as defendant Stevens and his counsel are assumedly aware, numerous acts occurred

---

[3] In his Memorandum, defendant Stevens suggested that the location of the Girdwood Residence itself supported transfer because he might request that the jury have an opportunity to view it. Stevens Mem. No. 1 at 4-5. There is no need for a jury inspection in this case. The Girdwood Residence is not the "scene of the crimes", but is rather merely the subject of some, but not all, of the defendant's false statements. Furthermore, Stevens is incorrect that the precise value of the work performed (*see* Stevens Mem. No. 1 at 5) will be a predominant issue at trial. The issue for the jury will not be whether Stevens received precisely $250,000 in benefits; rather, the issue will be whether Stevens knew he received more than $260 in benefits from a source that he did not repay.

Moreover, we note that Stevens has been provided with more than 1,000 high resolution digital photos of the inside and outside of the Girdwood Residence, all of which were taken on July 30, 2007, as well as multiple spherical high-resolution photographic reproductions of the same location. Should this Court deem any physical features of the Girdwood Residence to be independently relevant to the issues at trial, the massive amount of photographic rendering of it by the government, as well as any similar materials prepared by the defendant, should suffice.

within the District of Columbia in connection with the conduct charged in the Indictment. For instance:

- The 1999 Land Rover transaction was conducted partly in the District of Columbia, involved correspondence and financial instruments sent from the District of Columbia, and ultimately involved the shipment of the 1964 ½ Mustang from the District of Columbia.

- Multiple instances of correspondence concerning the Girdwood Residence occurred in the District of Columbia over a six-year period, including transmission of architectural drawings to the District of Columbia, telephone calls to and from the District of Columbia, emails sent to and from a computer server located in the District of Columbia, and handwritten personal correspondence sent from the District of Columbia.

- Multiple solicitations for official acts made to defendant Stevens, which involved written correspondence sent to addresses and computer servers located in the District of Columbia, and which requested acts to be taken in the District of Columbia.

    g.    <u>The Evidence is Here</u>

As this Court noted in *Quinn*, "[i]n light of the availability of electronic storage and transfer of the documents relevant to this matter, this factor is of no significance to the analysis." 401 F. Supp.2d at 87. The same conclusion is required here. Nearly all of the government's evidence will be rendered in an electronic format. With respect to hard-copy originals, located in the District of Columbia are approximately 42 boxes of materials that Stevens produced to the government, in hard-copy format, prior to his Indictment. Because the heart of this case involves the submission of false documents to the Senate, and the case was investigated and the indictment properly returned here, the key documents are also located here. This factor does not weigh in favor of transfer.

    h.    <u>Expense to the Parties</u>

We agree with defendant Stevens that this factor is "neutral at best." Stevens Mem. No. 1

at 13.

      i.      Relative Accessibility

Washington, D.C. is a transportation hub with three major airports, and is easily accessible from almost any point in the country, including Alaska. We agree with defendant Stevens that this factor is neutral.

      j.      Docket Conditions in Each District

Although we agree with defendant Stevens' factual statements concerning the docket conditions in each District, we submit that this factor in fact weighs against transfer. As Stevens properly recognized, should a transfer be ordered, it is highly likely that this Court – or another United States District Judge – would be required to travel to the District of Alaska to preside over Stevens' trial. All three active United States District Judges for the District for Alaska were nominated to, and confirmed by, the United States Senate during defendant Stevens' tenure as a Senator from Alaska. Although concededly speculative, it is entirely possible that a transfer to the District of Alaska could result in a recusal of the federal judges resident in the District of Alaska – thus resulting in a judge and staff relocating temporarily to Alaska to try the case.[4]

      k.      Special Factors Relative to Transfer

There is one "special factor" that is relevant to defendant Stevens' request to transfer venue to the District of Alaska: Stevens' current status as a candidate for the United States Senate election being held in Alaska this fall. Although Stevens references this factor as a reason *for* transfer, it is in fact a substantial factor weighing heavily *against* transfer.

As Stevens acknowledges, the primary and general elections for Stevens' United States Senate seat will occur this fall. Stevens has multiple challengers in his party's primary election on August 26, and will likely be one of two candidates in the November 4, 2008, general election.

