## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| _____ ) | | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Crim. No. 08-231 (EGS) |
| | ) | |
| THEODORE F. STEVENS, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ ) | | |

## REPLY IN SUPPORT OF MOTION TO DISMISS THE INDICTMENT AS UNCONSTITUTIONALLY VAGUE
## (SENATOR STEVENS'S PRE-TRIAL MOTION NO. 6)

Brendan V. Sullivan, Jr. (Bar No. 12757)
Robert M. Cary (Bar No. 431815)
Alex G. Romain (Bar No. 468508)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005
(202) 434-5000
(202) 434-5029 (facsimile)

*Attorneys for Defendant Theodore F. Stevens*

September 2, 2008

The government contends that it has provided Senator Stevens with an "exceptionally detailed" indictment and that "[e]ven a cursory review" reveals its sufficiency. Opp. at 1. In fact, <u>only</u> a cursory review of the indictment would permit such a conclusion. A close reading demonstrates that it fails to provide Senator Stevens with adequate notice of the charges against him.

The government rests its defense of the Indictment on three grounds: (1) its insistence that the indictment is highly detailed; (2) its citation to *United States v. Blackley*, 167 F.3d 543 (D.C. Cir. 1999); and (3) its claim (in some tension with point 1) that an indictment need not provide the fundamental details this one lacks. Because each of these arguments fails, the indictment should be dismissed as impermissibly vague.

1.     <u>The indictment is vague on its face</u>. Count I of the indictment describes a non-exhaustive[1] collection of renovations to Senator Stevens's Alaska home, and a single (non-exclusive[2]) automobile exchange. These allegedly were "things of value," which Senator Stevens allegedly concealed, by means of a "scheme," on his annual Financial Disclosure Forms. Nowhere does the indictment specify which of these things of value was required to be disclosed on any particular Financial Disclosure Form. It does not specify the particular "false statements and omissions" for which the grand jury indicted Senator Stevens, or why they were false. *See* Indictment ¶ 46.

---

[1] The indictment suggests that there may be other renovations not specifically described therein. *See, e.g.,* Indictment ¶ 15 (things of value "included, among other things"); ¶ 24 (costs "included, but were not limited to"); ¶ 26 ("included, among other projects"); ¶¶ 28-29 ("included, without limitation").

[2] The indictment alleges that there were "automobile exchanges," Indictment ¶ 15, but specifically describes only one, *id.* ¶ 18.

Given this uncertainty, it is impossible to know whether the petit jury will consider the same legal or factual theory as the grand jury; and the indictment leaves the government free to shift the charges to fit its proof at trial, when the Fifth and Sixth Amendments require the opposite. *See* cases cited at Mem. 1-2. Equally fundamentally, Senator Stevens has not received sufficient notice of the charges he must face, in violation of the Sixth Amendment. *See id.*

Counts II-VII are similarly problematic. Each count asserts false statements on a particular year's Financial Disclosure Form stemming from the Senator's alleged nondisclosure of things of value. Yet none of Counts II-VII states which things of value were required to be disclosed, and were not disclosed, in that year. Instead, each of these counts simply incorporates by reference the vague and conclusory background allegations in Count I. Those background allegations, in turn, set forth a non-exclusive laundry list of items allegedly received over a seven-year period. They conclude that these items in the aggregate conferred more than $250,000 in benefits but do not reveal the value of any particular year's "gifts" or "liabilities." *See* Indictment ¶ 15. By failing to allege these material facts with specificity, the indictment leaves Senator Stevens with the task of trying to decipher the charges by supposition.[3] Citizens charged with criminal conduct are constitutionally owed more.

