**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Crim. No. 08-231 (EGS) |
| | ) | |
| THEODORE F. STEVENS, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**REPLY IN SUPPORT OF
MOTION FOR BILL OF PARTICULARS
(SENATOR STEVENS'S PRE-TRIAL MOTION NO. 7)**

Brendan V. Sullivan, Jr. (Bar No. 12757)
Robert M. Cary (Bar No. 431815)
Alex G. Romain (Bar No. 468508)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005
(202) 434-5000
(202) 434-5029 (facsimile)

*Attorneys for Defendant Theodore F. Stevens*

September 2, 2008

Senator Stevens is not requesting that the government describe all of its trial evidence or legal arguments. Rather, he asks to be informed of the essential details of the "charges lodged against him." *United States v. Espy*, 989 F. Supp. 17, 34 (D.D.C. 1997), *aff'd in part, rev'd in part on other grounds*, 145 F.3d 1369 (D.C. Cir. 1998). Where the indictment has charged him with failing to disclose "things of value" subject to disclosure as "gifts" or "liabilities," he simply asks that the government specify what things of value he failed to disclose, and whether they were gifts or liabilities. And, where the indictment alleges a scheme to conceal these non-disclosures, he simply asks that the government specify what this scheme was. This is precisely the purpose of a bill of particulars.

## ARGUMENT

I.     **A BILL OF PARTICULARS IS WARRANTED HERE.**

   A.     **Counts II through VII Fail To Specify All of the Things that Allegedly Were Not Disclosed, and Whether They Were Gifts or Liabilities.**

This Circuit has explained that a bill of particulars is appropriate when necessary "to ensure that the charges brought against a defendant are stated with enough precision to allow the defendant to understand the charges, to prepare a defense, and perhaps also to be protected against retrial on the same charges." *United States v. Butler*, 822 F.2d 1191, 1193 (D.C. Cir. 1987). A recognized purpose for a bill of particulars is to "prevent unfair surprise at trial." *United States v. Hsia,* 24 F. Supp. 2d 14, 30-31 (D.D.C. 1998); *see also Espy*, 989 F. Supp. at 34 ("[A] motion for a bill of particulars should be granted if the request is particularized and the requested information is necessary to prevent unfair surprise at trial.").

Over and over again, the indictment in this case sets out <u>examples</u> of things Senator Stevens allegedly received, with the qualification that these things are merely "included" among an unspecified broader set. As the indictment is pled, Senator Stevens could well prepare

a defense based on the examples provided in the indictment, only to have the government try the case based in whole or in part on other alleged things of value specified only in the indictment's catch-all words, "including" and "among others."

As just one example, Count V charges Senator Stevens with failing to disclose things of value on his 2004 disclosure. But all the indictment states is that in 2004 Senator Stevens "contacted ALLEN and VECO employees multiple times to request that VECO employees or contractors perform additional tasks at the Girdwood Residence. These tasks included, without limitation, the installation of multiple kitchen appliances and maintenance on the heat tape system on the roof of the Girdwood Residence." Indictment ¶ 28 (emphasis added). Perhaps most egregiously, Count IV charges Senator Stevens with failing to disclose things of value from VECO on his 2003 disclosure, but the indictment does not list a single thing of value allegedly received from VECO during that year, even by way of example.

The government quotes selectively from portions of the indictment to show that it has provided detail. It argues that, "where the Indictment charges that Stevens engaged in an automobile transaction with Bill Allen, [it] provides the years, makes, and models of the automobiles in question, as well as specific dollar values." Opp. at 4 (*citing* Indictment ¶ 18). It is true that such details are provided for one automobile exchange. But the government has indicted Senator Stevens for "automobile exchanges [plural] in which STEVENS received new vehicles [plural] worth far more than the used vehicles [plural] STEVENS provided in exchange." Indictment ¶ 15. No detail at all is provided with respect to any other alleged exchanges.

