IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v.          ) | Criminal No. 08-CR-231 (EGS) |
| ) | |
| THEODORE F. STEVENS,    ) | |
| ) | |
| Defendant.   ) | |
| ) | |
| _____) | |

UNITED STATES' RESPONSE TO STEVENS' MOTION *IN LIMINE*
TO EXCLUDE PURPORTED RULE 404(b) EVIDENCE

The United States of America, by and through its undersigned attorneys, hereby responds to defendant Theodore F. Stevens ("Stevens") Motion *in Limine* to Exclude Purported Rule 404(b) Evidence. The Court should deny Stevens' motion because the evidence that Stevens challenges does not relate to "other acts" that need to be admitted under Rule 404(b), but are instead evidence of acts intrinsic to the charges set forth in the Indictment. Furthermore, should this Court conclude that a Rule 404(b) analysis is warranted, the evidence described in the government's Notice is unquestionably admissible under Rule 404(b) and Rule 403.

## ARGUMENT

I.      The Evidence is Intrinsic to the Crimes Charged in the Indictment.

Although Stevens' Motion *in Limine* focuses predominantly on this evidence as Rule 404(b) material, both the relevant caselaw and the government's Notice make plain that the evidence is in fact admissible as direct proof of facts intrinsic to the conduct charged in the Indictment. As the courts of the District of Columbia have repeatedly recognized, evidence that describes "other crimes" is admissible if it is intrinsic to the crime charged. *See, e. g.*, *United*

*States v. Alexander*, 331 F.3d 116, 125-26 (D.C. Cir.2003).  Where "evidence is offered as direct evidence of a fact in issue, not as circumstantial evidence requiring an inference regarding the character of the accused, it is properly considered intrinsic." *Id.* at 126 (internal quotation omitted); *see also United States v. Badru*, 97 F.3d 1471, 1475 (D.C. Cir.1996) (upholding admission of smuggling evidence as intrinsic to crime of conspiracy to distribute heroin).  Thus, evidence that tends to prove an element of the charged offense "is properly considered intrinsic." *United States v. Bowie*, 232 F.3d 923, 929 (D.C. Cir. 2000).   In such circumstances, "district courts may -- indeed should -- permit the government to introduce relevant evidence of bad acts to prove elements of guilt (excluding felony status) and to establish all the circumstances surrounding the offense." *United States v. Davis*, 181 F.3d 147, 150-51 (D.C. Cir. 1999) (per curiam).

        A.      <u>Stevens' Receipt of Things of Value from Allen and VECO (Items 2-5)</u>

The Indictment charges that Stevens, from 1999 to 2006, knowingly engaged in a scheme to conceal his receipt of things of value from Allen, VECO, and others.  Items 2 through 5[1] involve things of value that Stevens asked for and received from Allen and VECO during that same time period.  Stevens cannot credibly contend that evidence of those transactions does not "tend to prove" the elements of the crimes charged against him.  *See, e.g., Bowie*, 232 F.3d at 928 (recognizing that "if the evidence is of an act that is part of the charged offense, it is properly considered intrinsic"); *United States v. Gooch*, 514 F. Supp.2d 63, 69-70 (D.D.C. 2007)(allowing government to introduce "evidence of uncharged . . . wrongdoing" of defendant and co-conspirators that occurred during the time period of the charged conspiracy count); *United States*

---

[1] *See* Dkt. 20 at 5-8.

*v. Davis*, 402 F. Supp.2d 252, 261-62 (D.D.C. 2005) (evidence of uncharged homicide, of which defendant was previously acquitted, was admissible as "intrinsic" to prove defendant's knowledge and intent to be involved in drug conspiracy).

At trial, the government will be required to prove that Stevens knowingly received things of value from Allen and VECO, and that Stevens then knowingly and willfully failed to report required transactions on his Financial Disclosure Forms. Evidence that, for instance, Stevens asked Allen to install a generator at the Girdwood Residence in 1999 tends to prove that Stevens knowingly asked Allen for assistance to improve the Girdwood Residence less than one year later, and that Stevens knowingly received Allen's assistance in response to Stevens' request. Especially in light of Stevens' post-indictment public statement that he "did not receive" things of value from *anyone*,[2] an October 1999 email in which Stevens acknowledged that Allen *did* provide Stevens with a new generator at Stevens' request is highly relevant to the crimes charged and the purported defenses likely to be interposed.

