```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA


    UNITED STATES OF AMERICA          :
                                      :
                   Plaintiff,         :   Criminal Action
                                      :   No. 08-231
    v.                                :
                                      :
    THEODORE STEVENS,                 :   September 10, 2008
                                      :   11:00 a.m.
                                      :
                                      :
                   Defendant.         :   Washington, D.C.
                                      :
    ............................ :
```

**TRANSCRIPT OF PRETRIAL CONFERENCE PROCEEDINGS**
**BEFORE THE HONORABLE EMMET G. SULLIVAN,**
**UNITED STATES DISTRICT JUDGE**

APPEARANCES:

  For the United States:     **Brenda K. Morris, Attorney**
                             UNITED STATES DEPARTMENT OF
                             JUSTICE
                             10th & Constitution Avenue, NW
                             Washington, D.C.  20038
                             (202)514-1439
                             brenda.morris@usdoj.gov

                             **Nicholas Marsh, Attorney**
                             UNITED STATES DEPARTMENT OF
                             JUSTICE
                             10th & Constitution Avenue, NW
                             Washington, D.C.  20038
                             (202)307-1049
                             nicholas.marsh@usdoj.gov

                             **Edward P. Sullivan, Attorney**
                             UNITED STATES DEPARTMENT OF
                             JUSTICE
                             1400 New York Avenue, NW
                             12th Floor
                             Washington, D.C.  20005
                             (202)514-1412
                             edward.sullivan@usdoj.gov

APPEARANCES:  Cont.

For the United States:        **Joseph W. Bottini, Attorney**
                              U.S. ATTORNEY'S OFFICE
                              District of Alaska
                              222 West Seventh Avenue
                              Federal Building and U.S.
                              Courthouse
                              Anchorage, AK  99513
                              joe.bottini@usdoj.gov


For the Defendant:            **Robert M. Cary, Esq.**
                              WILLIAMS & CONNOLLY, LLP
                              725 12th Street, NW
                              Washington, D.C.  20005
                              (202)434-5175
                              rcary@wc.com

                              **Brendan V. Sullivan, Jr., Esq.**
                              WILLIAMS & CONNOLLY, LLP
                              725 12th Street, NW
                              Washington, D.C.  20005
                              (202)434-5029
                              bsullivan@wc.com

                              **Alex Giscard Romain, Esq.**
                              2842 S. Columbus St.
                              Arlington, VA  22206
                              (202) 434-5164
                              202-434-5029 (fax)
                              aromain@wc.com


Court Reporter:               **Scott L. Wallace, RDR, CRR**
                              Official Court Reporter
                              Room 6509, U.S. Courthouse
                              Washington, D.C. 20001
                              202.326.0566
                              scottlyn01@aol.com


Proceedings reported by machine shorthand, transcript produced
by computer-aided transcription.

1          <u>**AFTERNOON SESSION, SEPTEMBER 10, 2008**</u>

2     (2:20 p.m.)

3          THE COURT:  All right, counsel.  I'm going to take the

4     government up on its offer to review that Redweld, one Redweld,

5     right?  The speech and debate material.  I need to get it today,

6     though, if I can.  I need to get it today.  And I promise a

7     prompt ruling on the speech and debate issue, recognizing that

8     either side can challenge that in the Court of Appeals.  So I

9     promise you a prompt ruling.

10          The 404(b) issues I want to think about a little bit more.

11     I'll take them under advisement.  But again, I'll provide you

12     with a ruling; not as prompt as speech and debate, but just as

13     soon as I can get to it.

14          I'm not accusing anyone of doing anything improper at all.

15     I want to be clear about that.  We're approaching the trial date,

16     people have questions, but I have to insist that if any side has

17     a question, that you get someone from the other side on the

18     phone.  I don't care how -- whatever the inquiry is.  I mean, I

19     think that both sides -- keep in mind, if we get an inquiry from

20     someone, even if it's about scheduling or something really

21     nocuous, it puts the Court in an awkward position.  You're not

22     going to talk to me, first of all, but you're going to talk to

23     someone on my staff, and I just think it's more appropriate to --

24     that everyone be on the same page, same phone call.  So just get

25     someone else on the other side on the phone.  We'll be happy to

1    deal with whatever the inquiry is, but I have to emphasize that.

2    We can't -- and again I'm not accusing anyone of doing anything

3    in appropriate at all but there will be a lot of questions that

4    people have to ask, and it's just best to get someone from the

5    other side on the phone.

6         I want to emphasize that even though I'm requiring you to

7    exchange your exhibit and witness lists over a relatively short

8    period of time and address objections, and, indeed, on the

9    pre-trial -- on the supplemental pre-trial hearing date have with

10   you in court the exhibits that are the subject of any objections.

11   I want to emphasize that the objections should be good faith

12   objections period, and that's all I'm going to say, you know.

13   Please don't inundate us with 400 irrelevant or immaterial

14   objections.  I mean, if there's a legitimate evidentiary basis

15   for an objection, then I need to resolve it and deal with it

16   pre-trial, to the extent I can.

17        I have -- the Court's always open.  I've granted the

18   defendant's motion for additional relief, which essentially is a

19   motion to file additional motions, and this case is being hotly

20   contested, as well it should be.  But, as I said earlier, it

21   doesn't mean I'm opening the floodgates for all sorts of motions

22   that anyone can possibly think of filing.  And again, I'm not

23   accusing anyone of doing that, but we don't have a lot of time.

24   I will entertain and focus on motions for appropriate relief that

25   either side believes is appropriate to bring to the Court's

1    attention.  I mean, that's why I'm here.

2        But be mindful that we don't have a lot of time between

3    now and the commencement of the trial date.  But if there's a

4    burning desire to file a motion for relief and it has to be filed

5    and it's meritorious and in good faith, there's a basis for it in

6    fact and in law, file it.  That's all I'm going to say right now.

7        With respect to the statute of limitations argument, I

8    don't plan to write on this.  If need be, I will, but I'm going

9    to orally rule on that motion now.

10       Senator Stevens, as we know, the senior senator from

11   Alaska, is charged in a seven-count indictment with making false

12   statements in violation of 18 U.S. Code Section 1001.  That

13   provision reads in relevant part, sub A, "Except as otherwise

14   provided in this section, whoever, in any matter within the

15   jurisdiction of the executive, legislative, or judicial branch of

16   the government of the United States, knowingly and willfully,

17   one, falsifies, conceals, or covers up by any trick, scheme, or

18   device a material fact, or two, makes any materially false,

19   fictitious, or fraudulent statement or representation, shall be

20   fined and/or imprisoned for not more than five years."

21       As a United States Senator, Stevens is required to file

22   annual financial disclosure forms disclosing the amount of

23   liabilities in excess of $10,000 owed during the calendar year by

24   the filer, the filer's spouse, or any dependent child, as well as

25   the identity of the individual or entity to whom each debt was

1    owed.  Filers are also required to disclose any gifts received

2    during the calendar year from a single source if the aggregate

3    value of the items received was greater than a particular dollar

4    amount ranging from 260 to $305, depending on the year.

5         According to the indictment, VECO is an Alaska-based

6    corporation that, among other things, provided oil pipeline and

7    construction services to the oil industry and to the public

8    sector worldwide.  Bill Allen was the CEO and part owner of VECO.

9         The government alleges that between 1999 and 2007, Senator

10   Stevens, and I quote, "knowingly and willfully engaged in a

11   scheme to conceal a material fact; that is, his continuing

12   receipt of hundreds of thousands of dollars' worth of things of

13   value from a private corporation and its chief executive officer

14   by, among other things, failing to report them as required on

15   Stevens' required yearly financial disclosure forms," end quote.

16   That's indictment paragraph 15.

17        The indictment goes on to allege that Stevens took steps

18   to conceal his continued receipt of things of value from VECO and

19   Allen, and that, as a part of the scheme, Stevens received and

20   accepted solicitations for multiple official actions from Allen

21   and other VECO employees.

22        Count 1 of the indictment is brought under 18 U.S.C.

23   1001(a)(1) and alleges the, quote unquote, "scheme" to conceal

24   his continued receipt of things of value by, among other things,

25   failing to disclose them on his financial disclosure forms.

1       Counts 2 to 7 are brought under 18 U.S. Code 1001(a)(2)

2   and allege that for calendar years 2001 to 2006, respectively,

3   Stevens knowingly and willfully made and caused to be made

4   material false, fictitious, and fraudulent statements and

5   representations when he -- and I quote "falsely reported and

6   caused to be reported on his annual financial disclosure forms

7   and attachments thereto that during the calendar year he had

8   received no gifts from a single source above the aggregate amount

9   and that he had no liabilities in an amount greater than

10  $10,000."

