IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v.        ) | Criminal No. 08-231 (EGS) |
| ) | |
| THEODORE F. STEVENS,    ) | |
| ) | |
| Defendant.   ) | |
| _____) | |

### AFFIDAVIT IN SUPPORT OF GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO MOTION FOR DISQUALIFICATION

CHAD JOY, having been duly sworn, deposes and states as follows:

1. I am a Special Agent of the Federal Bureau of Investigation ("FBI"), United States Department of Justice. I have been employed as a Special Agent of the FBI since August 2003. For approximately the past four and a half years, I have been assigned to the FBI Anchorage Division. Since approximately early 2004, the government has been involved in an ongoing federal investigation into corruption within the State of Alaska. Much of the investigation has related to Bill J. Allen, the former Chief Executive Officer and principal owner of VECO Corporation, and Richard L. ("Rick") Smith, the former Vice President of Community and Government Affairs for VECO. As a Special Agent with the FBI, I have been involved in an on-going investigation of corruption within the State of Alaska. I am familiar with most aspects of this investigation, including that portion of the investigation as it relates to defendant.

2. I am an "investigative or law enforcement officer" within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations and to make arrests for offenses enumerated in 18 U.S.C. § 2516.

3.     This affidavit is submitted in support of the United States' opposition to defendant's motion to dismiss the indictment or for a mistrial.

4.     It is my understanding that the government listed Robert "Rocky" Williams as a potential trial witness during the government's case-in-chief. The government brought Mr. Williams from Alaska to Washington, D.C. for purposes of trial preparation. It is also my understanding that, at the time Mr. Williams was subpoenaed, the government anticipated that he would be one of the first witnesses in the government's case-in-chief.

5.     The government met with Mr. Williams shortly before he traveled from Anchorage, Alaska to Washington, D.C. At that time, it appeared to the government that Mr. Williams had health-related issues. We suggested to Mr. Williams at the time that he contact his doctors to determine whether he was fit enough to travel. Mr. Williams assured us that he was interested in testifying, was looking forward to walking around Washington, D.C. to see the tourist attractions. However, he did not subsequently advise the government whether he had contacted his physicians.

6.     When Mr. Williams arrived in Washington, D.C. and met with the government to prepare for his testimony, it was apparent to the government that Mr. Williams' health had deteriorated considerably and that his health-related issues warranted medical attention. Between late 2006 and the present, Mr. Williams appeared to have lost weight, his abdomen was distended (and had been previously drained of excess fluid), he appeared jaundiced, his face was gaunt, he had substantially aged, he had chronic coughing spells, and he was frequently short of breath. In addition, Mr. Williams told me that he lacked energy and was unable to walk around the city as he had originally hoped.

7.  The government attempted to prepare Mr. Williams for his testimony. It became apparent, however, that Mr. Williams needed to attend to his medical issues. Mr. Williams advised us that he was under the care of physicians in Alaska, and he further advised us that his doctors were calling him because he had missed scheduled, follow-up appointments for blood work and other tests. The government informed Mr. Williams that he should return to Alaska to attend to his health and to meet with his doctors. We informed Mr. Williams that we would be in contact with him to see if he would be able to testify or not.

8.  The government also told Mr. Williams that, because he was under subpoena with defense counsel, he should contact defense counsel and inform them that he was returning to Alaska.

9.  Prior to leaving Washington, D.C., Mr. Williams informed me on September 24, 2008, that he had contacted defense counsel by telephone and left a message for them that included his cellular telephone number and the hotel where he was staying. According to Mr. Williams, defense counsel did not return his call.

10. Mr. Williams also informed me on September 26, 2008, that he had low energy, he felt somewhat better after he had arrived back in Alaska. Mr. Williams also told me that he understood the government's concern about his health-related issues.

11. On September 28, 2008, I contacted Mr. Williams by telephone. Mr. Williams told me that a physician who is a specialist wanted to conduct a follow-up appointment with him to run another series of tests. Mr. Williams advised me that, although he did not feel bad, he had shortness of breath, needed to gain at least 10 pounds, and that he might need to get intravenous solutions and vitamin B shots if necessary. He further stated that he felt, "90 years old instead of

58." Mr. Williams had a pervasive cough throughout this conversation. I asked him if it was possible for him to come back to Washington, D.C. to testify after he met with his physicians. Mr. Williams did not respond to this question, but did refer to additional tests that needed to be done and that he needed to take care of these appointments.

I declare under the penalty of perjury that the foregoing is true and correct.

Dated: September 29, 2008

_____
SPECIAL AGENT CHAD JOY