**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | |
| v. | ) ) | Crim. No. 08-231 (EGS) |
| THEODORE F. STEVENS, | ) ) | |
| Defendant. | ) ) | |

**SENATOR STEVENS'S EMERGENCY MOTION TO DISMISS INDICTMENT OR FOR
A MISTRIAL DUE TO GOVERNMENT'S CONTINUING *BRADY* VIOLATIONS**

Before trial, the government told defense counsel that Mr. Allen had told the government that he believed Senator Stevens would <u>not</u> pay an invoice if one had been sent for work by VECO employees.  Now, after weeks of preparation, after opening statements, and after most of the government's case has been presented to the jury, the defense learns for the first time that Mr. Allen told the government, on at least two different occasions, that he believed that the Stevens family <u>would have paid</u> invoices if they had been sent.  Late last night, with Bill Allen's direct testimony almost completed and cross-examination scheduled to begin today, the government provided for the first time this crucial *Brady* and *Giglio* information that it was ordered to produce weeks ago (and should have produced immediately following indictment).

The government claimed in court that the information provided last night was cumulative.  Nothing could be further from the truth.  The information is both highly exculpatory and diametrically opposite to the information previously provided.  Among other things, last night's disclosure shows that Mr. Allen told the government he "believes that STEVENS would have paid an invoice if he had received one" for the work done by John Hess; similarly, Mr. Allen told the government that the Senator and his wife "would have paid the bill" for the work

of Rocky Williams or Dave Anderson if they had received one. Ex. A. The government's prior *Brady* disclosure indicated precisely the opposite. Letter from Ms. Morris of Sept. 9, 2008 at 3 (Attached as Ex. B) ("<u>Allen stated that he believed that defendant would not have paid the actual costs incurred by VECO, even if Allen had sent defendant an invoice</u>, because defendant would not have wanted to pay that high of a bill." (Emphasis added)).

Enough is enough.[1] The Court should dismiss the indictment. In the alternative, the Court should immediately declare a mistrial, because no lesser sanction could possibly cure the prejudice caused by the government's pattern of severe *Brady* violations. The new information goes to the core of this case – Senator Stevens's state of mind. It is impossible at this point to have a fair trial. This is the sort of information defense counsel would have used to maximum effect in opening statement. It would have shaped all aspects of the defense. In short, it is not sufficient now, on the eve of the government's case resting, to say no harm no foul.

If the Court is not prepared to dismiss the indictment outright at this time, it should first declare a mistrial and then hold an evidentiary hearing to determine whether the indictment should be dismissed and whether other sanctions should be imposed.

### BACKGROUND

1. Since day one, defense counsel persistently have sought all *Brady* material, and the Court consistently has ordered the government to produce it. On August 1, 2008, immediately after arraignment, defense counsel sent the first of many *Brady* request letters to the government. *See* Ex. D. The defense specifically requested, on multiple occasions, that the government produce memoranda of interview, such as FBI Form 302s. *See* Ex. D, Ex. E

---

[1] Several days ago, as the Court is aware, it came to light that the government had withheld critical *Brady* information regarding Rocky Williams, and had sent Mr. Williams back to Alaska

(collecting correspondence).  The government assured defense counsel that it was producing all *Brady* material, but it declined to produce the interview memoranda, instead providing the information in the form of summary letters.  The government sent two such letters, on August 25, 2008 (Ex. C) and September 9, 2008 (Ex. B).  The government was slow to provide even this insufficient disclosure, which necessitated the defense filing two separate motions to compel production of this constitutionally-required discovery.  *See* Motion To Compel Discovery Pursuant to *Brady v. Maryland* and Fed. R. Crim. P. 16 (Dkt. No. 60) (Sept. 2, 2008); Motion to Compel Emergency Relief and Discovery (Dkt. No. 65) (Sept. 12, 2008).  In each of these motions, Defendant specifically requested that the government provide its interview memoranda, instead of a summary prepared by government counsel.

The Court took up *Brady* issues at four separate hearings, on September 10, 12, 16 and 18.  On September 10, 2008, the Court ordered the government to comply with its *Brady* obligations as explained in *United States v. Safavian*, 233 F.R.D. 12 (D.D.C. 2005).  At a subsequent hearing on September 12, the government represented that it had fully complied.[2]  Yet the government continued to contend that it should not be required to produce its underlying interview memoranda or grand jury transcripts.  The Court ultimately disagreed and, on

---

before the defense could learn that information.  The defense's motion to dismiss or for a mistrial with regard to <u>that</u> violation remains pending.

