**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

```
                              )
UNITED STATES OF AMERICA,     )
                              )
              v.              )   Criminal No. 08-231(EGS)
                              )
                              )
THEODORE F. STEVENS,          )
                              )
              Defendant.      )
_____)
```

**FILED**

**JAN 1 6 2009**

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## OPINION & ORDER

Pending before the Court is the government's motion for reconsideration, requesting this Court to vacate its January 14, 2009 Order directing the Attorney General to personally sign a declaration detailing precisely (1) who within every office of the Department of Justice knew about the complaint filed by Agent Chad Joy, (2) what those individuals and offices knew, and (3) when those individuals and offices received the relevant information. At issue is whether the government misled the Court and/or knowingly failed to meet its affirmative obligation to inform the Court that the government had determined that Agent Joy was not eligible for whistleblower protection. This Court is very sensitive to the extremely important, numerous, and competing demands made on high-level government officials such as the Attorney General, and therefore the Court does not ordinarily burden officials at that level with matters that can be addressed by others. However, based on the record in this case and the

1

appearance that several attorneys in this matter – in multiple
departments within the Department of Justice - may have
intentionally withheld important information from the Court, it
is the Court's view that a declaration from an official at the
highest levels of the Department of Justice is appropriate and
warranted in this instance.  Accordingly, for the reasons stated
briefly herein, the motion for reconsideration is **DENIED IN PART
AND GRANTED IN PART**.

## BACKGROUND

On the afternoon of December 11, 2008, the government filed
a "Sealed Memorandum" accompanied by a motion to seal and a
protective order.  The government's pleading notified the Court
that the government's attorneys in this case had received a copy
of a "self-styled whistleblower complaint" on December 2, 2008.
The complaint, authored by a Special Agent with the Federal
Bureau of Investigation ("FBI") with extensive knowledge of the
investigation and trial in this case, raised allegations of
misconduct by certain government employees involved with the
investigation and prosecution of the defendant.

In its motion to file ex parte and its motion to seal, the
government represented to this Court that it had received the
complaint on December 2, 2008 and over the course of the
following days "received additional information, guidance and
advice *to satisfy itself that any possible statutory and*

2

*regulatory confidentiality concerns surrounding a request for*
*whistleblower protection had been fuly [sic] explored and*
*addressed*, and would not prohibit a disclosure to the Court at a
minimum." (emphasis added).  Neither the complaint nor the
substance of the complaint was filed or revealed to the Court
until nine days after its receipt by attorneys in the Office of
Public Integrity.

The defendant objected to any sealing of the complaint.  In
addition to First and Sixth Amendment arguments, the defense
argued that any redactions would make it more difficult for the
defendant to adequately address and argue the allegations made in
the complaint.  The government and counsel for the complainant
strenuously argued that the complaint should not be made public
based on whistleblower and privacy concerns.  The government also
maintained that publication of the complaint would interfere with
an ongoing investigation into the allegations being conducted by
the Department of Justice's Office of Professional Responsibility
("OPR").  The Court ordered briefing on the government's motions
to file ex parte and to file under seal and, following a hearing
on December 19, 2008, the Court issued a 29-page Opinion and
Order later that day, ordering that the complaint be filed on the
public docket, with identifying information about the complainant
and the individuals named in the complaint redacted.  Pursuant to
that Opinion and Order, the redacted complaint was made public on

3

December 22, 2008.  Also on December 22, 2008, the defendant filed a Motion to Dismiss the Indictment, or, in the Alternative, Motion for a New Trial, Discovery, and an Evidentiary Hearing, based on the allegations made in the complaint.

On January 14, 2009, the government initiated a call to chambers, with defense counsel on the line, to request that it be permitted to file on the public docket a version of the complaint with fewer redactions.  The Court scheduled a hearing for 2:00 p.m. on January 14, 2009 to hear arguments related to that request.  At the hearing, held in open court, the government explained that it had found it difficult to respond to the defendant's Motion to Dismiss the Indictment, or, in the Alternative, Motion for a New Trial, Discovery, and an Evidentiary Hearing, without revealing the government employees' identities.  Moreover, the government explained, it had contacted the government employees and they did not object to having their identities revealed.  Finally, in response to a question from the Court, the government acknowledged that the author of the complaint, Agent Joy, had not been granted whistleblower protection by the Office of Inspector General ("OIG").  In response to a follow-up question by the Court as to when the government learned this information, the government revealed to the Court – *for the first time* – that Agent Joy had been notified as early as December 4, 2008 that he had not been afforded

4

whistleblower protection.  That notification came at least seven days before the government filed its motions to file ex parte and to seal the complaint – seven days when, according to the prosecution, it was receiving "additional information, guidance and advice to satisfy itself that any possible statutory and regulatory confidentiality concerns surrounding a request for whistleblower protection had been fully explored and addressed" – and fifteen days before the hearing and the Court's Opinion and Order.

