1                    UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF COLUMBIA
2
       -------------------------X
3    UNITED STATES OF AMERICA,        Docket No. 08-231
                      Plaintiff,
4
               v.                    Washington, D.C.
5                                    **Wednesday, January 14, 2009**
                                     2:17 p.m.
6
     THEODORE F. STEVENS,
7                      Defendant.
       -------------------------X
8
                          **STATUS HEARING**
9           BEFORE THE HONORABLE EMMET G. SULLIVAN
                   UNITED STATES DISTRICT JUDGE
10

11   APPEARANCES:

12   For the Government:    UNITED STATES DEPARTMENT OF JUSTICE
                            By:  Ms. Brenda K. Morris
13                               Mr. William Welch
                            1400 New York Avenue, N.W.
14                          12th Floor
                            Washington, D.C.  20005
15                          202.514.1412

16   For the Defendant:     WILLIAMS & CONNOLLY, L.L.P.
                            By:  Mr. Brendan V. Sullivan, Jr.
17                               Mr. Robert M. Cary
                                 Mr. Craig Singer
18                          725 Twelfth Street, N.W.
                            Washington, D.C.  20005
19                          202.434.5000

20   Court Reporter:        Catalina Kerr, RPR
                            Official Court Reporter
21                          U.S. District Courthouse
                            Room 6716
22                          Washington, D.C.  20001
                            202.354.3258
23
     Proceedings recorded by mechanical stenography, transcript
24   produced by computer.

25

```
1                        P-R-O-C-E-E-D-I-N-G-S

2              (2:17 P.M.; OPEN COURT.)

3              THE DEPUTY CLERK:  Please remain seated and come to

4    order.  Criminal case 08-231, United States versus Theodore

5    Stevens.  Would counsel please identify yourselves for the

6    record.

7              MR. WELCH:  Good afternoon, Your Honor.  William

8    Welch on behalf of the United States, and Brenda Morris.

9              THE COURT:  All right.  Ms. Morris.  Mr. Welch.

10             MR. SULLIVAN:  Good afternoon, Your Honor.  Brendan

11   Sullivan, Robert Cary and Craig Singer for Defense.

12             THE COURT:  All right.  Mr. Welch, Ms. Morris,

13   either one.

14             MR. WELCH:  Thank you, Your Honor.  First of all, I

15   appreciate the Court making time for us.

16             Let me recap where we are.  The Government is

17   proposing that certain redactions that had previously been

18   made and authorized by the Court be lifted, and in particular,

19   I want to lay out the reasons why.

20             Prior to the Court's opinion, the Government had the

21   concern about certain privacy interests of certain

22   individuals, and so as a result, we had moved, initially, to

23   redact the entire complaining letter.  Since that time, since

24   the Court's opinion was issued, in preparation for the

25   responses that we're filing on Friday, several things
```

1    occurred.

2            First of all, it's fairly apparent that, for

3    practical purposes, for the Court's benefit, for the clerk's

4    benefit, for Defense counsel's benefit, it is going to be

5    extremely difficult to respond to -- and particularly the

6    motion to dismiss, based upon the complaining letter, using

7    pseudonyms such as Special Agent A, Special Agent B, things of

8    that nature.  So, for purposes of court efficiency and

9    practicalities, we're going to be asking that certain redacted

10   names now be unredacted.

11           Secondly, in preparation for our response, we have

12   contacted virtually all the Government employees that were

13   named initially in the complaining letter, if not all of them.

14   And all of them, but for one, have taken the position that

15   they prefer their identities to be known and that essentially

16   they want their story to be made public.

17           So, for that reason, we also think that for many of

18   the Government employees, we don't have a problem now

19   unredacting some of those names.  And then finally --

20           THE COURT:  What about Mr. --

21           MR. WELCH:  With respect to that individual.

22           THE COURT:  I'm sorry.  I realize this is an open

23   proceeding.  What about that --

24           MR. WELCH:  The complaining individual.  With

25   respect to the complaining individual, and Ms. Morris has been

1    in contact with that person's attorney, but I believe that I

2    would accurately be summarizing that that individual initially

3    did not want their complaining letter to be made public.  I

4    believe still takes that position, understands if that

5    person's identity were revealed and would not object, if I'm

6    correct, if ultimately that occurred, but nonetheless wanted

7    to communicate, at least, that person's feelings before the

8    Court.

9            THE COURT:  And I'll say this, that also, during the

10   time we spoke this morning -- during the time the Court spoke

11   with Ms. Morris and Mr. Sullivan and his colleagues this

12   morning, the Court has also reached out to the attorney for

13   that individual and that attorney basically said verbatim just

14   what you said.

