1          UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF COLUMBIA
2
   ------------------------X
3  UNITED STATES OF AMERICA,      Docket No. 08-231
                    Plaintiff,
4
            v.                    Washington, D.C.
5                                 **Saturday, October 18, 2008**
                                  4:00 p.m.
6
   THEODORE F. STEVENS,
7                    Defendant.
   ------------------------X
8
                 **TRIAL TRANSCRIPT - DAY 19**
9        BEFORE THE HONORABLE EMMET G. SULLIVAN
                 UNITED STATES DISTRICT JUDGE
10

11 APPEARANCES:

12 For the Government:    UNITED STATES DEPARTMENT OF JUSTICE
                         By:  Mr. Nicholas A. Marsh
13                       10th and Constitution Ave., N.W.
                         555 13th Street, N.W.
14                       Washington, D.C.  20530
                         202.307.1049
15

16 For the Defendant:    WILLIAMS & CONNOLLY, L.L.P.
                         By:  Mr. Robert M. Cary
17                            Mr. Craig Singer
                         725 Twelfth Street, N.W.
18                       Washington, D.C.  20005
                         202.434.5000
19
   Court Reporter:       Catalina Kerr, RPR
20                       Official Court Reporter
                         U.S. District Courthouse
21                       Room 6716
                         Washington, D.C.  20001
22                       202.354.3258

23 Proceedings recorded by mechanical stenography, transcript
   produced by computer.
24

25

1                    P-R-O-C-E-E-D-I-N-G-S

2          (4:00 P.M.; OPEN COURT; JURY NOT PRESENT.)

3          THE COURT:  All right, Counsel.  Good afternoon.

4    Thanks for your submissions.  I'm going to try to get through

5    this as quickly as possible.

6          I've had a chance to consider the majority of your

7    proposals and some of your objections.  Some I've -- I

8    couldn't focus on because I don't know the nature of the

9    objections other than the Government objects.  I guess, for

10   the record, I ought to get the names of everyone who is here

11   or the few people who are here so there is a record.  We do

12   have a court reporter.  We don't have a courtroom deputy.

13         MR. MARSH:  Good afternoon, Your Honor.  For the

14   United States, Nicholas Marsh.

15         THE COURT:  All right.  Mr. Marsh.

16         MR. SINGER:  Good afternoon.  For Senator Stevens,

17   Craig Singer and Rob Cary.

18         THE COURT:  All right.  Good afternoon, Counsel.

19   Let's just see how far we can get through this.

20         You've agreed on certain instructions.  That's fine.

21   I'm looking at -- I'm going to focus on your joint submission

22   regarding the proposed Red Book final jury instructions.

23         First, because I recognize that the footnotes have

24   some -- contained some information that represents the

25   parties' objections.  With respect to 1.12 of the Red Book,

1    the impeachment of proof of conviction of a crime-witness, I'm

2    going to give that.  I know Senator Stevens has proposed

3    something else, but I'll give 1.12.

4         With respect to 2.51A and 2.51B, the 404(b) evidence

5    instructions, I'm going to turn to page 52 of your submission

6    regarding Senator Stevens' supplemental proposed, and I

7    actually am of the opinion that the information that's set

8    forth on page 51 is correct.  I would propose adding to that

9    instruction the following language at the top of page 52 and

10   after the first sentence -- first full sentence, "You may,

11   however, consider that evidence for other purposes, such as

12   proof of motive, intent, opportunity, preparation, plan,

13   knowledge, or absence of mistake or accident."  And

14   essentially that language tracks the language in 404(b).

15        So, any reaction to that?  What essentially I've

16   done is combined Senator Stevens proposed instruction and

17   added language that tracks 404(b).

18        MR. SINGER:  Your Honor, for our part, I mean, we

19   understand the -- why the Court has done that, although we

20   prefer the instruction the way we proposed it and we'll

21   formally object to the added language.  I'm not going to argue

22   about it.

23        THE COURT:  All right.  Any reaction, Counsel?

24        MR. MARSH:  Your Honor, the only concern that the

25   Government had that was with respect to the first bullet point

 1    on page 51, it appeared as though that that -- we believe the

 2    Court to have ruled that this was 404(b) but also intrinsic to

 3    the indictment, and so our --

 4            THE COURT:  The generator?

 5            MR. MARSH:  Yes, yes, Your Honor.  We agree -- we're

 6    fine with the Court's other additions.

 7            THE COURT:  All right.  But what the Government's

 8    position is that, that the first bullet point, the generator

 9    language should be deleted from the 404(b), from this

10    instruction?

11            MR. MARSH:  Your Honor, to the extent that if it's

12    coming -- if the Court ruled alternatively that it comes in as

13    intrinsic to the matters in the indictment, our position would

14    be it shouldn't go into this.

15            And we also noted -- Mr. Singer and I spoke last

16    night -- the guns and gift bags, Your Honor, I think -- not

17    sure exactly how the Court or the parties want to deal with

18    it.  It's certainly not something that we believe is "other

19    bad acts."  There was some testimony about it.  We didn't file

20    404(b) on it, we're not planning on arguing it, so --

21            THE COURT:  Maybe I should just delete that then.

22            MR. SINGER:  That would be our preference, but we

23    understand.  Our preference would be that the Court should

24    strike it.  That's what we've had our motion --

25            THE COURT:  Well, I'll delete it and make a straight

1   collar deletion or strike it.

2          MR. SINGER:  I meant the Court should strike the

3   evidence to the extent that there was evidence about gift bags

4   and guns.

5          THE COURT:  I could tell the jurors to disregard

6   that.

7          MR. SINGER:  That would be preferable from our

8   perspective because we believe it was improperly admitted to

9   begin with.

10          THE COURT:  What's the Government's position?

11          MR. MARSH:  The Government's position is that the

12   witness testified about it, was cross-examined about it by

13   Defense counsel and the objection wasn't made until the

14   following day.  We don't believe it should be stricken, but we

15   also believe that it's just testimony that's really neither

16   here nor there.

17          THE COURT:  Then what I'll do is I'll tell -- I'll

18   strike it from this, and then I'll just tell the jurors to

19   disregard it.  That's what I'll do.

20          MR. SINGER:  That will be fine from our perspective.

21          THE COURT:  All right.  Just a minute, just a

22   minute.

23          MR. SINGER:  Sorry.

24          THE COURT:  Actually, I don't need to tell them

25   anything.  If no one is going to argue it, I'll just tell

 1    counsel don't argue it.

 2          MR. SINGER:  The problem with that, Your Honor, is

 3    that the jury has heard it, and so I think something needs to

 4    be done so that they don't convict the Defendant on the basis

 5    of it.  That's why we had it in here, but if -- we certainly

 6    prefer that it be stricken and the jury be told not to

 7    consider it for any purpose.

 8          THE COURT:  Maybe I won't strike it.  Maybe I'll

 9    just tell the jurors not to consider evidence of guns and

10    gifts bags from the Kenai River Sport Fishing Association.  I

11    don't want to add any sinister meaning to that evidence.  I

12    don't want to say it's stricken.  The objection was not made

13    until the following day, I believe.

14          I'll give it some thought, but my inclination would

15    be to just tell them just not to consider it.  All right.

16          MR. SINGER:  Your Honor, with relation to the

17    generator, it is very important to us that the generator be

18    included in this instruction.  To the extent the Court has

19    ruled that it's intrinsic or 404(b), we actually have a motion

20    out there to strike the generator as well for -- based on the

21    new -- new situation that the Court has stricken the Mustang

22    evidence.

23          But regardless of that, even assuming that the

24    generator were -- evidence were not to be stricken, it still

25    needs to be in here because it's not charged conduct.  To say

1    that it's conduct that's intrinsic or intertwined with the

2    charge conduct is not the same thing as saying that it's

3    charged in the indictment, and the reason that the Government

4    presumably gave a 404(b) notice or notice prior to trial of

5    the generator is because there's nothing said about the

6    generator in the indictment, and I think it's been common

7    ground from Day One that the generator is not in the

8    indictment.  It may arguably be that the Government has argued

9    that it's intrinsic, but that's different from saying that it

10   is to be part of the indictment.

11          THE COURT:  It's not mentioned in the indictment.

12          MR. SINGER:  It's not mentioned in the indictment.

13   And if it's not -- if there's nothing about the generator in

14   this instruction, then the jury is going to presume, and maybe

15   correctly so, that they can actually convict Senator Stevens

16   for the generator as opposed to using the generator as

17   evidence of something else that may bear on the charges that

18   are in the indictment, and I think that's very problematic.

19          THE COURT:  Counsel.

20          MR. MARSH:  On the other hand, as the Court's aware

21   from all of the pretrial briefing for the 12 motions to

22   dismiss that Defendant filed before trial, the Government

23   doesn't have to allege every single act that it would

24   introduce to prove the charges in the indictment.

25          If something comes in as intrinsic to the matters

1   charged in the indictment, we believe it can be considered for

2   purposes beyond 404(b), and we also note that we didn't

3   file -- we filed -- we didn't say it was 404(b).  We filed a

4   notice saying we plan on introducing all of these things, we

5   think they're all intrinsic, and in the alternative, we think

6   that they should -- they can come in as 404(b).

7          So, the Government's position on the generator is

8   that it shouldn't be treated as 404(b).

9          THE COURT:  It's not mentioned in the indictment,

10  though.

11         MR. MARSH:  That's correct.  It's not mentioned by

12  letter in the indictment.

13         THE COURT:  So, if it's not mentioned in the

14  indictment and it's not 404(b), then what is it then?

15         MR. MARSH:  It's intrinsic to the matters charged in

16  the indictment, and the Government's position is that can be

17  used --

18         THE COURT:  What do you mean when you say the words

19  -- you say it's intrinsic, meaning what?

20         MR. MARSH:  Meaning it's part of the conduct

21  that's -- We'll withdraw it.  It can go in 404(b).

22         THE COURT:  All right.  All right.  I'm going to

23  give 4.05, willfully causing an act to be done.  Actually, I

24  have notes here.  It's in my handwriting, too.  I said I'll

25  give it, and then I have "give Defendant's," so I'm not quite

1    sure.

2              (OFF-THE-RECORD DISCUSSION BETWEEN THE LAW CLERK

3    AND THE COURT.)

4              THE COURT:  That's right.  It's 4.05, and the

5    reference to Defendant's, so I'll give 4.05.

6              MR. SINGER:  Your Honor, just to be clear about what

7    our objection was just so that I can place it in on the

8    record.

9              THE COURT:  You submitted -- I mean, you submitted

10   all these proposals, so you certainly made -- made clear just

11   what your position is, and I considered your position.  You

12   want to say something about it, go right ahead.

13             MR. SINGER:  The only thing we didn't provide in

14   writing is our reason for not wanting that instruction.  The

15   reason is simply that we don't think there's an evidentiary

16   basis that anything was caused to be done by another as

17   opposed to being done directly by the Defendant.

18             THE COURT:  "Willfully causing an act to be done," I

19   mean, that's a part of the elements of this offense, and the

20   Government has to prove that he willfully did this.

21             MR. SINGER:  That he willfully did it, not that he

22   caused someone else to do it.  That's the distinction that

23   we're drawing.  We believe that there's no evidentiary basis

24   that he caused somebody else to violate the law as opposed

25   to -- what the Government has charged is that he violated the

1  law himself, so there's no need for this instruction, we

2  think, and it may confuse the jury into thinking that there's

3  something out there that there isn't.

4            THE COURT:  What about that?  I didn't bring my Red

5  Book over here.  Judge Huvelle has one.  Let's see.

6            MR. MARSH:  I think on that one, Your Honor, we will

7  defer to the Court.

8            THE COURT:  Actually, this is the '05 version.  I

9  don't use this one.  You're going to what?  Defer to the

10  Court?

11            MR. SINGER:  We have the 2008 version.

12            THE COURT:  No, I got it.  I got it here.  While I'm

13  on this, Counsel, I note that what you've done is you

14  copied -- someone's copied all these instructions with the

15  comments and commentaries, and look, I'm going to put the

16  burden on the parties with respect to the instructions.

17            Those you agree on and those that the Court is going

18  to give to prepare the instructions in the Word Perfect

19  format, to go ahead and correct any tense, gender issues.

20  With respect to parentheticals that are deleted, that's going

21  to be the burden of counsel.  That's time-consuming.  I just

22  don't have the resources to do all that.  I appreciate what

23  you've done.  This has been extremely helpful, but in terms of

24  giving a work product to the jurors, I can't give this to the

25  jurors.

1        So, I don't need it today, I don't need it tomorrow,

2   I need it certainly by Monday sometime.  You're going to know

3   before argument on Monday what the instructions are, but, you

4   know, I can't send all this comment back and commentary and

5   bracketed language, and it should be tense -- tense and

6   genders language should be appropriate as well.

7        4.05.  Let's see.  Let me just take a look at it.

8   The Government's position is what?  Defer to the court?  This

9   is not a willfully causing an act to be done by someone else.

10  Let's see.

11       MR. MARSH:  Well, Your Honor, it's not, but what is

12  charged in the indictment is that the Defendant made and

13  caused to be made statements, and so we believe that it's --

14  it's adequately charged in the indictment.

15       THE COURT:  Insofar as his willfulness is concerned;

16  not the willfulness of someone else.

17       MR. MARSH:  Absolutely.  For instance, Your Honor,

18  signing a statement and having a staffer actually file the

19  statement as opposed to hand signing the statement.  I mean,

20  we think that's making a statement, but we can also see how it

21  would be making -- or causing the filing.

22       THE COURT:  Now, this second sentence, though, is

23  telling the Defendant is responsible for an act which he

24  willfully causes to be done if the act would be criminal

25  performed by him directly or by another.  That's not the

1    Government's theory that some other person did that, so why

2    shouldn't I delete that language?

3              MR. MARSH:   I think -- I think that's fine to delete

4    the second sentence.   I think that the first and third and

5    remaining sentences adequately --

6              THE COURT:   I think the second sentence is

7    absolutely correct, as far as it goes.   Willfully causes to be

8    done if the act would be criminal performed by him, period.

9    Because it's not the Government's theory that someone else did

10   it.   It's at the behest of.   So, I'm going to delete the

11   remaining language.

12             I think the Defendant's point is well taken.   And

13   the last sentence is appropriate as well.   So, I'll delete the

14   language in the second sentence of 4.05 after the word

15   "him" -- after the word "directly."   And as an example, 4.05,

16   where it has him/her, the burden is going to be on the parties

17   to delete the language that's not appropriate.

18             The Court ruled that certain prior consistent

19   statements, particularly all the prior consistent statements

20   of the Defendant, would come in.   I'm inclined to give 1.11.

21             I understand the Government objects.   What's your

22   reason for that?   That's the evaluation of prior consistent

23   statement of a witness.   The prior consistent statement is

24   obviously an exception to the hearsay rule.

25             MR. MARSH:   I --

 1              THE COURT:  Let me just ask Defense counsel, you're

 2   pertaining to the prior consistent statements of the Senator,

 3   correct?

 4              MR. SINGER:  Yes, Your Honor.

 5              THE COURT:  You're referring to him, so that

 6   language would read his name.

 7              MR. MARSH:  Which prior consistent statements would

 8   those be?

 9              THE COURT:  Some of the e-mails.

10              MR. MARSH:  All right.  But I thought those came in

11   for state of mind.

12              THE COURT:  Well, I think that the Government

13   conceded that they came in for state of mind as well as prior

14   consistent statements the other day.

15              MR. MARSH:  I think we conceded they could come in

16   as prior consistent statements once he was impeached.

17              THE COURT:  All right.

18              MR. SINGER:  And Defense counsel's choice to

19   introduce them on direct jumped ahead of that, so they, by

20   definition, can't come in --

21              THE COURT:  For state of mind purposes.

22              MR. MARSH:  Right.

23              THE COURT:  What about that?  Counsel may be correct

24   on that.

25              MR. SINGER:  Well, we think they're still prior

1    consistent statements, whether they come in first or whether

2    they come in second, and we also have redirect left to go and

3    it may very well be that it --

4              THE COURT:  All right.  I'll reserve ruling on that.

5    I think I'll probably be inclined to give 1.11.

6              Informer's testimony, 2.24, I assume it pertained

7    to -- this pertains to Allen.  I don't feel he's an informer

8    so much so as he is a person with a plea agreement with the

9    Government, so unless your theory is there is some other

10   informer here.

11             MR. SINGER:  It is Allen, Your Honor.  The reason we

12   had hoped for this instruction on Allen is that he actually

13   was more than just a cooperating witness.  He actually went

14   out and tape-recorded Senator Stevens with -- under the

15   Government's supervision and direction intending to come up

16   with evidence of crimes, and that, to me, is the very

17   definition of informer, and I think he qualifies.