---

[4] During the August 7, 2008, scheduling conference, the Court noted its recent experience with, and procedures for, high-profile criminal cases that garner significant national media attention. It may thus very well be that the District of Alaska is not as well equipped to handle the related issues as this Court is.

Stevens has already begun campaigning, and the proffered reason for transfer is to permit Stevens to be able to campaign in advance of, as well as *during*, his criminal trial.

In the ten days following his arraignment, Stevens has participated in multiple campaign rallies in which Stevens has vocally proclaimed his innocence of the crimes charged against him. These rallies, and thus Stevens' claims, have been widely reported in the Alaska media. For instance, in connection with at least one recent campaign trip, Stevens engaged in a specific discussion with a Ketchikan, Alaska, newspaper reporter about the charges he faces in the Indictment. According to an August 4, 2008, article in the *Ketchikan Daily News*, Stevens told a reporter:

> This is an indictment for failure to disclose gifts that are controversial in terms of whether they were or were not gifts. It's not bribery; it's not some corruption; it's not some extreme felony. . . . As a matter of fact, the verdict is the general election.

Andrew Damstedt, *Stevens: 'Verdict is the General Election'*, Ketchikan Daily News, August 4, 2008, at A1 (annexed hereto as Exhibit A). Given Stevens' stated reason for requesting a venue transfer – to campaign on nights and weekends – it is fair to assume that Stevens' campaign activities will continue, if not increase dramatically, as the general election approaches. Furthermore, it is fair to assume that Stevens' campaign activities will include, among other things, speeches, debates, and a significant number of campaign events. Finally, it is fair to assume that Stevens will continue to proclaim his innocence in public fora and will continue to offer explanations and characterizations of the factual and legal issues in the case.

Although it might very well be that the significant amount of Stevens' pretrial campaign activities (as well as those of his opponents) could potentially taint a jury pool in Alaska, there can be no question that his proposal to campaign *during* the trial poses severe problems. We submit that a trial jury in the District of Columbia, with normal instructions by the Court, would not have to be sequestered and could continue to participate meaningfully in the fall 2008 election process. Given the obvious media attention in Alaska that will be afforded to its sitting Senator campaigning while on trial, as well as the ostensible television, newspaper, and radio advertisements that will be run by

both general election candidates, a trial jury in the District of Alaska would effectively have to be sequestered, and precluded from having any access to television, radio, or newspapers during the course of the trial. The necessary effect of this would be to deprive the members of the jury not only access to their families and their homes and their normal activities, but likely to their ability to participate in the electoral process in advance of the November 2008 general election.

### Conclusion

This case should be tried in the District of Columbia, where the crimes were committed, where the indictment was properly returned, and where all the parties and their counsel are located. A proposed Order is attached below.

                                          Respectfully submitted,

                                          WILLIAM M. WELCH II
                                          Chief, Public Integrity Section

                                            /s/ Nicholas A. Marsh
                                          BRENDA K. MORRIS
                                          Principal Deputy Chief

                                          NICHOLAS A. MARSH
                                          EDWARD P. SULLIVAN
                                          Trial Attorneys

                                          JOSEPH W. BOTTINI
                                          JAMES A. GOEKE
                                          Assistant United States Attorneys
                                              for the District of Alaska

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal No. 08-CR-231 (EGS) |
| | ) | |
| THEODORE F. STEVENS, | ) | COUNTS ONE:    18 U.S.C. § 1001 |
| | ) | THROUGH SEVEN:  (False Statements) |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

[PROPOSED] ORDER DENYING DEFENDANT'S
MOTION TO TRANSFER VENUE

Having considered Defendant Theodore F. Stevens' Motion to Transfer Venue to the District of Alaska, I hereby order that the Motion is DENIED.