The government's defense of Count IV proves the point. Confronted with the indictment's undeniable failure to allege any specific gifts or liabilities from VECO or Bill Allen in 2003, the government contends in a footnote that the indictment is referring to certain

---

[3] The government has compounded this problem by dumping more than 100,000 pages of documents and 400 hours of audio and video surveillance on Senator Stevens. The government's failure to specifically allege the charges against Senator Stevens requires him to evaluate all of this evidence for *any* potential claim the government *could* bring. (In fact, the vast majority of this material has nothing to do with Senator Stevens.)

unspecified things of value received <u>before</u> 2003, either on the theory that they were "continuing liabilities" or new "gifts" "if an earlier debt had somehow been forgiven in 2003." Opp. 4 n.2. Even if this theory made sense as a legal matter (it does not), it would not diminish the vagueness of the indictment, which makes no effort to connect any particular VECO gift or liability to the year 2003.

2.      *Blackley* supports Senator Stevens's motion.  Substituting proclamation for legal analysis, the government asserts that Senator Stevens's motion is "squarely rejected" by *Blackley*, Opp. at 7.  While the indictment in *Blackley* itself was found sufficient, every indictment must be judged on its own merits.  Comparing the indictment in *Blackley* to this one shows how unhelpful that case is to the government's position.  *See* Indictment, *United States v. Blackley* (Attached as Ex. 1) ("*Blackley* Indictment").

The *Blackley* Indictment charged the defendant with failing to report certain receipts on a government financial disclosure form.  In stark contrast to this indictment, it contained a detailed chart showing the exact date of each of the payments, the person(s) from whom each payment was received, and the person to whom it was given.  Ex. 1 ¶ 15.  The *Blackley* Indictment further set forth the precise dollar amount that the defendant allegedly received and failed to report—$22,025.  *Id*.

This is exactly the detail that Senator Stevens's indictment lacks.  Count I describes several things allegedly received by Senator Stevens, without any specific detail regarding their value, precise dates of receipt, or any other specific information similar to that provided to Blackley.  Counts II-VII provide an even poorer point of comparison for the government, as each of them simply alleges that unspecified items of value were received from

one of several parties on unspecified dates.  By comparison, the indictment in *Blackley* is a paragon of specificity.

> 3.     Vagueness is not the toothless requirement the government describes.  The government finally contends that it is not required to provide Senator Stevens with the detail he seeks.  Like *Blackley*, the cases cited for this proposition do not support it.  The government quotes *United States v. Brown*, No. 07-75 (CKK), 2007 WL 2007513 (D.D.C. July 9, 2007), to the effect that a § 1001 count should "set[] forth the acts of falsification and concealment; the nature of the scheme by which the material facts were falsified; and the material facts."  *Id.* at *14 (emphasis added (quotation marks omitted).[4]  This indictment fails under that standard.  It alleges that Senator Stevens improperly failed to disclose things of value, but it does not specifically identify those items—the "material facts" at issue.

> Nor is *United States v. Hubbell*, 177 F.3d 11 (D.C. Cir. 1999), helpful to the government.  There, the court held that when the background section of the indictment details the specific acts of falsity, the charging paragraphs need not repeat the allegations with similar detail.  *Hubbell*, 177 F.3d at 13 ("That the charging language itself did not allege specific acts of concealment is of no moment—the purpose of incorporation is to supply those specifics." (internal quotation marks omitted)).  Here, the indictment's background paragraphs do not do the job, as explained above.

> In short, none of the government's cited cases undercuts the command that an indictment must "sufficiently apprise[] the defendant of what he must be prepared to meet."

---

[4] *United States v. Anderson*, 441 F. Supp. 2d 15, 19 (D.D.C. 2006), also cited in the government's opposition, addressed a request for a bill of particulars, and did *not* address a claim that the indictment was unconstitutionally vague.

*Russell v. United States*, 369 U.S. 749, 763 (1962) (quotation marks omitted).  The indictment in this case is deficient and should be dismissed.


Dated:  September 2, 2008

Respectfully submitted,

WILLIAMS & CONNOLLY LLP


By:     /s/  Robert M. Cary
Brendan V. Sullivan, Jr. (Bar No. 12757)
Robert M. Cary (Bar No. 431815)
Alex G. Romain (Bar No.  468508)
725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000
(202) 434-5029 (facsimile)

*Attorneys for Defendant Theodore F. Stevens*

# Exhibit 1

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

## Holding a Criminal Term
## Grand Jury 97-1, Sworn on January 31, 1997

97-0166

|  |  |
|---|---|
| UNITED STATES OF AMERICA ) | Criminal No. _____ |
| ) | |
| -v- ) | Violations: |
| ) | |
| RONALD HENDERSON BLACKLEY, ) | 18 U.S.C. § 1001 (False |
| Defendant. ) | Statements) |
| ) | |
| ) | |

LAMBERTH, J.