Unless Senator Stevens knows all of the things of value he is charged with failing to report, he cannot possibly defend adequately against them. This information is an essential

part of the charges, not mere evidence in support of them, and it should be ordered disclosed. Similarly, he needs to know whether the items were "gifts" or "liabilities," as this determines the monetary threshold for their disclosure.

> **B.     Count I Fails To Specify the Things of Value that Allegedly Were Concealed and Otherwise Fails To Explain the Details of the Charged "Scheme."**

Count I alleges that Senator Stevens "engaged in a scheme to conceal a material fact, that is, his continuing receipt of hundreds of thousands of dollars' worth of things of value." Indictment ¶ 15.  As above, it is essential for Senator Stevens to know what all of the things of value were that he allegedly concealed.

The indictment then goes onto allege that "[i]t was a further part of the scheme that STEVENS took multiple steps to conceal" his receipt of the alleged things of value, and that he further "made and caused to be made multiple false representations to his friends, his staff, and the media concerning the improvements at the Girdwood residence."  Indictment ¶ 16.  It is apparent from the government's submissions that it considers these "multiple false representations" to be a significant component of the scheme charge that supposedly distinguishes it from the false statement counts.  *See* Gov't Mem. in Opposition to Stevens Mot. No. 2 (Dkt. # 26) at 3.[1]  Senator Stevens cannot defend against the "scheme" alleged in Count I without knowing what the scheme is alleged to have actually been.  Accordingly, the government should be required to specify the "multiple false representations" that comprise his alleged "scheme" and how he caused them to be made.  *See Hsia*, 24 F. Supp. 2d at 32 (ordering bill of particulars where government had disclosed all alleged false statements but had not provided "a coherent explanation of how Ms. Hsia 'caused' those false statements to be made").

---

[1] Senator Stevens does not concede that allegations of false representations to friends, staff and media (or any other allegations in Count I) are a legally sufficient basis for a charge under 18 U.S.C. § 1001(a)(1).

Similarly, in the event paragraph 17 of the indictment survives Senator Stevens's other motions, the government should be required to detail all of the solicitations for official action he allegedly received and the ways in which he allegedly used his official position on behalf of VECO to conceal his alleged scheme, to the extent it has not already done so.[2] *See Hsia*, 24 F. Supp. 2d at 33 (ordering bill of particulars where "the indictment does not provide Ms. Hsia with sufficient information about the specific acts of concealment alleged for her to adequately prepare her defense and avoid surprise at trial").

## II.     THE GOVERNMENT'S CONTRARY ARGUMENTS ARE UNPERSUASIVE.

1.     The government exclaims that the indictment "span[s] 28 pages and 82 paragraphs."  Opp. at 4.  We are unaware of any case holding that the sufficiency of an indictment should be measured by the number of its pages rather than the particularity of its charges.  In any event, a 28-page indictment is brief compared to some of the cases on which the government relies.  *See United States v. Crosby*, No. 91-0559-08, 1992 WL 35124 (D.D.C. Feb. 5, 1992) (115-count indictment); *United States v. Cisneros*, 26 F. Supp. 2d 24 (D.D.C. 1998) (65-page indictment).

2.     The government urges that Senator Stevens is not entitled to a bill of particulars because it has provided discovery "comprised of hundreds of hours of telephone recordings, video recordings, and more than 100,000 pages of documents [which] contain[] evidence of all of the conduct that the government intends to introduce at trial."  Opp. at 5.  The government thus suggests that Senator Stevens should have to weed through these tens of thousands of pages of documents and hundreds of hours of recordings so that he may unearth the

---

[2] To the extent the alleged solicitations and official actions are covered exhaustively by the government's motion *in limine* concerning the Speech or Debate Clause, Senator Stevens does not require additional particularity.  To the extent the government has indicted Senator Stevens for other, as yet undisclosed solicitations or official acts, a bill or particulars is required.

charges against him.  Several cases are cited for this absurd proposition, but on closer

examination it is clear that they do not support it.  In each of them, the court either found that the

indictment was, in and of itself, sufficient, or noted that the requested information had been

provided in another digestible format.[3]  None of the cases the government cites can be read to

support the proposition that the government can rescue an insufficient indictment by drowning

the defendant with 100,000 documents.