Similarly, with respect to Items 3 through 5, evidence that Stevens *asked* Allen to provide financial benefits to Stevens' family tends to prove the fact that Stevens knew Allen had provided, would provide, and did provide financial benefits when Stevens asked.[3] Again, especially where Stevens intends to claim that he "did not receive" any things of value from

---

[2] *See* Kyle Hopkins, "Last Ones Standing: Stevens Looks Ahead," *Anchorage Daily News*, August 28, 2008 (quoting defendant Stevens as saying, "[w]e're talking about a provision that requires me to disclose gifts. And I'm saying I did not receive those gifts.")

[3] This is unquestionably true with regard to Item 3, which relates to a subsequent vehicle transfer between Allen and Stevens involving the vehicle that is explicitly pled in the Indictment. *See* Dkt. 20 at 5-6.

Allen, Stevens' requests for assistance during the same time period are absolutely relevant and admissible to prove the crimes charged.

Stevens is correct that the Senate Financial Disclosure Forms do not require a Member to disclose benefits that flow to an independent child or to a grandchild. However, Stevens is charged in Count I with engaging in a *scheme* to conceal benefits. Items 3 through 5 involve mechanisms in which Stevens was able to obtain benefits from Allen for Stevens' family members. In at least two of those instances – Items 3 and 4 – the evidence will show that Stevens took affirmative steps to distance himself from the requests and transactions. *See* Dkt. 20 at 6 (car transaction occurred between Stevens' daughter and a VECO employee instead of between Stevens and Allen); 6-7 (Stevens used intermediary to ask for job for his son). Such conduct goes to the heart of the scheme charged in Count I, and further establishes Stevens' knowledge and involvement in his other, contemporaneous transactions with Allen that Counts II through VII charge Stevens with failing to report.

Finally, in support of his Motion *in Limine* to exclude these other transactions with Allen and VECO, Stevens cites to this Court's decision in *Gooch*. According to Stevens, *Gooch* held that the analysis of whether an uncharged act is intrinsic "*requires* that the other acts be 'performed contemporaneously' with and 'facilitate the commission of the charged crime.'" Stevens Mem. No. 9 at 3 (emphasis added). Stevens has yet again blatantly misrepresented the state of the law in this District and the case from which he cites. As the full quote from *Gooch* makes plain:

> *Bowie* continues to recognize that uncharged bad acts may be"intrinsic" and thereby admissible without a Rule 404( b) analysis if the acts were "part of the charged offense" *or* if they

>were "contemporaneous" and "they facilitated the commission of the charged crime."

*Gooch*, 514 F. Supp.2d at 69-70 (emphasis added). Because the offenses charge Stevens with knowingly seeking, receiving, and concealing things of value from Allen and VECO, additional evidence of Stevens knowingly seeking, receiving, and concealing things of value from Allen and VECO constitutes "part of the charged offense."

      B.      <u>Stevens' Contemporaneous Real Estate Transaction (Item 1)</u>

Item 1[4] concerns a real estate transaction that was conducted by Stevens at the same general time that the first phase of renovations occurred at the Girdwood Residence. The evidence described in Item 1 will show that Stevens was personally involved in the details of that real estate transaction, and that despite his awareness of it, Stevens did not list certain aspects of the transaction on his required 2001 Financial Disclosure Form.

Count II of the Indictment charges Stevens with failing to list his receipt of things of value on his 2001 Financial Disclosure Form. To prove Stevens' guilt, the government will have to prove beyond a reasonable doubt that Stevens knowingly and willfully failed to report required transactions that occurred in calendar year 2001. Evidence of Stevens' personal involvement in the details of his 2001 transaction with Company B is relevant to prove that Stevens was in fact heavily involved in his personal finances during 2001, was in fact involved with a contemporaneous real estate transaction during 2001, and knowingly incurred a significant debt during 2001.

---

[4] *See* Dkt. 20 at 3-5.

Nor is it true that evidence of Stevens' transactions with Company B must be excluded because it was not "performed contemporaneously" with, and did not "facilitate," the charges in the Indictment. *See* Stevens Mem. No. 9 at 3. Stevens' real estate transaction with Company B occurred in February 2001 – during a substantial portion of VECO's work on the Girdwood Residence – and ultimately produced a net profit to Stevens of approximately $103,000. Prior to signing his agreement with Company B, Stevens took out a line of credit to pay for Company A's work at the Girdwood Residence. *See* Indictment ¶¶ 21-22. In other words, the Item 1 transaction will permit a jury to infer that at the same time that one personal friend (Allen) helped Stevens by doing free work on the Girdwood Residence, another personal friend (Person C) helped Stevens defray much of the expenses that Stevens *did* pay to non-VECO workers by providing him with a virtually-no-risk real estate investment that covered Stevens' line of credit.