11      Stevens agreed to toll the statute of limitations as of

12  May 9th, 2002.  He maintains that Count 1 should be dismissed

13  because 18 U.S. Code Section 1001 is governed by a five-year

14  statute of limitations, and Count 1 alleges, and I quote, "It's a

15  central element of the scheme that Senator Stevens filed

16  inaccurate annual financial disclosure forms, including for

17  calendar years 1999 to 2000, which reaches beyond the limitations

18  period.

19      He basis his argument on the Supreme Court's decision in

20  *Toussie* -- that's T-O-U-S-S-I-E -- *versus the United States*, 397

21  U.S. 112, a 1970 opinion of the Supreme Court.  *Toussie* was

22  convicted of failing to register for the draft within five days

23  of his 18th birthday.  He turned 18 in 1959 but was not indicted

24  until 1967, some eight years later.  He argued the crime was

25  completed in 1959 and thus the statute of limitations expired in

1   1964.

2       The government argued that the law required a continuing

3   duty to register that lasted until the age of 26 and thus the

4   indictment was timely brought before *Toussie* turned 31.

5       The Supreme Court framed the issue this way.  Quote, "If

6   the offense is a continuing one, the prosecution was timely, but

7   if not, the District Court erred in not dismissing the

8   indictment."

9       After reviewing the purposes of the statute of

10  limitations, the Court noted, and I quote, "These principles

11  indicate that the doctrine of continuing offenses should be

12  applied in only limited circumstances since, as the Court of

13  Appeals correctly observed in this case, 'The tension between the

14  purpose of a statute of limitations and the continuing offense

15  doctrine is apparent; the latter, for all practical purposes,

16  extends the statute beyond the stated term.'  These

17  considerations do not mean that a particular offense should never

18  be construed as a continuing one.  They do, however, require that

19  such a result should not be reached unless the explicit language

20  of the substantive criminal statute compels such a conclusion, or

21  the nature of the crime involved is such that Congress must

22  assuredly have intended that it be treated as a continuing one".

23  End quote.

24      After reviewing the evolution of the armed services

25  registration laws, the Supreme Court concluded that:  "Viewed in

1    light of the history, we do not think the Act intended to treat

2    continued failure to register as a renewal of the original crime

3    or the repeated commission of new offenses, but rather

4    perpetuated the conception of the first registration that a man

5    must register at a particular time, and his failure to do so at

6    that time is a single offense.  That time will not be the same

7    day for all as it was in 1917, and from the Selective Service's

8    viewpoint, the process registration is a 'continuing one'.  But

9    from the registrant's viewpoint, the obligation arises at a

10   specific time."  End quote.

11        Senator Stevens argues that under *Toussie*, a continuing

12   offense exists only if the explicit language of the substantive

13   criminal statute compels such a conclusion or the nature of the

14   crime involved is such that Congress must assuredly have intended

15   it to be treated as a continuing one and that neither of these

16   requirements is true of 18 U.S. Code Section 1001.  In support of

17   his argument, Stevens cites a number of cases from other

18   jurisdictions finding that 1001(a)(1) scheme allegations are not

19   continuing offenses.  See, e.g., *United States versus Dunne,* 324

20   Fed 3 1158; *United States versus Gremillion-Stovall*, 397 Fed Sup.

21   2d 798, and *United States versus Mubayyid*, M-U-B-A-Y-Y-I-D, 2008

22   Westlaw 2856415.

23        In response, the government offers two arguments:  First,

24   the "continuing offense" doctrine does not apply where, as here,

25   affirmative acts taken in furtherance of the scheme occur within

1    the statute of limitations period, relying on the *Heacock* case,

2    31 F. 3d 249.  The government addresses one case cited by the

3    defendant, *United States versus Mubayyid*, and notes that under

4    that case's rationale, each time the defendant commits an

5    affirmative act of concealment in furtherance of the scheme, a

6    new limitations period is triggered for the scheme.

7        Next, the government argues that the D.C. Circuit has held

8    that 1001(a)(1) is the continuing offense for statute of

9    limitations purposes, and this argument is grounded on two cases:

10   *Bramblett versus U.S.,* 231 F. 2d 49, and *United States versus*

11   *Hubbell*, 44 F. 2d 489.

12       In *Bramblett,* the congressman was indicted under

13   1001(a)(1) and alleged to have engaged in a scheme whereby he

14   falsely filed a form with the House of Representatives claiming

15   to hire a woman as a clerk in his office.  For a period of time

16   the woman so designated received a salary and paid it over to the

17   defendant.  The defendant claimed that the crime was complete

18   and, therefore, the statute of limitations began to run when he

19   filed the form.

20       The Circuit disagreed finding that, quote, "a continuing

21   crime of falsification by a scheme is thus charged and proved,

22   and the period of limitations did not begin to run until the

23   scheme ended."  End quote.

24       The Court went on to state, and I quote, that "We have

25   here a situation comparable to some conspiracies in the sense

1    that the scheme continued over a period of time, as conspiracies

2    often do.  Of course, there's no conspiracy charged; only one

3    person is indicted, but we see no greater legal obstacle to an

4    indictment based on the continuing scheme of one person than on

5    the continuing conspiracy of more than one.  Defendant's conduct

6    in lodging the designation with the Disbursing Office, thus

7    falsifying a material fact, and in leaving it on file, thereby

8    continuing the falsification in order to repeatedly partake of

9    the fruits of the scheme, fairly falls within the terms of

10   Section 1001.

11       The portion of the statute upon which the indictment

12   rests, we think," quoting the Court, "does reveal a Congressional

13   intent to reach a pattern of conduct rather than to penalize a

14   series of acts which manifest a pattern."

15       In *Hubbell*, the defendant was charged with violations of

16   18 U.S.C. 1001 for allegedly seeking to conceal a series of

17   improper real estate transactions from the Federal Home Loan Bank

18   Board and the FDIC.  The District Court dismissed the indictment

19   on the grounds that it was vague, focusing on whether 1001

20   permits the charging of a scheme crime.  The Circuit reversed

21   stating, and I quote, that "*Hubbell*'s argument, however, cannot

22   be squared with our prior decision in *Bramblett,* which expressly

23   held that the plain language of 1001 permits the charging of

24   scheme crimes.  The defendant in *Bramblett* argued that the

25   prosecution under 1001 was time-barred because the crime was

1    complete when the designation was filed, more than three years

2    before the indictment was returned.  We rejected that argument,

3    however, explaining that 'the indictment did not merely charge

4    the making of false statement', but, instead, alleged a false

5    statement by scheme.  By 'falsifying a material fact, and leaving

6    it on file, thereby continuing the falsification in order

7    repeatedly to partake of the fruits of the scheme' the defendant

8    committed a continuing crime of falsification by scheme that

9    'fairly falls within the terms of Section 1001.'  To the extent

10   that the District Court concluded that Count 1 did not properly

11   charge an offense under 1001, it was error."

12       Stevens argues that *Bramblett* is no longer good law on

13   this point because it was decided before *Toussie* and that *Hubbell*

14   does not change that because *Hubbell* does not involve a statute

15   of limitations defense.

16       The Court will defy the defendant's motion to dismiss

17   Count 1 as time-barred.  *Toussie* did not involve a continuing

18   offense statute, and the logic in *Toussie* arguably does not apply

19   with a statute like 1001.

20       Significantly, the Supreme Court in *Toussie* stated,

21   "There's nothing inherent in the act of registration itself,

22   which makes a failure to do so a continuing crime.  Failing to

23   register is not like a conspiracy, which the Court has held

24   continues, as long as the conspirators engaged in overt acts in

25   furtherance of their plot.  It is the nature of the conspiracy

1  that each day's acts bring a renewed threat of the substantive

2  evil Congress sought to prevent."

3       In contrast to the active registration and similar to a

4  conspiracy, there is something inherent in the continued act of

5  filing false disclosures in a scheme to continue receiving things

6  of value that does make 1001(a)(1) a continuing crime.  In

7  *Bramblett*, our Circuit held that 1001(a)(1) is a continuing crime

8  for purposes of the statute of limitations.  Our Circuit

9  reaffirmed *Bramblett's* reasoning regarding scheme crimes, though

10  not in the context of the statute of limitations when it decided

11  *Hubbell*.  Because even the *Toussie* court recognized that for a

12  continuing offense such as conspiracy, the statute of limitations

13  does not run while the offenses continues, and our Circuit's

14  views is that 1001(a)(1) schemes are continuing offenses,

15  defendant's contention that *Bramblett* no longer is good law is

16  unavailing.