[2] *See* Hr'g Tr. (Sept. 12, 2008) at 40-41:

> MR. CARY:  And your Honor, one question the defense has, it is not clear to us whether the government believes that they're finished with their Brady and Giglio obligations.  I understand it's ongoing, but at least as to what they know right now.
> THE COURT:  It's probably fair to ask you, if you had anything else you'd be producing it right now?
> MS. MORRIS:  That's absolutely right, Judge.  We know that there's a continuing duty.  If something else comes up we provide it.

3

September 16, 2008, specifically ordered the government to produce exculpatory information in the 302s by the next day, September 17. *See* Hr'g Tr. (Ex. F). In apparent compliance with the Court's order, the government produced several redacted interview memoranda and grand jury transcripts.

2. This past Sunday, September 28, 2008, the defense learned that the government had withheld critical exculpatory information regarding Rocky Williams, which had been contained in a previously undisclosed grand jury transcript. The defense immediately moved for dismissal or a mistrial, and further asked that the government be required to disclose all of its interview memoranda and grand jury transcripts for all witnesses. The defense's motion remains pending.

3. On Tuesday, September 30, 2008, the government called Bill J. Allen to the stand. Mr. Allen is the government's star witness. His direct testimony continued yesterday, October 1, and was scheduled to conclude this morning. Mr. Allen testified, among other things, that he did not send Senator Stevens bills for work Veco did on his Girdwood home, despite Senator Stevens's request for bills. Mr. Allen dramatically testified that he did not send the bills because a mutual friend, Bob Persons, told him that Senator Stevens was "just covering his ass."

The government had previously disclosed other information about Allen's decision not to send bills to Senator Stevens or his wife. In its so-called *Brady* letter of September 9, 2008, the government represented that, in prior communications with the government, "Allen stated that he believed that defendant would not have paid the actual costs incurred by VECO, even if Allen had sent defendant an invoice, because defendant would not have wanted to pay that high of a bill." Ex. B at 3.

4

       4.     Late last night, October 1, 2008, with Mr. Allen's direct testimony scheduled to conclude this morning, the government sent a letter to defense counsel purportedly in furtherance of its "continuing duty to provide the defendant with information in the government's possession, custody, or control that is 'favorable' to the defense." Ex. A. It attached portions of redacted government memoranda of interviews that had not previously been produced, which the government understatedly conceded "could arguably constitute *Giglio* material concerning certain parts of Mr. Allen's trial testimony." *Id.* Attempting to excuse its prior non-production, the government's letter represents that the information "could arguably constitute cumulative *Brady* material that was provided in summary fashion in our August 25 and September 9 letters."

       In fact, far from "cumulative," the information provided for the first time last night <u>directly contradicts</u> the government's prior "summary" disclosures and is highly material to impeaching Bill Allen's testimony. The government's September 9 letter had represented that, "Allen stated that he believed that defendant would not have paid the actual costs incurred by VECO, even if Allen had sent defendant an invoice, because defendant would not have wanted to pay that high of a bill." But the information produced last night says <u>exactly the opposite</u>, in two separate interview memoranda dating back almost two years:

> The source [Allen] did not invoice STEVENS fr the work that Hess performed; however, <u>the source believes that STEVENS would have paid an invoice if he had received one</u>.

Ex. A, March 1, 2007 302 Interview Memorandum at 2 (emphasis added);

> If Rocky Williams or Dave Anderson had invoiced Ted or Catherine Stevens for VECO's work, <u>BILL ALLEN believes they would have paid the bill</u>.

Ex. A, Dec. 11-12, 2006 Memorandum of Interview at 9 (emphasis added).

5

Not only does it contradict the government's prior representations, the newly disclosed *Brady* material goes to the heart of this case.  Most significantly, Mr. Allen testified yesterday that Senator Stevens specifically requested that he send bills for work VECO employees had done.  Mr. Allen testified that he did not send bills to Senator Stevens or Catherine Stevens after he spoke to a mutual friend, Bob Persons, who told him that the notes requesting bills were "just Ted covering his ass."  The clear implication to the jury is that Senator Stevens had no intention to pay any bills.  This is directly in line with the government's <u>false</u> September 9 letter, but <u>not</u> the interview memoranda first disclosed last night.  Ex. B at 3.