Based on the government's repeated representations, this Court and the defendant proceeded on the understanding that Agent Joy had whistleblower protection or that his status as a whistleblower was as yet undecided due to the ongoing investigation by OIG and/or OPR.  Had the Court known that the government had already legally determined that Agent Joy was not entitled to whistleblower protection *by the time it first filed the complaint under seal*, the Court would have proceeded differently.  Accordingly, the Court sought an explanation from the government as to what and when various individuals and offices at the Department of Justice learned and communicated regarding Agent Joy's whistleblower-protection status.  In view of what has become a pattern of belated revelations followed by unsatisfactory, and possibly false, explanations from the government in this case, the Court directed that the Attorney

5

General provide a declaration with the requested information.

## THE MOTION FOR RECONSIDERATION

Unfortunately for the government, its motion for reconsideration only serves to further cloud the issue and raises more questions than it answers.  For example, the government now maintains that Attorney Brenda Morris "misstated" that Agent Joy had been denied whistleblower status and that she "misconstrued" a December 4, 2008 letter from ORP to Agent Joy.  There are at least three problems with the government's argument.  First, the government overlooks the fact that it was Attorney William Welch who informed the Court on January 14, 2009, several times and with seeming certainty, that Agent Joy had been denied whistleblower protection.

> THE COURT: There's one thing the Government omitted, and in fairness, I don't think it was intentional.  Mr. Welch, I believe was - you didn't participate in that phone conversation.  You did.  There was some mention made of the status of the complainant and -
>
> MR. WELCH: That's right.  I'm more than happy to put that on the record if the Court desires.
>
> MR. WECLH: One other thing I did want to note.  With respect to the complaining individual status, that individual does not qualify for whistleblower status.
>
> THE COURT: That's right.
>
> MR. WELCH: I wanted to make sure that that was clear, and I'm certainly not obviously identifying that person because the order still remains in effect.
> See January 14, 2009 Transcript at 8.

Moreover, Mr. Welch was the first attorney at the hearing to

6

reference the letter, not Ms. Morris.

> THE COURT: Let me ask you this question, though.  When did your office learn that he was denied – that the person was denied whistleblower protection?
>
> MS. MORRIS: It was sometime after our sealed hearing here, Judge.  Or is that correct?  Did we learn – no, I think it was.
>
> THE COURT: I need to know that.
>
> MR. WELCH: It remained unclear.  I think at one point he got a letter but he was afforded the right to re-amend.  The letter that he had issued –

> *See* January 14, 2009 Transcript at 15.

Mr. Welch raised the lack of whistleblower status as further support for the government's request to unseal the identities of the individuals named in the Joy complaint.  Thus, while the government now seeks to explain this as a "misstatement" by Ms. Morris, that simply is not the case.[1]

Second, the government now asserts that "the prosecutors had misconstrued" the OPR letter as having denied Agent Joy whistleblower status.  The Court finds this explanation wholly incredible.  The government has repeatedly informed this Court, including in its most recent motion, that it spent nine to ten days "attemp[ing] to determine" what they could reveal regarding the Joy complaint, in view of his request for whistleblower

---

[1] The Court notes that the government's motion for reconsideration was not accompanied by an affidavit from Mr. Welch or Ms. Morris or from anyone else at the Department of Justice.

status.[2]  Having finally been provided with a copy of this
December 4, 2008 letter to Agent Joy, it simply strains credulity
to think that an entire team of very successful attorneys could -
as part of their nine-to-ten day effort to satisfy themselves of
their legal obligations - "misconstrue" that letter as having
denied Agent Joy whistleblower protection.  In fact, even a quick
reading of the letter makes clear that OPR was simply informing
Agent Joy that it lacked jurisdiction to investigate whether he
qualified for whistleblower protection because he had not raised
allegations of reprisal.  *See* Attached Letter to Agent Joy dated
December 4, 2008.  Moreover, while the government would like the
discussion to now focus exclusively on the December 4, 2008
letter in an attempt to explain the basis for its belief that
Agent Joy had been denied whistleblower protection, there was
clearly an extensive dialogue between OPR and attorneys in the
Office of Public Integrity during the relevant time frame
regarding this very issue.  It is this information and these
communications that are now relevant to the inquiry of when the
government knew of the lack of whistleblower status and it is
this information and these communications that are the subject of
the Court's January 14, 2009 Order.