15           MR. WELCH:  And quite frankly --

16           THE COURT:  We invited that attorney to participate

17   if that attorney wanted to, and the impression we have is that

18   the Government was going to articulate the attorney's position

19   on behalf of the attorney's client.

20           MR. WELCH:  And I appreciate the Court following up

21   on that, and quite frankly, you know, we continue to take the

22   position that as part of the new set of redactions or I guess

23   the smaller set of redactions, we would still take the

24   position that that person's identity may still be redacted.

25   Given the nature of the initial complaint, we don't want to be

1    viewed as somehow retaliating against that person by making

2    that person's identity public.

3            But finally, we continue to adhere to the position

4    as we initially did, that any source names, source identifying

5    information, investigative techniques should remain sealed

6    primarily because it can reveal confidential information that

7    simply both the Department of Justice, and concurrently, the

8    FBI would not want revealed.  I think that's a fair recap of

9    where we stand now.

10           THE COURT:  All right.  Thank you, Counsel.

11           Mr. Sullivan.

12           MR. SULLIVAN:  Thank you, Your Honor, good

13   afternoon.

14           THE COURT:  Good afternoon, Counsel.  Before you say

15   anything, let me just say that it's the Court's inclination to

16   make public the identity of the complainant.

17           MR. SULLIVAN:  All right, Your Honor.  Let me just

18   identify very briefly for you the problem that we see created

19   by the Government's change of position and a potential

20   solution to that problem.

21           First off, to recap, the Court and all parties spent

22   a lot of time briefing and deciding what should be kept under

23   seal and what should not be.  Our positions are well stated on

24   the record.  We didn't believe anything should be, with the

25   possible exception of sources or techniques of the Government.

1       At any rate, the Court made a ruling, let most of it

2   come out, kept some of it under seal and we then responded.

3       THE COURT:  And that ruling -- just so the record is

4   clear, my ruling also said, "Subject to further order of the

5   Court, as may be appropriate."

6       MR. SULLIVAN:  Yes, I understood.  And our position

7   is that it should have been revealed and not under seal.  That

8   still is our position today, as a matter of fact, but let me

9   tell you the problem it's created.

10      We filed our motion to dismiss at the time your

11  order was pending saying it had to be redacted.  And so, yes,

12  it's, quote, difficult to respond.  I appreciate that

13  difficulty.

14      THE COURT:  As you recognized that --

15      MR. SULLIVAN:  That's what we said.

16      THE COURT:  -- three or four weeks ago.

17      MR. SULLIVAN:  Once in awhile, at my age, you know,

18  the only fun you have left is saying, "I told you so."

19      Yes, it's difficult to respond, and it's also

20  difficult for us to write our motion, to begin with.  It's

21  difficult.  We struggled.  We were walking on eggshells making

22  sure we complied with the Court's order and yet put a pleading

23  that could be public, and then we put a pleading that was also

24  redacted and under seal.

25      So, we wrote under different rules, so to speak, and

1    so now we have --

2              THE COURT:  I'm not going to prejudice you.

3              MR. SULLIVAN:  And now we have --

4              THE COURT:  And now the redactions -- and I'm

5    inclined to go along to make public the name of the

6    complainant.  I'm certainly going to give you a brief -- an

7    opportunity to revise your plea, and it's appropriate.

8              MR. SULLIVAN:  Here's what we were thinking, exactly

9    along that line.  Depending upon what the Court decides today

10   at the Government's request, opens up more information so

11   there could be less redactions, then our request is let us

12   rewrite our motions.

13             THE COURT:  I just said that.  I'm not going to pull

14   the rug out from under you.  I'm not going to allow all this

15   on the public docket and say you've had your almost fair day

16   in court.

17             MR. SULLIVAN:  And my suggestion is, because of the

18   holiday and the inauguration, we can write our motions by

19   Monday the 26th.  We'll write them consistent with whatever

20   your court's order is today, then they can respond.