18             THE COURT:  Let me just take another look at it.

19   Let's see.  You maybe have a point there.  Let's see, 2.24.

20   You heard evidence, that would be Allen -- well, they haven't

21   heard really he's an informer, but he has an arrangement with

22   the Government to help the Government obtain introductions.

23   That's not like a drug case where he's introducing someone to

24   someone else to purchase or sell drugs, and to help the

25   Government obtain information.  He was wired.  In exchange he

 1    receives --

 2            MR. SINGER:  The benefit --

 3            THE COURT:  Well, it says he may receive a benefit.

 4    There's no foregone conclusion.  In fact, you don't think the

 5    Government is going to do anything to help him anyway.  Just a

 6    minute.  Just a minute.

 7            MR. SINGER:  Okay.

 8            THE COURT:  "In exchange, he receives a benefit in

 9    the pending case."  He may receive a benefit, I think.

10            MR. SINGER:  Your Honor --

11            THE COURT:  He may go to jail for 20 years, too, for

12    all I know.  Wait a minute.  Just a minute.  The use of such

13    persons is a recognized means of detecting criminal conduct

14    and the Government is permitted to call such persons as

15    witnesses; however, when the informer testifies, his testimony

16    should be considered with caution.

17            I already said that anyway, though.  I can tell them

18    to consider it, his testimony with caution because he's got a

19    plea agreement.  That's interesting.  Go ahead.

20            MR. SINGER:  There were a number of reasons to

21    consider Mr. Allen's testimony with caution in this case.  We

22    think this is one of them.  I mean, he is --

23            THE COURT:  You can certainly argue that, you know.

24            MR. SINGER:  Certainly, but there's a recognized

25    instruction for this, and it's better for us coming from an

1    instruction.  I mean, he has an arrangement with the

2    Government to help the Government obtain information.  In

3    exchange, he receives a benefit in a pending case.  He

4    received enormous benefits in his case.

5         He received -- his children were protected.  He

6    received, we believe, some additional consideration as a

7    result of the VECO sale, and he's also eligible for 5K1, which

8    whatever he may think, it's standard operating procedure to

9    receive a 5K1 in circumstances like this, so I'm sure he will

10   get a lighter sentence.

11        THE COURT:  You don't know that, though.  The judge

12   has no obligation to sentence him to a lighter sentence.  He

13   may.  Who knows.  The Government sometimes argues for 5K, and

14   you know, sometimes the judges thank people for their

15   cooperation and give them the maximum.

16        MR. SINGER:  It's not a foregone conclusion, Your

17   Honor.  And also, the children -- but it may not be a foregone

18   conclusion that he gets a lighter sentence, but it does tend

19   to happen in the run of cases, and there's reason to know

20   that.

21        The children being protected, I'm reminded, happened

22   long before the plea agreement.  So he received that as part

23   of his status as an informant even before he pled guilty to

24   anything, so that's particularly germane to the informant

25   instruction.

1    THE COURT:  Maybe I'll need to -- maybe I can add

2    some language to witness with the plea agreement, though,

3    because he did testify that there were some benefits to his

4    children.  Maybe I can add this language to 2.22A.  What would

5    be inappropriate?  Why would that be inappropriate to the

6    Government as opposed to saying he's an informer?

7        I mean, these labels don't really mean a lot.  There

8    is a certain sinister connotation to an informer, but he did

9    agree to wear a wire.

10    MR. MARSH:  Your Honor, I think the point that 2.22,

11   2.23, 2.24 all bring together is that there are certain

12   categories of people that the jury should be instructed to

13   consider their testimony with more skepticism, if you will,

14   than others, and it doesn't seem correct to hit the same

15   witness over the head with three different instructions.

16    THE COURT:  And you've agreed, though, the

17   Government's agreed to 2.23?

18    MR. MARSH:  We have a -- Your Honor, I think one of

19   my colleagues did agree to it.  We're still in the process of

20   trying to figure out.  I'm not sure --

21    THE COURT:  He's immunized in this case.

22    MR. MARSH:  That's why I'm -- it's Defense's

23   perspective that Mr. Allen received immunity for his

24   testimony.  That's not the Government's position.  He's pled;

25   he's been convicted.  The dollar amounts that are the subject

1   of Mr. Allen's plea agreement derive, in part, in this case.

2   So we don't believe he -- we don't view him as an immunized

3   witness in any degree.

4          THE COURT:  Is there some provision in that plea

5   agreement, which is in evidence, that he will not be

6   prosecuted for any other crimes that arise out of?  I'm sure

7   there has to be.

8          MR. MARSH:  I'll have to go back.  I'm sure there

9   probably is, but we wouldn't view that as --

10         THE COURT:  Immunity.  I mean, immunity means

11  certain things.  I mean, use immunity, other immunity,

12  normally there's some sort of document or judicial proceeding.

13         MR. MARSH:  I think that's right.  I mean, certainly

14  to the extent that -- it just -- it seems like to us that

15  2.22A covers everything that -- it's written for people who

16  have plea agreements, and they get to -- they help the

17  Government and they have to tell the truth and they have

18  certain things that are done for them.

19         So -- I mean, to the extent that the Court believes

20  that something additional needs to be put in 2.22A to

21  recognize benefits to Mr. Allen or something like that, we're

22  not opposed to it.  It's accurate.

23         THE COURT:  I think I'll do that.  I think what I'll

24  do is -- over objection.  I don't think he's really an

25  informer, but I think I can add some language.  He did agree

1    to wear a wire and he did wear a wire.  His children did

2    receive a benefit, so he received a benefit.

3            I mean, the plea agreement is in evidence.  They can

4    consider it, and anything -- any language in the plea

5    agreement in an effort to determine any other benefits.  So I

6    think I'll make some modifications to 2.22A that's consistent

7    with what he testified to himself.

8            You know, I don't know everything about him and his

9    involvement with the Government.  I don't know whether he was

10   immunized by some judge or whether the Department of Justice

11   afforded him some sort of use immunity.

12           MR. MARSH:  Your Honor, if it's all right, Your

13   Honor, perhaps we could do this, we could keep 2.23 in for

14   now, and if the Government has additional stuff, we can submit

15   it to the Court.

16           THE COURT:  That's fine.  Fair enough.  Before,

17   while I'm on that page, the Defendant's theory of the case.  I

18   haven't seen that.  I have an idea what it probably is, but

19   it's multi-pages.  I need to see it sooner than later, you

20   know.

21           MR. SINGER:  Your Honor, we -- we don't feel that we

22   can provide an instruction until Senator Stevens is off the

23   stand on that, but as soon as he is, we'll be in a position to

24   do that.

25           THE COURT:  All right.  Fair enough.

1          MR. SINGER:  Thank you.

2          THE COURT:  The exhibits, I know that's standard.

3    2.73 says something about the Court not sending the exhibits

4    back.  I'm going to send all the exhibits back.  I'll send the

5    paper exhibits back, and I'll send two copies of the

6    instructions back.

7          I'm not going to burden you with making copies of

8    the instructions for witnesses, but I am going to put the

9    burden for you to refine the language in the instructions that

10   the Court finally decides to give in this case.

11         Now, going back to -- I think I finished.  Let's

12   see.  Unanimity.  We're going to spend some time on unanimity

13   instructions.  I dealt with 404(b).  I dealt with -- let's

14   see, footnote 6 of your submission.

15         I have a note to myself, page 47.  Let's see, page

16   47, your proposed 37.  The only witness who testified that has

17   a prior conviction is Allen, so I'm not inclined to give 37.

18         MR. SINGER:  Your Honor, I think the issue there is

19   whether the Court should give 37 or the Red Book version,

20   which was 1.12, and Your Honor --

21         THE COURT:  I indicated I would give 1.12, right.

22         MR. SINGER:  Right.  The issue for us on that one

23   was that 1.12 doesn't say that the evidence of a criminal

24   conviction can discredit the witness, which is the point, from

25   our perspective, and so we would prefer the version from -- I

1   think it's the *Sandra O'Malley* treatise that we put in.

2           THE COURT:  All right.  I'll give -- over objection,

3   I'll give the Red Book version of that.

4           Unanimity.

5           MR. SINGER:  Your Honor, before we get to unanimity,

6   there were a couple of other, I think, smaller issues in here

7   on the Red Book side.  Unanimity is a larger issue as we get

8   to the non-Red Book instructions as well.

9           One of them is under Instruction 3.02, which

10  contains -- it's the instruction on proof of state of mind.

11          THE COURT:  Yes, sir.

12          MR. SINGER:  And it contains some bracketed language

13  that the Defense is particularly concerned about.  There's a

14  sentence in here, the first paragraph -- the first sentence of

15  the second paragraph says, "You may infer but are not required

16  to infer that a person intends the natural and probable

17  consequences of acts he or she intentionally did or did not

18  do."

19          THE COURT:  I'm inclined do give that.  Why

20  shouldn't I?

21          MR. SINGER:  Because there's no issue of

22  foreseeability in this case.  I'm not arguing that the -- that

23  that's not a correct statement of the law under some

24  circumstances, but there's no issue here of intending the

25  natural and probable consequences.  That's a situation where

1   you intend one thing and something else happens.  It's simply

2   not an issue here.  The offense does not involve a chain of

3   events.  It involves whether statements are true or false, so

4   that --

5           THE COURT:  But the commentary under that says the

6   first bracketed sentence in the second paragraph is

7   appropriate only if intent is the requisite state of mind, and

8   that's certainly intent here.  That's the Government's theory

9   that he intentionally did this.

10           MR. SINGER:  No question about that, Your Honor, and

11   that's not the nature of our objection.  The commentary

12   doesn't say that it's -- that the bracketed language is always

13   appropriate every time intent is the requisite state of mind.

14           The situation is here, it is a question of intent,

15   but it's not a question of whether he intended a remote

16   result.  An unforeseeable or foreseeable result, that's the

17   point of the bracketed language.

18           THE COURT:  All right.  Yes, Counsel.

19           MR. MARSH:  For instance, Your Honor, knowingly and

20   willfully submitted a false financial disclosure form but I

21   actually intended to keep it from the press and I wasn't

22   really all that concerned with defrauding the Senate.  The

23   jury should be instructed that they are permitted to infer

24   that the natural and probable consequence of making a false --

25   knowingly and willfully making a false statement to the Senate

```
 1   would be to have that affect on the Senate.  We think it's
 2   appropriate.
 3            THE COURT:  All right.  Because if it were disclosed
 4   to the press, then the gifts would stop.
 5            MR. MARSH:  Which is also a very relevant part of
 6   this case, but certainly we submit that it is appropriate in
 7   this case, that bracketed language.
 8            THE COURT:  All right.
 9            MR. SINGER:  The hypothetical you just heard is not
10   anywhere in evidence in this case, and it wouldn't be a
11   defense, as I understand it, to the charge anyway.
12            THE COURT:  You can certainly argue that, though,
13   you can argue that.  The argument is not evidence.  He can
14   argue that's his theory.  Why can't he argue that?
15            MR. SINGER:  I'm sorry, that was -- I think what
16   Mr. Marsh was doing was characterizing a potential defense
17   that is not in evidence here.
18            THE COURT:  All right.  I'm inclined to give it.
19   I'll give it some more thought.  My inclination is to give the
20   first bracketed language and also the names -- I mean,
21   throughout it says name of the defendant, name of the
22   defendant, you know, you can put Senator Stevens' name.  He
23   wouldn't be indicted for this offense if he were not a United
24   States Senator, so it's appropriate to refer to him as Senator
25   Stevens.
```

1              MR. SINGER:  The other --

2              THE COURT:  Yes.

3              MR. SINGER:  The other significant issue on the Red

4    Book that I think the only one we haven't gotten to yet is

5    Instruction 3.05 on proof of value.  This is a critical

6    instruction for the Defense, and it goes to the -- to the

7    first argument that we made in our Rule 29 motion that the

8    Government needs to prove valuation based on a fair market

9    value standard, which is the way that valuation has -- as I

10   understand it, has always been proven in all kinds of cases

11   throughout the federal system and throughout the D.C. system,

12   and so this is a very important instruction for us, and we see

13   no basis for it not to be given.

14             THE COURT:  All right.  Counsel.

15             MR. MARSH:  We obviously disagree with that, Your

16   Honor.  These are cases where theft amounts are in issue or

17   the contraband or the stolen property, that kind of stuff.

18   This is a case where the relevant value is the value that's

19   listed on the form.  The form defines value.

20             We think if there's going to be a value definition,

21   it should be the one that comes in the form, because in this

22   case, unlike -- you know, there's -- unlike a theft case or

23   unlike a stolen property case or any other cases, value is a

24   term that's defined internally within the materials, and we

25   think that should be the definition given, if any is given.

1          THE COURT:  And the value being for a certain

2    calendar year not less than whatever it is, 238 or $250 then;

3    is that correct?

4          MR. MARSH:  Well, certainly, Your Honor, our view is

5    that value is defined in the forms.  The Court doesn't need to

6    give a value instruction.  To the extent that the Court feels

7    that one should be given, we think it should be verbatim the

8    value instruction in the forms that --

9          THE COURT:  What is that instruction in the form?  I

10   don't think I have that language.  I'm sure it's on the form.

11         MR. SINGER:  I'm happy to read it because I would

12   like to explain why --

13         THE COURT:  I'm sure if it's in the paperwork, I'm

14   sure it's there.  Yeah.

15         MR. SINGER:  I would like to explain why it doesn't

16   help.  The form says, "The term 'value' means a good faith

17   estimate of the dollar value if the exact value is neither

18   known nor easily obtainable and is not otherwise required by

19   the instruction."  It then goes on to give some options for

20   personal property.

21          It doesn't tell you how you calculate value.  What

22   does value mean?  It just says, "a good faith estimate if the

23   exact value is neither known nor easily obtainable."  Well,

24   how would one obtain exact value?  Clearly by fair market

25   value.  And if you look below at Option 7, which is the only

1    one here that appears to talks about the value of real

2    property, it says Option 7, "where the value of real property

3    or real estate partnership is not ascertainable without an

4    appraisal," then it gives some other methods of obtaining the

5    value, such as the assessed value of real property for tax

6    purposes adjusted to reflect current market value if the tax

7    assessment is computed at less than 100 percent of current

8    market value.  Another option is --

9             THE COURT:  Let me ask you this:  The Government's

10   theory is that for the years in question, the Defendant failed

11   to state gifts valued at at least a certain sum of money.

12   Then why shouldn't the jurors be told that prior to convicting

13   him for any -- any particular year, they must first conclude

14   that the fate estate, the thing of value was at least whatever

15   it is, $250, why wouldn't that be an accurate -- an absolutely

16   accurate statement of the law?

17            MR. MARSH:  We think that's absolutely correct, Your

18   Honor.

19            MR. SINGER:  It is accurate, and how do you

20   determine whether something is worth $250?  Fair market value.

21            THE COURT:  Well, I don't think I need to throw in

22   that wrench and say fair market value.  I think if I just

23   break it down in plain English along the lines that I just

24   suggested, I think that would be appropriate.

25            MR. SINGER:  Your Honor, it's not -- it's plain

1    English as far as it goes, but it doesn't tell them how to

2    determine what something is worth.  Something could be worth

3    $250 because I think it's worth $250 but that doesn't make

4    it -- that's doesn't make $250 the fair market value.

5           THE COURT:  They've put all the evidence in the

6    case -- they're the judges of the facts, they can consider all

7    the evidence in an effort to determine whether the thing of

8    value for a given year was at least whatever the Senate form

9    says it is, 238 or $250.  That's for them to make that

10   determination.

11          MR. SINGER:  It's certainly up to the jury to make

12   the determination, but they need to be guided by some

13   benchmark to tell them what is the -- what does the value mean

14   and how do you --

15          THE COURT:  But I'm not going to tell them that the

16   benchmark is fair market value, I don't think.  So, anyway,

17   that's what I'm going to do, and I'll draft something that's

18   appropriate over objection.

19          I think that's all I've -- all of the proposed Red

20   Book, I believe.  If I've overlooked something, tell me before

21   I move on.

22          Where are all the other lawyers?  We had to be here.

23   I should have ordered everyone to be here.  Everyone else is

24   on the golf course, tennis court, with their kids, grand kids

25   having a nice time.  I'm just kidding you, folks.