_____
The Honorable Emmet G. Sullivan
United States District Judge

Dated: Washington, D.C.
            _____, 2008

CERTIFICATE OF SERVICE

      I hereby certify that on August 11, 2008, a copy of the United States' Opposition for Defendant's Motion for Transfer of Venue was served electronically, via the District Court's ECF system, on defense counsel as set forth below:

      Robert Cary, Esq.  
      Williams & Connolly LLP  
      725 Twelfth St. NW  
      Washington, D.C.  20005

                                         /s/ Nicholas A. Marsh  
                                          Nicholas A. Marsh



Answer, Page 2



# KETCHIKAN DAILY NEWS

69°/52°

| 75 CENTS | MONDAY, AUG. 4, 2008 | KETCHIKAN, ALASKA | VOL. 80 NO. 182 (USPS 293-940) | 14 PAGES |

# Stevens: 'Verdict is the general election'

Senator speaks out on upcoming trial for first time since indictments as he begins home-state swing



**By ANDREW DAMSTEDT**
*Daily News Staff Writer*

On his first visit to Alaska since his federal indictment, Sen. Ted Stevens said he expects to prove his innocence on seven felony counts of not disclosing a quarter of a million dollars worth of gifts before voters go to the ballot box in November.

"I asked the judge for a speedy trial and he has granted that," Stevens said. "This gives us ample time to get this trial over before the general election and that means my innocence will be confirmed before Alaskans go to the ballot box."

Stevens pleaded innocent Thursday to the charges filed by the U.S. Justice Department in Washington, D.C. He was in Ketchikan Saturday on a planned campaign stop before the primary election on Aug. 26.

"I did not expect this indictment," Stevens said. "This is an indictment for failure to disclose gifts that are controversial in terms of whether they were or were not gifts. It's not bribery; it's not some corruption; it's not some extreme felony."

Stevens said the past week had reassured him about the United States justice system. A federal judge has set his trial Sept. 24, with an expected timeframe of up to four weeks.

"A person that's innocent wants a speedy trial," Stevens said. "We wanted people to know we want it as soon as possible."

Stevens also asked that the trial be held in Alaska, and a judge is expected to rule on that matter in a couple of weeks. Stevens said 40 to 60 witnesses who live in Alaska will be called to testify at the trial and it would be inconvenient to have them travel to Washington, D.C.

The charges come from an ongoing federal investigation, during which FBI agents raided Stevens' Girdwood home last year. The charges accuse Stevens of accepting $250,000 of work on that home from VECO Corp., but failing to list them on financial disclosure records.

Stevens said he expects to stay in the Senate race after the primary and through the general election, but "that depends on the verdict, doesn't it? As a matter of fact, the verdict is the general election."

He did not respond as to whether he thought his indictment was a political move, but said it was an "unheard of situation," to have charges filed so close to a primary election.

"This investigation, this charge is for failure to disclose gifts and it's not some multimillion dollar scandal of bribery charge or anything else," he said. "It's a failure to disclose gifts and we're going to see that through."

He said he has not heard a critical remark from his Senator colleagues, at least "not to my face." Some Republican senators running for re-election have returned or redirected contributions from Stevens' political action committee.

"That's a knee-jerk reaction," Stevens said, calling the money funding that he only helped raise by attending fundraisers. "If they want to give back the money that's their problem, but not mine." He noted several senators have kept the money his committee donated.

Stevens also dismissed remarks made by a spokesman for Republican presidential candidate John McCain, calling Stevens' indictment "a sad reminder that the next president will have his work cut out for him in rebuilding public trust."

Stevens said McCain's staff has "hated" him for a long time.

"They don't like Alaskans or Alaska or me," he said. "They don't like the Arctic National Wildlife Refuge. They don't like anything about us, so just forget about them. I can get along with John all right. He did vote for ANWR once. They forget that."

Stevens said he continued to support McCain for president.

"Who do you want to be sitting there when you have to decide to attack Iran? Who do you want to be sitting there when you have to decided what to

See 'Stevens in Ketchikan,' page 2

**Sen. Ted Stevens, R-Alaska, center, talks with locals at Ketchikan's Blueberry Festival Saturday. Here, City of Ketchikan Mayor Bob Weinstein offers a handshake and greeting.**
*Staff photo by Tom Miller*

# 'Twas a very Blueberry Saturday

Sunshine greeted with glee by all (except some contestants)

# Man, 41, falls from Grant St.