B

### INDICTMENT

**FILED IN OPEN COURT**

APR 2 2 1997

CLERK, U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

THE GRAND JURY CHARGES:

### Background

At all times relevant to this Indictment:

1.     The United States Department of Agriculture ("USDA") was a department of the United States Government.  The duties of the USDA were, among other things, to improve and promote agricultural development and production in the United States.  The Secretary of Agriculture was in charge of USDA.

2.     The USDA had various programs, such as the Price Support and Production Adjustment Program, the Conservation Reserve Program and the Rice Storage Loan Program, through which farmers could apply for monetary subsidies.

3.     Commencing in or about 1983, defendant RONALD HENDERSON BLACKLEY ("defendant BLACKLEY") owned and operated a sole proprietorship known as Mississippi Rice Services which brokered rice for farmers in the State of Mississippi delta region.

4.     From in or about 1984 until in or about 1987, defendant BLACKLEY was employed in Washington County, Mississippi, working as a field assistant and later as a program assistant for an agency of the USDA known as the Agriculture Stabilization and Conservation Service ("ASCS").

5.     Commencing in or about 1987, defendant BLACKLEY also did business as Ron Blackley and Associates.  Ron Blackley and Associates was a consulting business in which defendant BLACKLEY, among others things, assisted farmers in obtaining monetary subsidies from USDA.

6.     On or about January 14, 1993, as a result of conflict of interest inquiries by the President-elect's transition team, defendant BLACKLEY provided a written memorandum, dated January 14, 1993, to (1) the transition team, (2) the

2

Secretary of Agriculture-designate and (3) the United States Senate which stated,

among other things, "at this time, I have no personal business interests and my

only source of income is my congressional salary."

7.    On or about January 21, 1993, defendant BLACKLEY was appointed

as the Chief of Staff to the Secretary of Agriculture and was subject to specific

provisions of the Ethics in Government Act which, among other things, required

the completion and timely filing of a Public Financial Disclosure Report, Form SF

278.

8.    The Public Financial Disclosure Report, Form SF 278, is required to

be filed, among other reasons, so

> that those having responsibility for review of reports
> filed pursuant to the Act or permitted public access to
> reports [are] given sufficient information by reporting
> individuals concerning the nature of their outside
> interests and activities so that an informed judgment can
> be made with respect to compliance with applicable
> conflict of interest laws and standards of conduct
> regulations.

9.    The Public Financial Disclosure Report, Form SF 278, requires,

among other things, the reporting of

> (a)    the actual amount . . . of non-investment income,
> exceeding $200 from any one source.  Such income
> includes, fees, salaries, commissions [and] compensation
> for personal services; as to the spouse of the reporting

3

individual, the amount of non-investment income
exceeding $1,000 from any one source;

(b)    gifts received by the reporting individual, his
spouse and dependent children aggregating $100 or more
from any one source; and

(c)    liabilities owed by the reporting individual, his
spouse or dependent children to any creditor which
exceeded $10,000; and

(d)    any agreements or arrangements concerning a
continuation of payments by a former employer other
than the United States government.

10.    Defendant BLACKLEY's "Position Description" at USDA described

him as the "alter ego" to the Secretary of Agriculture and specified that he "shared

with the Secretary the burdens and responsibilities of his office." The Position

Description defined BLACKLEY's duties to include "maintaining a continuous

scrutiny of the Department's programs and administration." Moreover, defendant

BLACKLEY's Position Description specified that "the scope and effect of the

work done and the decisions made by the Chief of Staff are as broad as the

programs of the Department because he or she is acting for the Secretary."