        3.      The government also argues that it is somehow immunized from

specifying whether the things of value were gifts or liabilities because it has met the pleading

standards of Rule 7(c), which permits an indictment to allege that "'the defendant committed [an

offense] by one or more specified means.'"  Opp. at 11 (*quoting* Fed. R. Crim. P. 7(c)).  This

argument reflects a misunderstanding of the rules.  An indictment that satisfies Rule 7(c) might

---

[3] *See* Opp. at 5-6 (*citing United States v. Mejia*, 448 F.3d 436, 445-46 (D.C. Cir. 2006) (no bill of particulars where defendant sought information about cooperating witness that was contained in DEA-6s; court noted that after reviewing those statements, "[w]e can only conclude that if the defendants felt ambushed, it was not because the government was lying in wait, but because the defendants were not looking."); *United States v. Butler*, 822 F.2d 1191, 1193 (D.C. Cir. 1987) (defendant sought bill of particulars for the date he entered and exited conspiracy; no bill needed where government had responded to that request by providing the specific dates during which he had made loans at issue); *United States v. Eiland*, No. Crim. 04-379, 2006 WL 516743, at *7 (D.D.C. Mar. 2, 2006) (denying bill of particulars where "[t]he indictment in this case is extremely specific, providing more than 200 factual statements); *United States v. Brodie*, 326 F. Supp. 2d 92 (D.D.C. 2004) ("As is clear from a review of the indictment, the charges against the defendants are detailed and alleged with particularity."); *United States v. Edelin*, 128 F. Supp. 2d 23, 36 (D.D.C. 2001) ("The charges against each of the defendants are alleged with sufficient particularity."); *United States v. Cooper*, 91 F. Supp. 2d 79, 84 (D.D.C. 2000) ("[M]ost, if not all of the information Cooper seeks has been provided either in the indictment, through the government's proffer of evidence submitted with its omnibus opposition to the defense motions, through either the discovery provided to date or the discovery that will be provided as ordered herein, or in the Government's Notice of Intent to Seek the Death Penalty."); *United States v. Coleman*, 940 F. Supp. 15, 19 (D.D.C. 1996) (noting that "[t]he government has provided counsel with a lengthy and detailed indictment" and that the entirety of the government's case was contained in one of just fourteen boxes).

survive dismissal,[4] but a bill of particulars may still be appropriate under the separate standards of Federal Rule of Criminal Procedure 7(f).

## III.     THE GOVERNMENT'S CITED CASES DO NOT SUPPORT ITS POSITION.

The government's opposition cites cases denying bills of particulars, but as the government is compelled to acknowledge, those rulings were premised on a "specific, detailed indictment."  Opp. at 3.[5]  The indictment in this case certainly contains <u>some</u> details of the offenses alleged.  But the threshold for a sufficiently particularized indictment is that it is "stated with enough precision to allow the defendant to understand the charges [and] to prepare a defense."  *Butler*, 822 F.2d at 1193.  As described above, this indictment does not meet that standard.

In *United States v. Cisneros*, 26 F. Supp. 2d 24 (D.D.C. 1998), on which the government relies, the defendant was alleged to have made false statements to governmental agencies in order to ensure his nomination and confirmation; he allegedly lied to the government regarding an extra-marital affair and made blackmail payments to his girlfriend.  He sought a bill of particulars seeking eleven categories of information including "the precise manner in which the statements are alleged to be false," "the alleged duty to disclose the information which was allegedly concealed," and "the precise manner in which Cisneros purportedly carried out the alleged conspiracy."  *Id*. at 56.  The information sought by Cisneros cannot be compared to the information sought by Senator Stevens.  There is an obvious distinction between seeking

---

[4] Senator Stevens has elsewhere argued that the indictment is unconstitutionally vague.