    C.    <u>Evidence of Stevens' Post-Takedown Contacts with Person A (Items 6-7)</u>

Here, Items 6 and 7[5] relate to evidence that is intrinsic to elements of the crimes charged in the Indictment. Item 6 involves evidence that, in the hours after the government executed search warrants relating to Allen and VECO, Stevens drew a link between a press release involving a search in "Girdwood" and Stevens' own residence in Girdwood. From that, a jury could reasonably infer that Stevens' concern was an expression of his knowledge of an improper relationship between Allen, VECO, and the Girdwood Residence renovation.[6] Similarly, Item 7

---

    [5] *See* Dkt. 20 at 8-9.

    [6] Stevens, of course, can argue to the jury that Stevens instead emailed Person A because of Stevens' fear that the Girdwood Residence may have been searched for evidence concerning Stevens' son (who, of course, lived approximately 40 miles away in a different single-family residence, along with his spouse and four children). *See* Stevens Mem. No. 9 at 7.

involves evidence that Stevens counseled Person A with regard to Person A's upcoming grand jury testimony. The phrase "don't answer any questions you don't KNOW the answer to" – especially given the capitalization of the word "KNOW" – can reasonably be interpreted by a jury as a suggestion by Stevens that Person A should be less than forthcoming. Such evidence is admissible in the government's case-in-chief. *See, e.g., United States v. Frost*, 234 F.3d 1023, 1025 (8th Cir. 2000) (reversing district court's exclusion of "direct evidence of fraudulent intent and consciousness of guilt" and concluding that Rule 404(b) does not apply because such evidence "does not relate to other acts, but rather constitutes evidence intrinsic to the overall scheme"); *United States v. LeCompte*, 108 F.3d 948, 952 (8th Cir.1997); *United States v. Forcelle*, 86 F.3d 838, 841 (8th Cir.1996).

II.     In the Alternative, the Evidence is Admissible Under Rule 404(b).

"Rule 404(b) is a rule of inclusion rather than exclusion . . . prohibiting the admission of other crimes evidence 'in but one circumstance' – for the purpose of proving that a person's actions conformed to his character." *Bowie*, 232 F.3d at 929 (quoting *United States v. Crowder*, 141 F.3d 1202, 1206 (D.C.Cir.1998) (*en banc*). "Rule 404(b) thus is not so much a character rule as a special aspect of relevance because it 'does not prohibit character evidence generally, only that which lacks any purpose but proving character.'" *United States v. Douglas*, 482 F.3d 591, 596 (D.C. Cir. 2004) (quoting *Bowie*, 232 F.3d at 930); *see also* Fed. R. Evid.404(b) ("other crimes" evidence admissible to show, among other things, "proof of motive, opportunity, intent,

preparation, plan, knowledge, identity, or absence of mistake or accident").[7] As the District of Columbia Circuit explained in *Bowie*:

> [A] Rule 404(b) objection will not be sustained if:1) the evidence of other crimes or acts is relevant in that it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence, Fed. R. Evid.401; 2) the fact of consequence to which the evidence is directed relates to a matter in issue other than the defendant's character or propensity to commit crime; and 3) the evidence is sufficient to support a jury finding that the defendant committed the other act.

232 F.3d at 930 (internal quotation marks omitted)."[I]f evidence is offered for proper purposes under Rule 404(b), 'the evidence is subject only to general strictures limiting admissibility such as Rules 402 and 403."

Where knowledge and intent are elements that the government must prove at trial, the courts of the District of Columbia have consistently interpreted Rule 404(b) to allow the government to introduce "other acts" to prove those elements. For instance, in *Bowie*, a currency fraud case, the District of Columbia Circuit affirmed the district court's admission of the defendant's involvement in a prior, uncharged act of currency fraud. 232 F.3d at 930. Concluding that "[i]ntent and knowledge were . . . facts of consequence to the case," *Bowie* held that "[e]vidence Bowie possessed and passed counterfeit notes on a prior occasion was relevant because it decreased the likelihood that Bowie accidentally or innocently possessed the counterfeit notes on May 16. . . . " *Id*. As the panel determined, "[i]ntent and knowledge are also well-established non-propensity purposes for admitting evidence of prior crimes or acts"

---

[7] This Court's decision to admit evidence under Rule 404(b) is afforded "much deference," *United States v. Cassell*, 292 F.3d 788, 792 (D. C. Cir. 2002), and will be reviewed for an abuse of discretion. *See, e. g., Bowie*, 232 F.3d at 926-27.

under Rule 404(b). *Id*. *See also United States v. Burch*, 156 F.3d 1315, 1324 (D.C. Cir. 1998) ("evidence of appellant's prior conviction went beyond the issue of character, and went to the issues of knowledge and intent which formed the basis of appellant's trial defense").