17       So the Court will deny that portion of the motion that

18  focuses on the statute of limitations.  I've already addressed

19  the duplicity and multiplicity arguments, and I'm not going to

20  the say anything further about those.  I've denied the motion to

21  dismiss on those grounds, as well.

22       I will take under advisement the 404(b) evidence issue.

23  I'm going to take under advisement and read in camera and review

24  in camera the relevant grand jury testimony that addresses -- and

25  evidence that addresses the speech and debate issue.  I've

1    deferred ruling on the motion to -- the government's motion in

2    limine to exclude prior criminal convictions of perspective

3    government witnesses.  I'll deal with that either before direct

4    examination of those witnesses, or, more importantly, after

5    direct and certainly before cross-examination.  I granted the

6    defendant's motion for additional relief to file yet and still

7    more motions.  I've denied the motion for Bill of Particulars.

8    The motion to dismiss is unconstitutionally vague.  The motion to

9    dismiss for a violation of separation of powers for substantially

10   the reasons articulated by the government.  The prejudicial

11   surplusage issue, I've denied that motion.  I have suggested that

12   counsel consider proposing to the Court an appropriate limiting

13   instruction.  I'll entertain whatever requests that counsel wish

14   to make.  If none, that's fine.

15       The motion to compel, I think that every aspect of the

16   motion to compel has been resolved, but I want to be clear about

17   that.  You know what, I'm not going to write an order that says

18   "follow the law."  We all know what the law is.  The

19   government -- I'm convinced that the government in its team of

20   prosecutors is thoroughly familiar with the decisions from our

21   Circuit and from my colleagues on this Court, and that they, in

22   good faith, know that they have an obligation, on an ongoing

23   basis to provide the relevant, appropriate information to defense

24   counsel to be utilized in a usable format as that information

25   becomes known or in the possession of the government, and I

1   accept that.  I'm not going to -- I don't have the time or the

2   interest to draft another order saying, you know, follow

3   *Marshall*, follow *Savavian*, follow *Poindexter*, follow all the

4   opinions that my colleagues have issued.  Follow the law, and

5   Hinson and Wise should be sufficient.  I think I've resolved

6   every aspect of the motion to compel.  If someone's unclear about

7   any aspect of that motion, you need to let me know now before you

8   leave.  All right.  Well, we're all clear on that.  We're all

9   clear on what the law is and we're all clear on what the Court's

10  rulings are.  So, what else do you want to talk about today?

11  Anything else?

12       MS. MORRIS:  Just a point of clarification, Judge.  So, on

13  Monday when the jurors come in on the 22nd, we, the attorneys,

14  need not be present?

15       THE COURT:  No, I think -- no, you have to be present.

16  You have to be present.  Senator Stevens can do what he wants to

17  do.  I don't think he may want to be present for a day.  But no,

18  I want you there.  I want you in the ceremonial courtroom.  We're

19  all going to be there.  I'm going to read a very neutral

20  statement of what this case is about.  It's not going to be long,

21  but it's going to be neutral, and it's going to be fair.  I'll

22  let you see it before I read it.  I appreciate the input I've

23  gotten from both sides, but you both put your spin on there and

24  that's fine.  Save it for your closing arguments.  I'll introduce

25  you, I'll read the statement, I'll explain to the jurors about

1    the voir dire process.  The press is welcome to be there -- no,

2    no, that's right.  No, no, no.  The press can't have any contact,

3    as much as we would like you to be there.  But you can be present

4    during voir dire, the second day, but for purposes of answering

5    the questionnaires, no one's going to be there.  I have

6    Guantanamo hearings that day.  I'm going to be in another

7    courtroom.  My courtroom deputy will be there.  There will be

8    some marshals there.  The jurors will be there.  No one else will

9    be there.

10        So, after I read the mutual case statement, we're all

11   going to leave, and the jurors will be told that they should

12   answer the questions just as soon as they can, and once they

13   answer them, they can leave.  We'll make the copies, we'll give

14   you the -- we'll give the prosecutors a copy and, pursuant to an

15   arrangement between the prosecution team and the defense team,

16   they'll make copies.  The Court will keep the original papers.

17   And once we get all the questions, get all the questions

18   answered, we're going to just mix up the list of questions and

19   invite 75 people back the second day, and we'll start promptly at

20   9:00 the second day with jury selection.  But that's all we're

21   going to do.  But no, you have to be present.  I'm glad you asked

22   that question.  You have to be present.

23        The media reps -- and I've had a discussion with Shelly

24   and representatives from the media.  And last week -- and the

25   media reps will be present for the voir dire.  We'll have an

1    overflow room somewhere in this courthouse.  I will have issued a

2    pre-trial order that deals with seating and overflow and things

3    of that nature.  I probably won't issue that until next Thursday

4    or Friday.  I need to speak with the attorneys at the end of the

5    day on Monday probably around 3:00 or 5:00 or so, but we'll talk

6    about that later.  But you're going to have to come back because

7    we're going to have to talk about the next day and address any

8    problems that have come up that day.  Hopefully there will be

9    none.  But we'll have to talk about how we're going to proceed

10   the next day.  I'll get into all of this next Thursday as well

11   for the final pre-trial hearing.  But no, I'm glad you asked that

12   question.  But yes, please be there.

13        MS. MORRIS:  Okay.

14        THE COURT:  Anything else?  Any other questions?

15        MS. MORRIS:  No.

16        THE COURT:  We have some time.  We're somewhat ahead of

17   schedule.  I planned to be a little bit longer.  If anyone has

18   any other questions they would like to ask now, today is a golden

19   opportunity because everyone is here.  Scheduling.  Logistics.

20   To the extent I can accommodate a witness with respect to travel,

21   I will.  We're not going to wait for people, though, to show up,

22   so I hope you have your subpoenas out there.  But to the extent I

23   need to call someone out of turn to accommodate, you know,

24   someone's travel plans to fly here or fly away from here, I'll be

25   happy to do so, but I need some advance notice.

 1      MR. CARY:  Understood, Your Honor.  One issue.  Counsel

 2  for the government and counsel for the defense have spoken about

 3  order of witnesses, and I believe we have an agreement that 24

 4  hours in advance of that day's testimony will disclose the next

 5  day's witness.

 6      THE COURT:  That's fine.  That's fine.  To the extent

 7  you're able to work out these issues -- because you surprised me.

 8  I applaud your efforts in resolving the *Jencks* issue.  You

 9  surprised me.  I had some other thoughts in mind, but no need to

10  share them.  But to the extent you're able to work them out, do

11  so.  But let me know what you've worked out so we don't have to

12  spend any time or energy trying to work out the same issues.  But

13  that's fine.

14      MR. CARY:  And, Your Honor, I assume that at our next

15  sitting we can discuss the mechanics of how we'll exercise for

16  cause strikes, peremptory strikes.

17      THE COURT:  I can tell you that right now.  I can tell you

18  what we're going to do.  Voir dire will be in this courtroom.  It

19  will be in open court.  The 75 jurors will be seated somewhere in

20  the courthouse, maybe the jury room, maybe another courtroom, and

21  we'll bring in each individual juror.  Wherever the juror wants

22  to sit, whether it be the witness box or the panel over there,

23  that's fine with me.  I will ask appropriate follow-up questions

24  with respect to answers given.  I'll invite counsel to ask

25  appropriate follow-up questions to any questions the Court will

1    ask.  Once we finish asking questions of a witness and that

2    person has left, I'm going to entertain strikes for cause at that

3    time.  So don't save your best argument for later because it's

4    always difficult to try and figure out who was it counsel was

5    talking about.  So, if you have a strike for cause, let me know

6    and I'll rule on it at that time.

7         We're going to have 12 jurors, 4 alternates.  I always

8    have to rely on Carol.  What's the magic number for that, 38?

9         THE COURTROOM CLERK:  I would say 34.

10        THE COURT:  34 qualified jurors before we can get down to

11   16.  That's it.  I mean, I will -- we haven't talked about

12   peremptories, the number of peremptories.  I probably will just

13   follow the rules.  This is a solo defendant case.  I see no

14   reason to depart from the normal peremptory strikes.  But we

15   haven't talked about that.  Is there some need to depart from the

16   number provided for in the rules?