5. The defense is severely prejudiced by the government's affirmatively false letter and its failure to provide the highly exculpatory interview memoranda until last night.  It is a critical defense theme that Senator and Catherine Stevens paid every bill that was sent to them.  *See* Trial Tr. (Sept. 25, 2008) at 68 (defense opening statement) (Ex. G).  It was a critical defense theme that "there's no evidence that if Catherine had been sent a bill, a proper bill, that it would not have been paid."  *Id.*  Had the defense known before trial that the prior statements of the government's star witness (and alleged participant in a scheme) provided evidence that he believed that invoices sent would in fact have been paid, defense counsel would have trumpeted Mr. Allen's statements in the opening statement.  Defense counsel would have had a field day with the information.  The defense also would have prepared its cross-examination of Mr. Allen on the basis of those critical statements.  Instead, because of the government's belated disclosure and its prior misrepresentation of Mr. Allen's statements, defense counsel did not learn of the prior exculpatory statements until after Mr. Allen's testimony on direct examination was nearly concluded.  To prepare properly for cross-examination at this stage would at the very least require a substantial continuance.  In the meantime, the jury has heard most of Mr. Allen's direct

6

testimony, and the continuance will allow that testimony to sink in unrebutted. The jurors' minds may be made up against Senator Stevens in the meantime, such that no cross-examination would be effective.

The prejudice to the defense cannot possibly be undone short of a mistrial, which should be ordered before any further proceedings. In addition, the government's conduct warrants immediate dismissal of the indictment. If the Court does not dismiss forthwith, it should first declare a mistrial and then order an evidentiary hearing at which the Court may consider dismissal and other appropriate sanctions.

## ARGUMENT

**I.     THE GOVERNMENT HAS VIOLATED *BRADY* AND THE COURT'S SEPTEMBER 16 ORDER AND HAS PROVIDED FALSE INFORMATION TO DEFENSE COUNSEL.**

There can be no question that the information about Mr. Allen's statements should have been produced long ago under the *Brady* doctrine. Under *Brady v. Maryland*, 373 U.S. 83 (1963), and successive cases, including *United States v. Agurs*, 427 U.S. 97 (1976), and *Giglio v. United States*, 405 U.S. 150 (1972), the government is required to produce exculpatory information to the defense. As Judge Friedman explained in *Safavian*, this duty exists regardless of whether the prosecution may believe the information could affect the result at trial:

> [T]he government must always produce any potentially exculpatory or otherwise favorable evidence without regard to how the withholding of such evidence might be viewed—with the benefit of hindsight—as affecting the outcome of the trial. The question before trial is not whether the government thinks that disclosure of the information or evidence . . . might change the outcome of the trial going forward, but whether the evidence is favorable and therefore must be disclosed. Because the definition of 'materiality' discussed in *Strickler* and other appellate cases is a standard articulated in the post-conviction process for appellate review, it is not the appropriate one for prosecutors to apply during the pretrial discovery phase. The only question before (and even during) trial is whether the evidence at issue may be 'favorable to

> the accused'; if so, it must be disclosed without regard to whether the failure to disclose it likely would affect the outcome of the upcoming trial.

233 F.R.D. at 16.

The undisclosed information here unquestionably is exculpatory and producible under *Brady*. It directly supports Senator Stevens's defense that he intended to pay for the home renovations. It also provides highly significant cross-examination material for the government's most important witness, Bill Allen.

In addition, the government violated the Court's September 16 order that it produce all exculpatory information contained in interview memoranda by the next day, September 17, 2008. The information provided last night obviously falls within the terms of the Court's order, yet it was not disclosed until October 1. Worse, the government actually produced a redacted copy of the same Bill Allen 302 to the defense on September 17 that <u>redacted out the statement</u> that he believed Senator Stevens would have paid John Hess's bill. *See* Ex. H.

In fact, the government on September 9 "disclosed" information that falsely stated the exact opposite of what these interview memoranda reflect. It now incredibly seeks to excuse its conduct on the ground that the new information is somehow "cumulative."

## II.   THE INDICTMENT SHOULD BE DISMISSED.

"Brady violations are just like other constitutional violations. Although the appropriate remedy will usually be a new trial, a district court may dismiss the indictment when the prosecution's actions rise . . . to the level of flagrant prosecutorial misconduct." *United States v. Chapman*, 524 F.3d 1073, 1086 (9th Cir. 2008). The dismissal remedy is further warranted here, where the facts show more than ordinary *Brady* violations; they also show that the government has presented fundamentally misleading evidence at trial while failing to disclose to defense counsel the very information needed to understand and rebut that evidence.