---

[2] The government's initial filing informed the Court that
the prosecution team received the complaint on December 2, 2008.
The most recent filing states that the Criminal Division received
the complaint on December 1, 2008.  The complaint was not filed
with the Court until December 11, 2008.

Finally, the government's effort to write this off as Ms. Morris's misstatements and misunderstandings fall short because other high level attorneys were present at the hearing on December 19, 2009 during the entire argument regarding whether the Joy complaint should be unsealed.  Not only was Mr. Welch, the Chief of the Public Integrity Section, present, Mark Levin, also from that section, was present, and Patty Stemler, Chief of the Appellate Section, was present.  Those attorneys, presumably, were involved in what the government has repeatedly represented as a comprehensive effort to understand and determine the legal issues and obligations raised by the Joy complaint in the nine to ten days proceeding the filing of the Joy complaint in this Court.  Moreover, it is telling that neither the government's attorneys nor Mr. Joy's attorney, who was also present at the hearing, cited any authority for sealing the Joy complaint on the grounds that it was protected under any whistleblower statute. That raises at least an inference that the reason they did not raise any such authority is that they already knew that he was not entitled to such protection.[3]  While the Court, under

---

[3] The government now says that no "formal" or "final" determination has been made as to whether Agent Joy is entitled to whistleblower protection.  However, based on the government's motion for reconsideration, it appears that the government had determined at the time of the hearing that Agent Joy did not *presently* qualify for whistleblower protection.  That determination - final or not - was highly relevant to the motions before the Court on December 19, 2008, and the government had an obligation to provide the Court with that information.

considerable time constraints, was understandably focused on the complicated legal issues raised by this complaint and whether the First and Sixth Amendment rights at issue in a criminal case compel disclosure of a complaint that might otherwise be shielded to protect a whistleblower, the government, which had taken nine or ten days to "fully" explore the legal issues and was in sole possession of the relevant information, had an affirmative obligation to inform the Court that Agent Joy did not enjoy such status.

It is for these reasons, and because this incident is not the first one in this case where the government represents to the Court that it made a "mistake" and that there was no "bad faith" or intent to "mislead" the Court or defense counsel in the face of serious allegations of government misconduct, that the Court has directed that a declaration be provided by the Attorney General.  As the defendant points out in his objection to the motion for reconsideration,

> The pattern is unmistakable. Over and over again the government has been caught in false representations and otherwise failing to perform its duties under the Constitution and the Rules. And over and over again, when caught, the government has claimed that it has simply made good faith mistakes. When the government failed to produce Rocky Williams's exculpatory grand jury testimony, the government claimed that this testimony was immaterial. Dkt. 105. When the government sent Mr. Williams back to Alaska without advising the defense or the Court, the government asserted that it was acting in "good faith." Dkt. 105-4. When the government affirmatively redacted exculpatory statements from FBI Form 302s, it claimed that "it was just a mistake." Tr. (Oct. 2, 2008, a.m.), at 19; see also Tr.

10

(Oct. 2, 2008, p.m.), at 27, 29. When government counsel
told the Court that Allen had not been re-interviewed the
day before a hearing on its Brady disclosures, this was a
mistaken understanding." Dkt. 134 at 15. When the government
failed to turn over exculpatory statements from Dave
Anderson, it claimed that they were immaterial. Tr. (Oct. 8,
2008, p.m.), at 58, 62, 64, 67. When the government failed
to turn over a critical grand jury transcript containing
exculpatory information, it claimed that it was
"inadvertent." Tr. (Oct. 6, 2008, p.m.), at 95. When the
government used "business records" that the government
undeniably knew were false, it said that it was
unintentional. Tr. (Oct. 8, 2008, p.m.), at 76. When the
government failed to produce the bank records of Bill Allen
and then sprang them on the defense, it claimed this check
was immaterial to the defense.  Tr. (Oct. 8, 2008, a.m.), at
3.

Def. Opp. at 2-3.

This case, and this most recent incident, involves numerous

attorneys and offices throughout the Department of Justice.