21             THE COURT:  Fair enough.  And the reason why we're

22   here today is because you said you had an objection.  We were

23   on the phone.  I didn't have a court reporter, and as soon as

24   you said that, look, I have an obligation to preserve a fair

25   record, and I said, "We need a court reporter," and that's the

1   only reason we have assembled today.

2           There's one thing the Government omitted, and in

3   fairness, I don't think it was intentional.  Mr. Welch, I

4   believe was -- you didn't participate in that phone

5   conversation.  You did.  There was some mention made of the

6   status of the complainant and --

7           MR. WELCH:  That's right.  I'm more than happy to

8   put that on the record if the Court desires.

9           THE COURT:  Sure.

10          MR. WELCH:  One other thing I did want to note.

11  With respect to the complaining individual status, that

12  individual does not qualify for whistleblower status.

13          THE COURT:  That's right.

14          MR. WELCH:  I wanted to make sure that that was

15  clear, and I'm certainly not obviously identifying that person

16  because the order still remains in effect.

17          The other thing I did want to note is we submitted

18  to the Court our proposed new redactions.

19          THE COURT:  I've had a chance to read it.

20          MR. WELCH:  At 1.g, I believe that we had boxed out

21  Mr. Smith's name, which previously had been unredacted, so I

22  just want to be clear that at 1.g, on page 2.

23          THE COURT:  Yes.

24          MR. WELCH:  His name, as it appears there, should be

25  unredacted.

 1            THE COURT:  Right.

 2            MR. WELCH:  Although the other individual noted at

 3    1.g.i, that person should still remain subject to redaction.

 4            THE COURT:  The second name because that appears

 5    after the source.

 6            MR. WELCH:  So I just wanted to clarify that point

 7    as well.

 8            THE COURT:  That's fine.  All right.  What about the

 9    proposed -- the proposed revised briefing schedule?

10            MR. WELCH:  Well, this is my proposal.  I'm not

11    trying to complicate matters, but we're ready to file on

12    Friday.  We want to file, we want to respond to this.  I can

13    appreciate Mr. Sullivan's argument, but by the same token,

14    there is nothing that prevents him from supplementing in

15    response to our response.  They're going to be entitled to a

16    response anyway to our reply, and if they want to add new

17    arguments, that's perfectly fine.  We will simply ask leave to

18    file the surreply.

19            But I think we should be entitled, given that this

20    has been out in the public domain in some form for a number of

21    weeks, to get our response out.  And as of yet, Mr. Sullivan

22    has not articulated any sort of prejudice.  And finally, I do

23    want to note --

24            THE COURT:  Where is that, the prejudice, is that he

25    was operating under some very difficult -- difficult rules,

1   you know, and he made a powerful argument about how in his --

2   in his words, it was unfair.  It's very difficult to comply

3   with redactions and file a document that could make his

4   argument, recognizing that he couldn't say anything he wanted

5   to say because of redactions, so he was -- he was restrained

6   in making his most powerful argument.

7           MR. WELCH:  And I'm certainly not objecting to him

8   being able to incorporate new arguments in a response or reply

9   to our response, and again, I'm asking for leave to file the

10  surreply to those.

11          But going back to our initial arguments and why we

12  wanted portions of this sealed, the Government is entitled to

13  avail itself of its rights and remedies before the Court.  We

14  had privacy interests of individuals.

15          THE COURT:  It's very difficult and challenging

16  issues, believe me.

17          MR. WELCH:  I agree 100 percent.

18          THE COURT:  And how is the Government prejudiced,

19  though?  I mean, essentially -- essentially you're not on the

20  gun now to file your pleading by Friday, although you say it's

21  prepared and it's probably ripe for filing, but how are you

22  prejudiced at all if I gave them a chance, a fair chance to

23  make the arguments they would have made but for the redaction

24  restraints?

25          MR. WELCH:  It's not an issue of prejudice.  We

1    wouldn't be.  All I'm asking is simply that we be allowed to

2    respond to what they had already filed and we are affording

3    them the right to file a supplemental briefing.