1          (LAUGHTER)

2          THE COURT:   It's a beautiful day out, though, really

3    is.  All right.  Let's go to -- Thank you.  Again, I really

4    appreciate your efforts in trying to reach agreement.  I know

5    what -- it's not easy.  The time we spend on instructions and

6    determining what instructions are appropriate and not

7    appropriate is endless sometimes, and I really appreciate the

8    time and effort that you're made.

9          I know you filed your submission last evening.  I

10   really, really appreciate it.  I may not agree with everything

11   but it's not to say I don't appreciate your efforts.  Let's

12   see.  I guess the easiest way is to go through the remaining

13   list.

14         Now, with respect to Instruction 2 and throughout

15   the instructions, the Government disagrees with the use of

16   "The Senate Select Committee on Ethics" nomenclature and would

17   replace it with "The Senate."  I think that's absolutely

18   correct.  Why shouldn't I do that?

19         MR. SINGER:   Because, Your Honor, The Senate is not

20   the -- the full Senate is not the body that receives the

21   forms.  I have --

22         THE COURT:   Is that -- is that -- the reference to

23   "The Senate Select Committee on Ethics," does that appear

24   anywhere in the indictment?

25         MR. SINGER:   It appears -- I'm not sure if it's in

1    the indictment, but it's in the forms, Your Honor.

2                MR. MARSH:   "The Secretary of the Senate," Your

3    Honor.

4                MR. SINGER:   The Secretary -- well, if you want to

5    change it to "Secretary of the Senate," that's --

6                THE COURT:   I thought about that also.   Why didn't

7    you say "The Senate"?   I actually thought about "The Secretary

8    of the Senate" because the indictment says the --

9                MR. SINGER:   It's not The Senate, Your Honor.   It's

10   the -- the form is filed with The Secretary of the Senate and

11   it states that the statement will be made available by the

12   Office of the Secretary of the Senate to any requesting person

13   upon written application and will be reviewed by the Select

14   Committee on Ethics.

15               The Select Committee on Ethics is the official

16   decision-making body that receives the form, and what it

17   decides to do with it, if it decides to publish it to the full

18   Senate and seek some action out of the full Senate is up to

19   the committee, but in the ordinary course, my understanding at

20   least, and there's no -- I haven't seen any evidence to the

21   contrary, is that the body that gets the form is the Senate

22   Ethics Committee.   It's not the full Senate.

23               THE COURT:   I'm reminded, I think.   Did you both

24   disagree to "The Secretary of the Senate" language?

25               MR. MARSH:   Well, Your Honor, I think what we do

1    believe is that -- certainly the forms go to the Secretary of

2    the Senate and they're reviewed by the Secretary.

3            THE COURT:   It says that in the indictment also.

4            MR. MARSH:   Right, but it is -- the documents are

5    very clear that they go to The Senate Committee on Ethics.   We

6    would say that if the Court is going to do anything other than

7    Senate, Senate Committee on Ethics is the appropriate way to

8    go, but the point is, Your Honor, the Senate has the power to

9    take effect on these.

10           Mr. Singer is absolutely correct that the Supreme

11   Court decision in *Gaudin* makes very clear that it has to be a

12   false statement to the body to which it's submitted, but at

13   some point this can get to be too attenuated. It's not simply,

14   you know, it gets filed with a particular clerk and that

15   particular clerk has to be the one whose materiality is at

16   issue.

17           What we submit is these forms go to the Select

18   Committee.  They can be referred.  The full Senate can take

19   action in certain situations, so we think the Senate is the

20   right way to go.

21           THE COURT:   My concern is putting a new term in

22   there that these jurors have never heard, and they get back

23   there and say, "You know, we haven't heard anything about this

24   Senate Select Committee on Ethics."

25           MR. MARSH:   They have, Your Honor.

1          MR. SINGER:  That's exactly our point.  They haven't

2   heard a whole lot about it, and the reason is --

3          THE COURT:  I'm going to send the indictment --

4   that's another thing you raise.  I'm going to send the

5   indictment back.  I'm going to tell them it's not evidence,

6   but my inclination is to send it back.  Do you object to that?

7          MR. SINGER:  We do, Your Honor, although we

8   recognize that the Court has the discretion to send the

9   indictment back.  We think that it's prejudicial to do so and

10  we prefer it not be sent back.

11         As far as the -- as far as whether it's the Senate

12  or the Senate Select Committee on Ethics, by Mr. Marsh's

13  definition, anyone who has the power to do something about it

14  is the relevant decision-making body, even if they may never

15  get it.  And by that definition, then Mr. Marsh's office, the

16  public integrity, it may also be the relevant decision-making

17  body to the extent that he's -- his office is taking action on

18  this.

19         THE COURT:  That disclosure form says the select --

20  the Senate Select Committee on Ethics?

21         MR. MARSH:  Yes, Your Honor.

22         THE COURT:  That's probably a correct nomenclature.

23         MR. MARSH:  And we ran -- and the jury did hear

24  testimony from Government's 1123 where we talked about what

25  the Senate Select Committee can do.  Certainly the public --

1          THE COURT:  Go ahead.  I'm listening.  Go ahead.

2          MR. MARSH:  Public interior secretary should not be

3    the appropriate thing listed in there, but we do submit, Your

4    Honor, that it's not stretching this out 100 yards from the

5    goal line to say that the Senate is the appropriate use of the

6    term here.  We also don't think that's injecting anything new.

7    I mean, it kind of makes sense.

8          THE COURT:  All right.  I'll probably use the

9    Senate, but I'll give it some more thought.  It will either be

10   "The Senate" or "The Senate Select Committee on Ethics."

11         There's no objection to the Defendant's proposed --

12   actually, there is no objection to the Proposed Jury

13   Instruction 1.  There was with respect to 2, that language I

14   just focused on throughout the remaining instructions.  It

15   will either be The Senate -- I think that probably makes it

16   very easy for the jurors, The Senate, but I'll give it some

17   further thought.

18         There is an instruction -- Strike that.  An

19   objection to No. 4.  All right.  Here's where I am on 4, and

20   I'll read it.  I have to read it slowly because there is so

21   many crossovers and interlineations, and if I get it wrong,

22   I'll be told I get it wrong, I'm sure.  They're laughing

23   already.

24         So, let me try it.  This is what I think is

25   absolutely a correct statement of the law.  "As I instructed

```
 1    you earlier" -- I'm on page 4 -- "the indictment alleges that
 2    Senator Stevens concealed a specific gift or liability -- gift
 3    from or liability to Bill Allen and VECO that he was required
 4    to disclose on his" -- and the relevant years for the
 5    financial disclosure forms.  "In order to find the Government
 6    has met its burden to show that Senator Stevens concealed a
 7    specific gift from or liability to, you must unanimously agree
 8    as to the specific gift or liability that Senator Stevens
 9    allegedly concealed in the specific financial disclosure form
10    of which the alleged concealment occurred."  And I would
11    delete everything else on that page.
12              MR. MARSH:  I think this is our objection, so if the
13    Court please.  We respectfully disagree with the concept that
14    unanimity is required for Count 1.  To this, Your Honor, we
15    cite to United States v. Richardson, the Supreme Court
16    Decision in 1999.  It's a -- it was a -- if I recall
17    correctly, I think it was a gun case, but what it indicated
18    was that a federal jury need not always decide unanimously
19    which --
20              THE COURT:  Is that the gun in the trunk case?
21              MR. MARSH:  I think it is, Your Honor, but I'm
22    not -- I'm not sure.  I've got -- I've only got certain parts
23    of it here, but --
24              THE COURT:  What's the citation?
25              MR. MARSH:  526 U.S. 613, pen site 817-818.  What
```

1    the Court said there was a federal jury need not always decide

2    unanimously which of several possible sets of underlying brute

3    facts make up a particular element.  There's a distinction --

4              THE COURT:  That is the possession of the gun, I

5    believe.  Possession of the gun, I think, was in the trunk.  I

6    think.

7              MR. MARSH:  I believe that's correct, and I think

8    what they said is they analogized, for instance, if the

9    element of robbery is threat of force, some jurors can

10   conclude it was done by the gun, some can conclude it was by

11   the knife, but they don't have to agree on that particular one

12   to satisfy that charge.

13             Now, in this case, Your Honor, the Government

14   concedes that with 2 through 7, we do need a unanimity

15   instruction as to which particular false statement it is, but

16   when the jury starts to determine whether or not there is a

17   specific act or gift or liability underneath that, we think

18   the law is pretty clear that they don't have to be unanimous

19   as to which particular gift.  So, that's why we don't think a

20   unanimity instruction is appropriate in 1.  1 is a scheme.  It

21   doesn't matter which particular --

22             THE COURT:  But that would mean, though -- pursuant

23   to the Government's theory, that would mean that some jurors

24   could believe that there was a gift of Christmas lights and

25   some jurors agree that there was a gift of a chair and some

1  jurors agree that there was a gift of a deck.

2          MR. MARSH:  That's right.  Absolutely, Your Honor,

3  and they could, and we think that *Richardson* and other cases

4  are very clear that when you're talking about -- we're talking

5  about which, to quote the Supreme Court, brute facts are going

6  to assert -- are going to serve as the basis for that, the

7  jury doesn't have to be unanimous as to those.

8          THE COURT:  What about why isn't this like the drug

9  cases, though, where someone's, you know, automobile is

10 stopped and, you know, there's heroin and crack cocaine and

11 marijuana in different parts of the car and a person's

12 controlled -- a person's indicted for the offense of

13 possession with intent to distribute a controlled substance?

14         I mean, in those cases, it -- we tell the jurors

15 that they have to be unanimous with respect to the quantity of

16 drug and what the drug is, indeed, to convict.  In other

17 words, you couldn't have some saying, and two people agree,

18 well, I think it was marijuana because that was in plain view,

19 or two -- four more agree it's heroin, and whatever the

20 balance is, six more agreeing to something else and they

21 conclude it was controlled substance.  Why isn't this just

22 like those drug cases?

23         MR. MARSH:  Your Honor, I think -- I'm not a -- I

24 apologize.  I'm not a drug prosecutor.  I've done very little

25 of it, so I'm not as familiar with those.  My understanding is

1    that there are -- after some of the Supreme Court decisions, a

2    lot of -- a lot of issues that are in some degree somewhat

3    unique to drug cases, what we submit is that when you're

4    talking about this kind of thing, I'm also -- for instance, I

5    cite also to the Court *United States versus Phillips* from the

6    Tenth Circuit, 1988, 869 F.2d 1361, and I think Your Honor, in

7    particular, also *United States versus Johnson* from the Eighth

8    Circuit, 2007, 495, F.3d 951.

9            THE COURT:  Let me stop you for a second.

10           MR. MARSH:  Sure.

11           THE COURT:  I mean, the Government has laid out a

12   fairly inelaborate theory in its indictment and it goes

13   through the indictment and alleges things of value from Allen

14   and VECO to Stevens.

15           MR. MARSH:  Right.

16           THE COURT:  By year.  And so why shouldn't -- why

17   shouldn't the instructions and the verdict form track what the

18   Government's alleged -- for instance, why shouldn't the jurors

19   be told that in order to prove that there were gifts for the

20   relevant -- and I'm just using this for an example -- from

21   2000, 2001, the jurors must be unanimous with respect to their

22   decision that they were improvements to the Girdwood

23   residence?

24           MR. MARSH:  Because these, Your Honor, these are the

25   brute facts that underlie one element.  They're not things

1    that the Supreme Court has said have to be the subject of a

2    unanimity instruction.  The reason that those are set out year

3    by year in Count 1 is not really with respect to Count 1.

4    It's with respect to the fact that those are repeated --

5    repeated and re-alleged in 2 through 7.  The years matter for

6    2 through 7.  They don't matter in Count 1, subject to the one

7    issue about statute of limitations.

8         But with respect to -- with respect to Count 1,

9    there's got to be a duty to report and there's got to be a

10   scheme to conceal, and we submit that when you're talking

11   about -- when you're talking about the different theory under

12   which the Government must prove its case, a unanimity

13   instruction has to be given.

14        2 through 7, the jury has to be told, you have to be

15   unanimous that it's a gift or a liability.  You can't have six

16   of one or half a dozen of the other.  But when it comes to

17   which specific act or which specific gift or liability, the

18   jurors can disagree on that.  They don't have to have the same

19   thing.  It's very clearly in what *Richardson* says.  "If the

20   statute creates a single element" -- and I'm quoting, Your

21   Honor, from 818 -- "in respect to which individual violations

22   are but the means, the jury need only agree that the defendant

23   committed at least the underlying crimes the Government's

24   tried to prove.  The jury may not agree about which three.  On

25   the other hand, if the statute makes each violation a separate

1    element, then the jury must agree unanimously about which

2    three crimes the defendant committed."

3            2 through 7, different theories, have to have

4    unanimity, but even in 1 and then subsequently with respect to

5    the underlying parts of 2 through 7, the jury does not have to

6    be unanimous as to which particular item they -- that each

7    juror believes constitutes the gift of liability.

8            THE COURT:  All right.

9            MR. SINGER:  Your Honor, we would also rely on

10   *Richardson*.  *Richardson* is actually a case that found that in

11   fact the jurors did need to be unanimous.

12           THE COURT:  I'm sorry, I misspoke.  *Bailey* is the

13   case with the gun in the trunk.  That's something else, right.

14           MR. SINGER:  No, this is -- *Richardson* is an armed

15   career criminal act case where the question was whether the

16   underlying offenses that made the defendant an armed career

17   criminal needed to be individually proven and the jury needed

18   to be unanimous as to all of them, that was the question.  Did

19   the jury need to be unanimous as to what the predicate

20   offenses were, and the Supreme Court said, yes, they did, and

21   the reason they did is because those predicate offenses were

22   considered to be elements of the offense.

23           And so the question is here whether the facts that

24   are concealed here, the gifts that are concealed, is that the

25   element of the offense?  Is it an element of the offense or is

1    it simply a brute fact, as Mr. Marsh put it?  And it's clear

2    to us that these are elements of the offense.  This is what

3    makes the statements false.  It's what makes the statements

4    concealed.

5         If the Government's allegations are to be proven,

6    that's what they're trying to prove is that these gifts were

7    given, these gifts were received, these gifts were concealed.

8    If some jurors -- as Your Honor said, if some jurors found

9    that Senator Stevens received a chair, some found he received

10   a deck and they're not unanimous as to what he received,

11   that's utterly unfair.  It completely turns the statute on its

12   head.

13        You have to find that there's a particular thing of

14   value that's concealed, and I point the --

15        THE COURT:  In your view of *Richardson* says that,

16   though?

17        MR. SINGER:  *Richardson* says if it's an element,

18   then it has to be unanimous.  This is an element.  And I do

19   have several cases to support this view.

20        The *Blackley* case in the D.C. Circuit, which is 167

21   F.3d 543, and that's a 1001 case, the D.C. Circuit said that

22   where the indictment gave three alternative ways in the same

23   count, they gave three alternative ways in which the defendant

24   may have violated the statute, 1001, the jury had to

25   unanimously agree on which of the three ways the defendant

1    violated the statute.

2         Now, also, on the issue of whether the particular

3    gifts or liabilities are an essential element of the offense,

4    there is *United States versus Hoover*, which is a Fifth Circuit

5    case, a recent one, that's 467 F.3d 496 in the Fifth Circuit

6    from 2006, and that is not a unanimity case.  It's a

7    constructive amendment case, but what it found is that there

8    was a constructive amendment of the indictment where the jury

9    was allowed to convict the defendant based on a showing that

10   his statement was false for a different reason than the

11   indictment alleged that it was false.

12        So, that makes it clear that the nature of the

13   falsity, or in the case of a concealment offense, the nature

14   of the concealment, what was concealed is essential to the

15   element and there does need to be unanimity.

16        Two more points, quickly.  At a minimum, even if you

17   were to accept Mr. Marsh's argument, there would need to be

18   some unanimity instruction.  The jurors have to be --

19        THE COURT:  Other than 2.72?

20        MR. SINGER:  Well, it could be that.  It could be

21   the 2.72A, but we want this instruction, but there needs to be

22   at least something in the alternative telling them that they

23   need to be unanimous.