11.    Charles Fuller, not named as a defendant herein, was a longtime

friend and business associate of defendant BLACKLEY. Mr. Fuller, through

different farming operations, sought and received monetary subsidies from USDA, totaling approximately $63,000 in 1993.

12.    Charles ("Buddy") Cochran, not named as a defendant herein, was a longtime friend and client of defendant BLACKLEY.  Mr. Cochran owned and operated a farming operation known as "Coco Planting Company" ("Coco"), which sought and received monetary subsidies from USDA, totaling approximately $284,000 in 1993.

13. During the calendar year 1993, Mr. Fuller made and caused to be made the following payments to defendant BLACKLEY and his wife, Sharon Blackley, not named as a defendant herein:

| PAYMENT | DATE | PAYEE | AMOUNT |
|---------|------|-------|--------|
| 1 | 1/5/93 | Ronnie Blackley | $ 2,500 |
| 2 | 2/8/93 | Ron Blackley | $ 1,000 |
| 3 | 2/8/93 | Ron Blackley | $ 1,000 |
| 4 | 3/12/93 | Sharon Blackley | $ 450 |
| 5 | 3/31/93 | Sharon Blackley | $ 400 |
| 6 | 5/6/93 | Sharon Blackley | $ 200 |
| 7 | 7/14/93 | Ron Blackley | $ 5,000 |
| 8 | 8/25/93 | Sharon Blackley | $10,000 |
| 9 | 8/25/93 | Blackley | $ 200 |
| 10 | 12/15/93 | Ron Blackley | $ 275 |
| | | **TOTAL:** | **$21,025** |

14. On or about May 22, 1993, Mr. Cochran gave defendant BLACKLEY and/or Sharon Blackley a check for $1,000, payable to Ron Blackley, Jr., which was later deposited in the joint checking account of defendant BLACKLEY and Sharon Blackley.

6

15.    Defendant  BLACKLEY served as Chief of Staff for the Secretary of Agriculture until in or about February 1994 at which time he became a Special Assistant in the USDA's  Farmers Home Administration.

## COUNT ONE

## FALSE STATEMENTS

16.    Paragraphs 1 through 15 are realleged and incorporated herein by reference.

17.    In the calendar year 1993, defendant BLACKLEY and Mrs. Blackley received payments totaling approximately $22,025 as previously alleged.

18.    On or about June 28, 1994, in the District of Columbia, defendant BLACKLEY, knowingly and willfully, in a matter within the jurisdiction of the USDA, a department of the United States, falsified, concealed and covered up by a trick, scheme, and device, material facts, made false, fictitious and fraudulent statements and representations, and made and used a false writing and document knowing the same to contain false, fictitious and fraudulent statements and entries, in that defendant BLACKLEY, as required by law, prepared, signed and submitted to the USDA a Public Financial Disclosure Report, Form SF 278 (covering the calendar year 1993) on which he certified that the statements made were "true, complete and correct" to the best of his knowledge and belief.  In truth and fact, as defendant BLACKLEY well knew, said Public Financial Disclosure Report failed to disclose the receipt of approximately $22,025 as follows:

8

(a)  on Schedule A ("Assets and Income") the sources of income

which generated over $200 in income during the reporting

period;

(b)  on Schedule B, Part II ("Gifts, Reimbursement and Travel

Expenses") gifts from one source totaling $100 or more in

value;

(c)  on Schedule C, Part I ("Liabilities") liabilities over

$10,000 owed to any one creditor at any time

during the reporting period; and

(d)  on Schedule C, Part II, ("Agreements or Arrangements") an

agreement and arrangement for continuation of payments of

money.

19.    It was material pursuant to the Ethics in Government Act that

defendant BLACKLEY report all sources of income, gifts, liabilities and

agreements or arrangements so that those having responsibility for the review of

reports filed pursuant to the Act could make an informed judgment about

BLACKLEY's compliance with applicable conflict of interest laws and standards

of conduct regulations.

(In violation of Title 18 U.S.C. § 1001)

9

## COUNT TWO

## FALSE STATEMENTS

20.    Paragraphs 1 through 15 are realleged and incorporated herein by reference.

21.    In or about November 1994, the USDA Office of Inspector General ("USDA OIG") was conducting an investigation of defendant BLACKLEY into conflict of interest allegations.