[5] *See id*. (*citing Eiland*, 2006 WL 516743, at *7 (indictment was "extremely specific"); *Brodie*, 326 F. Supp. 2d at 92 (indictment was "detailed and alleged with particularity"); *Edelin*, 128 F. Supp. 2d at 36 (allegations made with "particularity"); *United States v. Cooper*, 91 F. Supp. 2d at 84 (indictment set out "each of the violations involved, the dates and times of those violations, and the statutes violated"); *Coleman*, 940 F. Supp. at 19 (no bill where indictment "lengthy and detailed")).

6

information as to the <u>details</u> of a crime, or the <u>reason</u> it is alleged to be illegal, and simply

seeking information about <u>what</u> a defendant is alleged to have done to violate the law, as here.[6]

The government also attempts to distinguish *United States v. Palfrey*, 499

F. Supp. 2d 34 (D.D.C. 2007), but it cannot rebut that the court there ordered a bill of particulars

on the forfeiture allegations against the defendant, and specifically ordered the government to

particularize the "'proceeds' allegedly used in furtherance of the enterprise." *Id*. at 52.  If

Palfrey was entitled to know what proceeds furthered her alleged enterprise, surely Senator

Stevens is entitled to know what things of value he allegedly failed to report.  *See id.*

("Defendant should not have to waste precious pre-trial preparation time guessing what data

among her thirteen years of financial information will be relevant to her defense.").

The government's reliance on the 2-page decision in *United States v. Crosby*, No.

91-0559-08, 1992 WL 35124 (D.D.C. Feb. 5, 1992), is similarly misplaced.  The defendant there

was charged with narcotics offenses.  In denying a bill of particulars, the court noted that for

each alleged act the indictment had alleged "a specific time period . . . , a particular geographic

location . . . , the type of drug possessed and/or sold (marihuana, phencyclidine) and, . . . the

name of an accomplice, in addition to essential elements of the crime charged." *Id*. at *2.

Charged with drug offenses, the defendant in *Crosby* was informed what type of drug he

allegedly possessed or sold on each occasion.  Senator Stevens is charged with offenses relating

to the alleged nondisclosure of "things of value," but the government has yet to inform him what

all of the things of value are.

---

[6] Moreover, the court in *Cisneros* noted that "[t]he allegations go far to inform Cisneros of the
misrepresentations charged against him so that he can recognize what the Government claims
were fraudulent statements and what misrepresentations were involved." *Id*. at 46.

Finally, it is telling that the government relies heavily on *United States v. Blackley*, 167 F.3d 543 (D.C. Cir. 1998), an opinion that did not even concern a request for a bill of particulars.  The defendant there was also indicted for failure to disclose the receipt of things of value on his financial disclosure forms but, unlike this case, the *Blackley* indictment contained a chart describing all of the specific checks the defendant allegedly failed to report.  *See* Ex. 1 at 6.  This particularity is completely lacking from Senator Stevens's indictment.

<u>**CONCLUSION**</u>

For the foregoing reasons, and for the reasons set forth in Senator Stevens's opening memorandum, the Court should require the government to supply a bill of particulars.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By:       /s/ Robert M. Cary            
       Brendan V. Sullivan, Jr., D.C. Bar No. 12757
       Robert M. Cary, D.C. Bar No. 431815
       Alex G. Romain, D.C. Bar No. 468508
       725 Twelfth Street, N.W.
       Washington, D.C.  20005
       (202) 434-5000

*Attorneys for Defendant Theodore F. Stevens*

Dated:  September 2, 2008

# Exhibit 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Holding a Criminal Term
Grand Jury 97-1, Sworn on January 31, 1997

97-0166

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No. _____ |
| | ) | |
| -v- | ) | Violations: |
| | ) | |
| RONALD HENDERSON BLACKLEY, | ) | 18 U.S.C. § 1001 (False |
| Defendant. | ) | Statements) |
| | ) | |
| | ) | |

LAMBERTH, J.