This Court recently adopted a similar approach in *United States v. Brown*, 535 F. Supp.2d 80 (D.D.C. 2008). There, the government sought to introduce, pursuant to Rule 404(b), evidence concerning the following uncharged conduct: the defendant's "intention to purchase a home with the proceeds of the $5.5 million instrument he attempted to negotiate, as well as his failure to pay for the home inspection," "evidence that [the defendant] purchased three Toyotas from CarMax with instruments similar to those with which he was charged," and evidence that the defendant "attempted to negotiate a similar instrument with PNC Bank." *Id* at 81. *Brown* held that Rule 404(b) permitted admission of numerous other uncharged acts to prove the defendant's knowing involvement in the currency fraud transactions set forth in the indictment:

> [E]vidence that Mr. Brown previously tried to use similar fictitious obligations to get money or property [and] that he had been successful in gaining property in exchange for the fictitious obligations . . .were [] relevant to show the defendant's state of mind and negate a good faith defense.

*Id*. Similarly, with respect to evidence concerning the CarMax and PNC Bank transactions, this Court concluded that "the elements of the charged crimes made Mr. Brown's intent and knowledge matters of consequence," and that the uncharged conduct was "probative of these issues and its probative value was not outweighed by the danger of unfair prejudice." *Id*. at 82. *United States v. Douglas*, 482 F.3d 591, 596-97 (D.C. Cir. 2004) (Rule 404(b) permitted admission of defendant's prior possession and distribution of narcotics, because knowledge and intent were elements of subsequent narcotics charge)*; United States v. Linares*, 367 F.3d 941,

950 (D.C. Cir. 2004) (contrasting case at bar, where "no reasonable jury could have concluded that Linares possessed a gun without knowing it was a gun," with *Bowie*, which was "a clear case for introducing 404(b) evidence [because] a reasonable jury could conclude that even though the defendant knowingly held the bills, he had no idea they were counterfeit")

For many of the same reasons described above, Items 1 through 7 are alternatively admissible under Rule 404(b), both to prove Stevens' knowledge and intent (as well as opportunity, motive, and absence of mistake) concerning the crimes charged, as well as to rebut Stevens' anticipated defense that he was either unaware of or uninvolved in the benefits he received from Allen, VECO and others. The other numerous transactions between Allen, VECO and Stevens (*see* Items 2-5) establish Stevens' knowledge and intent concerning the things Allen and VECO provided him. They also remove any doubt that Stevens was "mistaken" as to the source and extent of the benefits provided. Stevens' contemporaneous real estate transaction with another personal friend (*see* Item 1) is relevant to establishing Stevens' knowledge and intent concerning his personal investments and financial status. It is further relevant to rebut Stevens' defenses that he was not involved with, or was mistaken about the details of, either his real estate transactions or his personal finances during the period from 2000 to 2003. Finally, evidence of Stevens' consciousness of guilt (Item 6) and attempts to instruct grand jury witnesses as to the scope of their testimony (Item 7) show Stevens' knowledge of his receipt of unreported benefits and his motive to continue their concealment.

Nor are "other acts" *per se* inadmissible under Rule 404(b) if the defendant did "nothing improper" in performing them. *See, e.g.,* Stevens Mem. No. 9 at 4. In *United States v. Long*, 328 F.3d 655 (D.C. Cir. 2003), a case involving alleged criminal sexual misconduct with minors,

the District of Columbia Circuit considered the district court's decision to admit evidence of a defendant's sexual encounters with two adult males. *Id*. at 659-60.  The district court admitted the evidence pursuant to Rule 404(b), concluding that "it was probative of Long's intent to engage in criminal sexual conduct with the six minor victims." *Id*. at 661.  In affirming the district court's Rule 404(b) determination, *Long* explicitly rejected the notion (*see* Stevens Mem. No. 9 at 4, 6, 7) that the "other acts" must be criminal in nature:

> On the contrary, "Rule 404(b)'s terminology 'other crimes, wrongs, or acts' includes conduct that is neither criminal nor unlawful if it is relevant to a consequential fact." 2 Weinstein's Federal Evidence § 404.20[2][a] (2d ed.2003) (footnote omitted). The other activity need not have resulted in a charge or conviction; indeed, the defendant may even have been acquitted of the conduct, or the conduct may have been entirely lawful.