17        MS. MORRIS:  I don't anticipate anything, Judge, no.

18        THE COURT:  No, I don't think so either.

19        MR. CARY:  And Your Honor, we might know when we see the

20   answers, but right now, no, we don't anticipate anything.

21        THE COURT:  Right.  But it will be straightforward.  I

22   never require jurors to stand up and answer in the presence of --

23   normally I conduct voir dire in the jury room, but in this case I

24   won't.  It will be here in open court.  And again, the media

25   representatives are more than welcome to be present.  There will

1   be an overflow room as well.  That's it.  Very straightforward.

2   My preference would be, if we're able to select a jury, the

3   second day we would immediately start the trial, but that's

4   probably overly optimistic, and we probably should start

5   Wednesday, and with a little bit of luck we should have a jury

6   selected Tuesday.  Nothing I can do about Monday.  It's kind of

7   already spoken for with other matters because I have some

8   Guantanamo hearings that have been scheduled for some time.  So,

9   the best we can accomplish on Monday is just getting the

10  questionnaires answered.  Any other questions like that?  I would

11  be happy to answer them, to the extend I can, right now.

12       MR. CARY:  Not today, Your Honor.

13       THE COURT:  How long do you think you'll need for your

14  opening statement?  And to defendant, I'd ask this question:  Do

15  you plan to make an opening statement immediately after the

16  government, or are you going to wait until later in the case?

17       MR. BRENDAN SULLIVAN:  Actually, I would like to make it

18  before the government, but, given the rules, I'll make it right

19  after.

20       MS. MORRIS:  I'd say roughly 45 minutes.

21       THE COURT:  All right.

22       MS. MORRIS:  Give or take.

23       THE COURT:  I'm going to hold you to it.  I'm going to let

24  you try your case within the meaning of the rules, but I'm going

25  to hold you to what you tell me; 45 minutes opening statement.

1          MS. MORRIS:  Give or take.

2          THE COURT:  Give or take what, another 45?  So, an hour or

3     less?

4          MS. MORRIS:  Yes, sir, I think that's adequate.

5          MR. BRENDAN SULLIVAN:  I would say an hour, give or take

6     15 minutes.

7          THE COURT:  I think that's fair.  It's not my style to

8     interrupt people in opening statements or closing arguments.  By

9     the same token, if anyone else has an objection, don't hold back

10    on objections.  Don't wait until the end of closing arguments or

11    opening statements.  Hopefully, there won't be any objections

12    during opening statements or closing arguments, but if there are

13    I need to know what the objections are at the time that the

14    attorney is aware of the objectionable statement that's been

15    made.  So, anything else?

16         MS. MORRIS:  No, sir.

17         MR. CARY:  No, Your Honor.

18         THE COURT:  All right.  It's good to see everyone.  I

19    don't think I have anything else.  All right.  Good to see

20    everyone.  Have a nice day.

21         (Proceedings adjourned at 2:47 p.m.)

22

23

24

25

1

2

## C E R T I F I C A T E

3

4            I, Scott L. Wallace, RDR-CRR, certify that
the foregoing is a correct transcript from the record of
5    proceedings in the above-entitled matter.

6

          _____
7              Scott L. Wallace, RDR, CRR
                Official Court Reporter
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## $

**$10,000** [2] - 5:23; 7:10
**$305** [1] - 6:4

## '

**'continuing** [1] - 9:8
**'fairly** [1] - 12:9
**'falsifying** [1] - 12:5
**'the** [2] - 8:13; 12:3

## 1

**1** [5] - 6:22; 7:12, 14; 12:10, 17
**1001** [11] - 5:12; 7:13; 9:16; 11:10, 16, 19, 23, 25; 12:9, 11, 19
**1001(a)(1** [7] - 6:23; 9:18; 10:8, 13; 13:6, 14
**1001(a)(2** [1] - 7:1
**112** [1] - 7:21
**1158** [1] - 9:20
**12** [1] - 19:7
**15** [2] - 6:16; 21:6
**16** [1] - 19:11
**18** [7] - 5:12; 6:22; 7:1, 13, 23; 9:16; 11:16
**18th** [1] - 7:23
**1917** [1] - 9:7
**1959** [2] - 7:23, 25
**1964** [1] - 8:1
**1967** [1] - 7:24
**1970** [1] - 7:21
**1999** [2] - 6:9; 7:17

## 2

**2** [1] - 7:1
**2000** [1] - 7:17
**2001** [1] - 7:2
**2002** [1] - 7:12
**2006** [1] - 7:2
**2007** [1] - 6:9
**2008** [1] - 9:21
**22nd** [1] - 15:13
**231** [1] - 10:10
**24** [1] - 18:3
**249** [1] - 10:2
**26** [1] - 8:3
**260** [1] - 6:4
**2856415** [1] - 9:22
**2:47** [1] - 21:21
**2d** [2] - 9:21; 10:10

## 3

**3** [1] - 9:20
**31** [2] - 8:4; 10:2

**324** [1] - 9:19
**34** [2] - 19:9
**38** [1] - 19:8
**397** [2] - 7:20; 9:20
**3:00** [1] - 17:5
**3d** [1] - 10:2

## 4

**4** [1] - 19:7
**400** [1] - 4:13
**404(b** [1] - 13:22
**44** [1] - 10:11
**45** [3] - 20:20, 25; 21:2
**489** [1] - 10:11
**49** [1] - 10:10

## 5

**5:00** [1] - 17:5

## 7

**7** [1] - 7:1
**75** [2] - 16:19; 18:19
**798** [1] - 9:21

## 9

**9:00** [1] - 16:20
**9th** [1] - 7:12

## A

**able** [3] - 18:7, 10; 20:2
**above-entitled** [1] - 22:5
**accept** [1] - 15:1
**accepted** [1] - 6:20
**accommodate** [2] - 17:20, 23
**accomplish** [1] - 20:9
**According** [1] - 6:5
**accusing** [2] - 4:2, 23
**act** [3] - 10:5; 12:21; 13:4
**Act** [1] - 9:1
**actions** [1] - 6:20
**active** [1] - 13:3
**acts** [4] - 9:25; 11:14; 12:24; 13:1
**additional** [3] - 4:18; 14:6
**address** [2] - 4:8; 17:7
**addressed** [1] - 13:18
**addresses** [3] - 10:2; 13:24
**adequate** [1] - 21:4
**adjourned** [1] - 21:21
**advance** [2] - 17:25; 18:4
**advisement** [2] - 13:22
**age** [1] - 8:3

**aggregate** [2] - 6:2; 7:8
**agreed** [1] - 7:11
**agreement** [1] - 18:3
**ahead** [1] - 17:16
**Alaska** [2] - 5:11; 6:5
**Alaska-based** [1] - 6:5
**allegations** [1] - 9:18
**allege** [2] - 6:17; 7:2
**alleged** [2] - 10:13; 12:4
**allegedly** [1] - 11:16
**alleges** [3] - 6:9, 23; 7:14
**Allen** [3] - 6:8, 19
**alternates** [1] - 19:7
**amount** [4] - 5:22; 6:4; 7:8
**annual** [3] - 5:22; 7:6, 16
**answer** [4] - 16:12; 19:22; 20:11
**answered** [2] - 16:18; 20:10
**answering** [1] - 16:4
**answers** [2] - 18:24; 19:20
**anticipate** [2] - 19:17, 20
**apparent** [1] - 8:15
**Appeals** [1] - 8:13
**applaud** [1] - 18:8
**applied** [1] - 8:12
**apply** [2] - 9:24; 12:18
**appreciate** [1] - 15:22
**appropriate** [7] - 4:3, 24-25; 14:12, 23; 18:23, 25
**arguably** [1] - 12:18
**argued** [3] - 7:24; 8:2; 11:24
**argues** [3] - 9:11; 10:7; 12:12
**argument** [7] - 5:7; 7:19; 9:17; 10:9; 11:21; 12:2; 19:3
**arguments** [6] - 9:23; 13:19; 15:24; 21:8, 10, 12
**arises** [1] - 9:9
**armed** [1] - 8:24
**arrangement** [1] - 16:15
**articulated** [1] - 14:10
**aspect** [3] - 14:15; 15:6
**assume** [1] - 18:14
**assuredly** [2] - 8:22; 9:14
**attachments** [1] - 7:7
**attention** [1] - 5:1
**attorney** [1] - 21:14
**attorneys** [2] - 15:13; 17:4
**aware** [1] - 21:14