8

Courts have not hesitated to dismiss indictments when faced with similarly severe constitutional violations. For example, in *United States v. Wang*, No. 98 CR 199(DAB), 1999 WL 138930, at *37 (S.D.N.Y. Mar. 15, 1999), the court found a due process violation and dismissed an indictment due to the government's failure to provide defense counsel with "material information" until the "eve of trial," and its delay in disclosing that its key witness was unavailable and would not be called to testify. Similarly, in *United States v. Lyons*, 352 F. Supp. 2d 1231, 1251-52 (M.D. Fla. 2004), the court dismissed an indictment due to the government's multiple and flagrant *Brady* and *Giglio* violations. *See also United States v. Sabri,* 973 F. Supp. 134, 147 (W.D.N.Y. 1996) (finding due process violation and dismissing one count of indictment based on government's outrageous conduct in engaging defendant's civil attorney to accumulate evidence for use against him in criminal prosecution); *United States v. Marshank*, 777 F. Supp. 1507, 1524 (N.D. Cal. 1991) (finding due process violation and dismissing indictment where government interfered in the defendant's attorney-client relationship by using his former attorney to obtain incriminating information upon which indictment was based).

Here, the government's conduct requires dismissal. Particularly when coupled with the recently discovered misconduct involving Rocky Williams, the government's failure to provide Bill Allen's exculpatory statements and its false letter to the defense of September 9 warrant the sternest possible remedy.

**III.   IN THE ALTERNATIVE, THE COURT SHOULD DECLARE AN IMMEDIATE MISTRIAL AND SHOULD ORDER AN EVIDENTIARY HEARING TO CONSIDER DISMISSAL AND OTHER SANCTIONS.**

A mistrial is appropriate to remedy a *Brady* violation. *See, e.g., Giglio v. United States*, 405 U.S. 150, 153 (1972) (noting that "*Brady v. Maryland*, 373 U.S. at 87, held that suppression of material evidence justifies a new trial irrespective of the good faith or bad faith of the prosecution." (internal quotations omitted)); *United States v. Andrews*, 532 F.3d 900, 905

9

(D.C. Cir. 2008) ("If the undisclosed evidence is material, a new trial is required.") (*citing Kyles v. Whitley*, 514 U.S. 419 (1995)); *Government of Virgin Islands v. Fahie*, 419 F.3d 249, 252 (3d Cir. 2005) ("[T]he Court has assumed that *Brady* violations that have affected the judgment of a jury normally will be remedied by a new trial . . . ."); *United States v. Evans*, 888 F.2d 891, 897 n.5 (D.C. Cir. 1989) (appropriate relief for a *Brady* violation is a mistrial).

No remedy short of a mistrial can possibly cure the prejudice to the defense from the government's *Brady* failures and obfuscations. Had they been timely disclosed, the critical exculpatory prior statements by Mr. Allen would have been a focus of the defense opening statement and would have impacted the defense's preparation of the case. Now that most of Mr. Allen's direct testimony is concluded, the defense is irremediably prejudiced in its cross-examination. Even if a continuance were granted to permit defense counsel to prepare, the jurors will be left with Mr. Allen's unrebutted direct testimony for an extended period, during which their minds may be set against the Defendant.

If the Court does not dismiss the indictment outright, therefore, it should first declare a mistrial and then order an evidentiary hearing to consider dismissal and other sanctions. In advance of any such hearing, the defense should be entitled to full discovery into all communications between the government and all witnesses.

## **CONCLUSION**

For the foregoing reasons, the Court should dismiss the indictment or, in the alternative should declare an immediate mistrial and order an evidentiary hearing.

Dated: October 2, 2008

                Respectfully submitted,

                WILLIAMS & CONNOLLY LLP

                By:   /s/ Craig D. Singer
                           Brendan V. Sullivan, Jr. (Bar No. 12757)
                           Robert M. Cary (Bar No. 431815)
                           Craig D. Singer (Bar No. 445362)
                           Alex G. Romain (Bar No. 468508)

                           725 Twelfth Street, N.W.
                           Washington, D.C. 20005
                           (202) 434-5000
                           (202) 434-5029 (facsimile)

                           *Attorneys for Defendant Theodore F. Stevens*