Those attorneys have not been able to provide a cohesive or

credible answer to this Court's questions regarding the

determination of whistleblower status.  Therefore, the Court

believes it appropriate and necessary to get an answer from

someone with direct oversight over all of the various offices,

individuals and divisions involved.  Nevertheless, the Court is

sensitive to the many demands placed on the Attorney General at

this time and, therefore, the Court will modify its January 14,

2009 Order to require that the Attorney General or his

designee(s) provide the required declaration(s) and supporting

documentation.[4]  However, if the Attorney General is to designate

---

[4] In its motion for reconsideration, the government cites
extensive authority from this Circuit and others in support of

another official(s) to file the declaration(s), they must be personnel with sufficient responsibility and stature within the Department of Justice that (a) they can speak on behalf of the agency and (b) they have oversight responsibility for the OIG, OPR, OPI and the FBI.  The Court will also extend the time for filing the declaration(s) to 5:00 p.m. on January 17, 2009.

The government was ordered to file the declaration at a hearing on January 14, 2009 that concluded at approximately 3:00 p.m.  The declaration was to be filed by 12:00 p.m. on January 16, 2009.  Nevertheless, the government did not file its motion for reconsideration until approximately 6:30 p.m. on January 15, 2009.  The defendant filed an opposition at 11:00 a.m. on January 16, 2009.  The government has once again left this Court under significant time constraints and, therefore, under the

---

its argument that "high Executive Branch officials" should not be compelled to provide testimony absent exceptional circumstances. However, in most or all of the cases cited, the official was directed to testify in court and/or be subject to subpoena, depositions and/or interrogatories.  The Court's order to provide a declaration is much less intrusive or burdensome than the circumstances in the cases cited by the government.  Moreover, in many or all of those cases, the officials were being compelled to provide testimony about their reasons for taking certain official acts.  Again, that is not the case here; the Court merely seeks an explanation from someone with oversight for the various offices and individuals involved as to when and what the government knew regarding Agent Joy's whistleblower status at the time it represented to the Court that the Court should not unseal his complaint based on whistleblower and privacy concerns. Therefore, considering the circumstances, and particularly in view of the significant record and history of "misstatements" and allegations of misconduct, the Court finds that the required declaration is reasonable.

12

circumstances this modest extension of time to file the

declaration(s) is more than reasonable.

**CONCLUSION**

For the foregoing reasons, the motion for reconsideration

and to vacate the January 14, 2009 Order is **GRANTED IN PART AND**

**DENIED IN PART.**

**SO ORDERED.**


**Signed:**   **Emmet G. Sullivan**
          **United States District Judge**
          **January 16, 2009**

13

**ATTACHMENT A**



**U.S. Department of Justice**

Office of Professional Responsibility

---

*Washington, D.C. 20530*

DEC 0 4 2008

**VIA PDF E-MAIL**

Special Agent Chad Joy
Federal Bureau of Investigation
FBI Anchorage Division
101 East Sixth Avenue
Anchorage, AK 99501

Dear Special Agent Joy:

This Office was referred for handling your undated document (Document) containing complaints about the conduct of a Federal Bureau of Investigation (FBI) Special Agent identified as your co-case agent in the FBI's POLAR PEN investigation.

As you may be aware, the primary jurisdiction of the Office of Professional Responsibility (OPR) is to investigate allegations of misconduct involving Department of Justice (DOJ) attorneys that relate to their authority to investigate, litigate or provide legal advice, as well as allegations of misconduct by DOJ law enforcement personnel when they are related to allegations of attorney misconduct within OPR's jurisdiction. Your Document appears to raise such allegations against the FBI Special Agent and several Department of Justice prosecutors identified in your letter as being involved in the prosecution of *United States v. Theodore Stevens*, No. 08-231 (D.D.C.). We therefore intend to investigate the matters raised in your letter pursuant to this primary jurisdictional authority.

As you may also be aware, pursuant to 28 C.F.R. §27.3, OPR also has jurisdiction to act as an "Investigating Office" regarding allegations of "reprisals" against FBI employees disclosing violations of laws, rules or regulations. Since, however, this secondary jurisdictional authority is limited to instances of alleged reprisal taken against the disclosing employee, and since your Document did not allege any such reprisal, please be advised that we lack jurisdiction to initiate an investigation pursuant to 28 C.F.R. §27.3 into whether you are entitled to relief as an aggrieved whistleblower. Should you come to believe that you have been subjected to or threatened with any such reprisal, please contact either this or any other office identified as a "Receiving Office" in 28 C.F.R. §27.1 for reconsideration of the matter.

The matters alleged in your Document bear heavily on the *Stevens* case which, as you are undoubtedly aware, is the subject of ongoing litigation. Please be further advised, therefore, that attorneys responsible for the litigation of that case or investigating agents acting at their direction may seek to interview you regarding those matters pursuant to their obligation to conduct the *Stevens* litigation.

If you have any questions, please contact this Office at 202-514-3365.

Sincerely,

H. Marshall Jarrett
Counsel