4         We simply want to begin the process of getting the

5    filings in, we beginning the process of adjudicating the

6    issues and being able to --

7         THE COURT:  Begin the process of the next phase.

8         MR. WELCH:  Whatever you want to term it.

9         THE COURT:  All right.  How much time would you

10   need, though, if I allow Mr. Sullivan and his colleagues to

11   file a renewed motion?  How much time, in fairness to the

12   Government, would you need to respond?

13        MR. WELCH:  I don't know what the new arguments

14   would be, and that's why, at a minimum, we can respond to the

15   arguments already advanced and then, if they file --

16        THE COURT:  This is very disjointed.  You know,

17   we're dealing with that issue every day in some of these cases

18   where the parties have briefed an issue, there's a change in

19   case law, maybe pick it up, maybe read the circuit opinion,

20   maybe not, and then have to advise counsel to address certain

21   things and more time goes on, and it's like a moving target,

22   and sometimes you just say, look, folks, we need new pleadings

23   here.

24        It's so complicated and convoluted and new arguments

25   made in the surreplies and we try to avoid all that.  Seems to

 1    me the better part of this is to give Senator Stevens'

 2    attorneys an opportunity to file their pleading, to give you a

 3    chance to look at it, and if you -- if the Government can tell

 4    me how much time you need to respond to their arguments, some

 5    of which may be new, I don't know.  I suspect there will be

 6    some new arguments, but I don't know.  I think that's fair.

 7         Maybe we should have a status hearing shortly after

 8    the filing, and I think that after you and your colleagues

 9    have had a chance to analyze Defendant's pleading and fairly

10    determine how much time you need to respond to their

11    arguments, all their arguments, maybe we can pick a status.

12         How much time would you like, after you get their

13    submission, to think about it and let me know how much time

14    you need?

15         MR. WELCH:  I mean, I think that if you wanted to do

16    a status conference within a day or two of their new filing,

17    that would be perfectly appropriate.

18         THE COURT:  To the extent -- we can talk on the

19    public docket, so let me just bring you back.  Maybe two days

20    after.  Mr. Sullivan wants until the 26th, that's fine, and

21    I'm going to start another lengthy trial soon, so probably

22    that Wednesday would be -- actually, I'll be in trial.  Unless

23    Carol's heard something, but I haven't heard.

24         THE DEPUTY CLERK:  (Nodding.)

25         THE COURT:  You haven't.  All right.  So I'll be in

1    trial.

2              MR. SULLIVAN:  Your Honor, if it could be at the end

3    of the week.  I'm in court in Los Angeles on Monday.

4              THE COURT:  The 30th.  That's --

5              MR. SULLIVAN:  Closer to the end of the week, if

6    possible.

7              THE COURT:  Actually might -- Let's do this:  The

8    29th.  I'm reasonably certain I'll be in trial.  It's not a

9    lengthy trial.  9:30?  The status hearing?  That give you

10   enough time?

11             MR. WELCH:  That should be fine.

12             THE COURT:  All right.  I'll grant the Government's

13   motion to unredact the redactions and the Court will also

14   redact -- strike that.  Will make public the name of the

15   complainant.

16             Now, how do we -- dealing with the blackout and

17   everything else is arduous, isn't it?  Let's -- let me talk

18   for a minute, because that is so difficult to make sure we've

19   redacted appropriately, that you can't see.  There's still

20   some information that probably should remain sealed until

21   further court order, if appropriate.  Let me just speak off

22   the record for a second, because that's going to take some

23   time, I think, unless I can force that responsibility on the

24   Government.

25             You've already blacked out.  You've already blocked

```
 1   out, haven't you?  You used the Lotus relative -- the
 2   technical ability to black out.
 3            MS. MORRIS:  Yes, sir.  And what I can do is, I sent
 4   it in PDF, but I can send it to the Court un-PDF so that
 5   you --
 6            THE COURT:  Let me talk -- let me talk for a second
 7   and find out, because you can help us out tremendously.  It's
 8   a painstaking task to do this.
 9            MR. CARY:  Your Honor, may I have one point before
10   you have that discussion, because it reflects on that.
11            THE COURT:  Sure.
12            MR. CARY:  When we reviewed the Government's
13   submission, we see a few things that are blacked out now that
14   were not redacted before, and I think it's probably just a
15   mistake.
16            THE COURT:  Why don't you talk with them while I
17   take a short recess.
18            MR. CARY:  Fair enough.
19            THE COURT:  All right.  I think you're right,
20   though.
21            THE DEPUTY CLERK:  This honorable court now stands
22   in brief recess.
23            (A BRIEF RECESS WAS TAKEN.)
24            THE COURT:  Were you-all able to work it out?
25            MR. CARY:  We worked out that part of my concern,
```

 1    yes, Your Honor.