24        THE COURT:  The Government doesn't disagree with

25   you.  I know in your footnote that the Government suggested

```
 1    also that there should be some form of -- but you haven't
 2    proposed a form of unanimity, have you?
 3              MR. MARSH:  Your Honor --
 4              MR. SINGER:  Let me say one more thing before we get
 5    to that so I don't forget.  The Defense is not asking for
 6    anything other than a general verdict form.  We don't think
 7    the verdict form is the place to deal with this issue.  We
 8    think it's in the jury instructions.
 9              THE COURT:  Go ahead.
10              MR. MARSH:  Your Honor, I thought Mr. Singer and I
11    did, and you correct me if I'm wrong, I thought we did discuss
12    the idea that there did need to be some sort of general
13    unanimity instruction.
14              THE COURT:  That certainly was conveyed to the
15    Court.
16              MR. MARSH:  I think that's right.  With respect to
17    *Blackley*, Your Honor.  *Blackley*, we submit, proves our point
18    100 percent.  *Blackley* was the case where the Government
19    charged all three subsections and it was three different ways.
20    It was the A, the B, the C, and the Court said that you have
21    to be able to pick one.
22              That's the same thing that's in operative with 2
23    through 7.  The Government and the jury has to be instructed,
24    they have to figure out exactly which subsection in 1001,
25    which particular -- which particular part on the form
```

1    constitutes the issue because that's an element.

2           Conversely, the specific act or the specific gift or

3    liability is a brute fact under *Richardson.*  Now, what

4    *Richardson* distinguished in that case is -- and I'll quote to

5    the Court -- "Where, for example, an element of robbery is

6    force or the threat of force, some jurors might conclude that

7    the defendant used a knife to create the threat, others might

8    conclude he use a gun.  But that disagreement, a disagreement

9    about means would not matter as long as all 12 jurors

10   unanimously concluded that the Government had proven necessary

11   related element; namely, that the defendant had threatened

12   force."

13          Here, in Count 1, they unanimously have to conclude

14   that the Defendant engaged in a scheme to conceal.  What

15   particular item they find that he tried to conceal is a brute

16   fact under *Richardson* in our view.  The same thing with

17   respect to 2 through 7.  The -- whether it's a gift or a

18   liability is a different element they have to get a unanimity

19   instruction on.  Whether a juror in 2002 decides it's the deck

20   or the heat tape isn't something they have to be unanimous on.

21          THE COURT:  How does the statute of limitations play

22   into this, though?

23          MR. MARSH:  I think that is something that we do

24   agree on.  I just want to -- we do agree on some things.

25          MR. SINGER:  The statute of limitations, I think we

1    agreed that an instruction needs to be given, but I don't

2    think that it directly impacts this instruction on unanimity.

3    I think it's a separate issue, as I understand it, although

4    there is some interplay.

5            THE COURT:  Absolutely.

6            MR. SINGER:  I can see what Your Honor is getting

7    at, because if they're not unanimous about which things, if

8    any, are being concealed, then how do they know whether it's

9    prior to the statutory period or after?  But a more direct

10   response --

11           THE COURT:  All of these are intertwined.  I mean,

12   the elements, unanimity, statute of limitations, there should

13   be, hopefully, one or two instructions that clearly tell the

14   jurors what they're to consider and when they're to be

15   unanimous with respect to their consideration, and indeed,

16   their deliberations and their decision and the relevant time

17   periods also.

18           MR. SINGER:  I agree with that, Your Honor, and I do

19   think that here, and this is -- it's very distinguishable from

20   a situation where the question is did the defendant use a

21   knife or a gun to kill the victim.

22           The question here is, it's not about the means of

23   the offense.  It's what was the offense; what was concealed.

24   That is what makes the statement false or makes the scheme

25   operative.  That is the essential essence of the -- it is the

1    essence of the offense in this case.   It is an element.   It's

2    not simply the means by which an element is committed.

3            THE COURT:   Yes, Counsel.

4            MR. MARSH:   I think this -- I do again respectfully

5    disagree with Mr. Singer.   The element here is scheme to

6    conceal.   Did the Defendant do that?   This really is much more

7    of, did he -- did he conceal the knife or conceal the gun.

8    That level doesn't have to be unanimous.   And we agree with

9    the Court that -- I mean, I think we do agree on this issue

10   that the statute of limitations does play a role, but --

11           THE COURT:   You don't agree on the language, though.

12           MR. MARSH:   That's correct.   And I think we're

13   relatively close on that.   I think what we propose is

14   something that we think is clearer than what's currently here.

15           THE COURT:   You're going to submit a proposal?

16           MR. MARSH:   I think what we were prepared to do is

17   just tell the Court orally -- I don't know if the Court wants

18   to go into that right now.

19           THE COURT:   I probably want to follow up with this

20   discussion and go to statute of limitations.   So anything else

21   with respect to this argument here?

22           MR. MARSH:   Not from us, Your Honor.

23           THE COURT:   I'll have to take a look at those cases,

24   *Blackley, Hoover* and *Richardson* opinions, and I'll do that

25   today.

1          What I propose to do is -- is go ahead and finalize

2    proposed instructions that the Court will give and then

3    entertain any supplemental.  Not the new arguments, I mean,

4    not the same arguments made now, but any additional arguments

5    to the Court's proposed final version of instructions.

6          You know, you've noted your objection to the -- the

7    Defendant's filed his submissions, he's made his request, it's

8    clear what his position is and he's preserved the record

9    for -- he's preserved the record, so I don't plan to go over

10   the objections made up to this point, but if there are new

11   objections, then I probably need to focus on them very early

12   on -- on Monday because it would be the Court's intent that

13   closing argument -- that final argument commence and indeed

14   would be my intent to conclude on Monday.

15         I don't know if that's realistic or not, but

16   hopefully it will be and then I can proceed with instructions

17   on Tuesday, but in fairness to counsel, you need to know what

18   the final instructions are so you can craft your closing

19   arguments.

20         I'm not going to spend anymore time on Proposed Jury

21   Instruction No. 4.  I'll read the cases.

22         With respect to No. 5, the Government objects to the

23   second paragraph.  What I'm inclined to do -- I think the

24   objection is reasonable.  What I'm inclined to do is to add to

25   the first paragraph the first two sentences of the second

1    paragraph.  Are there objections to that by the Government?

2              MR. MARSH:  Only to the extent, Your Honor, that the

3    Court concludes that the unanimity required isn't necessary.

4    Certainly to the extent that the Court wants to do a general

5    unanimity -- we're not opposed to having something in here

6    that makes clear that they have to be unanimous as to the

7    duty.

8              THE COURT:  Do you have that language in front of

9    you then, that language -- the first two sentences are, "I

10   just instructed you about the need for unanimity among you to

11   find that the Government has proved beyond a reasonable doubt

12   the Defendant concealed a material fact"?

13             MR. MARSH:  You're right, you're right, Your Honor.

14   That is more -- that would be consistent in incorporating a

15   2.72 general instruction, so we're fine with that, Your Honor.

16             THE COURT:  All right.  So, I would add then those

17   two sentences then to the first paragraph and I would delete

18   the remaining language, over objection, to Proposed Jury

19   Instruction No. 5.

20             With respect to 6, the Government objects to the

21   second paragraph.  I totally agree with that, over objection.

22   I will give the first and third.  Is there anything you wish

23   to say?  You noted your proposal and you preserved your

24   objection.

25             MR. SINGER:  I appreciate that, Your Honor.  I wish

1    to emphasize the importance of this sentence for us.  I mean,

2    this is the -- this is the -- this is a critical defense and

3    it meets something that the jurors need to understand as to

4    what "knowingly" means.  It comes directly out of the *O'Malley*

5    standard treatise, which I'm reading from *O'Malley*.  "A person

6    who makes, submits or uses a statement or writing which that

7    persons believes to be truthful does not knowingly make,

8    submit or use a false, fictitious or fraudulent statement."

9    That's where we got it, and we think it's essential to --

10             THE COURT:  You can certainly argue that.  I mean,

11   that's his defense.  His defense is I didn't do this.  I

12   didn't intend to conceal a fact.  You certainly can make that

13   argument.

14             MR. SINGER:  That's why we're taking this one so

15   seriously because it is a correct statement of the law.  If

16   it's not in here, then it's all pushing the Government's way.

17   What knowingly -- this is what knowingly -- this is what

18   happens when a person acts knowingly.

19             We don't get to hear the flip-side.  This is what it

20   looks like when a person doesn't act knowingly.  This is how

21   *O'Malley* does it.  This is a recognized form.  It's critical

22   to our defense in this case.

23             THE COURT:  It does not have a "knowingly"

24   instruction, does it?  The Red Book does not -- it was deleted

25   for some reason because it was confusing.  That's my

1    recollection.

2            MR. SINGER:  Actually, I don't know for sure whether

3    it has one or not, but we didn't see one.

4            THE COURT:  I don't think it does.  I'll take a look

5    at that, but I think it was deleted sometime ago.  All right.

6    I'm inclined to delete -- I'll give some further thoughts, but

7    I'm inclined to delete that second paragraph.

8            With respect to Instruction 7, the Government

9    objects to the entire instruction.  I think there should be an

10   instruction with respect to "willfully," and what I'm inclined

11   to do is to give the first -- I'm inclined to give this

12   language, "An act is done willfully if it is done voluntarily

13   and intentionally with knowledge that one's conduct is

14   unlawful and with the specific intent to fail to do something

15   the law requires to be done," period.

16           And delete that next -- delete the remaining

17   language in that sentence and also delete the following

18   sentence and then give the last sentence, "If you do not find

19   that the Government has proven beyond a reasonable doubt that

20   Senator Stevens acted willfully, then you must return a

21   verdict of not guilty on Count 1," over objections.  I

22   recognize Defendant's already filed its proposal, and it

23   deletes the language.

24           Any objections to the interlineated language by

25   either the Government to the Defendant?

1        MR. MARSH:  Court's brief indulgence.

2        THE COURT:  I can read it again if you want me to.

3        MR. MARSH:  I think I got it.

4        THE COURT:  Put a period after "done" on that third

5   line.  Delete everything else.  Delete everything else in that

6   sentence.  Delete the following sentence and then add --

7   delete the words "intended to break the law," which doesn't

8   appear anywhere, and just add the words -- insert the words

9   "acted willfully" in the last sentence.

10       MR. MARSH:  Your Honor, I think our -- I think we're

11  a little bit -- I think it's fine.  The one point I did want

12  to note for the Court is that the Government believes that the

13  relevant case here is the *Shaw* case from the D.C. Circuit, 176

14  F.3d 517.  We know that -- Mr. Singer and I talked about it.

15  They think it's not quite as probative as we do.

16       In that case, what the -- what the D.C. Circuit

17  determined is in the 1001 case, quote, The government may show

18  mens rea simply by proof, No. 1, that the defendant knew that

19  the statements to be made were false; and 2, that the

20  defendant intentionally caused such statements to be made by

21  another.

22       Now, technically, with knowledge that one's conduct

23  is unlawful would be a little bit more than what the D.C.

24  Circuit imposed in *Shaw*.  On the other hand, we do recognize

25  that the Supreme Court previous to *Shaw* in *Bryan* indicated

1   that knowledge of one's conduct being unlawful is something

2   that generally goes in with the "willfully" instruction.

3           So, although I do think we've got a very strong

4   basis to ask the Court to take that out, but I think we're

5   also prepared to live with it.

6           THE COURT:  The language that the Court proposed?

7           MR. MARSH:  Yes.

8           THE COURT:  I think I can change that language

9   around, the last sentence and just say -- right now it says,

10  "If you do not find the Government has proven beyond a

11  reasonable doubt that Senator Stevens acted willfully, then

12  you must return a verdict of not guilty."

13          I guess I could say, "If you find that the

14  Government has proven beyond a reasonable doubt that Senator

15  Stevens acted willfully, then you must return a verdict of

16  guilty on Count 1."  Would you rather have that?

17          MR. SINGER:  I wouldn't, Your Honor, and it wouldn't

18  be accurate.

19          THE COURT:  I think the last sentence is appropriate

20  as drafted.  Do you have objections to the language?  I know

21  you object to me deleting that second sentence.

22          MR. SINGER:  Nothing beyond that we prefer in our

23  instruction, Your Honor.

24          THE COURT:  All right.

25          No. 8, the Government objects to the second

1    paragraph.  Now, in this instruction, on line 2, the words

2    appear for the first time "The U.S. Government."  Why not, for

3    purposes of consistency, "The Secretary of the Senate" or "The

4    Senate" as opposed to "U.S. Government"?  Any reason for "U.S.

5    Government" being inserted there?

6         MR. SINGER:  Not particularly, Your Honor.  I think

7    it was us that inserted it.  I think it would be absolutely

8    fine to put "The Senate Ethics Committee" there.

9         THE COURT:  All right.  Then I'll do that.

10   Either -- I'll pick some language that's consistent

11   throughout, either -- could be "The Secretary of the Senate"

12   or "The Senate Select Committee."

13        First paragraph is fine.  Now, what I intend to do

14   is -- and I think the second -- the first sentence and the

15   second paragraph is fine, but I would delete that next

16   sentence as not appropriate.  And in the last paragraph, I'd

17   put a comma after "scheme" and delete the words as I have just

18   described it to you, and then leave intact, "then you must

19   return a verdict of not guilty on Count 1."

20        So, delete "U.S. Government," either "Senate, Select

21   Senate Committee, Secretary," one of those three, the second

22   sentence of -- the first sentence of the second paragraph,

23   delete the second one, and put the comma after "scheme" in the

24   third and delete the words "as I have just described it to

25   you."  Any objections?  I recognize you stand on what you

1    submitted, but any objections?

2         MR. MARSH:  Your Honor, the only -- we don't have

3    any objections other than leaving the first sentence of the

4    second paragraph.  We submit that that may be redundant to the

5    first sentence of the first paragraph, so the Government --

6         THE COURT:  The first sentence in the first

7    paragraph.  Let's see.  I think you may be right there.  I

8    think it is redundant.  I think it is.  All right.

9         MR. SINGER:  Your Honor, the reason that we proposed

10   the paragraph, including both sentences, is that we think it's

11   very important to emphasize that it can't be a scheme to

12   conceal from someone other than the Government, and that

13   appears to be what the -- what the Government in this case is

14   attempting to allege, at least in part.

15        We've heard evidence about statements to the press,

16   we've heard evidence about statements to other people

17   entirely, and those are not criminal.  And if the Government

18   were to argue in closing that there has been a scheme to

19   conceal information from the Anchorage Press, or whatever the

20   publication was that we heard about, that is simply not the

21   violation of 1001, and so we want to make it absolutely clear

22   that they have to prove beyond a reasonable doubt a scheme

23   directed to the Government.

24        THE COURT:  Right.

25        MR. SINGER:  And that whether the Senator concealed

```
 1    facts from anyone other than the Ethics Committee is not

 2    definitive and you can't find a scheme based on that, and

 3    that's -- that's very important to us.  We think it's the law

 4    and we think we need that instruction.

 5              THE COURT:  All right.

 6              MR. MARSH:  And we agree with Mr. Singer that that's

 7    the law to some -- we agree to some extent.  Clearly it has to

 8    be a scheme to violate a duty, and the only duty here is one

 9    that's -- relates to a duty imposed by the form, but there is

10    no case law that says that all of the acts in a scheme to

11    conceal have to be directed specifically toward concealing it

12    from that body.

13              For instance, in this case, what we believe the

14    evidence shows is that once you start hiding it from the

15    Government, you've got to start hiding it from other people,

16    too.

17              Now, if the Defendant engaged in a scheme not to

18    hide it from the Government at all but to hide it from the

19    media and the world, there would be no 1001 scheme violation

20    here.  But if the Defendant is concealing it knowingly and

21    willfully from the Government and then takes steps to

22    perpetuate that concealment by concealing it from third

23    parties, friends, family, the press, we believe those acts are

24    relevant for the jury to consider whether or not the Defendant

25    engaged in the scheme.
```

```
1              THE COURT:  Just one second.

2              (OFF-THE-RECORD DISCUSSION BETWEEN THE LAW CLERK

3    AND THE COURT.)

4              THE COURT:  Addy suggests, and I think she's right,

5    you probably can combine that first sentence in the second

6    paragraph and add this to the first sentence in that

7    instruction in the first paragraph.  "The fourth element the

8    Governments must prove beyond a reasonable doubt is that

9    Senator Stevens," et cetera, et cetera, "knowingly and

10   willfully concealed material facts from the U.S. Senate," and

11   that's taking in consideration your arguments, and I think

12   that's right.

13             So, I'll add that language from the first sentence

14   in the second paragraph to the first sentence in the first

15   paragraph and still delete the remaining portion over

16   objection.

17             MR. SINGER:  We have -- certainly have no objection

18   to adding "reasonable doubt" language, but we do object to

19   deleting that paragraph because we think that it's necessary

20   to allow the jury to understand what the law is, particularly

21   given what's been alleged in this case.

22             THE COURT:  All right.  Instruction 9, page 9, the

23   Government's objected to the language "predictably."  I was

24   really trying to figure out -- we were all trying to figure

25   out a way to make this very plain English here, taking in
```

1   consideration *Hansen* and *Cisneros*.