22.    It was material to the USDA OIG investigation to determine if defendant BLACKLEY while employed at USDA was

      (1)    continuing to do business with certain entities;

      (2)    continuing to represent certain farmers; and

      (3)    continuing to receive payments from sources other

            than his government salary with USDA.

23.    On or about November 28, 1994, in the District of Columbia, defendant BLACKLEY, knowingly and willfully, in a matter within the jurisdiction of the USDA, a department of the United States, falsified, concealed and covered up by a trick, scheme, and device material facts, made false, fictitious and fraudulent statements and representations and made and used a false writing and document knowing the same to contain false, fictitious and fraudulent

10

statements and entries, in that defendant BLACKLEY signed a sworn declaration

which stated:

> At the time I became chief of staff for Secretary Espy on
> January 21, 1993, I severed myself from all of my prior
> businesses and financial interests.  I no longer had any
> active connection with Mississippi Rice Services; Ron
> Blackley and Associates; BMF, Inc.; Rome Farms, Inc.;
> Buck Brush, Inc., or any other company or business
> interest in Mississippi or elsewhere.  I received
> absolutely no money or remuneration of any kind from
> any of these companies for work performed in 1993 after
> I became chief of staff.  I also received absolutely no
> consulting fees directly or indirectly from any of the
> ASCS producers I represented in 1992, or in prior years,
> after I became USDA chief of staff in 1993.
>
> The only income I have earned during the period from
> January 21, 1993, to the present date, with the exception
> of the sale of my former residence in Greenville, is my
> salary from USDA.  The absence of any outside business
> interests or income is documented in my financial
> disclosure report for 1993 and 1994, which I completed
> and signed on June 28, 1994.  This report shows no
> income, assets, or outside business interests other than a
> single account at the Agriculture Federal Credit Union.

In truth and fact, as defendant BLACKLEY well knew, he had received the

payments alleged in paragraphs 13 and 14 above.

(In violation of 18 U.S.C. § 1001)

## COUNT THREE

## FALSE STATEMENTS

24.    Paragraphs 1 through 15 are realleged and incorporated herein by reference.

25.    On or about June 12, 1995, defendant BLACKLEY was appointed as the Special Assistant in the Bureau for Legislative and Public Affairs, in the United States Agency for International Development ("U.S. AID").  In this position, defendant BLACKLEY was required to obtain and hold a Top Secret security clearance.

26.    In or about August 1996, the U.S. AID Office of Inspector General ("U.S. AID OIG") was conducting an investigation to determine if defendant BLACKLEY had been or was involved in unreported conflicts of interest and whether defendant BLACKLEY should retain his Top Secret security clearance. It was material to the U.S. AID OIG investigation to determine if defendant BLACKLEY was receiving or had received remuneration from any source other than the United States Government since he had entered government service on or about January 21, 1993.

27.    On or about August 15, 1996, in the District of Columbia, defendant BLACKLEY, knowingly and willfully, in a matter within the jurisdiction of the

12

United States Agency for International Development, an agency of the United States, falsified, concealed and covered up by a trick, scheme, and device material facts, made false, fictitious and fraudulent statements and representations and made and used a false writing and document knowing the same to contain false, fictitious and fraudulent statements and entries, in that defendant BLACKLEY signed a sworn declaration which stated, "After I ended my consulting business and entered U.S. Government service, I did not receive any remuneration of any kind from Mitchell or anyone else." In truth and fact, as defendant BLACKLEY well knew, he had received the payments alleged in paragraphs 13 and 14 above.

(In violation of 18 U.S.C. § 1001)

A TRUE BILL

_Lynda E. Law_
Foreperson

_Donald C. Smaltz_
DONALD C. SMALTZ
INDEPENDENT COUNSEL

William F. Fahey
Counsellor

Washington, D.C.
April 22, 1997

[h:\data\cr\black10.ind - as of April 21, 1997 (4:17pm)]

14