**INDICTMENT**

FILED IN OPEN COURT

B

THE GRAND JURY CHARGES:

APR 2 2 1997

**Background**

CLERK, U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

At all times relevant to this Indictment:

1.    The United States Department of Agriculture ("USDA") was a department of the United States Government. The duties of the USDA were, among other things, to improve and promote agricultural development and production in the United States. The Secretary of Agriculture was in charge of USDA.

2.     The USDA had various programs, such as the Price Support and Production Adjustment Program, the Conservation Reserve Program and the Rice Storage Loan Program, through which farmers could apply for monetary subsidies.

3.     Commencing in or about 1983, defendant RONALD HENDERSON BLACKLEY ("defendant BLACKLEY") owned and operated a sole proprietorship known as Mississippi Rice Services which brokered rice for farmers in the State of Mississippi delta region.

4.     From in or about 1984 until in or about 1987, defendant BLACKLEY was employed in Washington County, Mississippi, working as a field assistant and later as a program assistant for an agency of the USDA known as the Agriculture Stabilization and Conservation Service ("ASCS").

5.     Commencing in or about 1987, defendant BLACKLEY also did business as Ron Blackley and Associates.  Ron Blackley and Associates was a consulting business in which defendant BLACKLEY, among others things, assisted farmers in obtaining monetary subsidies from USDA.

6.     On or about January 14, 1993, as a result of conflict of interest inquiries by the President-elect's transition team, defendant BLACKLEY provided a written memorandum, dated January 14, 1993, to (1) the transition team, (2) the

2

Secretary of Agriculture-designate and (3) the United States Senate which stated, among other things, "at this time, I have no personal business interests and my only source of income is my congressional salary."

7.      On or about January 21, 1993, defendant BLACKLEY was appointed as the Chief of Staff to the Secretary of Agriculture and was subject to specific provisions of the Ethics in Government Act which, among other things, required the completion and timely filing of a Public Financial Disclosure Report, Form SF 278.

8.      The Public Financial Disclosure Report, Form SF 278, is required to be filed, among other reasons, so

> that those having responsibility for review of reports filed pursuant to the Act or permitted public access to reports [are] given sufficient information by reporting individuals concerning the nature of their outside interests and activities so that an informed judgment can be made with respect to compliance with applicable conflict of interest laws and standards of conduct regulations.

9.      The Public Financial Disclosure Report, Form SF 278, requires, among other things, the reporting of

> (a)     the actual amount . . . of non-investment income, exceeding $200 from any one source.  Such income includes, fees, salaries, commissions [and] compensation for personal services; as to the spouse of the reporting

3

individual, the amount of non-investment income
exceeding $1,000 from any one source;

(b)    gifts received by the reporting individual, his
spouse and dependent children aggregating $100 or more
from any one source; and

(c)    liabilities owed by the reporting individual, his
spouse or dependent children to any creditor which
exceeded $10,000; and

(d)    any agreements or arrangements concerning a
continuation of payments by a former employer other
than the United States government.

10.    Defendant BLACKLEY's "Position Description" at USDA described

him as the "alter ego" to the Secretary of Agriculture and specified that he "shared

with the Secretary the burdens and responsibilities of his office." The Position

Description defined BLACKLEY's duties to include "maintaining a continuous

scrutiny of the Department's programs and administration." Moreover, defendant

BLACKLEY's Position Description specified that "the scope and effect of the

work done and the decisions made by the Chief of Staff are as broad as the

programs of the Department because he or she is acting for the Secretary."

11.    Charles Fuller, not named as a defendant herein, was a longtime

friend and business associate of defendant BLACKLEY.  Mr. Fuller, through

different farming operations, sought and received monetary subsidies from USDA, totaling approximately $63,000 in 1993.