*Id*. at 661.  *Long* also disposed of the concept (*see* Stevens Mem. No. 9 at 3) that the "other acts" must involve the same parties or the same transactions as those set forth in the Indictment.  *Id*. (rejecting "the sort of exact congruence that Long suggests").

III.     <u>Neither Rule 401 Nor 403 Precludes Admission of this Evidence.</u>

Finally, in less than a page and supported by no case citations, Stevens perfunctorily argues that Rule 403 nevertheless precludes admission of the evidence described generally in the government's Notice.  *See* Stevens Mem. No. 9 at 8.  The argument is meritless.

Rule 403 provides that, "'[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice.'" *United States v. Crowder*, 141 F.3d 1202, 1210 (D. C. Cir.1998) (en banc) (quoting Fed. R. Evid.403).  As the District of Columbia Circuit explained in *United States v. Cassell*, "Rule 403 'tilts, as do the rules as a whole, toward the admission of evidence in close cases,' even when other crimes evidence is

involved." 292 F.3d 788, 795 (D. C. Cir.2002) (quoting *United States v. Moore*, 732 F.2d 983, 989 (D. C. Cir.1984)). Rule 403 "focuses on the 'danger of unfair prejudice,' and gives the court discretion to exclude evidence only if that danger 'substantially outweigh[s]' the evidence's probative value." *United States v. Gartmon*, 146 F.3d 1015, 1021 (D.C. Cir. 1998) (quoting Fed. R. Evid. 403).

For that reason, Rule 403 "does not bar powerful, or even 'prejudicial' evidence." *Id.* It "does not provide a shield for defendants who engage in outrageous acts, permitting only the crimes of Caspar Milquetoasts to be described fully to a jury," nor does it "require the government to sanitize its case, to deflate its witnesses' testimony, or to tell its story in a monotone." *Id.* "Instead, the Rule focuses on the 'danger of *unfair* prejudice,' and gives the court discretion to exclude evidence only if that danger '*substantially* outweigh[s]' the evidence's probative value." *Id.* (emphasis in original); *see also Gooch*, 514 F. Supp.2d at 70 ("The Court appreciates the argument that Mr. Gooch suffered prejudice from entry of such evidence into the record; that is the nature of all evidence that tends to demonstrate guilt.").

Finally, it is well-settled that "because the 'trial court is in the best position to perform [the] subjective balancing' required by Rule 403, 'its decision should be reviewed only for grave abuse.'" *Douglas*, 482 F.3d at 596 (quoting *Cassell*, 292 F.3d at 795-796). "As to Rule 403, each case will turn on the discretionary judgment of the trial court and its assessment, not of relevance, but of the evidentiary value of the government's Rule 404(b) evidence. On the same side of the balance, the trial court will take into account the effect of a limiting instruction to protect the rights of the accused." *Crowder*, 141 F.3d at 1210.

In the present case, evidence of defendant Stevens' request for, and receipt of, things of

value from Allen and VECO "tends to prove" whether Stevens knowingly received things from Allen, VECO, and others that he willfully failed to report. Similarly, evidence of Stevens' detailed involvement in a contemporaneous real estate transaction goes directly to the issue of whether Stevens was knowingly involved in the real estate renovations that Allen was providing him at the same time. Finally, evidence of Stevens' fall 2006 and spring 2007 conversations with Person A will "tend[] to prove" Stevens' consciousness of guilt concerning the matters now charged in the Indictment. *See, e.g.*, *Bowie*, 232 F.3d at 930; *Long*, 328 F.3d at 662; *Gooch*, 514 F. Supp.2d at 69-70.

## CONCLUSION

For the reasons stated above, Defendant's Motion *in Limine* should be denied.

Respectfully submitted,

WILLIAM M. WELCH II
Chief, Public Integrity Section

  /s/
BRENDA K. MORRIS
Principal Deputy Chief

NICHOLAS A. MARSH
EDWARD P. SULLIVAN
Trial Attorneys

JOSEPH W. BOTTINI
JAMES A. GOEKE
Assistant United States Attorneys
  for the District of Alaska

Dated: Washington, D.C.
       September 1, 2008

CERTIFICATE OF SERVICE

      I hereby certify that on September 1, 2008, a copy of the foregoing United States' Response to Stevens' Motion *in Limine* was served electronically, via the District Court's ECF system, on defense counsel as set forth below:

      Robert Cary, Esq.
      Williams & Connolly LLP
      725 Twelfth St. NW
      Washington, D.C. 20005

                                              /s/ Nicholas A. Marsh
                                                Nicholas A. Marsh