## B

**Bank** [1] - 11:17
**barred** [2] - 11:25; 12:17
**based** [2] - 6:5; 11:4
**basis** [4] - 4:14; 5:5; 7:19; 14:23
**becomes** [1] - 14:25
**began** [1] - 10:18
**begin** [1] - 10:22
**believes** [1] - 4:25
**best** [3] - 4:4; 19:3; 20:9
**between** [4] - 5:2; 6:9; 8:13; 16:15
**beyond** [2] - 7:17; 8:16

**Bill** [2] - 6:8; 14:7
**birthday** [1] - 7:23
**bit** [2] - 17:17; 20:5
**Board** [1] - 11:18
**box** [1] - 18:22
**Bramblett** [7] - 10:10, 12; 11:22, 24; 12:12; 13:7, 15
**Bramblett's** [1] - 13:9
**branch** [1] - 5:15
**BRENDAN** [2] - 20:17; 21:5
**bring** [3] - 4:25; 13:1; 18:21
**brought** [3] - 6:22; 7:1; 8:4
**burning** [1] - 5:4

## C

**calendar** [5] - 5:23; 6:2; 7:2, 7, 17
**camera** [2] - 13:23
**cannot** [1] - 11:21
**Carol** [1] - 19:8
**CARY** [5] - 18:1, 14; 19:19; 20:12; 21:17
**case** [10] - 4:19; 8:13; 10:1; 15:20; 16:10; 19:13, 23; 20:16, 24
**case's** [1] - 10:4
**cases** [2] - 9:17; 10:9
**caused** [2] - 7:3, 6
**central** [1] - 7:15
**CEO** [1] - 6:8
**ceremonial** [1] - 15:18
**certainly** [1] - 14:5
**certify** [1] - 22:4
**change** [1] - 12:14
**charge** [2] - 12:3, 11
**charged** [4] - 5:11; 10:21; 11:2, 15
**charging** [2] - 11:20, 23
**chief** [1] - 6:13
**child** [1] - 5:24
**Circuit** [6] - 10:7; 11:20; 13:7; 14:21
**Circuit's** [1] - 13:13
**circumstances** [1] - 8:12
**cited** [1] - 10:2
**cites** [1] - 9:17
**claimed** [1] - 10:17
**claiming** [1] - 10:14
**clarification** [1] - 15:12
**clear** [4] - 14:16; 15:8
**CLERK** [1] - 19:9
**clerk** [1] - 10:15
**closing** [4] - 15:24; 21:8, 10, 12
**Code** [4] - 5:12; 7:1, 13; 9:16
**colleagues** [2] - 14:21; 15:4
**commencement** [1] - 5:3
**commission** [1] - 9:3
**commits** [1] - 10:4
**committed** [1] - 12:8
**comparable** [1] - 10:25
**compel** [3] - 14:15; 15:6
**compels** [1] - 8:20; 9:13
**complete** [2] - 10:17; 12:1

**completed** [1] - 7:25
**conceal** [4] - 6:11, 18, 23; 11:16
**concealment** [1] - 10:5
**conceals** [1] - 5:17
**conception** [1] - 9:4
**concluded** [2] - 8:25; 12:10
**conclusion** [2] - 8:20; 9:13
**conduct** [3] - 11:5, 13; 19:23
**Congress** [3] - 8:21; 9:14; 13:2
**Congressional** [1] - 11:12
**congressman** [1] - 10:12
**consider** [1] - 14:12
**considerations** [1] - 8:17
**conspiracies** [2] - 10:25; 11:1
**conspiracy** [6] - 11:2, 5; 12:23, 25; 13:4, 12
**conspirators** [1] - 12:24
**construction** [1] - 6:7
**construed** [1] - 8:18
**contact** [1] - 16:2
**contention** [1] - 13:15
**contested** [1] - 4:20
**context** [1] - 13:10
**continue** [1] - 13:5
**continued** [5] - 6:18, 24; 9:2; 11:1; 13:4
**continues** [2] - 12:24; 13:13
**continuing** [24] - 6:11; 8:2, 6, 11, 14, 18, 22; 9:11, 15, 19, 24; 10:8, 20; 11:4, 8; 12:6, 8, 17, 22; 13:6, 12, 14
**contrast** [1] - 13:3
**convicted** [1] - 7:22
**convictions** [1] - 14:2
**convinced** [1] - 14:19
**copies** [2] - 16:13, 16
**copy** [1] - 16:14
**corporation** [2] - 6:6, 13
**correct** [1] - 22:4
**correctly** [1] - 8:13
**counsel** [6] - 14:12, 24; 18:2, 24; 19:4
**Counsel** [1] - 18:1
**Count** [5] - 6:22; 7:12, 14; 12:10, 17
**count** [1] - 5:11
**Counts** [1] - 7:1
**course** [1] - 11:2
**court** [4] - 4:10; 13:11; 18:19; 19:24
**Court** [19] - 7:21; 8:5, 7, 10, 12, 25; 10:24; 11:12, 18; 12:10, 16, 20, 23; 13:17; 14:12, 21; 16:16; 18:25; 22:7
**Court's** [4] - 4:17, 25; 7:19; 15:9
**courthouse** [2] - 17:1; 18:20
**COURTROOM** [1] - 19:9
**courtroom** [5] - 15:18; 16:7; 18:18, 20
**covers** [1] - 5:17
**crime** [12] - 7:24; 8:21; 9:2, 14; 10:17, 21; 11:20, 25; 12:8, 22; 13:6
**crimes** [2] - 11:24; 13:9
**criminal** [3] - 8:20; 9:13; 14:2
**cross** [1] - 14:5
**cross-examination** [1] - 14:5
**CRR** [2] - 22:4, 7

**D**

**D.C** [1] - 10:7
**date** [2] - 4:9; 5:3
**day's** [3] - 13:1; 18:4
**days** [1] - 7:22
**deal** [3] - 4:1, 15; 14:3
**deals** [1] - 17:2
**debate** [1] - 13:25
**debt** [1] - 5:25
**decided** [2] - 12:13; 13:10
**decision** [2] - 7:19; 11:22
**decisions** [1] - 14:20
**defendant** [9] - 10:3, 17; 11:15, 24; 12:7; 19:13; 20:14
**defendant's** [4] - 4:18; 12:16; 13:15; 14:6
**Defendant's** [1] - 11:5
**defense** [4] - 12:15; 14:23; 16:15; 18:2
**deferred** [1] - 14:1
**defy** [1] - 12:16
**denied** [3] - 13:20; 14:7, 11
**deny** [1] - 13:17
**depart** [2] - 19:14
**dependent** [1] - 5:24
**deputy** [1] - 16:7
**designated** [1] - 10:16
**designation** [2] - 11:6; 12:1
**desire** [1] - 5:4
**device** [1] - 5:18
**difficult** [1] - 19:4
**dire** [5] - 16:1, 4, 25; 18:18; 19:23
**direct** [2] - 14:3, 5
**disagreed** [1] - 10:20
**Disbursing** [1] - 11:6
**disclose** [3] - 6:1, 25; 18:4
**disclosing** [1] - 5:22
**disclosure** [5] - 5:22; 6:15, 25; 7:6, 16
**disclosures** [1] - 13:5
**discuss** [1] - 18:15
**discussion** [1] - 16:23
**dismiss** [4] - 12:16; 13:21; 14:8
**dismissed** [2] - 7:12; 11:18
**dismissing** [1] - 8:7
**District** [3] - 8:7; 11:18; 12:10
**doctrine** [3] - 8:11, 15; 9:24
**dollar** [1] - 6:3
**dollars'** [1] - 6:12
**down** [1] - 19:10
**draft** [2] - 7:22; 15:2
**Dunne** [1] - 9:19
**duplicity** [1] - 13:19
**during** [5] - 5:23; 6:2; 7:7; 16:4; 21:12
**duty** [1] - 8:3