 2            THE COURT:  All right.  The Government's in a

 3    position today, this afternoon, to make the necessary

 4    adjustments and also to make public in this amended complaint

 5    the name of the complainant.

 6            Let me just ask you this question, though.  When did

 7    your office learn that he was denied -- that the person was

 8    denied whistleblower protection?

 9            MS. MORRIS:  It was sometime after our sealed

10    hearing here, Judge.  Or is that correct?  Did we learn -- no,

11    I think it was.

12            THE COURT:  I need to know that.

13            MR. WELCH:  It remained unclear.  I think at one

14    point he got a letter but he was afforded the right to

15    re-amend.  The letter that he had issued --

16            THE COURT:  Was he told -- was he told that he was

17    denied status before the hearing?  The last hearing?

18            MS. MORRIS:  I believe, Judge --

19            THE COURT:  I don't want to guess about this.  I

20    need to know.

21            MR. WELCH:  Then we need to be clear about it.

22            THE COURT:  Well, I mean, that's something that the

23    Court should have known because we stayed up almost 24 hours

24    getting that opinion out and doing a lot of other work

25    operating on the assumption that, you know, this man is

 1   seeking protection.  The risk involved was extremely sensitive

 2   to that, extremely sensitive to that, but I need to know the

 3   answer to that.  I need to know it now.  So if you get someone

 4   on the phone, I need to know the answer to that.

 5          MS. MORRIS:  We can contact Mr. Simpson.  He would

 6   be the best person to know.

 7          THE COURT:  Well, OIG would know.  You can contact

 8   the Government attorneys.  You can call your office.

 9          MS. MORRIS:  When they alerted Mr. Joy?

10          THE COURT:  When your office -- That's right.  I

11   need to know when the public integrity knew that he had been

12   refused whistleblower status.

13          MS. MORRIS:  Judge, I would have that information on

14   my computer because I was the one that reached out to OPR to

15   find that information out, and they sent me a letter that had

16   been sent to Mr. Joy.

17          THE COURT:  Does someone -- your secretary, someone

18   have access?  I just need -- well, can't you call OIG?

19          MS. MORRIS:  Yeah.  Actually I can call OPR, the

20   individual who I spoke with at OPR.

21          THE COURT:  I want a copy of that letter also.

22          MS. MORRIS:  I have that.  I have an extra copy

23   because it's on my computer.  But the copy -- and that's what

24   was explained to me from OPR that -- because I was keeping OPR

25   apprised of what was going on here, and in apprising OPR -- it

1   was after the hearing when we -- because after I apprised OPR

2   of what was going on here, that's when I was informed that

3   there was a -- that Mr. Joy had been given a letter as early

4   as December 4th telling him he had been denied whistleblower

5   status.

6           THE COURT:  Why wasn't I told that?  I was never

7   told that?

8           MS. MORRIS:  I didn't know that, Judge.  I didn't

9   know that.

10          THE COURT:  Somebody knew that.  That office knew

11  that.  We nearly pulled our heads off getting that opinion

12  out, operating under the assumption that his whistleblower

13  status was up in the air.  That would have been a dramatic

14  revelation had we known that he'd been denied whistleblower

15  status by the Government.

16          MS. MORRIS:  Well, I -- we didn't know it.  The

17  public integrity section did not know.

18          THE COURT:  They kept it from you?

19          MS. MORRIS:  Yeah.  The whole thing was kept from

20  us, Judge.  As a matter of fact, the only thing --

21          THE COURT:  But you had nine days to investigate

22  this, though.  You got the complaint and the Government took

23  nine days before your office told me, right?

24          MS. MORRIS:  Right, and that's true.

25          THE COURT:  During the nine days, you didn't learn

1   that he'd been denied whistleblower status?

2          MS. MORRIS:  No, sir.  Yes, sir.  It wasn't that we

3   were investigating --

4          THE COURT:  Why don't you come up to the podium.

5          MS. MORRIS:  Yes, sir.  It wasn't that we were

6   investigating as much as we were trying to make the

7   determination of what we could do.  It was a matter of our

8   office working with OPR.