2           But just shortly before I came on the bench, the

3   language in *Hansen* was handed up to me, and it's interesting.

4   In *Hansen,* there's some very interesting language, and I'll

5   read it verbatim and maybe there's a way to weave in some of

6   this plain English here.

7           And I'm reading from page -- I guess it's computer

8   page 2-4 -- you know, I don't know what computer page it is.

9   It's the next to the last page of the opinion.  "But whereas

10  here that falsification pertains specifically to the area the

11  department is charged to investigate, in parens, the filing

12  members' financial transactions, end of parens, intends to

13  conceal in any degree even beyond the point where further

14  concealment might be thought superfluous, material that would

15  prompt or effect an investigation, we would look no further.

16  Application of Section 1001 does not require judges to

17  function as amateur sleuths inquiring whether information

18  specifically requested and unquestionably relevant to the

19  departments or agencies charged would really be enough to

20  alert a reasonably clever investigator that wrongdoing was

21  afoot."

22          Here is the relevant language.  "Here the

23  falsifications related to financial transactions within the

24  Committee's charge intended to conceal information that would

25  have prompted investigation or action, no more is needed."

1    Why shouldn't I just use that plain English there?

2            MR. SINGER:  Your Honor, that is not a definition of

3    "materiality."  That is essentially a factual finding.  That

4    case came down before the *United States versus Gaudin* case

5    that found that materiality has to be given to the jury.

6    There is a definition of "materiality" in the *Hansen* case

7    that's much different from what you just read.  It's laid out

8    right here at the bottom of page 9 that "The test of

9    materiality is whether the statement has a natural tendency to

10   influence, or was capable of influencing, the decision of the

11   tribunal in making a determination."

12           And we used similar language up here, but what we

13   would like to do, in addition, is to add the word

14   "predictably," which appears not in *Hansen* but in the later

15   case of *Cisneros* and in other cases that *Cisneros* is quoting,

16   including a Supreme Court case, I believe.

17           The reason "predictably" is important to us is

18   because the word "capable of influencing," the words "capable

19   of influencing," to me, that invites the jury to speculate.

20   Anything is capable of doing anything, but the real question

21   is, does it have a natural tendency to influence, which

22   equals, is it predictably capable of influencing.

23           So, we think "predictably" is important to take the

24   materiality inquiry out of the realm of speculation.

25           THE COURT:  Well, why don't I just use the words

1   predictably -- I mean, why don't I just use the words "have a

2   natural tendency to influence" then.  Well, it says that, "a

3   fact is material that has a natural tendency to influence or

4   was capable of influencing."

5           MR. SINGER:  Well, that's the problem.  If it was

6   just "or was capable," then that gives the jury the option of

7   convicting because they speculate that, yeah, it could have

8   had an influence, but the point is it's not enough that it

9   could have had an influence.  It has to be predictably

10  capable.  It has to have the natural tendency.

11          THE COURT:  The *Cisneros* court, though, used that

12  language.  The *Cisneros* court said the central object of any

13  material inquiry is whether the representation or concealment

14  was predictably capable of affecting -- it has this language

15  that you want -- that is, had a natural tendency to affect,

16  and that language is already there in the first sentence, so

17  it means -- it means the same.

18          MR. SINGER:  Right.

19          THE COURT:  So there is no need to put "predictably"

20  there then.

21          MR. SINGER:  Well, no, because if you take out

22  "predictably," then you have a natural tendency or capable --

23  if you had "or capable," and since it's an "or," it's not --

24  since you have an "or," it's a disjunctive phrase and that

25  means the jury can convict on materiality if it finds only

1    that the fact was capable.

2            THE COURT:  Well, suppose I just delete the words

3    "or" -- "or was," and just put "i.e." or just have it read as

4    follows: "A fact is material if it has a natural tendency to

5    influence, that is, capable of influencing the decision of the

6    Senate Select Committee on Ethics"?

7            MR. SINGER:  Well, because there, you're defining

8    "natural tendency to influence" as meaning "capable of

9    influencing," which is not what it means, so we would oppose

10   that.

11           (OFF-THE-RECORD DISCUSSION BETWEEN THE LAW CLERK

12   AND THE COURT.)

13           THE COURT:  What about this, "A fact is material if

14   it has the natural tendency to influence the decision of the

15   Senate Select Committee on Ethics"?

16           MR. SINGER:  That would be preferrable.  We prefer

17   our version, but we would take that.

18           THE COURT:  What's wrong with that language?

19           MR. MARSH:  Your Honor, we think that *Cisneros* cited

20   back to *In re Sealed Case,* D.C. Circuit 1988, 162 F.3d 670,

21   and in that case the D.C. Circuit actually used all these

22   terms.  It does say the quoted language on Defense's case, but

23   right above that it cites *United States versus Barrett,*

24   another D.C. Circuit case for saying, "A statement is material

25   if it has a natural tendency to influence or was capable of

1    influencing the decision of the tribunal."

2            So, we think materiality is -- it's not a high

3    burden in any of these cases.  It's -- the idea that it's

4    something capable of influencing is, we think, an accurate

5    statement of law.

6            THE COURT:  So your objection still is to the use of

7    the work "predictably," and so is it the Government's position

8    is that you're prejudiced by deletion of that phrase there,

9    "or was predictably capable of influencing"?

10           MR. MARSH:  A little bit, Your Honor.  I mean, I

11   think "natural tendency to influence" is -- I mean, I think

12   that courts view these as all meaning the same thing.

13           THE COURT:  Yeah, exactly.  That's what *Cisneros*

14   says, "has a natural tendency to affect."  Well, suppose I

15   say, "A fact is material but has a natural tendency to affect

16   or influence the decision of the Senate"?  I mean, that's an

17   absolutely verbatim quote from *Cisneros.*

18           MR. MARSH:  Well, I think the only thing the

19   Government would submit is that the cases do recognize that it

20   can be an *in potentia* effect.  It doesn't have to be

21   something that has a -- in other words, the idea that it's

22   something that would be capable of affecting, we think it's

23   slightly different.  We understand we're all splitting hairs

24   here, but we do think it's a slightly different position and

25   we do think that "predictably" is a little too much.

1    THE COURT:  But it is the language, though, that

2  *Cisneros* used, though, "predictably."

3    MR. MARSH:  That's correct.  But in so using, it

4  cited back to *In re Sealed Case* which uses both -- actually

5  one right on top of the other.

6    THE COURT:  All right.

7    MR. SINGER:  To me, Your Honor, it's not splitting

8  hairs.  I understand it's one word, but it's a very important

9  word because if the jury is told that they can convict for any

10  statement that's capable of influencing the Senate Ethics

11  Committee, then that opens the floodgates.  There's no limit

12  to that.

13    THE COURT:  As opposed to being predictably.

14    MR. SINGER:  Predictably capable.  One has --

15    THE COURT:  What are they going to do with that

16  language, "predictably capable"?  What are they going to do

17  with that?

18    MR. SINGER:  If I were a juror, Your Honor, I would

19  go back to "having a natural tendency to influence," but I

20  don't want to have the jury be told that they can speculate

21  about what might be capable, and that's what I'm particularly

22  worried the jurors will do.  If they hear they can convict on

23  the basis of anything that's capable of influencing --

24    THE COURT:  The *Cisneros* court recognized, though,

25  that this was a difficult concept to understand; otherwise,

1   they wouldn't have used the "i.e.," that is.  They said it in

2   other words.  So, and all we're doing is potentially just

3   using the other words, "have a natural tendency to affect,"

4   which is not inconsistent with *Cisneros* or *In re Sealed Case*.

5        All right.  Over objection, I think I'm inclined to

6   give "A fact as material but has a natural tendency to

7   influence the decision."  I'll give it some further thought,

8   but that's where I'm leaning because in the *Cisneros* court

9   recognized the difficulty with that language.  They wouldn't

10  have crafted the alternative language.

11       Oh, I'm sorry.  The court reporter.  I'm sorry.  You

12  want to take a recess?

13       COURT REPORTER:  Yes.

14       THE COURT:  Thank you.  I'm sorry.  Not intentional.

15  We are so happy that you're here.  Believe me.  Thank you so

16  much.  We could not have done this without you.  Don't

17  overlook the court reporter.  We'll take a 15-minute recess.

18       (A BRIEF RECESS WAS TAKEN.)

19       THE COURT:  We lost our audience.  No one is

20  interested in what we're doing.

21       MR. SINGER:  I think we bore them to tears.

22       THE COURT:  No.  I'm going to ask the Government to

23  go back and reread that *Richardson* case.  We just copied it.

24  I was talking to -- take another look at *Richardson*.  I mean,

25  *Richardson* -- and I had to read it real fast.  I just have not

1   read it, but I mean, just in looking through it and talking to

2   the attorneys on my staff, the Supreme Court did say that the

3   cases are not federal but state where this court has not held

4   that the constitution imposes a jury a unanimity requirement.

5          And it seems to me that -- that I need to give a

6   variation of this -- of this statute -- I mean, of this

7   instruction either as proposed by Defense counsel.  I'll

8   certainly consider any -- any request the Government has, but

9   I think there has to be some -- some guidance to them;

10  otherwise, you know, they can find that some things were

11  proven outside the statute of limitations.

12         MR. MARSH:  Well, certainly, Your Honor, the statute

13  of limitations is a very relevant concern.  I think that's

14  something that we can deal with to the -- to the thing.

15         But what we do believe what *Richardson* says is that

16  when you're not talking about things that have to be proven as

17  an individual element, that the underlying facts -- and

18  *Richardson* goes through a hypothetical robbery statute.  It's

19  got the five elements in there, and what it says that the

20  specific underlying facts upon which a jury may conclude that

21  an element was met don't have to be unanimous.  They have to

22  be unanimous that the element was satisfied but they don't on

23  the underlying facts.

24         But we do -- we absolutely --

25         THE COURT:  The court also said that the jurors must

1    agree on which specific acts constitute a violation of the

2    drug laws, though.  That's what -- I mean, that's telling.

3              MR. SINGER:  This is an element, Your Honor.  It's

4    what was concealed.  That is the element.

5              THE COURT:  Yeah.

6              MR. MARSH:  Your Honor, and I'll go back and look at

7    *Richardson,* but what I'm drawn to in *Richardson* is that -- is

8    where it says, "The question before us arises because a

9    federal jury need not always decide unanimously which of

10   several possible sets of underlying brute facts make up a

11   particular element say which of several possible means the

12   defendant used to commit an element of the crime."

13             What it says -- and this was a, I think, continuing

14   enterprise case, you had to find three specific acts to be

15   able to meet the threshold for the CCE crime.  Here, it's a

16   different -- it's a different thing.  The element is that

17   there's a scheme to conceal.  There has to be -- the specific

18   acts that go under that aren't things that -- we believe they

19   fall into the other parts of *Richardson* which talk about the

20   knife or the gun.  We think that whether it's a deck or a heat

21   tape is much more akin to a knife or gun than the things that

22   are set forth in Richardson.

23             THE COURT:  Yeah.  Well, I just invite you to go

24   back.  I'll take another look at this over the evening hours

25   as well, but I think the Defendant may have a better argument

1    there.  But whatever instruction I give, I want to make sure

2    it's a fair instruction to both sides.

3           I want to move on to 12 and 36.  I'll deal with both

4    of those, good faith.  I just don't think that those cases

5    support good faith instruction in this case.  I mean, the

6    Defendants -- the Defendant's defense is I didn't do it.  You

7    know, I didn't have good faith belief that what I filed was

8    what's -- look, I just did not intentionally conceal.

9           MR. SINGER:  I think, Your Honor, that Defendant's

10   defense is precisely that he had a good faith belief that what

11   he filed was correct, and that is --

12          THE COURT:  Which one of those cases supports,

13   though?  We've taken a look at those cases.  Those cases don't

14   really support that theory here.  I mean, he says I didn't --

15   I didn't do this.  When I signed those forms --

16          MR. SINGER:  He's saying, Your Honor, when I signed

17   these forms, I acted in good faith, I believed they were

18   accurate, and that's exactly what this instruction is about.

19   A defendant who acts in good faith can't be found to have

20   acted knowingly, willfully or with specific intent to fail to

21   do something the law requires to be done.  That's the defense.

22          It's exactly like the cases we've cited here, *United*

23   *States versus Hurt*.  It's in the D.C. Circuit and it says the

24   Defendant is entitled to instruction like that.

25   There's --

1          THE COURT:  How are you prejudiced, though?  The

2     jurors are instructed that the Government's burden is to prove

3     guilt beyond a reasonable doubt and that the Government has

4     the burden of proving knowingly, willfully and with the

5     specific intent to conceal.

6          MR. SINGER:  Your Honor, it's particularly important

7     if Your Honor is taking out the sentence in "knowingly" and

8     that we prove this instruction in any regard.  But Your Honor

9     is expressing a inclination to take out the sentence in the

10    "knowingly" instruction that says, "A person who makes or

11    submits a statement which that person believes to be truthful

12    does not knowingly conceal a material fact."

13          Well, now, this is the instruction that talks about

14    that.  This is the instruction that talks about when somebody

15    believes -- somebody acts in good faith believes that their

16    statements are true and that he's not violating the law, then

17    he hasn't acted knowingly and willfully and he can't be found

18    to violate the law.

19          And the cases that we cited down here, and we cited

20    a bunch of them, I think they're very much on point, and they

21    very much support that it's essential to have a good faith

22    instruction upon the request of the Defendant.  In fact --

23          THE COURT:  For instance, you rely on *Hurt* from our

24    circuit, a 2008 case.  I mean, *Hurt* holds that -- and he uses

25    an example, "A thief under Section 641 is one that takes

1  property knowing it belongs to another with the intent to

2  permanently to deprive the owner of possession.  The person

3  who harbors a good faith but mistaken belief that property

4  belongs to him lacks the necessary mens rea for theft," but

5  that's not --

6           MR. SINGER:  Exactly the same thing here, Your

7  Honor.  Suppose that the jury were to find that in fact the

8  Senator did not pay for everything that he received.  If he

9  believed in good faith that he had done so, if he acted in

10  good faith he didn't know that he didn't pay for everything

11  that he received, that's what this instruction goes to.  They

12  should not be able to convict him under those circumstances.

13  This instruction tells them you can't convict him.

14           THE COURT:  His theory, though, is he never got a

15  bill.  He asked for bills, but he never got a bill.  His

16  theory is not that he paid for everything that he thought he

17  owed.

18           MR. SINGER:  It is that theory, Your Honor.  I mean,

19  he didn't receive a bill; therefore, he didn't know that he

20  owed the money.  I mean, he believed that his forms were

21  accurate.  He believed that he did not owe anything that was

22  not reflected in the forms, and that is the essence of good

23  faith, and that's what this instruction is all about.

24           THE COURT:  Yes, Counsel.

25           (OFF-THE-RECORD DISCUSSION BETWEEN THE LAW CLERK

1   AND THE COURT.)

2           MR. MARSH:  Your Honor, may I pass up a copy of

3   another case?

4           THE COURT:  Sure, which one is it?

5           MR. MARSH:  It's not cited.  It's *United States*

6   *versus Gambler* from the D.C. Circuit, 1981.  And I've taken

7   the liberty of showing it to the Court with the page.  It

8   stands for the proposition that if other --

9           MR. SINGER:  Where are you on?

10          MR. MARSH:  Sorry, page 5.

11          THE COURT:  Which column, Counsel?

12          MR. MARSH:  I'm sorry?

13          THE COURT:  Which column?

14          MR. MARSH:  Bottom paragraph in the first column

15  over to second paragraph, first paragraph in the second

16  column.  It simply establishes the proposition, Your Honor,

17  that if the other instructions incorporate what is effectively

18  the good faith concept, then a separate instruction does not

19  need to be given, and what we submit is exactly what the

20  Court -- what -- if the Government has to prove that the

21  Defendant knowingly and willfully did this action, it

22  therefore the -- the Government has to prove that he didn't

23  act in good faith, and so we believe that it's absolutely

24  incorporated -- I mean, what Mr. Singer talks about is the

25  Defendant believing that he didn't owe this kind of stuff.

1   Well, if that's the case, then what the Government has failed

2   to prove is that he did this knowingly and willfully.

3        So, we think it's not appropriate.  We think that

4   there's not any case law saying the Defendant has to have one

5   and that the instructions the Court's already prepared to give

6   adequately take into account this concept.