12.    Charles ("Buddy") Cochran, not named as a defendant herein, was a longtime friend and client of defendant BLACKLEY.  Mr. Cochran owned and operated a farming operation known as "Coco Planting Company" ("Coco"), which sought and received monetary subsidies from USDA, totaling approximately $284,000 in 1993.

5

13.    During the calendar year 1993, Mr. Fuller made and caused to be made the following payments to defendant BLACKLEY and his wife, Sharon Blackley, not named as a defendant herein:

| PAYMENT | DATE | PAYEE | AMOUNT |
|---------|------|-------|--------|
| 1 | 1/5/93 | Ronnie Blackley | $ 2,500 |
| 2 | 2/8/93 | Ron Blackley | $ 1,000 |
| 3 | 2/8/93 | Ron Blackley | $ 1,000 |
| 4 | 3/12/93 | Sharon Blackley | $   450 |
| 5 | 3/31/93 | Sharon Blackley | $   400 |
| 6 | 5/6/93 | Sharon Blackley | $   200 |
| 7 | 7/14/93 | Ron Blackley | $ 5,000 |
| 8 | 8/25/93 | Sharon Blackley | $10,000 |
| 9 | 8/25/93 | Blackley | $   200 |
| 10 | 12/15/93 | Ron Blackley | $   275 |
| | | **TOTAL:** | **$21,025** |

14.    On or about May 22, 1993, Mr. Cochran gave defendant BLACKLEY and/or Sharon Blackley a check for $1,000, payable to Ron Blackley, Jr., which was later deposited in the joint checking account of defendant BLACKLEY and Sharon Blackley.

6

15.    Defendant BLACKLEY served as Chief of Staff for the Secretary of

Agriculture until in or about February 1994 at which time he became a Special

Assistant in the USDA's Farmers Home Administration.

## COUNT ONE

## FALSE STATEMENTS

16.    Paragraphs 1 through 15 are realleged and incorporated herein by reference.

17.    In the calendar year 1993, defendant BLACKLEY and Mrs. Blackley received payments totaling approximately $22,025 as previously alleged.

18.    On or about June 28, 1994, in the District of Columbia, defendant BLACKLEY, knowingly and willfully, in a matter within the jurisdiction of the USDA, a department of the United States, falsified, concealed and covered up by a trick, scheme, and device, material facts, made false, fictitious and fraudulent statements and representations, and made and used a false writing and document knowing the same to contain false, fictitious and fraudulent statements and entries, in that defendant BLACKLEY, as required by law, prepared, signed and submitted to the USDA a Public Financial Disclosure Report, Form SF 278 (covering the calendar year 1993) on which he certified that the statements made were "true, complete and correct" to the best of his knowledge and belief.  In truth and fact, as defendant BLACKLEY well knew, said Public Financial Disclosure Report failed to disclose the receipt of approximately $22,025 as follows:

8

(a)   on Schedule A ("Assets and Income") the sources of income

which generated over $200 in income during the reporting

period;

(b)   on Schedule B, Part II ("Gifts, Reimbursement and Travel

Expenses") gifts from one source totaling $100 or more in

value;

(c)   on Schedule C, Part I ("Liabilities") liabilities over

$10,000 owed to any one creditor at any time

during the reporting period; and

(d)   on Schedule C, Part II, ("Agreements or Arrangements") an

agreement and arrangement for continuation of payments of

money.

19.    It was material pursuant to the Ethics in Government Act that

defendant BLACKLEY report all sources of income, gifts, liabilities and

agreements or arrangements so that those having responsibility for the review of

reports filed pursuant to the Act could make an informed judgment about

BLACKLEY's compliance with applicable conflict of interest laws and standards

of conduct regulations.

(In violation of Title 18 U.S.C. § 1001)

9

## COUNT TWO

## FALSE STATEMENTS

20.    Paragraphs 1 through 15 are realleged and incorporated herein by reference.

21.    In or about November 1994, the USDA Office of Inspector General ("USDA OIG") was conducting an investigation of defendant BLACKLEY into conflict of interest allegations.