**E**

**e.g** [1] - 9:19
**efforts** [1] - 18:8
**eight** [1] - 7:24

**either** [3] - 4:25; 14:3; 19:18
**element** [1] - 7:15
**emphasize** [3] - 4:1, 6, 11
**employees** [1] - 6:21
**End** [3] - 8:23; 9:10; 10:23
**end** [3] - 6:15; 17:4; 21:10
**ended** [1] - 10:23
**energy** [1] - 18:12
**engaged** [3] - 6:10; 10:13; 12:24
**entertain** [3] - 4:24; 14:13; 19:2
**entitled** [1] - 22:5
**entity** [1] - 5:25
**erred** [1] - 8:7
**error** [1] - 12:11
**essentially** [1] - 4:18
**estate** [1] - 11:17
**evidence** [2] - 13:22, 25
**evidentiary** [1] - 4:14
**evil** [1] - 13:2
**evolution** [1] - 8:24
**examination** [2] - 14:4
**Except** [1] - 5:13
**excess** [1] - 5:23
**exchange** [1] - 4:7
**exclude** [1] - 14:2
**executive** [2] - 5:15; 6:13
**exercise** [1] - 18:15
**exhibit** [1] - 4:7
**exhibits** [1] - 4:10
**exists** [1] - 9:12
**expired** [1] - 7:25
**explain** [1] - 15:25
**explaining** [1] - 12:3
**explicit** [2] - 8:19; 9:12
**expressly** [1] - 11:22
**extend** [1] - 20:11
**extends** [1] - 8:16
**extent** [6] - 4:16; 12:9; 17:20, 22; 18:6, 10

## F

**fact** [5] - 5:6, 18; 6:11; 11:7; 12:5
**failing** [3] - 6:14, 25; 7:22
**Failing** [1] - 12:22
**failure** [3] - 9:2, 5; 12:22
**fair** [2] - 15:21; 21:7
**fairly** [1] - 11:9
**faith** [3] - 4:11; 5:5; 14:22
**falls** [2] - 11:9; 12:9
**false** [6] - 5:11, 18; 7:4; 12:4; 13:5
**falsely** [2] - 7:5; 10:14
**falsification** [4] - 10:21; 11:8; 12:6, 8
**falsifies** [1] - 5:17
**falsifying** [1] - 11:7
**familiar** [1] - 14:20
**FDIC** [1] - 11:18
**Fed** [2] - 9:20
**Federal** [1] - 11:17

**fictitious** [2] - 5:19; 7:4
**figure** [1] - 19:4
**file** [7] - 4:19; 5:4, 6, 21; 11:7; 12:6; 14:6
**filed** [5] - 5:4; 7:15; 10:14, 19; 12:1
**filer** [1] - 5:24
**filer's** [1] - 5:24
**Filers** [1] - 6:1
**filing** [2] - 4:22; 13:5
**final** [1] - 17:11
**financial** [5] - 5:22; 6:15, 25; 7:6, 16
**fine** [6] - 14:14; 15:24; 18:6, 13, 23
**fined** [1] - 5:20
**finish** [1] - 19:1
**first** [1] - 9:4
**First** [1] - 9:23
**five** [3] - 5:20; 7:13, 22
**five-year** [1] - 7:13
**floodgates** [1] - 4:21
**fly** [2] - 17:24
**focus** [1] - 4:24
**focuses** [1] - 13:18
**focusing** [1] - 11:19
**follow** [8] - 14:18; 15:2; 18:23, 25; 19:13
**Follow** [1] - 15:4
**follow-up** [2] - 18:23, 25
**foregoing** [1] - 22:4
**form** [2] - 10:14, 19
**format** [1] - 14:24
**forms** [5] - 5:22; 6:15, 25; 7:6, 16
**framed** [1] - 8:5
**fraudulent** [2] - 5:19; 7:4
**Friday** [1] - 17:4
**fruits** [2] - 11:9; 12:7
**furtherance** [3] - 9:25; 10:5; 12:25

## G

**gifts** [2] - 6:1; 7:8
**given** [2] - 18:24; 20:18
**glad** [2] - 16:21; 17:11
**golden** [1] - 17:18
**governed** [1] - 7:13
**government** [14] - 5:16; 6:9; 8:2; 9:23; 10:2, 7; 14:3, 10, 19, 25; 18:2; 20:16, 18
**government's** [1] - 14:1
**grand** [1] - 13:24
**granted** [2] - 4:17; 14:5
**greater** [3] - 6:3; 7:9; 11:3
**Gremillion** [1] - 9:20
**Gremillion-Stovall** [1] - 9:20
**grounded** [1] - 10:9
**grounds** [2] - 11:19; 13:21
**Guantanamo** [2] - 16:6; 20:8

## H

**happy** [2] - 17:25; 20:11
**Heacock** [1] - 10:1

hearing [2] - 4:9; 17:11
hearings [2] - 16:6; 20:8
held [4] - 10:7; 11:23; 12:23; 13:7
Hinson [1] - 15:5
hire [1] - 10:15
history [1] - 9:1
hold [3] - 20:23, 25; 21:9
Home [1] - 11:17
Honor [5] - 18:1, 14; 19:19; 20:12; 21:17
hope [1] - 17:22
Hopefully [2] - 17:8; 21:11
hotly [1] - 4:19
hour [2] - 21:2, 5
hours [1] - 18:4
House [1] - 10:14
Hubbell [5] - 10:11; 11:15; 12:13; 13:11
Hubbell's [1] - 11:21
hundreds [1] - 6:12

## I

identity [1] - 5:25
immaterial [1] - 4:13
immediately [2] - 20:3, 15
importantly [1] - 14:4
imprisoned [1] - 5:20
improper [1] - 11:17
inaccurate [1] - 7:16
including [1] - 7:16
indeed [1] - 4:8
indicate [1] - 8:11
indicted [3] - 7:23; 10:12; 11:3
indictment [12] - 5:11; 6:5, 16-17, 22; 8:4, 8; 11:4, 11, 18; 12:2
individual [2] - 5:25; 18:21
industry [1] - 6:7
information [2] - 14:23
inherent [2] - 12:21; 13:4
input [1] - 15:22
inquiry [1] - 4:1
instead [1] - 12:4
instruction [1] - 14:13
intended [3] - 8:22; 9:1, 14
intent [1] - 11:13
interest [1] - 15:2
interrupt [1] - 21:8
introduce [1] - 15:24
inundate [1] - 4:13
invite [2] - 16:19; 18:24
involve [2] - 12:14, 17
involved [2] - 8:21; 9:14
irrelevant [1] - 4:13
issue [7] - 8:5; 13:22, 25; 14:11; 17:3; 18:1, 8
issued [2] - 15:4; 17:1
issues [2] - 18:7, 12
items [1] - 6:3
itself [1] - 12:21

## J

Jencks [1] - 18:8
Judge [2] - 15:12; 19:17
judicial [1] - 5:15
jurisdiction [1] - 5:15
jurisdictions [1] - 9:18
juror [2] - 18:21
jurors [8] - 15:13, 25; 16:8, 11; 18:19; 19:7, 10, 22
jury [6] - 13:24; 16:20; 18:20; 19:23; 20:2, 5

## K

keep [1] - 16:16
kind [1] - 20:6
knowingly [3] - 5:16; 6:10; 7:3
known [1] - 14:25

## L

language [3] - 8:19; 9:12; 11:23
last [1] - 16:24
lasted [1] - 8:3
latter [1] - 8:15
law [8] - 5:6; 8:2; 12:12; 13:15; 14:18; 15:4, 9
laws [1] - 8:25
leave [3] - 15:8; 16:11, 13
leaving [2] - 11:7; 12:5
left [1] - 19:2
legal [1] - 11:3
legislative [1] - 5:15
legitimate [1] - 4:14
less [1] - 21:3
liabilities [2] - 5:23; 7:9
light [1] - 9:1
limine [1] - 14:2
limitations [17] - 5:7; 7:11, 14, 17, 25; 8:10, 14; 10:1, 6, 9, 18, 22; 12:15; 13:8, 10, 12, 18
limited [1] - 8:12
limiting [1] - 14:12
list [1] - 16:18
lists [1] - 4:7
Loan [1] - 11:17
lodging [1] - 11:6
logic [1] - 12:18
Logistics [1] - 17:19
luck [1] - 20:5

## M

magic [1] - 19:8
maintains [1] - 7:12
man [1] - 9:4
manifest [1] - 11:14
Marshall [1] - 15:3
marshals [1] - 16:8
material [5] - 5:18; 6:11; 7:4; 11:7; 12:5