9          In my understanding, and I guess Bill Welch would be

10  better to explain how it came to our attention because it

11  looks like the letter went from FBI Anchorage to Headquarters,

12  from Headquarters to our Main OPR, to OPR to Main Justice, to

13  Main Justice then to Bill Welch and then to us, the trial

14  team.  So it was --

15         THE COURT:  I find it incomprehensible that your

16  office didn't know prior to the hearing that this man had been

17  denied whistleblower status, if you're telling me now that he

18  was told in a letter dated December 4th.  I don't recall the

19  date of the hearing.  It was well after December the 4th,

20  though.

21         MS. MORRIS:  Yes.  It looks like it from a letter of

22  December 4, he was told.

23         THE COURT:  Don't you agree that would have been

24  relevant information for me to know?

25         MS. MORRIS:  We did not have it.  I spoke to Mr. --

1    I want to make sure I get the name right.  I believe his name

2    is "Colby" at OPR, and he was the one who told me, "I think

3    you're working under a misimpression."  And that there was a

4    letter that he -- I said -- and my specific question to him

5    was, "Does this individual know that they have been given

6    whistleblower protection?"

7            And he said, "There is a letter."  And he sent me

8    the letter.

9            Now, whether or not -- I just want to make sure if

10   he sent it to me through e-mail or whether he faxed it to me.

11   I believe he e-mailed me because I just looked at the copy I

12   have and there's no fax on it, but he said, "You're working

13   under a misimpression," and he gave me that information.  And

14   again --

15           THE COURT:  He told you after the hearing?

16           MS. MORRIS:  I called them.  I called OPR after the

17   hearing.  I had been keeping OPR apprised of what was going on

18   with regard to this, because normally we wouldn't have access

19   to any of this information, but I wanted OPR to know that

20   certain of this information, not only were we going to have to

21   provide it to the Court, but we're going to have to provide it

22   to Defense as well and that we were providing it to the

23   Defense and to the Court under seal.

24           And what I was being told back -- and I was

25   apprising the head of OPR as well as one of the attorneys in

1    OPR, the message I got back is, "You have to do -- you have to

2    inform the Court whatever you have to do to protect your

3    litigation."

4              THE COURT:  I want a declaration from the Attorney

5    General.  I want his signature on this declaration.  I want to

6    find out what -- how the Government handled this whole matter

7    on whistleblower status, what OIG did when the complaint came

8    in.  I want copies of correspondence from OIG to the

9    complainant.  I want copies of all correspondence from OIG to

10   OPR and to your office, to Anchorage, to anyone who had any

11   knowledge about this.  I want to know what your office knew

12   and when it knew it.

13             I find it astounding.  If your office knew this man

14   had been denied whistleblower status, it had an obligation to

15   tell me before we had that hearing.  You certainly -- if you

16   learned about it afterwards, as soon after you learned about

17   it, you had an obligation to let the Court know.

18             MS. MORRIS:  Judge, again, I just want to make sure

19   that it's not OIG as much as --

20             THE COURT:  I don't care who it is.

21             MS. MORRIS:  -- OPR.

22             THE COURT:  I don't care who it is.  I want the

23   Attorney General's declaration about what happened, everything

24   that happened with respect to this whistleblower issue, what

25   each arm of the Government knew, when it knew it, what it knew

1    and why I wasn't told relevant information.

2              Today is Wednesday.  I want it on my desk by noon on

3    Friday.  I'm not going to extend the time.

4              MR. WELCH:  If I may, with all due respect, Your

5    Honor.

6              THE COURT:  I know he's leaving office, but I want

7    his signature on this declaration before he leaves office.

8              MR. WELCH:  We certainly can't make any promises.

9    We're going to communicate exactly what the Court has said.

10             THE COURT:  I want it done.

11             MR. WELCH:  I understand.

12             THE COURT:  And the fact that he's leaving office

13   next week is not an excuse.  This is the most important matter

14   on his desk right now.  I want it done by noon on Friday.

15             MR. WELCH:  We'll communicate to the Court -- we'll

16   communicate exactly what the Court has told us.