7        THE COURT:  Maybe one way to address it is going

8   back to that Proposed Jury Instruction 6.  Why don't I just

9   add that sentence in, and I think that's probably an

10  absolutely correct statement of the law that a person who

11  makes or submits a statement which that person believes to be

12  truthful does not knowingly conceal a material fact, and that

13  addresses the good faith, and it's also not inconsistent with

14  the law with respect to knowingly, is it?

15       How is the Government prejudiced by that?  I think

16  in that instruction, Proposal No. 6, I'd indicated I was going

17  to delete the second paragraph, so maybe I'll just add it and

18  then not give the good faith and just add that, because that's

19  his argument.  I signed it, they're truthful, I was truthful

20  then and I disclosed everything I had to disclose.  That's his

21  defense.

22       See, *Gambler* goes on to say -- I'm just looking.  "A

23  review of the instructions given by Judge Greene in this case

24  reveals that the trial court took care to emphasize the

25  Government's burden of proving the element of specific intent

 1    beyond a reasonable doubt.  I believe these instructions

 2    especially cover a particular point raised by appellant's

 3    requested good faith instruction."

 4         MR. MARSH:  And I think that's our position, is that

 5    the "knowingly and willfully" adequately take into account.

 6    There's no --

 7         THE COURT:  Are you prejudiced, though, by that?

 8         MR. MARSH:  Well, Your Honor, it's --

 9         THE COURT:  I mean, that's his defense.  "Hey,

10    folks, I signed this form.  It was true.  I didn't intend to

11    conceal anything.  I didn't intend to lie to the Senate.  What

12    I said on that form is true."

13         MR. MARSH:  I agree with you, Your Honor, that

14    that's the defense and I agree with you that that would be, if

15    the jury believes it, a reason to acquit.  Where I have a

16    little bit of a problem is that in the "knowingly" section,

17    here it talks about a person acting knowingly, and then

18    there's the sentence thrown in that talks about -- it's almost

19    like a --

20         THE COURT:  Why don't I just make that a separate

21    instruction, that one sentence, "A person who makes or submits

22    a statement which said person believes to be truthful does not

23    knowingly conceal a material fact"?  Or put it with

24    "materiality" maybe.  Let's see.

25         MR. SINGER:  I don't think it goes with materiality,

1    Your Honor.

2          THE COURT:  Why don't I make it a separate

3    instruction?  What's wrong with that, and not give the good

4    faith?

5          MR. MARSH:  Your Honor, I think all things

6    considered, I would respectfully submit that we've got a lot

7    of instructions, and if the Court is inclined to give it, then

8    it can stay where it is.

9          THE COURT:  Stay where it is.  All right.  I'll give

10   it there.  All right.

11         MR. SINGER:  Your Honor, as far as the good faith

12   instruction goes, though, we do believe we're entitled to it

13   and that it's a very standard instruction.  If you look at the

14   instructions in the *Sand* and *O'Malley* treatise, they both have

15   substantial good faith instructions.  The *O'Malley* treatise,

16   Section 19.06, and there are -- I mean, I believe the cases

17   that we've cited suggest that it's not enough simply to say,

18   "This is what you need to show to prove knowingly; this is

19   what you need to show to prove willfully."

20         You have to give an instruction at the Defendant's

21   request that gives his theory on the defense side that if he

22   acted in good faith, he can't be convicted, he can't be found

23   to have acted knowingly and willfully.  That's the reason

24   we're requesting this instruction.  It's very standard and I

25   believe it would be error not to give.

1          THE COURT:  All right.

2          MR. MARSH:  We absolutely do not believe it would be

3    error not to give it, and we think that it sounds like the

4    Defendant effectively wants two theory of the case

5    instructions.  They're going to put one forward, and that

6    coupled with what the Court's inclined to do is more than

7    adequate to protect --

8          THE COURT:  I'll either put that paragraph where it

9    is or I'll give it separately, but I'm not inclined to --

10         (OFF-THE-RECORD DISCUSSION BETWEEN THE LAW CLERK

11   AND THE COURT.)

12         THE COURT:  I think Addy is right.  She has a

13   suggestion, and I think her suggestion is appropriate.  "A

14   person who makes or submits a statement which that person

15   believes to be truthful does not act knowingly," and then take

16   out "conceal," and flows better there.  I'll give that

17   language.  All right.  I'll do that.  Thank you, Addy.

18         13.  Statute of limitations.  If I understand the

19   Government correctly, you think there should be a statute of

20   limitations instruction.

21         MR. MARSH:  Absolutely.  Your Honor, what we propose

22   is very simple.  We think it's pretty simple.  What we would

23   propose is in the fourth paragraph down --

24         THE COURT:  Which I've got a big X through.  Go

25   ahead.

```
 1              MR. MARSH:  We like the fourth paragraph.  What we
 2    would propose --
 3              THE COURT:  You do?
 4              MR. MARSH:  But we would end up cutting the rest of
 5    it.  But what we would do is -- here is what we would propose
 6    the fourth paragraph read, second sentence.  "Therefore, you
 7    must first consider whether the Government has proven beyond a
 8    reasonable doubt that Senator Stevens engaged in the alleged
 9    scheme charged in Count 1," and then the second sentence would
10    read, "And second, if you do so find, you must find that the
11    Defendant -- or Senator Stevens -- engaged in at least one act
12    in furtherance of the scheme that occurred after May 9th,
13    2002," and then cut everything else.
14              MR. SINGER:  That directs them to a finding.
15              MR. MARSH:  Okay.  You just consider -- well, you
16    must also find -- we're not trying to direct a verdict.  What
17    we're trying to do is -- from our perspective the --
18              THE COURT:  Read that language again.
19              MR. MARSH:  Sure.
20              THE COURT:  I may not disagree with them.
21              MR. MARSH:  "If you do so find, you must," and
22    perhaps it should read, "also find that the Defendant engaged
23    in at least one act in furtherance of the scheme that occurred
24    after May 9, 2002."
25              I don't think it's telling them that they have to
```

 1    find it, and certainly if there were a better way to phrase

 2    it, we're happy to revision.

 3            MR. SINGER:  It would tell them they have to find

 4    it.  It's not telling them that if they don't find it, then

 5    they can't convict him.

 6            MR. MARSH:  Well, but we're also saying if you do so

 7    find --

 8            THE COURT:  Wait a minute.  You know what I had --

 9    here is what I had actually done.  Taken the first sentence of

10    the second paragraph and added that to the last paragraph,

11    because if it's been committed -- the act has been committed

12    in its entirety before May 9th, 2002, then indeed it is

13    barred, is it not?

14            MR. MARSH:  Yes.

15            MR. SINGER:  It's an accurate statement, Your Honor,

16    and I don't think it gives them much explanation for what they

17    are supposed to be thinking about.

18            (OFF-THE-RECORD DISCUSSION BETWEEN THE LAW CLERK

19    AND THE COURT.)

20            THE COURT:  Maybe we need some language, though.  A

21    particular act or liability subsequent to May 9th, 2002?

22            MR. MARSH:  Your Honor, would Your Honor's proposal

23    be that it would read, first paragraph, first sentence of

24    second paragraph, last paragraph, end?

25            THE COURT:  Yes.  Not last.  Let's see, I didn't

1    turn over.  Yeah, and the last paragraph on 15.

2              MR. MARSH:  So it would read, "I will now instruct

3    you, you must consider such limitations if you find..."  I

4    think that's -- I think that would do it.

5              THE COURT:  Wait a minute, I'm sorry.  Just a

6    minute.  I proposed deleting that first paragraph, using the

7    first sentence of the second paragraph and combining that with

8    the last paragraph on page 14 and also including the paragraph

9    at the top of page 15.

10             MR. SINGER:  I see.

11             MR. MARSH:  I'm sorry, Your Honor, I got lost.

12   Would the Court please or --

13             THE COURT:  Yeah, let me do it again.  The first

14   sentence of the second paragraph added to the last paragraph

15   on page 14 and the carry-over paragraph on page 15.

16             MR. MARSH:  Your Honor, I think that's -- we think

17   that's a much more streamlined version of this.  The only

18   thing is that it -- what we're concerned with a little bit is

19   exactly how to phrase the concept that it doesn't have to be

20   every act after May 9th.

21             THE COURT:  Right.  It could be any one act.  You're

22   absolutely right.  An act, either concealment or of a gift or

23   liability, right.

24             MR. MARSH:  What if in the last paragraph on page

25   14, last sentence "of the United States," we had a comma and

1    then said, "and that at least one act in furtherance of the

2    scheme" -- "in furtherance of the scheme occurred on or about

3    May 9, 2002."

4            THE COURT:   I think that's absolutely correct and

5    consistent with the law.   Wait a minute.   We have some new

6    language, "legislative branch of the Government of the United

7    States."   Should that not, still to be consistent, "Senate

8    Select Committee" language?

9            MR. MARSH:   That's right.

10           MR. SINGER:   No, no, no, the jurisdiction.

11           THE COURT:   Right, right, right.

12           MR. MARSH:   Your Honor, we would say that since we

13   have shortened it in other circumstances --

14           THE COURT:   Just say "the Government"?

15           MR. MARSH:   No, I think Mr. Singer is right.   It has

16   to be as it is.

17           THE COURT:   "The legislative branch of the

18   Government," that's the language that's in the indictment, I

19   believe.   I think it is.   Read that language again.   And that

20   it -- a comma after 2002 and that it -- at least?

21           MR. MARSH:   "Senator Stevens engaged in at least one

22   act in furtherance of the scheme that occurred on or after May

23   9, 2002."

24           THE COURT:   All right.   What's the objection?

25           MR. SINGER:   Well, several objections, Your Honor.

1  I guess the principal objection is that I don't know what the

2  continuing offense doctrine means for purposes of a scheme

3  offense.

4  We obviously argued before trial that this isn't a

5  continuing offense and don't believe it is a continuing

6  offense, so whether the one act standard is in fact the

7  standard, I don't -- I don't know that that's the law, but I

8  also -- I also believe the longer instruction gives them a

9  better explanation of what statutes of limitations are for and

10  what they ought to be thinking about in this case, because

11  jurors, I think, without more explanation, may have a tendency

12  to view statutes of limitation as sort of a technicality, and

13  that's why we put the language in paragraph 2 that's in there

14  now explaining to them that they actually serve an important

15  purpose and it's not just a way for a defendant to avoid being

16  prosecuted.

17  THE COURT:  All right.

18  MR. SINGER:  Those are my principal objections.

19  THE COURT:  All right.  Over objection, I'll give it

20  as proposed by the Government and as proposed by the Court.

21  There's no objection to 14.

22  15, there are a number of instructions -- Strike

23  that.

24  There are a number of proposed instructions that

25  have one common objection.  15, 17, 19, 21, 23, 25, 27 and 29,

1    the parties disagree as to whether an admission can constitute

2    a false, fictitious or fraudulent statement or representation,

3    and I think that the Government has the better argument there.

4         Defendant, as I understand it, would propose to

5    delete this language, "an omission or failure to disclose

6    information is not a false, fictitious or fraudulent statement

7    or representation, and you may not find the Defendant guilty

8    on the basis of an admission or non-" -- I mean, that's the

9    Government's case, that he failed to disclose certain

10   information, so...

11         MR. SINGER:  I don't know that that's the

12   Government's case, Your Honor.  I think in Count 1, the

13   concealment count, which is not what you're looking at now, in

14   Count 1 it is the Government's case that he concealed material

15   information that needed to be disclosed.  The instruction here

16   that you have, Your Honor, relates to false statement counts.

17         THE COURT:  Count 2, right.

18         MR. SINGER:  So, if it's not a false statement

19   count, the issue is did he make a affirmative false statement,

20   and the Government's argument is that in some of the counts,

21   and I made this argument in the Rule 29 motion, Your Honor,

22   that in some of the counts, the answer that Senator Stevens

23   put on the disclosure form was, yes, he received gifts; yes,

24   he received liabilities, and the Government's claim is that

25   even though the "yes" is truthful, that he still made a false

1   statement by omitting then to list certain gifts that the

2   Government alleges that he received.  That's an omission

3   rather than a false statement, and we don't think it's proper

4   to convict under subsection (a)(2) of 1001, which only

5   punishes false statements.  If it's an omission, then you have

6   separate elements under (a)(1) where you have to show a

7   scheme, affirmative acts to conceal.

8           If you can punish omissions under (a)(2), then

9   you're effectively relieving the Government of the burden of

10  having to prove a scheme of affirmative acts to conceal.

11          And so, basically, you're making (a)(1) superfluous.

12  Whenever there's a duty to disclose, which would be required

13  for (a)(1) anyway, the Government would say that it's an

14  (a)(2) offense if you don't disclose something that you have a

15  duty to disclose, and therefore, we don't even have to prove a

16  scheme for that one.

17          I think the best cases to look at on that subject

18  are the *Crop Growers* case in the DDC, and we cited that under

19  the instruction.  There's also the *Diogo* case in the Second

20  Circuit, which is 320 F.2d 898, and the *Safavian* case cited in

21  the D.C. Circuit which stands for that -- cite a different

22  proposition about by starting to speak, you don't then have a

23  duty to continue to speak.

24          Now, I will concede, and I'm sure Mr. Marsh will

25  also tell you, that there are cases from other circuits that

1    have held that when you have a duty to disclose, you can have

2    an (a)(2) offense on that basis, but we believe that that's

3    completely wrong for the reasons I've just said and certainly

4    not the law in this circuit.

5         THE COURT:  All right.  Yes, sir.

6         MR. MARSH:  Thank you, Your Honor.  *Safavian*, of

7    course, was a case in which there was no underlying duty, and

8    what *Safavian* held was different than other circuits that if

9    there's no duty to speak, a person does not graft a duty upon

10   oneself simply because they start to speak.

11        Here, there is a duty to provide this information.

12   They're required to provide the information, and it -- we

13   submit, as the *Crop Growers* case recognized, *Crop Growers* said

14   no omission here but we're distinguishing the other cases,

15   *Maddox,* in particular, because that was a case in which there

16   was a duty to disclose information, and further said, you

17   know, ours are sort of long narrative things.  That was a case

18   where you had a series of blanks and things had to be put into

19   those blanks, and I think *Maddox* in particular was a case in

20   which blanks were not completed at all.

21        Here, what we have is a Defendant -- that the

22   Government has charged that the Defendant had a duty to

23   disclose gifts.  In certain years he checked "yes" that he

24   received gifts and on the form he didn't list these gifts, and

25   so we believe that's absolutely covered within (a)(2).

1          THE COURT:   I think the Government has the better

2     argument there.   I'm inclined to leave that language in, those

3     paragraphs over objection.

4          The Government does object to the second paragraph

5     in Proposed Instructions Nos. 16, 18, 24, 26, 28 and 30, and

6     actually, we're getting into unanimity now.

7          I'm sorry.   I did misspeak.   I said I was going

8     to -- I had the bracketed language here.   I said I was going

9     to keep it in.   I want to take it out of there.   I'm sorry.   I

10    misspoke.

11         MR. SINGER:   That's what I thought you meant.

12         THE COURT:   I said the Government had the better

13    argument, so -- and consistent with the Government's argument,

14    then I'll make the appropriate adjustment with respect to 15,

15    17, 19, 21, 23, 25, 27 and 29.   Yes.

16         MR. SINGER:   In the interest of full disclosure on

17    that, Your Honor, there are additional omission-related

18    segments of those instructions, particularly as you get into

19    the later counts where you have the "yes" answers.

20         THE COURT:   Right.

21         MR. SINGER:   So, it's not just a matter of taking

22    out that particular language.   There's other language that

23    will need to be adjusted.

24         THE COURT:   All right.

25         MR. SINGER:   I don't think it will be difficult to

1   do it.

2          THE COURT:  No.  All right.  Thank you.  With

3   respect to the objections to the second paragraph in 16, 18,

4   24, 26, 28 and 30, Counsel.

5          MR. SINGER:  Your Honor, this is exactly the same

6   unanimity issue that we just discussed in connection with the

7   concealment count, which we think was Instruction No. 4, and

8   if Your Honor agrees, as I believe you were inclined to do it,

9   it has to be -- they have to be unanimous as to the particular

10  gifts or liabilities, then the second paragraph is

11  appropriate.  If Your Honor agrees with the Government, then I

12  imagine it isn't appropriate.

13         THE COURT:  All right.  Counsel, anything further on

14  that?

15         MR. MARSH:  No, nothing, Your Honor.

16         THE COURT:  Okay.  We'll give it some more thought

17  as well.  Instruction 31, the Government objects to the third

18  paragraph into the definition of "willfully."

19         MR. SINGER:  Your Honor, this again, we've already

20  covered in substance.

21         THE COURT:  Right.

22         MR. SINGER:  This is the "knowingly and willfully"

23  instruction that corresponds to the instructions in Count 1.