22.    It was material to the USDA OIG investigation to determine if defendant BLACKLEY while employed at USDA was

(1)    continuing to do business with certain entities;

(2)    continuing to represent certain farmers; and

(3)    continuing to receive payments from sources other

than his government salary with USDA.

23.    On or about November 28, 1994, in the District of Columbia, defendant BLACKLEY, knowingly and willfully, in a matter within the jurisdiction of the USDA, a department of the United States, falsified, concealed and covered up by a trick, scheme, and device material facts, made false, fictitious and fraudulent statements and representations and made and used a false writing and document knowing the same to contain false, fictitious and fraudulent

10

statements and entries, in that defendant BLACKLEY signed a sworn declaration

which stated:

> At the time I became chief of staff for Secretary Espy on
> January 21, 1993, I severed myself from all of my prior
> businesses and financial interests.  I no longer had any
> active connection with Mississippi Rice Services; Ron
> Blackley and Associates; BMF, Inc.; Rome Farms, Inc.;
> Buck Brush, Inc., or any other company or business
> interest in Mississippi or elsewhere.  I received
> absolutely no money or remuneration of any kind from
> any of these companies for work performed in 1993 after
> I became chief of staff.  I also received absolutely no
> consulting fees directly or indirectly from any of the
> ASCS producers I represented in 1992, or in prior years,
> after I became USDA chief of staff in 1993.
>
> The only income I have earned during the period from
> January 21, 1993, to the present date, with the exception
> of the sale of my former residence in Greenville, is my
> salary from USDA.  The absence of any outside business
> interests or income is documented in my financial
> disclosure report for 1993 and 1994, which I completed
> and signed on June 28, 1994.  This report shows no
> income, assets, or outside business interests other than a
> single account at the Agriculture Federal Credit Union.

In truth and fact, as defendant BLACKLEY well knew, he had received the

payments alleged in paragraphs 13 and 14 above.

(In violation of 18 U.S.C. § 1001)

## COUNT THREE

## FALSE STATEMENTS

24.    Paragraphs 1 through 15 are realleged and incorporated herein by reference.

25.    On or about June 12, 1995, defendant BLACKLEY was appointed as the Special Assistant in the Bureau for Legislative and Public Affairs, in the United States Agency for International Development ("U.S. AID"). In this position, defendant BLACKLEY was required to obtain and hold a Top Secret security clearance.

26.    In or about August 1996, the U.S. AID Office of Inspector General ("U.S. AID OIG") was conducting an investigation to determine if defendant BLACKLEY had been or was involved in unreported conflicts of interest and whether defendant BLACKLEY should retain his Top Secret security clearance. It was material to the U.S. AID OIG investigation to determine if defendant BLACKLEY was receiving or had received remuneration from any source other than the United States Government since he had entered government service on or about January 21, 1993.

27.    On or about August 15, 1996, in the District of Columbia, defendant BLACKLEY, knowingly and willfully, in a matter within the jurisdiction of the

12

United States Agency for International Development, an agency of the United States, falsified, concealed and covered up by a trick, scheme, and device material facts, made false, fictitious and fraudulent statements and representations and made and used a false writing and document knowing the same to contain false, fictitious and fraudulent statements and entries, in that defendant BLACKLEY signed a sworn declaration which stated, "After I ended my consulting business and entered U.S. Government service, I did not receive any remuneration of any kind from Mitchell or anyone else." In truth and fact, as defendant BLACKLEY well knew, he had received the payments alleged in paragraphs 13 and 14 above.

(In violation of 18 U.S.C. § 1001)

A TRUE BILL

_Lynda E. Lee_
Foreperson

_Donald C. Smaltz_
DONALD C. SMALTZ
INDEPENDENT COUNSEL

William F. Fahey
Counsellor

Washington, D.C.
April 22, 1997

[h:\data\cr\black10.ind - as of April 21, 1997 (4:17pm)]