**materially** [1] - 5:18
**matter** [2] - 5:14; 22:5
**matters** [1] - 20:7
**mean** [5] - 4:14, 21; 5:1; 8:17; 19:11
**meaning** [1] - 20:24
**mechanics** [1] - 18:15
**media** [4] - 16:23-25; 19:24
**merely** [1] - 12:3
**meritorious** [1] - 5:5
**might** [1] - 19:19
**mind** [1] - 18:9
**mindful** [1] - 5:2
**minutes** [3] - 20:20, 25; 21:6
**mix** [1] - 16:18
**Monday** [4] - 15:13; 17:5; 20:6, 9
**MORRIS** [9] - 15:12; 17:13, 15; 19:17; 20:20, 22; 21:1, 4, 16
**motion** [18] - 4:18; 5:4, 9; 12:16; 13:17, 20; 14:1, 6-8, 11, 15-16; 15:6
**motions** [4] - 4:19, 21, 24; 14:7
**MR** [7] - 18:1, 14; 19:19; 20:12, 17; 21:5, 17
**MS** [9] - 15:12; 17:13, 15; 19:17; 20:20, 22; 21:1, 4, 16
**Mubayyid** [2] - 9:21; 10:3
**MUBAYYID** [1] - 9:21
**multiple** [1] - 6:20
**multiplicity** [1] - 13:19
**must** [3] - 8:21; 9:5, 14
**mutual** [1] - 16:10

## N

**nature** [4] - 8:21; 9:13; 12:25; 17:3
**need** [11] - 4:15; 5:8; 15:7, 14; 17:4, 23, 25; 18:9; 19:15; 20:13; 21:13
**neutral** [2] - 15:19, 21
**never** [2] - 8:17; 19:22
**new** [2] - 9:3; 10:6
**Next** [1] - 10:7
**next** [6] - 17:3, 7, 10; 18:4, 14
**nice** [1] - 21:20
**none** [2] - 14:14; 17:9
**normal** [1] - 19:14
**normally** [1] - 19:23
**noted** [1] - 8:10
**notes** [1] - 10:3
**Nothing** [1] - 20:6
**nothing** [1] - 12:21
**notice** [1] - 17:25
**number** [4] - 9:17; 19:8, 12, 16

## O

**objection** [2] - 4:15; 21:9
**objectionable** [1] - 21:14
**objections** [8] - 4:8, 10-12, 14; 21:10, 13
**obligation** [2] - 9:9; 14:22
**observed** [1] - 8:13
**obstacle** [1] - 11:3
**occur** [1] - 9:25

**offense** [10] - 8:6, 14, 17; 9:6, 12, 24; 10:8; 12:11, 18; 13:12
**offenses** [5] - 8:11; 9:3, 19; 13:13
**offers** [1] - 9:23
**office** [1] - 10:15
**Office** [1] - 11:6
**officer** [1] - 6:13
**Official** [1] - 22:7
**official** [1] - 6:20
**often** [1] - 11:2
**oil** [2] - 6:6
**once** [2] - 16:12, 17
**Once** [1] - 19:1
**one** [9] - 5:17; 8:6, 18; 9:15; 10:2; 11:2, 4-5; 16:8
**One** [1] - 18:1
**one"** [1] - 8:22
**one'** [1] - 9:8
**one's** [1] - 16:5
**ongoing** [1] - 14:22
**open** [3] - 4:17; 18:19; 19:24
**opening** [7] - 4:21; 20:14, 25; 21:8, 11
**opinion** [1] - 7:21
**opinions** [1] - 15:4
**opportunity** [1] - 17:19
**optimistic** [1] - 20:4
**orally** [1] - 5:9
**order** [6] - 11:8; 12:6; 14:17; 15:2; 17:2; 18:3
**original** [2] - 9:2; 16:16
**otherwise** [1] - 5:13
**overflow** [3] - 17:1; 20:1
**overly** [1] - 20:4
**overt** [1] - 12:24
**owed** [2] - 5:23; 6:1
**owner** [1] - 6:8

## P

**p.m** [1] - 21:21
**paid** [1] - 10:16
**panel** [1] - 18:22
**papers** [1] - 16:16
**paragraph** [1] - 6:16
**part** [3] - 5:13; 6:8, 19
**partake** [2] - 11:8; 12:7
**particular** [3] - 6:3; 8:17; 9:5
**Particulars** [1] - 14:7
**pattern** [2] - 11:13
**penalize** [1] - 11:13
**people** [4] - 4:4; 16:19; 17:21; 21:8
**peremptories** [2] - 19:12
**peremptory** [2] - 18:16; 19:14
**period** [8] - 4:8, 12; 7:18; 10:1, 6, 15, 22; 11:1
**permits** [2] - 11:20, 23
**perpetuated** [1] - 9:4
**person** [3] - 11:3; 19:2
**perspective** [1] - 14:2
**phone** [1] - 4:5
**pipeline** [1] - 6:6
**plain** [1] - 11:23

**plan** [2] - 5:8; 20:15
**planned** [1] - 17:17
**plans** [1] - 17:24
**plot** [1] - 12:25
**Poindexter** [1] - 15:3
**point** [2] - 12:13; 15:12
**portion** [2] - 11:11; 13:17
**possession** [1] - 14:25
**possibly** [1] - 4:22
**powers** [1] - 14:9
**practical** [1] - 8:15
**pre** [5] - 4:9, 16; 17:2, 11
**pre-trial** [5] - 4:9, 16; 17:2, 11
**preference** [1] - 20:2
**prejudicial** [1] - 14:10
**presence** [1] - 19:22
**present** [9] - 15:14-17; 16:3, 21-22, 25; 19:25
**press** [2] - 16:1
**prevent** [1] - 13:2
**principles** [1] - 8:10
**private** [1] - 6:13
**problems** [1] - 17:8
**proceed** [1] - 17:9
**Proceedings** [1] - 21:21
**proceedings** [1] - 22:5
**process** [2] - 9:8; 16:1
**promptly** [1] - 16:19
**properly** [1] - 12:10
**proposing** [1] - 14:12
**prosecution** [3] - 8:6; 11:25; 16:15
**prosecutors** [2] - 14:20; 16:14
**proved** [1] - 10:21
**provide** [1] - 14:23
**provided** [3] - 5:14; 6:6; 19:16
**provision** [1] - 5:13
**public** [1] - 6:7
**purpose** [1] - 8:14
**purposes** [5] - 8:9, 15; 10:9; 13:8; 16:4
**pursuant** [1] - 16:14
**put** [1] - 15:23

## Q

**qualified** [1] - 19:10
**questionnaires** [2] - 16:5; 20:10
**questions** [12] - 4:3; 16:12, 17-18; 17:14, 18; 18:23, 25; 19:1; 20:10
**Quote** [1] - 8:5
**quote** [12] - 6:10, 15, 23; 7:5, 14; 8:10, 23; 9:10; 10:20, 23-24; 11:21
**quoting** [1] - 11:12

## R

**ranging** [1] - 6:4
**rather** [2] - 9:3; 11:13
**rationale** [1] - 10:4
**RDR** [2] - 22:4, 7

**RDR-CRR** [1] - 22:4
**reach** [1] - 11:13
**reached** [1] - 8:19
**reaches** [1] - 7:17
**read** [5] - 13:23; 15:19, 22, 25; 16:10
**reads** [1] - 5:13
**reaffirmed** [1] - 13:9
**real** [1] - 11:17
**reason** [1] - 19:14
**reasoning** [1] - 13:9
**reasons** [1] - 14:10
**receipt** [3] - 6:12, 18, 24
**received** [5] - 6:1, 3, 19; 7:8; 10:16
**receiving** [1] - 13:5
**recognized** [1] - 13:11
**record** [1] - 22:4
**regarding** [1] - 13:9
**register** [5] - 7:22; 8:3; 9:2, 5; 12:23
**registrant's** [1] - 9:9
**registration** [5] - 8:25; 9:4, 8; 12:21; 13:3
**rejected** [1] - 12:2
**relatively** [1] - 4:7
**relevant** [3] - 5:13; 13:24; 14:23
**relief** [4] - 4:18, 24; 5:4; 14:6
**rely** [1] - 19:8
**relying** [1] - 10:1
**renewal** [1] - 9:2
**renewed** [1] - 13:1
**repeated** [1] - 9:3
**repeatedly** [2] - 11:8; 12:7
**report** [1] - 6:14
**reported** [2] - 7:5
**Reporter** [1] - 22:7
**representation** [1] - 5:19
**representations** [1] - 7:5
**representatives** [2] - 16:24; 19:25
**Representatives** [1] - 10:14
**reps** [2] - 16:23, 25
**requests** [1] - 14:13
**require** [2] - 8:18; 19:22
**required** [5] - 5:21; 6:1, 14-15; 8:2
**requirements** [1] - 9:16
**requiring** [1] - 4:6
**resolve** [1] - 4:15
**resolved** [2] - 14:16; 15:5
**resolving** [1] - 18:8
**respect** [3] - 5:7; 17:20; 18:24
**respectively** [1] - 7:2
**response** [1] - 9:23
**rests** [1] - 11:12
**result** [1] - 8:19
**returned** [1] - 12:2
**reveal** [1] - 11:12
**reversed** [1] - 11:20
**review** [1] - 13:23
**reviewing** [2] - 8:9, 24
**room** [4] - 17:1; 18:20; 19:23; 20:1
**roughly** [1] - 20:20
**rule** [2] - 5:9; 19:6