17             THE COURT:  I'll put it in writing, too.

18             MR. WELCH:  Thank you, Your Honor.

19             THE COURT:  I find it absolutely astounding.  It

20   better not be that I find out that your office knew that this

21   man had been denied status.

22             MS. MORRIS:  Judge, I was the one that was having

23   communication with OPR, and again, I didn't know that even

24   Agent Joy had known, so I don't know whether or not

25   Mr. Simpson knew.  I don't know when Mr. Simpson knew.  The

1  letter went straight to Agent Joy, and we -- we didn't have

2  any communication with Agent Joy, still haven't.

3       THE COURT:  But the Government -- one arm of the

4  Government knew.  That office apparently was interacting with

5  your office, OIG, I assume.

6       MS. MORRIS:  OPR, Judge.

7       THE COURT:  OPR.

8       MS. MORRIS:  They were not having -- Let's be clear,

9  if I could.  We -- I'm sorry.  But we were not having -- they

10 were not communicating to us from the standpoint of they have

11 to conduct their investigation.  What happened is I was

12 communicating to them.  I reached out to them after we found

13 out about it to say, "Look, I don't want to step on anyone's

14 toes.  I don't want to do anything that's inappropriate for

15 OPR; however, we have this litigation currently.  We just got

16 finished with the trial.  I'm going to have to inform the

17 Court of this."

18       And again, that was going with OPR.  And OPR's

19 response back to me was, "You tell them whatever you have to."

20       THE COURT:  What took place during the nine days?

21 Something was taking place during the nine days, and I'm not

22 suggesting anything inappropriate was taking place, but you

23 used the word "investigation" before, either at the podium or

24 in pleadings.  The substance of his complaint -- and I can say

25 "his," since you mentioned his name, is his complaint was

1   being discussed, the investigator, for nine days.

2           MS. MORRIS:  Well, Judge --

3           THE COURT:  So what's critical is, did your office

4   know that he'd been denied whistleblower status?

5           MS. MORRIS:  No.  What I'm telling you is what we

6   had was the initial complaint.  That's what we had and that's

7   all we had.  Even with the addendum that came up, we did not

8   know -- even know about that.  I forget even how I found out

9   about that.

10          THE COURT:  All right.  I want a paper trail and I

11  want the information trail.  I need to know.  I need to know.

12  All right.

13          MS. MORRIS:  And just to be clear, Judge, because

14  everybody was so hinky about discussing and giving

15  information, because we didn't know --

16          THE COURT:  Because we were all sensitive and should

17  be sensitive to the claims of the whistleblower.

18          MS. MORRIS:  That --

19          THE COURT:  It's completely different if the

20  Government told him, "You aren't entitled to this status," and

21  that's something I should have known because I would have done

22  things completely differently had I known, had I known that

23  he'd been denied status.  And had he been denied status,

24  whistleblower status by OIG, some office, someone in that

25  office or OPR had an obligation to tell your office that or

1    tell me that.  Pick up the phone and acknowledge and tell me

2    that, because that would have made a significant difference in

3    how I approached that issue and how I resolved that issue.

4            MS. MORRIS:  Yes, Judge.  And you are correct in

5    that there was -- we were under the impression that he had

6    been given or asked for this status, and we didn't know

7    whether he was given that status.

8            And if you recall, Judge, when I initially reached

9    out to the Court, I was very ginger because I'm just not

10   familiar with this aspect of the law and what I could and

11   couldn't say, and that was when I first contacted the Court

12   and with Defense counsel to say, "This issue has come up.  I'm

13   just not familiar with the law with what I can't and can't

14   say."

15           THE COURT:  I want answers to my question, and I

16   want the declaration of the Attorney General before he leaves

17   office, and I'm not going to extend the time.  This Attorney

18   General, not the next one, this one.

19           MS. MORRIS:  We understand.

20           THE COURT:  All right.  Parties are excused.

21           THE DEPUTY CLERK:  This honorable court is now in

22   recess.

23           (PROCEEDINGS END AT 2:45 P.M.)

24                        *-*-*-*-*

25

1
2
3
4
5        **CERTIFICATE OF REPORTER**

6              I, Catalina Kerr, certify that the foregoing is a

7   correct transcript from the record of proceedings in the

8   above-entitled matter.

9
10
11
12
13   _____     _____
14   Catalina Kerr                   Date
15
16
17
18
19
20
21
22
23
24
25