24  This one is for 2 and 7, so I believe if Your Honor was going

25  to keep in the paragraph and the "knowingly" instruction that

```
 1    was in dispute, that is the third paragraph of the -- of

 2    Instruction 31, so if you would keep that one as well.

 3              THE COURT:  Right.

 4              MR. SINGER:  And then on "willfully," that comes up

 5    under -- on page 41.

 6              THE COURT:  Yes.

 7              MR. SINGER:  And I believe that it's substantially

 8    the same as the "willfully" instruction in the Count 1

 9    instruction, so whatever adjustments are made to that one, I

10    suppose it would make sense to make them to this one, although

11    we would object to those adjustments for the same reasons as

12    we object to prior adjustments.

13              THE COURT:  All right.  I'll be consistent.  We'll

14    note the consistent objection also.

15              With respect to 37, 39 and 41, the Government

16    objects to 37.  Let's see.  Make sure we got --

17              MR. SINGER:  I think we've already done 37, Your

18    Honor.

19              THE COURT:  Prior convictions of Government

20    witnesses.  39 is alcohol abuser.  I didn't even look at this

21    one.

22              MR. MARSH:  Your Honor, on this one, if I can just

23    explain the Government's view.  Our view is that it should not

24    be and is not appropriate that a person who has an alcohol

25    problem be treated and the jury instructed to treat them the
```

1    same as a convicted felon.

2          THE COURT:  They can certainly argue that.  There

3    was some testimony that he was drinking a lot, testimony from

4    someone, Persons, I think, who said, "I smelled alcohol but I

5    don't drink."  I don't know if it was current alcohol or bad

6    alcohol or overnight alcohol or something, or stale alcohol,

7    but he smelled alcohol.  You can argue that.  You can

8    certainly argue that the jurors can consider the fact that

9    there's been testimony that he used it.  I'm not inclined --

10         MR. SINGER:  I think it was Mr. Paone who said that.

11   I think there were others who testified that Mr. Anderson is

12   an alcoholic, and I believe that the Government in fact got up

13   and said at one point that they believed that Mr. Anderson is

14   a hard core alcoholic.

15         As far as the instructions goes, Your Honor, it's a

16   well recognized instruction.  It's given all the time.  It's

17   in the *Sand* treatise and the *O'Malley* treatise that an alcohol

18   abuser, or in some other cases, a drug abuser is someone whose

19   testimony can be -- can be looked upon a little bit

20   differently than another witness, and it goes to the same --

21   to the same area of credibility as the instructions, for

22   example, on convicted criminals.

23         It's obviously a different reason for -- for

24   impaired credibility, but the issue is the same.  It is an

25   issue of impaired credibility.

1          THE COURT:  All right.  I'm not inclined to give it.

2     You can certainly argue that, Counsel.  I have to -- to be

3     quite candid, I didn't spend any time on that one, and we ran

4     out of time.  I'm not inclined to give it, but I'll give it

5     some more thought this evening, tomorrow morning.

6          42.

7          (OFF-THE-RECORD DISCUSSION BETWEEN THE LAW CLERK

8     AND THE COURT.)

9          THE COURT:  All right.  We'll give it some further

10    thought.  I'm not inclined -- you can certainly argue it, but

11    I think that's a pretty powerful instruction, that second

12    paragraph, the jury must determine whether the testimony of

13    Anderson has been affected by his alcohol use of a need for

14    alcohol?

15         MR. SINGER:  That's verbatim out of the *O'Malley*

16    treatise, Section 1505.

17         THE COURT:  That may be appropriate under certain

18    circumstances.  I'm not so sure it's appropriate here.  Let me

19    hear from Government counsel on that.

20         MR. MARSH:  We just -- from the Government's

21    perspective, we submit it's not an appropriate instruction.

22    It would be giving the jury -- telling the jury that they

23    should consider people with alcohol problems to be as biased

24    and less credible as convicted felons, informants.  I mean,

25    it's basically the same instruction.

1          Now, were the Court inclined to give anything,

2   certainly an instruction saying that you've heard that some

3   witnesses may abuse alcohol, you may consider alcohol abuse as

4   it relates to memory or other aspects of the testimony.  You

5   should weigh their testimony just as everybody else's.  We

6   would submit that that -- we also don't think that's

7   necessary, but that would be, we think, accurate.  Saying that

8   an alcohol abuser is not credible, that just seems to go --

9          THE COURT:  Yeah.  I'll probably give some variation

10  of that.  I think the second paragraph probably goes too far,

11  but I'll probably go so far as to say they can consider that

12  in evaluating his testimony, his credibility.

13          We already got 38, "Guilty Pleas of Government

14  Witnesses."  There's only Allen, I believe.

15          MR. SINGER:  I don't believe we dealt with 38, Your

16  Honor.

17          THE COURT:  We didn't?

18          MR. SINGER:  We dealt with 37.

19          THE COURT:  "Guilty Pleas of Government Witnesses."

20          MR. SINGER:  The reason for this one, this is a

21  slightly different instruction, Your Honor.  The reason for it

22  is we want to make sure the jury understands that the charges

23  as to which Bill Allen pled guilty don't have anything to do

24  with Senator Stevens, and I don't think that -- you know, it

25  may be clear to them.  I'm not sure it's clear.

1        THE COURT:  I think it is clear.  They're going to

2   have the plea agreement.  You can certainly bring it to their

3   attention.  They're going to have the plea agreement, and

4   that's absolutely a correct statement.  There's nothing --

5   there has been no evidence to suggest that this is part of any

6   scheme involving any state elected officials at all.

7        MR. SINGER:  That's correct, Your Honor.  And I

8   think it's important because it is undisputed and it's very

9   important that they understand that.

10        THE COURT:  I tell you what I'll do.  I'll add

11  something to that other instruction and make it clear that he

12  pled guilty to -- I'll add something there.  I'm going to

13  combine 2.23, I think it is, 2.22, 2.28.  I'll make it fair.

14  We'll make the revisions and send it to counsel.

15        MR. MARSH:  Your Honor, from the Government's

16  perspective, we don't think it's an appropriate instruction,

17  but we also don't see a lot of harm in it.  What we would

18  propose, should the Court be inclined to give something,

19  keeping it as -- keeping it as a -- not having the title

20  "Guilty Pleas of Government Witnesses."

21        THE COURT:  No, I'm going to have one instruction.

22  I think it will be a combination of 2.22 and 2.33 concerns in

23  this one.  It will be one instruction.  It will deal with a

24  witness who has pled guilty and has a plea agreement with the

25  Government.  It will make clear that the plea dealt with his

1    involvement in -- criminal involvement with Alaska state

2    officials.  I'll do that.

3           I think that's all.  I think the Government --

4    Strike that.

5           Defense counsel submitted a proposed instruction

6    regarding coaching or signaling.

7           Let me just say this:  I didn't hold a hearing on

8    that.  I haven't heard any testimony from anybody who observed

9    anything.  They have not been cross-examined.  Yeah, I have

10   not convened any hearing.  I don't plan to.  What I thought I

11   saw was dealt with immediately and I cured it and it didn't

12   reoccur.

13          There is an instruction, a general instruction that

14   the Court always gives that the jurors can consider the

15   behavior and the demeanor of the witness on the witness stand.

16   I think that -- and you know, I stand corrected.  My

17   recollection is that probably in the presence of the jury I

18   said something like to the witness, to the person, don't make

19   any gestures or don't communicate, or words to that effect to

20   the person.  I don't think I said anything more.

21          I think we took a recess and then I asked him to

22   come forward.  I don't think I did all that in the presence of

23   the jurors.  I'm pretty sure I didn't.  So the jurors know

24   that I instructed someone not to communicate or make gestures

25   to.  There was a question by Mr. Sullivan of Mr. Allen about

1    whether his attorney was present and whether his attorney was

2    communicating with him, signaling to him.  Allen testified no.

3            I'm not inclined to give that instruction.  For all

4    I know, the man may have had some neurological problems that

5    prompted him to shake his head.  You know, I just don't know.

6    But what I'll do after this case is over, I just don't know.

7            MR. SINGER:  Your Honor knows what Your Honor saw,

8    and it was -- and I didn't know anything about it until it

9    came out in open court there, but as Your Honor knows, others

10   did see something.

11           THE COURT:  They said they did.  That's not been

12   tested.  They have not been examined.  In fairness to

13   Mr. Bundy, I think that's his name, he's not been given a

14   chance to explain.

15           MR. SINGER:  If Your Honor had seen it --

16           THE COURT:  It's not uncommon for people to hear --

17   to be in a movie, and you know, you get to the point where,

18   you know, someone is walking down a dark street and you know

19   someone is laying in wait.  Just don't do that.  It's a

20   natural tendency sometimes without any intent.  You know, I

21   don't know.

22           I'm not inclined to give that instruction.  Now,

23   what's appropriate?  Probably nothing because I give that

24   instruction, "You can consider the behavior of the witness on

25   the witness stand."

1          MR. SINGER:  But this is a particular item of

2     behavior that goes directly to his credibility, Your Honor,

3     and if it was happening for, as we believe it was, for a

4     substantial period of time before Your Honor put a stop to it,

5     then --

6          THE COURT:  I don't know whether it was or not.  I

7     know I saw one instance, and I immediately stopped it.  You

8     know, if it was happening before, then, you know, arguably,

9     someone should have brought that to my attention, but I don't

10     know that and I don't want to inject that in it because I

11     don't know that to be a fact.  In fact, I haven't found it as

12     a fact that he was improperly communicating.

13          I thought I saw a signal to answer a certain way.  I

14     think I saw a head shake.  I know that's what I recall seeing,

15     but in fairness, I never gave him a chance to explain it,

16     although I think he denied it.  I think he was quite surprised

17     when he was accused of communicating with -- he never came

18     back again.  I guess he's in Alaska, I guess.

19          MR. SINGER:  With Your Honor's permission, I'd

20     like -- since we did not file this instruction on ECF, I would

21     like permission just to read it into the record right now.

22          THE COURT:  Sure.  Go ahead.

23          MR. SINGER:  It would be Proposed Instruction --

24     Supplemental Proposed Jury Instruction No. 44.  "The Court and

25     others observed the attorney representing Government witness

1  Bill Allen giving signals to Allen regarding how he should

2  respond to questions.  You should give this fact as much

3  weight as you find in your judgment it deserves."

4          THE COURT:  What's the Government's position with

5  respect to that?

6          MR. MARSH:  On the instruction or on the underlying

7  conduct or --

8          THE COURT:  Well, on the instruction.

9          MR. MARSH:  Your Honor, we don't believe it's

10  appropriate.  Certainly whatever the -- Mr. Allen came back

11  and testified the following day with -- consistent to what he

12  testified previously to the extent there were repeated

13  questions.

14          There has been no formal finding, there has been no

15  additional inquiry into this, and we do think that's a highly

16  charged instruction that is not appropriate, given the fact

17  that we don't have a lot of, you know -- as the Court said, it

18  may have been something, it could have been nothing.

19          THE COURT:  Well, what about this?  If the Court

20  doesn't give an instruction, I'm not inclined to give an

21  instruction.  I did take some -- I did take some action in the

22  presence of the jury.

23          I think I said -- my recollection, I said something

24  like, "Don't make any gestures, don't communicate with the

25  witness," I think, and he was questioned about that, so why

1    isn't it fair for them to argue that?  That's something that

2    happened in their presence.  Everything else didn't happen in

3    the presence of the jury.  They all know what's in those

4    notes.  They don't know what's in those declarations.  Those

5    declarations or the context -- the text of those declarations

6    have not been tested in any appropriate fact-finding hearing,

7    but why wouldn't it be appropriate for them to comment in

8    argument that the Court during the course of -- even though he

9    denied it, the jurors can consider that that instruction was

10   given to that person?

11          MR. MARSH:  Your Honor, because it's not what this

12   case is about.  I mean, there's a tremendous amount of

13   evidence, and one of the things that we're concerned about is

14   that we're getting -- we do submit that sometimes -- we just

15   submit that that is -- is one of what we believe are a number

16   of issues that are very, very far afield of what's really at

17   issue in this case.

18          THE COURT:  I mean, as a matter of fact, it's not

19   been proven that this man inappropriately communicated with

20   the witness.  I mean, I may be completely wrong with what I

21   said.  I'm not a witness in this case.

22          All right.  Anything else on that point?  I may be a

23   witness to some other hearing.

24          MR. SINGER:  No, Your Honor, not on that point.

25   There are -- there are a couple of other matters I would like

 1    to --

 2              THE COURT:  Wait a minute.  Before I forget it, is

 3    it the Defendant's request that there just be a general

 4    verdict form?  Correct?

 5              MR. SINGER:  Correct.

 6              THE COURT:  All right.  Any objection?

 7              MR. MARSH:  No objection.

 8              THE COURT:  All right.  Then I'll give my standard

 9    verdict form.

10              MR. SINGER:  Separate verdicts as to each count,

11    obviously.

12              THE COURT:  Absolutely.

13              MR. SINGER:  Okay.  The two instructions were given

14    earlier in the case that we would ask that the Court also

15    incorporate in the final instructions.

16              THE COURT:  Right.

17              MR. SINGER:  That would be the --

18              THE COURT:  Rule on witnesses.  No, I overlooked

19    that.  You want that instruction.

20              MR. SINGER:  We do want that.

21              THE COURT:  I told you to remind me and see that

22    I'll give that.  All right.

23              MR. SINGER:  There is the official acts instruction

24    about the limits to which the jury can take evidence of

25    official acts, the quid pro quo instruction, and then there

1    was the instruction striking the evidence on the Mustang.

2            THE COURT:  I don't think that instruction -- all

3    right.  We have it.  All right.  I recall it.

4            MR. SINGER:  Okay.  And I'm sure Your Honor recalls

5    the instruction of striking the Mustang transaction.

6            THE COURT:  Absolutely.

7            MR. SINGER:  And the VECO records transaction.

8            THE COURT:  I've already done that.  I don't think I

9    need to remind them of that.  I've done that.  I'm going to

10   send the indictment back.  That's a good point.  I'm glad you

11   raised it because that information should be redacted from the

12   indictment that we send back.

13           I'm not going to -- look, I imposed a sanction.

14   That sanction was appropriate at the time.  I told the jurors

15   to do certain things at the time, and that's all I'm going to

16   say about that.  I'm not going to remind them that certain

17   information has been excised

18           MR. SINGER:  But Your Honor is giving them the

19   instructions in writing back in the jury room and they're

20   going to -- they're going to have forgotten the instruction

21   that we think is so important striking this information.

22           THE COURT:  Wait a minute.  I'm sorry.  The

23   instruction that I gave them about disregarding -- No, I'll

24   give that.  I see no reason not to give that.  I'll hear from

25   the Government on that, but I'll do that.

1    MR. MARSH:  Your Honor, we don't believe it should

2   be given again.  I mean, the jury is presumed to follow the

3   Court's instructions.  The Court instructed them, we'll redact

4   it off the indictment, the exhibits are going to be redacted.

5   We believe that the Court made its ruling and that it's not

6   appropriate to instruct the jury yet again on an issue.

7    THE COURT:  You know what I'll probably do, I'll

8   probably give a makeshift instruction.  I don't need to focus

9   on the sanction issue part of that again.  I need to remind

10  them that I struck certain evidence, and I'll probably give

11  that portion that I struck certain evidence.  But the

12  sanction, I mean, the reason why I'm doing it, I don't think I

13  need to remind them again of that, you know.

14    (OFF-THE-RECORD DISCUSSION BETWEEN THE LAW CLERK

15  AND THE COURT.)

16    THE COURT:  Addy has a good suggestion.  We can

17  probably put that into the inadmissible and stricken evidence

18  instruction.  We'll do that.  I don't need to mention the

19  sanction again.  Sanction, I don't need to do that, but I

20  will -- we'll read it into the inadmissible and stricken

21  evidence instruction.  Anything else?

22    MR. SINGER:  There are two other matters, Your

23  Honor, but I do want to make it clear that it is our position

24  that the sanction should be mentioned again.  It was a very

25  serious one, and the jury should understand it.

1          THE COURT:  Well, for the reason you just said, the

2    jurors are supposed to listen to the instructions.  They heard

3    it.  They'll give it what weight they should give.  What's the

4    next point?