**rules** [4] - 19:13, 16; 20:18, 24
**ruling** [1] - 14:1
**rulings** [1] - 15:10
**run** [3] - 10:18, 22; 13:13

# S

**salary** [1] - 10:16
**Savavian** [1] - 15:3
**save** [1] - 19:3
**Save** [1] - 15:24
**schedule** [1] - 17:17
**scheduled** [1] - 20:8
**Scheduling** [1] - 17:19
**scheme** [21] - 5:17; 6:11, 19, 23; 7:15; 9:18, 25; 10:5, 13, 21, 23; 11:1, 4, 9, 20, 24; 12:5, 8; 13:5, 9
**scheme'** [1] - 12:7
**schemes** [1] - 13:14
**Scott** [2] - 22:4, 7
**seated** [1] - 18:19
**seating** [1] - 17:2
**second** [4] - 16:4, 19-20; 20:3
**Section** [5] - 5:12; 7:13; 9:16; 11:10; 12:9
**section** [1] - 5:14
**sector** [1] - 6:8
**See** [1] - 9:19
**see** [6] - 11:3; 15:22; 19:13, 19; 21:18
**seeking** [1] - 11:16
**select** [1] - 20:2
**selected** [1] - 20:6
**selection** [1] - 16:20
**Selective** [1] - 9:7
**Senator** [6] - 5:10, 21; 6:9; 7:15; 9:11; 15:16
**senator** [1] - 5:10
**senior** [1] - 5:10
**sense** [1] - 10:25
**separation** [1] - 14:9
**series** [2] - 11:14, 16
**Service's** [1] - 9:7
**services** [2] - 6:7; 8:24
**seven** [1] - 5:11
**seven-count** [1] - 5:11
**shall** [1] - 5:19
**share** [1] - 18:10
**Shelly** [1] - 16:23
**short** [1] - 4:7
**show** [1] - 17:21
**side** [2] - 4:5, 25
**sides** [1] - 15:23
**Significantly** [1] - 12:20
**similar** [1] - 13:3
**single** [3] - 6:2; 7:8; 9:6
**sit** [1] - 18:22
**sitting** [1] - 18:15
**situation** [1] - 10:25
**solicitations** [1] - 6:20
**solo** [1] - 19:13
**someone** [2] - 4:4; 17:23

**somewhat** [1] - 17:16
**somewhere** [2] - 17:1; 18:19
**soon** [1] - 16:12
**sorts** [1] - 4:21
**sought** [1] - 13:2
**source** [2] - 6:2; 7:8
**specific** [1] - 9:10
**speech** [1] - 13:25
**spend** [1] - 18:12
**spin** [1] - 15:23
**spoken** [2] - 18:2; 20:7
**spouse** [1] - 5:24
**squared** [1] - 11:22
**stand** [1] - 19:22
**start** [3] - 16:19; 20:3
**state** [1] - 10:24
**statement** [9] - 5:19; 12:5; 15:20, 25; 16:10; 20:14, 25; 21:14
**statement'** [1] - 12:4
**statements** [5] - 5:12; 7:4; 21:8, 11
**States** [8] - 5:16, 21; 7:20; 9:19-21; 10:3, 10
**stating** [1] - 11:21
**statute** [20] - 5:7; 7:11, 14, 25; 8:9, 14, 16, 20; 9:13; 10:1, 8, 18; 11:11; 12:14, 18-19; 13:8, 10, 12, 18
**steps** [1] - 6:17
**Stevens** [12] - 5:10, 21; 6:10, 17, 19; 7:3, 11, 15; 9:11, 17; 12:12; 15:16
**Stevens'** [1] - 6:15
**still** [1] - 14:6
**Stovall** [1] - 9:20
**straightforward** [2] - 19:21; 20:1
**strike** [1] - 19:5
**strikes** [4] - 18:16; 19:2, 14
**style** [1] - 21:7
**sub** [1] - 5:13
**subject** [1] - 4:10
**subpoenas** [1] - 17:22
**substantially** [1] - 14:9
**substantive** [3] - 8:20; 9:12; 13:1
**sufficient** [1] - 15:5
**suggested** [1] - 14:11
**SULLIVAN** [2] - 20:17; 21:5
**Sup** [1] - 9:20
**supplemental** [1] - 4:9
**support** [1] - 9:16
**Supreme** [5] - 7:19, 21; 8:5, 25; 12:20
**surplusage** [1] - 14:11
**surprised** [2] - 18:7, 9

# T

**team** [3] - 14:19; 16:15
**tension** [1] - 8:13
**term** [1] - 8:16
**terms** [2] - 11:9; 12:9
**testimony** [2] - 13:24; 18:4
**thereby** [2] - 11:7; 12:6
**therefore** [1] - 10:18
**thereto** [1] - 7:7

thoroughly [1] - 14:20
thoughts [1] - 18:9
thousands [1] - 6:12
threat [1] - 13:1
three [1] - 12:1
Thursday [2] - 17:3, 10
time-barred [2] - 11:25; 12:17
timely [2] - 8:4, 6
today [3] - 15:10; 17:18; 20:12
token [1] - 21:9
toll [1] - 7:11
took [1] - 6:17
Toussie [9] - 7:20; 8:4; 9:11; 12:13, 17-18, 20; 13:11
TOUSSIE [1] - 7:20
transactions [1] - 11:17
transcript [1] - 22:4
travel [2] - 17:20, 24
treat [1] - 9:1
treated [2] - 8:22; 9:15
trial [7] - 4:9, 16; 5:3; 17:2, 11; 20:3
trick [1] - 5:17
triggered [1] - 10:6
true [1] - 9:16
try [2] - 19:4; 20:24
trying [1] - 18:12
Tuesday [1] - 20:6
turn [1] - 17:23
turned [2] - 7:23; 8:4
two [3] - 5:18; 9:23; 10:9

## U

U.S [6] - 5:12; 7:1, 13, 21; 9:16; 10:10
U.S.C [2] - 6:22; 11:16
unavailing [1] - 13:16
unclear [1] - 15:6
unconstitutionally [1] - 14:8
under [9] - 6:22; 7:1; 9:11; 10:3, 12; 11:25; 12:11; 13:22
Understood [1] - 18:1
United [8] - 5:16, 21; 7:20; 9:19-21; 10:3, 10
unless [1] - 8:19
unquote [1] - 6:23
up [7] - 5:17; 16:18; 17:8, 21; 18:23, 25; 19:22
usable [1] - 14:24
utilized [1] - 14:24

## V

vague [2] - 11:19; 14:8
value [5] - 6:3, 13, 18, 24; 13:6
VECO [4] - 6:5, 8, 18, 21
versus [7] - 7:20; 9:19-21; 10:3, 10
Viewed [1] - 8:25
viewpoint [2] - 9:8
views [1] - 13:14
violation [2] - 5:12; 14:9
violations [1] - 11:15
Voir [1] - 18:18

voir [4] - 16:1, 4, 25; 19:23

## W

wait [3] - 17:21; 20:16; 21:10
Wallace [2] - 22:4, 7
wants [2] - 15:16; 18:21
Wednesday [1] - 20:5
week [1] - 16:24
welcome [2] - 16:1; 19:25
Westlaw [1] - 9:22
whereby [1] - 10:13
willfully [3] - 5:16; 6:10; 7:3
Wise [1] - 15:5
wish [1] - 14:13
witness [5] - 4:7; 17:20; 18:5, 22; 19:1
witnesses [3] - 14:3; 18:3
woman [2] - 10:15
worldwide [1] - 6:8
worth [1] - 6:12
write [2] - 5:8; 14:17

## Y

year [5] - 5:23; 6:2, 4; 7:7, 13
yearly [1] - 6:15
years [5] - 5:20; 7:2, 17, 24; 12:1