5          MR. SINGER:  Two other instructions, Your Honor.

6    These just came up today for us.  Your Honor will recall that

7    there's a pending motion on the -- on whether the Government

8    can discuss a public interest and disclosure, public right to

9    know.  We would like to tender an instruction that the Court

10   might give on that assuming that our motion were granted, and

11   I can read that or hand it up or whatever.

12         THE COURT:  Do you have a copy for opposing counsel?

13         MR. SINGER:  I do.

14         THE COURT:  You can read it if you want to.  I

15   haven't seen it, obviously.  Okay.  Thank you.

16         MR. SINGER:  Just to read it into the record.  This

17   would be Proposed Instruction No. 45.  "You have heard

18   referenced during the trial to a public interest and

19   disclosure.  You should not consider this in your

20   deliberations.  Senator Stevens is charged with making false

21   statements to the Government, not to the public.  Public

22   disclosure is not an element of the charges in this case and

23   you should disregard any references to a public interest and

24   disclosure or a public right to know."

25         THE COURT:  Any reaction by Government counsel?

1        MR. MARSH:  Well, it's -- I mean, we agree that it's

2   not an element of the charges, but it is part and parcel of

3   what these forms are.  The form is titled "Public Financial

4   Disclosure Form," and the instructions to the forms make

5   reference to the fact that they are publicly disseminated and

6   that -- so we don't -- I mean, certainly to the extent that

7   should the Court grant that motion, then an instruction like

8   this is appropriate.

9        THE COURT:  All right.  This is in -- this is being

10  submitted in consideration -- for the Court's consideration

11  with respect to the pending motion.  All right.

12       MR. SINGER:  That's right, Your Honor.  And the

13  last -- the last proposed instruction we have, we would like

14  to approach the Bench with this one.

15       THE COURT:  All right.  There is no husher.

16       (AT THE BENCH; ON THE RECORD.)

17       MR. CARY:  This has to do with the Bill Allen issue,

18  and we reviewed the file.  Mr. Romain actually did.  We

19  attempted to read the stipulation with the Government, and it

20  is a very serious matter, very serious investigation that's

21  now at Main Justice and we feel as though we should be -- we

22  can't get Mr. Allen back.  At this point we feel like there

23  should be some instruction at the very least.

24       The file and the disclosure letters became part of

25  the record under seal.  That's all, Your Honor.

1           MR. MARSH:  We strongly disagree.  I mean, what we

2      know in this is that at the time that Mr. Allen -- I mean,

3      first of all, we've given over everything that we had as we

4      got it.  And secondly, with respect to the investigation,

5      Defendant was aware, at the time Mr. Allen was on the stand,

6      of these other pending investigations.  They were given the

7      right to cross-examine.  They chose not to.

8           The fact that it's now a federal investigation, we

9      submit that it's -- it would only be relevant if for some

10     reason the Government had notified Mr. Allen that -- or had

11     reason to believe that Mr. Allen knew it was federal.  We have

12     no -- we certainly, none of us -- no one on the prosecutor

13     team has mentioned anything of that to Mr. Allen or

14     Mr. Allen's attorney.  We think it would be absolutely

15     improper to do so.

16          Absent that, Your Honor, we don't see how an

17     additional investigation along the same lines, whether state

18     or federal, adds anything to the next information they had at

19     the time of trial.

20          THE COURT:  Okay.

21          MR. CARY:  Your Honor, if I can just finish our

22     position.  Our position is that, given what we now know was in

23     the file, we think it's such a serious investigation.  The

24     conduct is such that it ought to be presumed to know.  That's

25     our position.

```
 1            THE COURT:  All right.

 2            (OPEN COURT.)

 3            THE COURT:  All right.  I'll give it some thought,

 4   Counsel.  I'm not inclined to give that, but I'll give it some

 5   thought.  What seems to be clear is that the parties don't

 6   disagree that -- that the subject doesn't know.  Parties don't

 7   disagree about that, do they?

 8            MR. MARSH:  That what?

 9            THE COURT:  That the subject doesn't know.

10            MR. SINGER:  I think we do disagree, Your Honor.

11            MR. MARSH:  Well, maybe we should approach.

12            THE COURT:  All right.

13            (AT THE BENCH; ON THE RECORD.)

14            MR. MARSH:  What we learned from Defense counsel --

15            THE COURT:  Can you hear?

16            COURT REPORTER:  Yes.

17            MR. MARSH:  What we learned from Defense counsel

18   yesterday is they apparently -- they found something in the

19   file that suggests that Allen or his lawyer knew about the

20   State investigation.  We have no reason to believe that they

21   know about that this has gone federally.  We certainly haven't

22   told them.

23            MR. CARY:  And our position is that he ought to know

24   that he has this exposure.  I mean, I can't tell you, we can't

25   tell you.  We don't have any proof that he knows that it's
```

1    federal, but our position is that it's serious enough.  They

2    are federal crimes that he ought to be presumed to know.

3    That's our position.

4             THE COURT:  Why?

5             MR. CARY:  Because he engaged in that -- the

6    conduct, apparently, and the -- he ought to know that the

7    upbeats are coming with respect to such a serious matter.

8    That's our position.

9             MR. MARSH:  And that's probably true when it comes

10   to upbeats, but State upbeats versus federal upbeats.

11            (OPEN COURT.)

12            THE COURT:  Okay.  Counsel, I'll give it some

13   thought.  I'm not inclined to do it.  I'll give it some

14   thoughts.  I'll rule on this.  I'm going to seal that.  That's

15   a bench conference, and that's consistent with sealing other

16   bench conferences.  All right.

17            (OFF-THE-RECORD DISCUSSION BETWEEN THE LAW CLERK

18   AND THE COURT.)

19            THE COURT:  All right.  Any other request?  Any

20   other request, Counsel?

21            MR. SINGER:  Two more things, Your Honor.  Having --

22   not directly related to jury instructions.  First is that -- I

23   just wanted to make sure that -- for the Court's schedule, you

24   understand what we're planning to do in regard to the motion

25   for judgment of acquittal.

1          THE COURT:  No, I don't.  I understood that there

2     would not be lengthy argument on that.

3          MR. SINGER:  I want to tell you very specifically

4     what we intend to do there.  There is law in the D.C. Circuit

5     that suggests that if specific grounds are asserted for a

6     motion, both at the close of the Government's case and at the

7     close of all the evidence, then the Defense waives, for

8     appellate purposes, any grounds not stated, and for that

9     reason we do not intend to state any specific grounds in this

10    renewed second motion for judgment of acquittal.

11         We will stand up, we'll make a motion for judgment

12    of acquittal based on insufficiency of the evidence.  We will

13    not state any particular grounds.  We believe Your Honor can

14    still grant such a motion and should still grant such a

15    motion, but we're not going to engage in an argument about it

16    for fear of waiving something.

17         THE COURT:  Should the Court, if you do that, take

18    that motion under advisement?

19         MR. SINGER:  The Court is allowed to do that under

20    Rule 29(b).  The Court doesn't need to rule right away.  The

21    Court can rule right away or can reserve decision until after

22    the jury comes back.

23         THE COURT:  What's that citation, Counsel?

24         MR. SINGER:  The citation to the case is -- I

25    believe it's the -- I want to say *Hammoude* case, but I think I

1    have it right here.

2              THE COURT:  That's all right.  I'm familiar with the

3    general principle, but if you don't have it, don't worry about

4    it.

5              MR. SINGER:  I don't have it at my fingertips.  I'm

6    sorry.  The second thing I wanted to raise is that there are,

7    I believe, five pending Defense motions, and they may impact

8    or would impact jury instructions and closings, so I do

9    believe they need to be resolved.

10             We don't necessarily need to have argument on them

11   or lengthy argument or any argument, but I do think they have

12   to be resolved before closings and instructions.

13             THE COURT:  All right.

14             MR. SINGER:  I believe they are -- we have a motion

15   on the public right to know, we have a motion to strike all

16   the VECO accounting records, we have a motion to -- for

17   constructive amendment or variance to strike the evidence

18   about the fish statue, the chair and the stained glass, that's

19   Motion No. 3.

20             We have a motion to strike the generator, which is

21   based on the absence of 1999 charges, and then lastly, we have

22   a motion to strike gifts that are unidentified in the

23   indictment, which is the guns and the gift bags which I think

24   has already effectively been granted and also the boxing bag

25   and the metal frame.

1          THE COURT:  All right.  With respect to that public

2    interest and disclosure motion, if the Court denies that, let

3    me inquire of Government counsel whether you'd be opposed to

4    this instruction.  You've heard reference during the trial to

5    a public interest and disclosure.  Senator Stevens is charged

6    with making false statements to the Government, not to the

7    public.

8          MR. MARSH:  It's -- it's accurate.  It's certainly

9    accurate from the law.  It does, however, connote that that's

10   not relevant, and we do believe it is relevant in the sense

11   that because it's a public disclosure, it goes into the motive

12   and the intent to conceal and the scheme to conceal.

13         If it's something that goes into a folder and nobody

14   ever looks at it, we have a much harder time of proving

15   motive, so we believe that the public aspect, it's going to be

16   out there and everybody's going to see it, is relevant, and

17   the only concern with that instruction from the Government's

18   side is that it could lead the jury to believe that those are

19   completely irrelevant.

20         THE COURT:  Counsel.

21         MR. SINGER:  Your Honor, our motion is not to try to

22   prevent the Government from arguing motive.  The point is, the

23   Government has been arguing something else, and in particular,

24   in the opening statement we heard about an abstract public

25   right to know that's been violated, it's been impaired by

1   Senator Stevens' conduct.  That's not the crime.

2        The crime that's been charged is 1001, which is a

3   false statement to the Government, not to the public, and if

4   the Government gets up and starts talking about a public right

5   to know, then the jurors are going to think, "Gee, I'm a

6   member of the public, too.  I've been harmed by Senator

7   Stevens' conduct."

8        That's highly prejudicial, it's completely

9   irrelevant to the charges, and we think it's inappropriate,

10  and for that reason we think it needs to be clearly stated to

11  the jurors, first of all, that they can't consider that.  And

12  also, the Government shouldn't be able to get up in closing

13  and do the same thing again and talk about you, the public,

14  and you, the jurors are deprived of an important right to know

15  that the Senator got a 300-dollar gift, because I think that

16  is highly prejudicial and it's not in evidence.

17       THE COURT:  Any additional requests for instructions

18  by either side?

19       MR. MARSH:  Your Honor, we -- and I apologize not

20  asking Mr. Singer to put this in a joint submission.  In the

21  initial submissions, the Government did request the willful

22  blindness instruction.  Now, we are aware of the D.C. Circuit

23  law that indicates how rarely that should be given, but we do

24  submit that -- we won't argue on it.  We'll leave it to the

25  Court's conclusion, but we do submit, certainly after the

1    testimony of the last couple of days, there's a factual basis

2    to allow that instruction.

3              THE COURT:  Counsel.

4              MR. SINGER:  Your Honor, I cannot more vehemently

5    object to the instruction than I will to a willful blindness

6    instruction.  It is completely inappropriate.  It tells the

7    jurors, in effect, that they can convict Senator Stevens under

8    a statute that requires knowing and willful conduct.

9              If he didn't know, if he supposedly closed his eyes

10   to the conduct, it effectively invites them to convict on --

11   for reckless conduct or even negligent conduct.  And the key

12   case from the D.C. Circuit, which is an extremely powerful

13   case, is the *U.S. versus Alston Graves*, 435 F.3d, 331 from

14   2006.  And in that case, the D.C. Circuit recognized that a

15   willful blindness instruction may lead the jury to convict the

16   defendant just for acting recklessly or even negligently, and

17   it's -- that case surveyed the case law throughout the

18   country.

19             It cited favorably to courts that have held that

20   willful blindness instructions are rarely appropriate, and in

21   fact, it cited favorably to an evidentiary standard for

22   willful blindness instructions that there has to be evidence

23   that the defendant purposely contrived to avoid learning all

24   the facts in order to have a defense in the event of a

25   subsequent prosecution.

1          THE COURT:  Why can't -- why wouldn't it be

2     appropriate here?  If his testimony is that he asked for

3     bills, he never got a bill and just left it at that;

4     nevertheless, these -- these renovations were appearing at his

5     premises and the testimony is further that his wife's check

6     writing was up through, I think, '01 or so, why isn't that

7     evidence of willful blindness?

8          MR. SINGER:  It's not, Your Honor.  A willful

9     blindness standard is he has to have purposely contrived to

10    avoid learning all the facts in order to have a defense

11    against a subsequent prosecution.  That's a pretty high

12    standard.  I don't think there's even anything close to any

13    evidence of that here.

14         THE COURT:  It's not just the first part of that.

15         MR. SINGER:  It's not enough -- I mean, the Court

16    should read *Alston Graves*.

17         THE COURT:  I'll read it.

18         MR. SINGER:  And draw your own conclusion.  And that

19    is one standard.  That's not the only standard that's been

20    adopted throughout the country, but that's a standard that

21    *Alston Graves* cited favorably, and the D.C. Circuit could not

22    have been more clear that these are not instructions that

23    should be given in a typical case, and it's only in an

24    extremely unusual case that they're ever appropriate.

25         THE COURT:  All right.  Counsel.

1          MR. MARSH:  And, Your Honor, the *Alston Graves* case

2   was the case I was referring to previously.  We agree with

3   everything Mr. Singer says, except that we do believe that

4   there is sufficient evidence to believe that this was a

5   purposeful contrivance to avoid, among other things, what's

6   happened over the last three or four weeks.

7          THE COURT:  All right.  Any additional requests?

8          MR. MARSH:  Not from the Government.

9          THE COURT:  All right.  With respect to the Red

10  Book, the Court's clear -- the Court's already ruled with

11  respect to the Red Book instructions that it will give either

12  with the consent of the parties or over objection, so what I

13  need you to do, Counsel, and I probably need to get this

14  tomorrow, I need you to go through the Red Book instructions,

15  make them gender appropriate, tense appropriate, delete the

16  inappropriate parenthetical and bracketed language and I will

17  then conclude what I have to do, which is finalize the

18  additional proposed jury instructions by both the Government

19  and Defense counsel and e-mail them to you for your review

20  tomorrow.

21          I mean, at some point I'm going to need Word

22  Perfect.  Actually, I need your Word Perfect submission with

23  respect to Red Book.  I need it tomorrow.  What's a reasonable

24  time?  Earlier the better, but I leave it to counsel to give

25  it to us maybe 1:00 o'clock tomorrow afternoon or so.

1          MR. SINGER:  There's a lot of retyping to do, and we

2     already have somebody in the office starting it.

3          THE COURT:  Yeah.  I don't think you need to retype

4     this thing from scratch.  You can go to Lexis and just

5     download them and just delete as appropriate.

6          MR. SINGER:  That's an idea.

7          THE COURT:  No one has to type this stuff from hand.

8          MR. SINGER:  Okay.  What we'll do then is we'll take

9     the lead on it.  We'll try to put together what we think Your

10    Honor has ruled on that.  We'll send it over to Mr. Marsh.

11         THE COURT:  The majority of it is by consent.  You

12    already agreed on deletions with regard to bracketed and

13    parentheticals in Red Book.  I already indicated on which Red

14    Book I'm going to give.  Hopefully I was clear with respect to

15    the deleted portions, bracketed as well as parentheticals, so

16    it shouldn't take a lot of time, and we will then finalize

17    your additional proposed jury instructions as well as the

18    Government's and give them to you at least by way of e-mail

19    tomorrow so you can review.

20         If there are any new objections, I can entertain

21    them and we can proceed with hopefully closing arguments

22    earlier than later on Monday.  Any additional requests?

23         All right.  Thank you, Counsel.  Thank you.

24         I would like the Government to take another look at

25    the *Richardson* opinion, though.

1          MR. MARSH:  We will do that, Your Honor.  If we have

2   any additional thoughts, can we file something by say 11:00

3   tomorrow morning?

4          THE COURT:  Absolutely.  That's fine.  That's fine.

5   Counsel, I'm going to spare you.  This was really nice.  You

6   don't have to do this.  It's very helpful for what we did this

7   afternoon, the tabs on the instructions.  We'll take care of

8   making copies.  I'm going to send two copies back to the jury.

9   We'll take care of that, but I just want you to go through and

10  just make those changes with respect to tense and gender and

11  bracketed and parentheticals, and that will be a tremendous

12  help to us.

13         Thank you again for the court reporter.  Thank you.

14  Have a nice weekend.  Seal that bench conference.

15         COURT REPORTER:  I will.

16         (PROCEEDINGS END AT 6:45 P.M.)

17                          *-*-*-*

18                  **CERTIFICATE OF REPORTER**

19         I, Catalina Kerr, certify that the foregoing is a

20  correct transcript from the record of proceedings in the

21  above-entitled matter.

22

23  _____      _____
    Catalina Kerr                    Date
24

25